## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| INDIAN PEAK PROPERTIES LLC | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 24-1108 |
| | ) | |
| THE FEDERAL COMMUNICATIONS | ) | |
| COMMISSION | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondents | ) | |
| _____ | ) | |

## PETITION FOR REVIEW

Indian Peak Properties LLC ("Indian") hereby petitions for review of agency action by the Federal Communications Commission ("FCC" or "Commission").

### 1.     Agency Action

Review is sought for the Commission's order captioned *In the Matter of Indian Peak Properties LLC, Petitions for Declaratory Ruling Seeking Preemption Under the Rule Governing*

*Over the Air Reception Devices,* Order on Review (Mar. 7, 2024) ("*Order*").  A copy of the *Order* is attached hereto.

## 2.    Jurisdiction and Venue

The *Order* is administratively final as it denies Indian's Application for Review of FCC staff's denial of Indian's Petitions for Declaratory Ruling under 47 C.F.R. 1.4000.  It is subject to review pursuant to 5 U.S.C. 702, 47 U.S.C. 402(a), and 28 U.S.C. 2342(1) and 2344.  Section 402(a), through incorporation of the Hobbs Act, 28 U.S.C. 2341 *et seq*., grants exclusive jurisdiction to the federal court of appeals in which the petition for review is filed. This jurisdiction extends to challenges to "all final orders of the Federal Communications Commission" that are not reviewable under Section 402(b). *Id*. § 2342(1).  Venue is proper in this court pursuant to 28 U.S.C. 2343.  This Petition for Review is timely filed within 60 days of March 7, 2024, the date of the *Order*.  28 U.S.C. 2344.

## 3.    Address

The mailing address of Indian Peak Properties LLC is:

Indian Peak Properties LLC
1350 E. Flamingo Road #13B34
Las Vegas, Nevada 89119-5263

Indian owns the property (hereinafter, the "Property") located at:

26708 Indian Peak Road
Rancho Palos Verdes, California

The Property is the subject of Indian's Petitions for Declaratory Ruling.

### 4.    Standing

Indian has direct standing because it was the petitioner in the proceedings below and was harmed by the Commission's unlawful denials.

### 5.    Related Proceedings

On June 3, 2022, Indian filed its Petition for Writ of Mandamus in this Court, Case Number 22-1098.  On September 2, 2022, this Court dismissed as moot Indian's Petition for Mandamus.

On August 18, 2023, Indian filed its Petition for Review in this Court due to agency inaction, Case Number 23-1223.  This

Court dismissed as premature Indian's Petition for Review in Case Number 23-1223.

### 6.    Basis of Appeal and Redress

The *Order* is premised on a new "human presence" rule for over-the-air reception devices, 47 C.F.R. 1.4000.  This is a substantive rule that, under the Administrative Procedure Act, 5 USC 701 *et seq.*, requires a notice-and-comment rule making to be effective.  However, no notice was given and the public was afforded no opportunity to comment on the new rule.  Instead, the *Order* first announces this new rule in denying Indian's Application for Review before the Commission.  The *Order* also upholds FCC staff's refusal to declare a "proceeding" and hold in abeyance state court litigation, as provided by 47 C.F.R. 1.4000.  Thus, the *Order* upholds staff's violations of FCC rules of procedure.

With this appeal, Indian seeks reversal of these arbitrary and capricious agency actions that are contrary to law, and remand to the FCC for treatment not inconsistent with this Court's opinion.

Upon remand and the Commission's grant of Indian's petitions under 47 CFR 1.4000, the local zoning ordinance would be preempted and Indian would be able to re-place the disputed antennas on the rooftop of the Property.

Indian also seeks this Court's ruling that staff violated FCC rules of procedure, thereby breaching their duty.  Such ruling would serve as a predicate to Indian's anticipated action under the Federal Tort Claims Act, 28 U.S.C. Part VI, Chapter 171, and 28 U.S.C. 1346, to recoup attorneys fees unnecessarily spent defending state court litigation which FCC staff should have held in abeyance pursuant to 47 C.F. R. 1.4000.

## 7.    Relief Requested.

Indian seeks review and reversal of the *Order* under federal law, including but not limited to the Communications Act of 1934, as amended, 47 USC 151 *et seq.*, the Administrative Procedure Act, 5 USC 701 *et seq.*, and the FCC's regulations promulgated thereunder.  Indian seeks a determination by this Court that the *Order* (i) violates the above-referenced statutes and regulations, (ii)

is arbitrary and capricious, an abuse of discretion and otherwise are not in accordance with the law, (iii) is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, (iv) was adopted without observance of procedure required by law, and (v) is otherwise contrary to law.

Accordingly, Indian respectfully requests that this Court hold unlawful, vacate, enjoin, and set aside the *Order;* remand the case to the FCC for treatment not inconsistent with this Court's opinion and order; rule that Commission staff violated FCC rules and breached their duty; and grant such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Julian Gehman
_____
Julian Gehman
Gehman Law PLLC
(202) 341-0198
julian@gehmanlaw.com
Mail to:     P.O. Box 13514,
              Arlington, VA 22219
Office:      1050 Connecticut Ave NW
              Suite 500
              Washington, DC 20036

Attorney for Indian Peak Properties
LLC

Dated: May 6, 2024

Attachment: *In the Matter of Indian Peak Properties LLC,*

*Petitions for Declaratory Ruling Seeking Preemption Under the*

*Rule Governing Over the Air Reception Devices,* Order on Review

(Mar. 7, 2024).

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1, Indian Peak Properties LLC hereby submits this Corporate Disclosure Statement.  Indian Peak Properties LLC is a limited liability company formed under the laws of the State of Nevada. Other than its membership interest, which is indirectly wholly owned by James A. Kay, Jr., an individual, Indian Peak Properties LLC issues no stock and is not owned in whole or in part by any publicly held corporation.

Respectfully submitted,

/s/ Julian Gehman

_____
Julian Gehman
Gehman Law PLLC
(202) 341-0198
julian@gehmanlaw.com
Mail to:    P.O. Box 13514,
          Arlington, VA 22219
Office:     1050 Connecticut Ave NW
          Suite 500
          Washington, DC 20036
Attorney for Indian Peak Properties LLC

Dated May 6, 2024

## CERTIFICATE OF SERVICE

I, Julian Gehman, hereby certify that on this 6th day of May, 2024, I caused copies of the foregoing Petition for Review, without the Attachment, to be served by USPS first class mail, postage prepaid, on the following:

Ms. June S. Ailin
Aleshire & Wynder LLP
2361 Rosecrans Ave., Suite 475
El Segundo, CA 90245

Teri Takaoka, City Clerk
City of Ranchos Palos Verdes
3940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275


/s/ Julian Gehman
Julian Gehman

**Federal Communications Commission**                                    **FCC 24-25**

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | **)** |
| | **)** |
| Indian Peak Properties, LLC | **)** |
| Petitions for Declaratory Ruling | **)** |
| Seeking Preemption Under | **)** |
| The Rule Governing | **)** |
| Over-the-Air Reception Devices | **)** |

**ORDER ON REVIEW**

**Adopted: March 7, 2024**                                    **Released: March 7, 2024**

By the Commission:

## I.      INTRODUCTION

1.        In this Order, we deny in part and dismiss in part an Application for Review
(Application), filed by Indian Peak Properties, LLC (Indian Peak),[1] of a Wireless Telecommunications
Bureau and Media Bureau (collectively Bureaus) December 13, 2022 letter ruling (*December 2022 Letter
Ruling*) regarding application of the Commission's rule governing over-the-air reception devices
(OTARD).[2]  In the *December 2022 Letter Ruling*, the Bureaus denied a Petition for Reconsideration filed
by Indian Peak on August 22, 2022,[3] seeking reconsideration of a letter decision issued by the Bureaus
that dismissed five petitions for declaratory ruling in which Indian Peak sought relief for six antennas
located on a single-family home (the property) in a residential area of Rancho Palos Verdes, California
that Indian Peak operates entirely as a communications site.

2.        The *December 2022 Letter Ruling* denied Indian Peak's Petition for Reconsideration on
the basis that Indian Peak had failed to "include allegations with sufficient detail, clarity, and accuracy . . .
to identify . . . a dispute [that] implicates" the OTARD rule.[4]  In particular, the Bureaus found that Indian
Peak failed to provide sufficient information to indicate that the antennas are serving users that qualify for
OTARD protection because Indian Peak did not "identify any non-communications-service-provider user
who regularly resides at or uses the premises."[5]  The *December 2022 Letter Ruling* also denied Indian
Peak's argument that Commission staff are required to automatically initiate a proceeding and put the

---

[1] Application for Review of Indian Peak Properties, LLC (filed January 12, 2023) (Application).  Indian Peak is an
LLC wholly owned by James Kay.  *See* Indian Peak Petition for Declaratory Ruling, at 2, n.3 (filed April 17, 2020)
(2020 OTARD Petition).

[2] Letter from Garnet Hanly, Chief, Competition and Infrastructure Policy Division, FCC WTB and Maria Mullarkey,
Chief, Policy Division, FCC MB to Julian Gehman, Counsel to Indian Peak Properties (WTB Dec. 13, 2022)
(*December 2022 Letter Ruling*).

[3] Petition for Reconsideration of Indian Peak Properties, filed Aug. 3, 2022 (Petition for Reconsideration).

[4] *December 2022 Letter Ruling* at 3, citing Letter from Garnet Hanly, Chief, Competition and Infrastructure Policy
Division, FCC WTB and Maria Mullarkey, Chief, Policy Division, FCC MB to Toneata Martocchio, counsel for
Indian Peak Properties, at 9 (WTB July 18, 2022) (*July 2022 Letter Ruling*).

[5] *December 2022 Letter Ruling* at 3-4.

petition on a public notice without first reviewing the petition for compliance with applicable procedural and substantive requirements.[6]

3.      For the reasons set forth below, we deny in part and dismiss in part Indian Peak's Application.[7]  Specifically, we find that the Bureaus were correct in finding that the OTARD rule did not apply.  However, we find that the Bureaus should have denied the claim on the grounds that Indian Peak failed to plead facts sufficient to establish a regular human presence at the property.  Because we find that the OTARD rule does not apply, we dismiss as moot Indian Peak's claim that Commission staff are required to automatically initiate a proceeding and put a petition on public notice without first reviewing the petition for compliance with applicable procedural and substantive requirements.  We also dismiss and in the alternative deny Indian Peak's new argument that the OTARD rule creates a reliance interest and a constitutional property interest, as well as its argument that it was deprived of due process.  Finally, we dismiss and in the alternative deny the related argument that the staff's failure to place a petition on public notice deprived Indian Peak of an impartial adjudication of the petition.

## II.      BACKGROUND

### A.      The Commission's OTARD Rule

4.      The Commission's OTARD rule prohibits laws, regulations, or restrictions imposed by State or local governments or private entities that impair the ability of antenna users to install, maintain, or use over-the-air reception devices.[8]  The Commission adopted the rule as directed by Section 207 of the Telecommunications Act of 1996, pursuant to the Commission's authority under Section 303 of the Communications Act of 1934.[9]  Since adopting the OTARD rule in 1996, the Commission has issued several orders clarifying and extending the rule.[10]  Most recently, in the *2021 Fixed Wireless Report and*

---

[6] *Id*. at 4-5.

[7] The Communications Act of 1934 permits parties to seek Commission review of actions taken on delegated authority.  47 U.S.C. § 151 *et seq*.  Specifically, section 5(c)(4) of the Act states that a party "aggrieved by [an action taken on delegated authority] may file an application for review by the Commission within such time and in such manner as the Commission shall prescribe, and every such action shall be passed upon by the Commission." 47 U.S.C. § 155(c)(4).  Section 1.115 of the Commission's rules establishes the procedural rules for filing applications for review.  47 CFR § 1.115.  Because we affirm the Bureau's determination that the antennas are not covered by the OTARD rule, Indian Peak's argument that the Bureau exceeded its delegated authority, Application at 12,14, is moot.

[8] 47 CFR § 1.4000.  Specifically, the OTARD rule applies to "any restriction, including but not limited to any State or local law or regulation, including zoning, land-use, or building regulations, or any private covenant, contract provision, lease provision, homeowners' association rule, or similar restriction . . . ."  *Id*. § 1.4000(a)(1).

[9] Telecommunications Act of 1996, Pub. L. No. 104-104, § 207, 110 Stat. 56, 114 (1996) (1996 Act).  Section 207 of the 1996 Act states that, "[w]ithin 180 days after the date of enactment of this Act, the Commission shall, pursuant to section 303 of the Communications Act of 1934, promulgate regulations to prohibit restrictions that impair a viewer's ability to receive video programming services through devices designed for over-the-air reception of television broadcast signals, multichannel multipoint distribution service, or direct broadcast satellite services." *Id*.  Multichannel multipoint distribution service in the 2.5 GHz band is now known as Broadband Radio Service. *See Transforming the 2.5 GHz Band*, WT Docket No. 18-120, Report and Order, 34 FCC Rcd 5446, 5447, para. 4 (2019).

[10] *In the Matter of Implementation of Section 207 of the Telecommunications Act of 1996*, 13 FCC Rcd  23874 (1998) (*Second OTARD Order*); *Promotion of Competitive Networks in Local Telecommunications Markets*, Report and Order, 15 FCC Rcd 22983 (2000) (*2000 Competitive Networks First Report and Order*); *Promotion of Competitive Networks in Local Telecommunications Markets*, Order on Reconsideration, WT Docket No. 99-217, 19 FCC Rcd 5637 (*2004 Competitive Networks Reconsideration Order*); *Updating the Commission's Rule for Over-the-Air Reception Devices*, WT Docket No. 19-71, Report and Order, 36 FCC Rcd 537 (2021) (*2021 Fixed Wireless Report and Order*).

*Order*, the Commission extended the OTARD rule to hub and relay antennas used to receive or transmit fixed wireless services.[11]

5.      The OTARD rule prohibits state and local regulators and private entities from imposing any restriction on the placement of certain types of antennas "on property within the exclusive use or control of the antenna user where the user has a direct or indirect ownership or leasehold interest in the property that impairs the installation, maintenance, or use of antennas."[12]  To qualify for protection under the rule, a qualifying antenna must serve a customer who is on the premises where the antenna is installed.[13]  The rule applies to antennas that are used to: (1) "receive direct broadcast satellite service, including direct-to-home satellite service, or to receive or transmit fixed wireless signals via satellite, including a hub or relay[14] antenna used to receive or transmit fixed wireless services that are not classified as telecommunications services"; (2) "receive video programming via multipoint distribution services, including multichannel multipoint distribution services, instructional television fixed services, and local multipoint distribution services, or to receive or transmit fixed wireless signals other than via satellite, including a hub or relay antenna used to receive or transmit fixed wireless services that are not classified as telecommunications services"; or (3) "receive TV broadcast signals."[15]  A restriction "impairs" if it "[u]nreasonably delays or prevents installation, maintenance, or use"; "[u]nreasonably increases the cost of installation, maintenance, or use"; or "[p]recludes reception or transmission of an acceptable quality signal."[16]  The Commission has clarified that the OTARD rule applies not only to the owners of property on which antennas are located but also to tenants and to "business invitees."[17]  In the *Continental Airlines* case, the Commission found an airport owner's restriction on the placement and use of an antenna by Continental Airlines to provide Wi-Fi service for its employees and customers (treated as its "business invitees") to be pre-empted under the OTARD rule.[18]  The rule permits those seeking protection under the rule to file petitions for declaratory ruling with the Commission under section 1.2 of its rules, and requires that "[a]ll allegations of fact . . . must be supported by affidavit of a person or persons with actual knowledge" of the facts alleged.[19]

---

[11] *2021 Fixed Wireless Report and Order,* 36 FCC Rcd 537.

[12] 47 CFR § 1.4000(a).

[13] *See 2004 Competitive Networks Reconsideration Order,* 19 FCC Rcd at 5644 (the equipment *must be installed in order to serve the customer on such premises*, and it must comply with all of the limitations of the rule) (emphasis original); *see also 2021 Fixed Wireless Report and Order*, 36 FCC Rcd at 540 ("The revised OTARD rule we adopt today applies to all hub and relay antennas . . . as long as: (1) the antenna serves a customer on whose premises it is located, and (2) the service provided over the antenna is broadband-only.").

[14] 47 CFR § 1.4000 refers to "hub or relay" antennas.  Commission orders have historically referred to "hub and relay" antennas.  These terms are used interchangeably by the Commission and Indian Peak in their correspondence. For consistency, unless quoting a source we use "hub and relay" in this order.

[15] 47 CFR § 1.4000(a). Antennas in categories (1) and (2) must also meet size restrictions (with an exception for certain equipment located in Alaska, which is not relevant here).  *See id.* § 1.4000(a)(1)(i)(B), (a)(1)(ii)(B).  "Fixed wireless signals" are defined to mean any "commercial, non-broadcast communications signals transmitted via wireless technology to and/or from a fixed customer location."  47 CFR § 1.4000(a)(2).  The term "hub or relay antenna" means "any antenna that is used to receive or transmit fixed wireless signals for the distribution of fixed wireless services to multiple customer locations as long as the antenna serves a customer on whose premises it is located, but excludes any hub or relay antenna that is used to provide any telecommunications services or services that are provided on a commingled basis with telecommunications services."  47 CFR § 1.4000(a)(5).

[16] 47 CFR § 1.4000(a)(3).

[17] *Second OTARD Order*, 13 FCC Rcd 23874; *Continental Airlines*, ET Docket No. 05-247, Memorandum Opinion and Order, 21 FCC Rcd 13201 para. 9 (2006) (*Continental Airlines*).

[18] *Continental Airlines* at 13201, para. 9.

[19] 47 CFR § 1.4000(h); *see also id.* §§ 1.2, 1.4000(e).

**B.     Indian Peak's Petitions**

6.      On May 1, 2022, Indian Peak filed five Petitions for Declaratory Ruling[20] seeking preemption under the OTARD rule of a decision by the city of Rancho Palos Verdes, California (City) to revoke a conditional use permit for antennas on a building pursuant to the City's zoning ordinance.[21]  The Petitions concerned six antennas on the roof of a single-family home located in Rancho Palos Verdes, California.  Indian Peak filed these Petitions following a decision by the Competition and Infrastructure Policy Division of the Wireless Telecommunications Bureau (CIPD) on April 22, 2022, to dismiss a similar petition submitted by Indian Peak concerning ten antennas at the same location.[22]  CIPD dismissed that earlier petition because it failed "to provide sufficient information to support a showing that each antenna meets all of the criteria required for protection under the OTARD rule."[23]

7.      On July 18, 2022, the Bureaus issued a Letter Ruling (*July 2022 Letter Ruling*) dismissing the five Petitions for Declaratory Ruling filed by Indian Peak.  The *July 2022 Letter Ruling* dismissed Petition 1 because it failed to identify a controversy for the Commission to resolve, and dismissed Petition 5 for failure "to make any showing that each antenna support[ed] the offering of a fixed wireless service . . . as required for a dispute to implicate the OTARD rule."[24]  Indian Peak has not appealed the dismissals of Petitions 1 or 5, so only Petitions 2-4 are the subject of this Application.

8.      The *July 2022 Letter Ruling* dismissed Petitions 2-4 because they failed to make any showing that the antennas served a user on the premises as required for a hub and relay antenna, or that there was a "user [who] has a direct or indirect ownership or leasehold interest in the property."[25]  The Bureaus stated that the customers for these antennas appeared to be communications service providers and concluded that these antennas are not eligible for OTARD protection, given the Commission's

---

[20] *See* Indian Peak Properties, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 1); Indian Peak Properties and LT-WR LLC, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 2); Indian Peak Properties and California Internet dba Geo-Links, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 3); Indian Peak Properties and One Internet America, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 4); Indian Peak Properties and Fisher Wireless, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 5) (collectively Petitions or Petitions 1-5).  The five petitions were largely identical, in most cases simply swapping out the name of the antenna.

[21] *See* Petitions 1-5 at 3. According to Petitioner, the Rancho Palos Verdes City Council adopted a resolution in December 2004 approving a conditional use permit for the placement of five UHF antennas on the roof of the house. Petitioner asserts that "[i]n subsequent years, some antennas were removed and other antennas were installed on the rooftop of the Property on the good faith assumption that the additional antennas did not require prior zoning approvals because they did not involve the erection of additional support structure and were mounted on the same Building as the UHF antennas that had been approved under . . . [the conditional use permit] and were smaller and lower in profile than the UHF antennas." *Id.* at 2.  After the City was alerted to the unpermitted antennas in August 2014, and extended negotiations to revise the conditional use permit were unsuccessful, the City revoked the permit in August 2018.  Rancho Palos Verdes, Cal., Res. No. 2018, attached to Letter from William W. Wynder, counsel to City of Rancho Palos Verdes, to Garnet Hanly, Chief of Competition and Infrastructure Policy Division, FCC Wireless Telecommunications Bureau (May 6, 2022), Ex. A (May 6 City Letter).

[22] Letter from Garnet Hanly, Chief, Competition and Infrastructure Policy Division, FCC Wireless Telecommunications Bureau, to Toneata Martocchio, Counsel to Indian Peak Properties (WTB Apr. 22, 2022).

[23] *Id.* at 2, 4.

[24] According to the information in the record, Antenna 1 was a TV satellite antenna and the City was not seeking to have Indian Peak remove Antenna 1.  *July 2022 Letter Ruling* at 3.  Petition 5 was dismissed for failure "to make any showing that each antenna support[ed] the offering of a *fixed* wireless service . . ." because they appeared to be providing cellular service, which is not covered under the OTARD rule.  *Id.* at 6-8.

[25] *Id.* at 2.

statement in the *2021 Fixed Wireless Report and Order* that the OTARD "rule will not treat service providers as 'antenna users.'"[26]

9.    On August 3, 2022, Indian Peak filed a Petition for Reconsideration for Petitions 2-4, contending that the justification to dismiss Petitions 2-4 was in error and set new policy,[27] and arguing that the *July 2022 Letter Ruling* should have created a proceeding to consider Petitions 2-4 by putting them on Public Notice.[28]  The Petition for Reconsideration reaffirmed that internet service on the property was being used for remote monitoring of the property and the equipment located there.[29]

10.    On August 3, 2022, Indian Peak notified the Commission that it had removed the antennas that were the subject of Petitions 2-5.[30]  That notice stated that Indian Peak will reinstate the antennas if it receives relief from the Commission,[31] although the record indicates that Indian Peak has since been able to obtain a wireline broadband connection instead.[32]  As far as the record for this matter reflects, the antennas subject to these Petitions have not been re-installed pending resolution of Indian Peak's request for relief.

11.    On December 13, 2022, the Bureaus issued the *December 2022 Letter Ruling* for which the Petitioner has submitted the instant Application for Review.  With respect to Indian Peak's argument that it had identified customers that fall within the OTARD rule's scope, the *December 2022 Letter Ruling* stated that the Bureaus fully considered and rejected Indian Peak's argument and concluded that each of the Petitions failed "to include allegations with sufficient detail, clarity, and accuracy . . .  to identify . . .  a dispute [that] implicates" the OTARD rule.[33]  The *December 2022 Letter Ruling* stated that, as explained in the *July 2022 Letter Ruling*, the "record does not identify any non-communications-service-provider user who regularly resides at or uses the premises."[34]  According to the *December 2022 Letter Ruling*, Indian Peak's Petition for Reconsideration reiterated its previous argument that the two tenants of Indian Peak—Fisher Wireless and Comm Enterprises—are "customers, as well as end users."[35]  Similar to the *July 2022 Letter Ruling*, the *December 2022 Letter Ruling* stated that "the OTARD rule does not protect antennas where the user is a service provider that merely provides communications service to others not located at the premises."[36]

---

[26] *Id*. at 6, citing *2021 Fixed Wireless Report and Order at* 544,  para. 20 .

[27] Petition for Reconsideration at 9-11.

[28] *Id.* at 5-9.

[29] *See, e.g.*, Petition for Reconsideration at 4-5 ("One example of such operational use […] has been to monitor alarms and other sensors that are connected to the Internet.  These alarms and other sensors indicate the operational status of licensed radio stations and facilitate repair where radio stations go down in severe weather or for other reasons.").

[30] E-mail from Julian Gehman, Counsel to Indian Peak Properties, to OTARD@fcc.gov (Aug. 3, 2022, 17:15 EDT), attaching Notice filed in In re Indian Peak Props. LLC, No. 22-1098 (D.C. Cir. filed Aug. 3, 2022) (Notice of Antenna Removal).  The antennas were removed a week earlier, on July 27, 2022, in response to an "abatement action" in state court.  This conflicts with Indian Peak's Application, where it states that it, "voluntarily removed the disputed antennas from the Property rooftop."  Application at 5.

[31] Notice of Antenna Removal at 2.

[32] Application at 6.

[33] *December 2022 Letter Ruling* at 3 (citing July 2022 Letter Ruling at 9).

[34] *Id.* at 6.

[35] Petition for Reconsideration at 11.

[36] *December 2022 Letter Ruling* at 4 (citing *July 2022 Letter Ruling* at 6).

12.    The *December 2022 Letter Ruling* also addressed the argument that Commission staff are required to initiate a proceeding and put the petition on public notice without regard to whether it complies with applicable procedural and substantive requirements.[37]  The *December 2022 Letter Ruling* stated that, "as we previously noted, section 1.2(b) of our rules has been interpreted as according discretion to the Commission to avoid seeking comment on petitions that are 'moot, premature, repetitive, frivolous, or which do not warrant consideration by the Commission,' including OTARD petitions that fail to implicate the rule."[38]  The *December 2022 Letter Ruling* emphasized that when the initiation of a proceeding immediately alters the parties' legal rights by staying local government action, as would be the case here, "the decision not to initiate a proceeding to solicit responsive pleadings on a defective petition is well within the Commission's discretion to 'conduct its proceedings as will best conduce to the proper dispatch of business and the ends of justice.'"[39]

13.    Finally, the *December 2022 Letter Ruling* stated the Bureaus were unpersuaded by Indian Peak's argument that staff improperly shifted the burden of proof.[40]  The *December 2022 Letter Ruling* noted that "it was appropriate for the Bureaus to look to Indian Peak to provide information uniquely in its possession, including information on the characteristics of the antennas and their uses, to inform the threshold determination of whether there was a controversy subject to the rule."[41]

### C.    Application for Review

14.    On January 12, 2023, Indian Peak filed the Application for Review that is the subject of this Order.  Indian Peak argues that the Bureaus erred in denying Petitions 2-4 and that this denial was a result of taking language in the *2021 Fixed Wireless Report and Order* out of context by expanding the "service-provider" exclusion beyond what was intended in the *2021 Fixed Wireless Report and Order*.[42]  Indian Peak argues that the *2021 Fixed Wireless Report and Order* contradicts the Bureaus' letter rulings because Indian Peak is both the building owner and a user and, as such, is covered under the OTARD rule based on language contained in the *2021 Fixed Wireless Report and Order*.[43]  Indian Peak argues that its circumstances differ from those contemplated by the Commission in the *2021 Fixed Wireless Report and Order*, when it said it would not deem an antenna owner to also be the antenna user because in this case the antenna owners are not serving as their own users.[44]  Indian Peak also claims that the Bureaus misconstrued the purpose of the *2021 Fixed Wireless Report and Order*, which would disenfranchise the entire communications industry from filing an OTARD claim, and that such an application would create an artificial distinction for "communications service provider" or "intermediate service provider" that should be rejected.[45]  Furthermore, Indian Peak argues that its situation is analogous to that of the *Continental Airlines* case and argues that, under that precedent, Indian Peak's petitions should be granted.[46]  Indian Peak argues that because the Bureaus misapplied the *2021 Report & Order*, the

---

[37] *See* Petition for Reconsideration at 5-9.  In its Petition for Reconsideration and Application, Indian Peak states that the Bureau did not conclude that its petitions were procedurally defective.  Petition for Reconsideration at 5; Application at 21.

[38] *Id.* at 5 (citing *John F. Garziglia*, Letter, 28 FCC Rcd 4145, 4146 (MB 2013)) (*Garziglia Letter*); *Petition for Declaratory Ruling - Multifamily Broadband Council*, Letter Order, 32 FCC Rcd 3794, 3795-96 (MB 2017).

[39] *December 2022 Letter Ruling* at 5 (citing 47 U.S.C. § 154(j)); *see FCC v. Schreiber*, 381 U.S. 279, 289-90 (1965).

[40] Petition for Reconsideration at 14.

[41] *December 2022 Letter Ruling* at 5.

[42] Application at 7-10.

[43] *Id.*

[44] *Id.* at 8-9.

[45] *Id.* at 12.

[46] *Id.* at 5-7.

6

Commission should grant the application for review and find Antennas 2-4 are protected under OTARD.[47] Indian Peak also argues that the Letter Rulings violated Commission rules of procedure by not placing the Petitions on public notice and staying local enforcement action.[48]

15.    For the first time, Indian Peak argues in its Application for Review that, because Commission staff are required to place an OTARD petition on public notice upon receipt, regardless of its merits, this creates in the public a reliance interest.[49] Indian Peak asserts that under the precedent of *Board of Regents of State Colleges et al. v. Roth*, 408 U.S. 564 (1972), this guarantee of a stay of enforcement also creates a property interest and due process rights that were violated when the Bureaus declined to place the petition on public notice.[50] Indian Peak asserts, without evidence, that this decision "cost Indian [Peak] hundreds of thousands of dollars and loss of use of the antennas."[51] Indian Peak does not identify a basis for review of this argument under 47 CFR § 1.115.

16.    The City opposes grant of the Application.[52] The City reiterates its arguments below that the OTARD rule does not apply to Indian Peak's antennas.[53]

## III.    DISCUSSION

17.    In this Order, the Commission denies, on the merits, Indian Peak's claim that the Bureaus erred in finding that the OTARD rule did not apply to Antennas 2, 3, and 4 described in Indian Peak's petitions for declaratory ruling.  The Commission dismisses Indian Peak's claim that the Bureaus should have placed the Petitions on public notice as moot.  Additionally, the Commission dismisses as untimely and impermissible Indian Peak's new claim that its due process rights were harmed, resulting in damages to its property interests; in the alternative and on independent grounds, the Commission dismisses this claim as moot and denies this claim on the merits.  The Commission also dismisses Indian Peak's new claim that a reliance interest was breached as untimely and impermissible and, in the alternative and on independent grounds, dismisses that argument as moot and denies it on the merits.  Finally, the Commission dismisses as moot Indian Peak's claim that the Bureaus did not conduct impartial adjudication because they adjudicated this matter at the screening phase and, in the alternative and on independent grounds, denies this claim on the merits.

### A.    Indian Peak Failed to Establish that the OTARD Rule Applies to Antennas 2, 3, and 4

18.    Based on the record, we find that Indian Peak did not meet its burden to plead facts sufficient to implicate the OTARD rule, and we affirm the Bureaus' determination that the OTARD rule was not applicable.  As we explain below, the *Continental Airlines* order is consistent with our finding here that the OTARD rule requires a minimum human presence, and that a finding for Indian Peak in this case, absent a showing of sufficient minimum human contacts at the property, would frustrate the purpose

---

[47] *Id.* at 2.

[48] *Id.* at 12. Indian Peak claims that the *Garziglia Letter* is "bad precedent" and should be reversed. *Id.* at 18; *see John F. Garziglia*, Letter, 28 FCC Rcd 4145, 4146 (MB 2013) (*Garziglia Letter*).

[49] *Id*. at 18-19.  Indian Peak "asks the Commission to make good on its OTARD guidance," *id.* at 19, but does not explain how the Commission should do that.

[50] *Id*. at 22.

[51] *Id*. at 22-3.

[52] William W. Wynder, counsel to City of Rancho Palos Verdes, to Federal Communications Commission (Feb. 6, 2023) (February 6 City Letter).

[53] We note that the City's letter was filed after the deadline established by 47 CFR § 1.115(d) for responses to applications for review.  The City does not characterize the letter as a response or seek a waiver of the filing deadline for responses.  We accept the filing in the interest of completeness, as it establishes that the City has not abandoned its opposition to the grant of OTARD relief.  We rely on the letter solely for that purpose.

of the rule. Indian Peak's Application argues that the Bureaus' order should be overturned, pursuant to 47 CFR § 1.115(b)(2)(i), because the order denied Indian Peak's petitions based on a service provider exclusion that Indian Peak argues conflicts with the *2021 Report & Order*, and with the precedent established in *Continental Airlines*. As explained below, we do not reach a conclusion on Indian Peak's argument regarding the service provider exclusion because, instead, we find that the record does not sufficiently establish the extent or duration of any human presence at the property.

19.    Section 207 of the Telecommunications Act of 1996, Restriction on Over-the-Air Reception Devices, requires that the Commission promulgate and enforce regulations to prohibit restrictions that impair a viewer's ability to receive video programming services through devices designed for over-the-air reception of television broadcast signals, multichannel multipoint distribution service, or direct broadcast satellite services.[54] In order to fulfill its statutory obligation, the Commission adopted the OTARD rule in 1996 to "prohibit restrictions that impair a viewer's ability to receive video programming services" through antennas.[55] The Commission clarified or updated the OTARD rule in 1998,[56] 2000,[57] 2004,[58] and 2021.[59] In 2000, the Commission extended the rule to apply to fixed wireless signals, finding that the rule should not distinguish among services based on their nature (e.g., voice, video, data) or among antennas based on their function (i.e., transmit or receive, or both).[60] The *2021 Fixed Wireless Report and Order* extended the OTARD rule to hub and relay antennas used to receive or transmit fixed wireless services that are not classified as telecommunications services.[61]

20.    Although the Commission has on several occasions clarified and expanded the scope of the OTARD rule, the Commission has never altered the basic requirement that the rule benefit a human antenna user. The requirement that the Commission adopt regulations that protect "a viewer's ability" to receive service is clearly stated in Section 207 of the Telecommunications Act of 1996. The Commission took special care to note this requirement in its implementing report and order: "[T]he statute requires that we prohibit restrictions that impair the *viewers'* ability to receive the signals in questions."[62]

21.    The Commission has used the terms "customer" and "consumer" interchangeably with "viewer" before and since expanding the rule to cover fixed wireless antennas. For example, when it addressed the treatment of hub and relay antennas in 2004, the Commission noted that "we do not intend that carriers may simply locate their hub-sites on the premises of a customer in order to avoid compliance

---

[54] Telecommunications Act of 1996, Pub. L. No. 104-104, § 207, 110 Stat. 56 (1996); 47 U.S.C. § 303(v).

[55] 47 C.F.R. § 1.4000; Preemption of Local Zoning Regulation of Satellite Earth Stations; Implementation of Section 207 of the Telecommunications Act of 1996; and Restrictions on Over-the-Air Reception Devices: Television Broadcast Service and Multichannel Multipoint Distribution Service, *Report and Order*, *Memorandum Opinion and Order*, *and Further Notice of Proposed Rulemaking*, CS Docket No. 96-83, 11 FCC Rcd 19276 (1996) (*First OTARD Order*).

[56] *Second OTARD Order*, 13 FCC Rcd 23874.

[57] *2000 Competitive Networks First Report and Order*, 15 FCC Rcd 22983, 23027-28.

[58] *2004 Competitive Networks Reconsideration Order,* 19 FCC Rcd 5637.

[59] *2021 Fixed Wireless Report and Order*, 36 FCC Rcd 537.

[60] *2000 Competitive Networks First Report and Order* at 98-99.

[61] *2021 Fixed Wireless Report and Order* and 47 C.F.R. § 1.4000(1)(ii)(A).

[62] *In the Matter of Preemption of Local Zoning Regulation Of Satellite Earth Stations in the Matter of Implementation of Section 207 of the Telecommunications Act of 1996*, 11 FCC Rcd 19276 (1996) (emphasis added). *See also Second OTARD Order*, 13 FCC Rcd at 23889 ("This rule will prohibit lease or other restrictions . . . on leased property under the exclusive use or control of the *viewer*.") (emphasis added). When the Commission amended the rule to cover leased premises, it listed examples of where a viewer might place its antenna within rented premises, such as balconies or patios in residential settings, indicating a continued expectation that the rule would protect the rights of human beings. *Id.*

with a legitimate zoning regulation.  Rather, in order to invoke the protections of the OTARD rule, the equipment *must be installed in order to serve the customer on such premises*, and it must comply with all of the limitations of the rule[.]"[63]  Although the Commission uses the word "customer" in place of "viewer," nothing in the *2004 Competitive Networks Reconsideration Order* suggests that the Commission was seeking to expand the protections of the OTARD rule beyond serving human beings.  To the contrary, when paraphrasing the finding of the D.C. Circuit in *Building Owners and Managers Association et al. v. FCC*, 254 F.3d 89 (D.C. Cir. 2001), the Commission in 2004 used "customer" where the court used "viewer," indicating an intent to use the terms interchangeably.[64]  Significantly, the Commission framed the extension of the OTARD rule as applied to fixed wireless antennas as a "consumer protection" measure benefiting "fixed wireless customers."[65]  In the *2021 Fixed Wireless Report and Order*, the Commission stated that "updating the OTARD rule will enable consumers to access competing video programming providers," and "the primary benefit of fixed wireless antennas is to secure viewers' access to broadband service."[66]

        22.    The term "customer" has always indicated that the OTARD rule requires that the equipment serve a human being on the premises.  The Commission did not alter this requirement in the *2021 Fixed Wireless Report and Order*.  On the contrary, the Commission emphasized that its expansion of the OTARD rule in 2021 was "narrow in scope," and that its action was not intended to alter the rules except to remove the "primary purpose" limitation as applied to broadband-only hub and relay antennas.[67]

        23.    For OTARD protections to attach to a fixed wireless antenna, the petitioner must demonstrate that it is regularly being used to provide signals to human end users at the location where the equipment is installed.  We do not address all possible uses or establish a bright-line standard for such use.  Rather, we note that in this specific context, involving Indian Peak's previously-situated multiple antennas and its vague and evolving characterization about the extent of use, we cannot discern that any customer on the premises was served.

        24.    Indian Peak's piecemeal, ever-evolving characterization of the facts has complicated the review of this matter.  As we discuss more fully below, Indian Peak's early filings described service and usage consistent with the remote monitoring of equipment on the premises (e.g., security cameras, smart thermostats).  Throughout this matter, however, Indian Peak modified its description of the services and users and used ambiguous language.  Despite its numerous submissions, Indian Peak has failed to provide

---

[63] *2004 Competitive Networks Reconsideration Order,* 19 FCC Rcd at 5644 (emphasis original).

[64] *Compare Building Owners and Managers Association et. al. v. FCC*, at 96-7 ("[W]e hold that the Commission could reasonably construe § 207 to apply to all *viewers*, including tenants, and to obligate the Commission to prohibit any restriction,: including lease provisions, that impairs the installation, maintenance, or use of [a § 207 device].) (emphasis added, internal quotations omitted) *with 2004 Competitive Networks Reconsideration Order,* 19 FCC Rcd at 5640 ("The Court found that the Commission acted reasonably in protecting *customers* who lease property in the *OTARD Second Report and Order*[.]") (emphasis added).

[65] *2004 Competitive Networks Reconsideration Order,* 19 FCC Rcd at 5640-41, para.8  (characterizing extension of the OTARD rule to fixed wireless antennas as providing "important consumer protections to fixed wireless customers" and stating that "it would be illogical for the Commission to protect one group of consumers (*i.e.*, multi-channel video) but deny such protections to another group of consumers (*i.e.*, fixed wireless) based solely on the nature of the equipment in use").

[66] *2021 Fixed Wireless Report and Order,* 36 FCC Rcd at 545, para.18.

[67] *2021 Fixed Wireless Report and Order,* 36 FCC Rcd at 546, para. 19; *id.* at 540, para. 9 ("The revised OTARD rule we adopt today applies to all hub and relay antennas that are used for the distribution of fixed wireless services to multiple *customer* locations, regardless of whether they are 'primarily' used for this purpose, as long as: (1) the antenna serves a *customer* on whose premises it is located, and (2) the service provided over the antenna is broadband-only. Our order here does not modify any other aspects of the current OTARD rule.") (footnote omitted) (emphasis added).

sufficient clarity regarding the frequency, duration, or consistency with which any persons are on site. Indian Peak's allegations of a human presence at the antenna site are vague to the point that we are unable to conclude that human users are on site to more than a *de minimis* extent.  For example, Indian Peak describes Fisher Wireless and Comm Enterprises as having "access" to the Property and that they use the internet when present, but also that receiving uninterrupted internet service is "even more important" when no one is at the property.[68]  Indian Peak provides no indication of the frequency or duration a human user is on site beyond stating that the antennas provide "connectivity for a number of vendors and contractors who visit the Property on a regular basis and for any residential tenants who lease rooms in the house from time to time."[69]  As discussed below, subsequent filings clarified that there were no residential tenants at the property.[70]

25.    Indian Peak's 2020 OTARD Petition is not the subject of this Application, but it provides useful context for the matter before us because it was Indian Peak's first effort to seek protection from the City's ordinance as it applied to antennas at the Rancho Palos Verde facility.[71]  The 2020 OTARD Petition  sought preemption under the OTARD rule of the decision by the City to revoke the conditional use permit.[72]  The 2020 OTARD Petition stated that the companies that provided service to the property also owned those antennas, and two of the four companies were leasing rooftop space from Indian Peak.[73]  In that Petition, Indian Peak stated that Antenna 2 was used to "provide internet connectivity for various communications, data, and monitoring functions in connection with the Indian Peak property.  These include support for "UPS units, DVRs, thermostats, Voice over Internet Protocol (VoIP) phones, web cams, and power monitoring."[74]  Antenna 3 and Antenna 4 were identified as providing "backup and additional connectivity."[75]  The 2020 Petition did not identify any individuals or entities that used the services provided by the antennas with any clarity beyond "Indian Peak and its affiliated entities."[76]  As noted above, the Bureaus dismissed this petition before the instant petitions were filed.[77]

26.    Petitions 1-5, which were filed July, 2022, identified the customers who used the antennas, but did so in an internally inconsistent manner.[78]  In some places, the Petitions represented that

---

[68] See Application at 10 ("Fisher Wireless and Comm Enterprises each have employees who access the Property") and Supplement 2 at 4 (""When Fisher Wireless or Comm Enterprises staff are working from the house, uninterrupted Internet allows [them to] remotely control those stations" and "When there is no one working at the house, uninterrupted Internet access is perhaps even more important.  Uninterrupted broadband access allows remote monitoring and control of the equipment in the house").

[69] *See* Petition 2 at 6.

[70] *See* Supplement 2 at 2; *See infra* para. 28.

[71] On April 22, 2022, CIPD dismissed the 2020 OTARD Petition without prejudice.  Letter from Garnet Hanly, Chief, Competition and Infrastructure Policy Division, FCC WTB, to Toneata Martocchio, Counsel to Indian Peak Properties (Apr. 22, 2022).

[72] 2020 OTARD Petition at 2.

[73] *Id*. at 8-10.  These companies were identified as LT-WR LLC, GeoLinks, One Internet America, and Fisher Wireless.  We note that Indian Peak and LT-WR are both owned by James Kay; however, Indian Peak's submissions have been inconsistent when describing this relationship.

[74] *Id*. at 9.

[75] *Id*.  We note that in subsequent filings, Indian Peak changes the description of the function of Antennas 3 and 4, stating that they are hub and relay antennas which distribute broadband fixed wireless service, but only to Mr. Kay and Indian Peak Properties, LLC.  Petition 3 at 8 and Petition 4 at 8.

[76] *See* 2020 OTARD Petition at 9.

[77] *See supra* para. 6.

[78] Indian Peak Properties, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 1); Indian Peak Properties and LT-WR LLC, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1,

(continued….)

the customers on the premises using the antenna were "petitioner and various businesses," while in other places the Petitions represented that the users were "any residential tenants who lease rooms in the house from time to time."[79]  They also indicated that, "[Mr. Kay] together with his several companies including Indian Peak Properties, LLC are the customers and primary users of the broadband service provided by Antenna [identifying number]."[80]  Other parts of the Petitions stated that, "Mr. Kay and his company Indian Peak Properties, LLC are the primary users and customers of the service [from this antenna]" (omitting "his several companies" as stated elsewhere) and "Indian Peak Properties, LLC is the customer."[81]  The Petitions also stated that the antennas are "designed to and [do] provide fixed wireless high-speed internet access [to the house and yard]. . . .  In addition, [the antennas] provides connectivity for a number of vendors and contractors who visit the Property on a regular basis, and for any residential tenants who lease rooms in the house from time to time."[82]  Notably, in the required affidavit submitted in support of the Petitions, Indian Peak's expert identified only Indian Peak Properties as the customer of each antenna.[83]  The Petitions did not name or describe the various "vendors and contractors who visit the Property on a regular basis," explain the purpose for which they used the Internet service, or suggest that their use was anything other than an incidental connection to the home's Wi-Fi network in the same way any vendor or contractor might use the Wi-Fi network at the premises they visit in the course of their work.

27.        In supplemental filings to its Petitions made in May and July of 2022,[84] Indian Peak claimed that all three antennas are "wired together to provide a single source of broadband access from geographically diverse providers" in order to maintain redundancy so that Indian Peak's corporate lessees, Comm Enterprises and Fisher Wireless, can "remotely troubleshoot and mitigate network service problems" and "monitor and check the status of their other stations that are similarly equipped with Internet access, and remotely control those stations."[85]  These supplemental filings also stated that, "[u]ninterrupted broadband access allows remote monitoring and control of the equipment in the house.  . . . [T]he house contains a full suite of equipment for remote monitoring of power supply, HVAC and operational status of the transmitters and other communications equipment, as well as remotely controlling the same."[86]

28.        In Supplement 2, Indian Peak stated that there are no residential tenants, contrary to its statements in the Petitions that residential tenants were or could be among those served by the antennas,

---

(Continued from previous page) ━━━━━━━━━━━━━━━━━━━━━━

2022) (Petition 2); Indian Peak Properties and California Internet dba Geo-Links, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 3); Indian Peak Properties and One Internet America, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 4); Indian Peak Properties and Fisher Wireless, Petition for Declaratory Ruling Under 47 CFR §1.4000 (filed May 1, 2022) (Petition 5).

[79] Petition 2 at 3-4, 6; Petition 3 at 3-4, 6; and Petition 4 at 6.

[80] Petition 2 at 6; Petition 3 at 6; Petition 4 at 6.

[81] *See* Petitions 1-5 at 13.

[82] Petition 2 at 6; *See also* Petition 3 and 4.

[83] Petition 1 at 13 (Affidavit of Daniel Redmond); Petition 2 at 13 (Affidavit of Daniel Redmond); Petition 3 at 14 (Affidavit of Daniel Redmond); Petition 4 at 14 (Affidavit of Daniel Redmond); Petition 5 at 14 (Affidavit of Daniel Redmond).

[84] Indian Peak's Supplement and Request for Expedited Action on Petitions for Declaratory Ruling (filed May 26, 2022) (Supplement 1) and Indian Peak's Supplement and Request for Expedited Action on Petitions for Declaratory Ruling (filed July 5, 2022) (Supplement 2).

[85] Supplement 2 at 3-4.

[86] *Id.*

and that the residential property "serves exclusively as a communications center and office building."[87] In this supplement, Indian Peak also stated that the property is leased to Fisher Wireless and Comm Enterprises. In explaining why uninterrupted Internet access is necessary, Indian Peak implies that the companies' personnel may sometimes work from the house ("When [their] Staff are working from the house" Internet access supports remote monitoring of off-site equipment) and sometimes do not work from the house ("When there is no one working at the house," Internet access allows remote monitoring of equipment at the house).[88] Although Indian Peak claimed in its petitions that "vendors and contractors" of an unspecified nature "regularly" visit the property and use the Internet for unidentified purposes, Indian Peak did not clearly state that its tenants' personnel have ever worked at the house and if so, how frequently they were at the property.[89] On the other hand, it appears that Internet service at the property supported only remote monitoring capabilities that allow the site to be maintained and operated without human presence.[90] Indian Peak has never provided evidence of any residential tenants using the building at any time that the case was pending before the Bureaus and, instead, expressly stated in its Supplement 2 that there are no residential tenants.

29.     Indian Peak's representations regarding the facts have been unclear and inconsistent, and, ultimately, Indian Peak has not alleged with specificity that the antennas serve on-site human users. In contrast, Indian Peak has consistently maintained that the antennas support the operation of remote monitoring equipment.

30.     Indian Peak argues that this case is analogous to *Continental Airlines*. We disagree. While there are similarities between the two cases in that in *Continental Airlines* a corporation was maintaining antennas and service not for its own primary use but rather for the use of its customers, the cases are distinguished by the fact that the customers in *Continental Airlines* were passengers of the airline using its lounge (which the Commission characterized as "business invitees").[91] There was no question that there was a regular and continuous human presence and that a purpose of the service provided by the antennas was to serve those human users.[92] In the instant case, Indian Peak has not clearly alleged or provided sufficient evidence to support the presence of a regular human user at the property despite numerous opportunities to do so. To the contrary, Indian Peak has stated there are no

---

[87] *Id.* at 2. The City has described the facility as "a single family home in a residential neighborhood . . . The home is vacant and has been converted into an antenna farm for commercial purposes (including roof-mounted antenna and high frequency UHF antenna in the principal bedroom rendering the home uninhabitable)." May 6 City Letter at 1. Indian Peak did not deny these assertions.

[88] *Id.* at 4.

[89] Although Indian Peak's statement that "[w]hen Fisher Wireless or Comm Enterprises staff are working from the house" suggests that staff might sometimes work at the house, Indian Peak used similar language in its petitions with respect to purported antenna use by residential tenants before later revealing that there are no residential tenants and that the property is not operated as a residence. *See* Petition 2 at 3 (stating that Antenna 1 is used "for tenants when Building is rented"); *id.* at 6 (stating that the antenna is used "for any residential tenants who lease rooms in the house from time to time"); Supplement 2 at 2. Indian Peak states in its Application that "Fisher Wireless and Comm Enterprises each have employees who access the Property and, of course, used the Wi-Fi and hard-wired Internet access service." AFR at 6.

[90] Supplement 2 at 2, 4 (noting the systems support thermostats to monitor and control heating and cooling systems via Internet-based remote control, digital video recorders used to monitor the property remotely, remote controlled ethernet switches and routers, and the multiple antenna are required to create back-up redundancies so Comm Enterprises and Fisher Wireless can remotely troubleshoot and mitigate network problems); Petition for Reconsideration at 4-5 ("One example of such operational use . . . has been to monitor alarms and other sensors that are connected to the Internet. These alarms and other sensors indicate the operational status of licensed radio stations and facilitate repair where radio stations go down in severe weather or for other reasons.").

[91] *Continental Airlines*, ET Docket No. 05-247, Memorandum Opinion and Order, 21 FCC Rcd 13201 para. 9.

[92] Supplement 2 to Petitions 1-5, July 5, 2022 at 4 (Supplement 2).

**Federal Communications Commission**                    **FCC 24-25**

residential tenants, the property "serves exclusively as a communications center and office building,"[93] and acknowledges that the internet service is used primarily by technology capable of performing remote monitoring or control by offsite personnel—a function that specifically does not require a human presence on the property.[94]

31.        For the foregoing reasons, we deny Indian Peak's Application for Review as it pertains to seeking OTARD protection for antennas 2, 3, and 4.  Because our decision does not turn on whether the antennas are being used by a communications service provider, we need not determine whether the Bureaus' interpretation of the *2021 Fixed Wireless Report & Order* reasonably reflects the Commission's intent.[95]

      **B.**      **The Issue of Whether the Bureaus Should Have Placed the Petitions on Public Notice is Moot**

32.        Indian Peak argues that the Bureaus violated Commission procedure by not following the OTARD rule or the declaratory ruling rule found at section 1.2 of the Commission's rules,[96] which Indian Peak asserts required the Bureaus to place their Petitions on public notice.[97]  On the other hand, Indian Peak claims no purpose would be served in the initiation of a proceeding at this point because the record is adequate to establish its entitlement to preemption relief.[98]  Because we conclude that the antennas are not protected by the OTARD rules, the question of whether the Petitions should have been placed on public notice is moot.  Accordingly, this portion of the Application is hereby dismissed.

      **C.**      **Indian Peak's Remaining Arguments Are Meritless**

33.        Indian Peak, relying on *Board of Regents v. Roth*, 408 U.S. 564 (1972), states that because 47 CFR § 1.4000(d) provides that "[p]etitions to the Commission must comply with the procedures of paragraphs (f) and (h) of this section **and will be put on notice**[,]" Indian Peak has a property interest for due process purposes.[99]  According to Indian Peak, because the Bureaus failed to place the petition on public notice, it was forced to take down its antennas which "cost Indian [Peak] hundreds of thousands of dollars and loss of the use of the antennas."[100]  We dismiss this portion of the Application on several alternative and independent grounds.  First, Indian Peak's argument is untimely and therefore impermissible.[101]  Second, it is moot because we have already concluded that Indian Peak's antennas are not entitled to OTARD protection in the first instance, and initiating a proceeding would serve no purpose—we do not need to hear the City's justification for imposing a restriction because we

---

[93] *Id*. at 2.  Despite alleging that the premises are an "office building," Indian Peak does not allege that its office building is staffed with employees or managers.

[94] *Id*. at 2, 4.

[95] *See December 2022 Letter Ruling* at 4 ("The OTARD rule does not protect antennas where the user is a service provider that merely provides communications to others not located at the premises." (citing *2021 Report & Order*, 36 FCC Rcd at 544, para. 20).

[96] 47 CFR § 1.2.

[97] Application at 12-18, 21-22.

[98] Application at 24 ("Placing Indian's OTARD petitions on public notice at this late date would add nothing new.").

[99] Application at 22 ("Indian was entitled to have its Petitions placed on public notice and, concomitantly, shielded from litigation. The Letter Rulings deprived Indian of this property by refusing to open a 'proceeding.'" (citing *Board of Regents v. Roth* at 577 (emphasis Indian Peak's)); Application at 18-19.

[100] *Id*. at 22.  We note that Indian Peak has proffered no evidence to support its claim that not placing the petition on public notice cost it "hundreds of thousands of dollars."

[101] 47 CFR § 1.115(c) ("No application for review will be granted if it relies on questions of fact or law upon which the designated authority has been afforded no opportunity to pass.").

have determined it is not prohibited from doing so.  Finally, it is moot because a Commission order requiring the Bureaus to initiate a proceeding would not redress Indian Peak's claimed injuries flowing from litigation expenses or loss of the use of its antennas while the Petitions were pending, and to the extent it claims it suffered monetary or other compensable damages, there is no right to any damages remedy in this administrative proceeding.

34.     Alternatively and independently, we also deny this part of the Application on the merits.  Procedural due process requires that a person receive "some kind of prior hearing" before they are deprived of protected interests.[102]  Indian Peak does not have a protected property interest in receiving a stay of enforcement of the City's ordinance.  Rather, as Indian Peak acknowledges, its property interest lies in the use of its antennas.[103]  To the extent Indian Peak's property interests are at issue here, the relevant governmental action is the City's ordinance, not the Bureaus' determination that the antennas are not entitled to protection under the OTARD rule.  Any due process claim lies against the City, not the Bureaus.[104]

35.     We likewise find that Indian Peak's new argument that the Bureau's failure to initiate a proceeding "breached the OTARD reliance interest,"[105] is procedurally defective because Indian Peak did not raise this argument with the Bureau.[106]  Alternatively and independently, it is moot because we have concluded that the antennas are not entitled to OTARD protection, and the initiation of a proceeding would serve no purpose, as Indian Peak concedes.[107]  This claim also fails on the merits because Indian Peak is not seeking the initiation of a proceeding, and to the extent it believes grant of its petitions is an appropriate remedy, we have already determined that the antennas are not subject to OTARD protection.  Thus, alternatively and independently, we deny the application as to this issue.

36.     Finally, we dismiss as moot Indian Peak's argument that, in deciding not to initiate a proceeding, the Bureau "abrogat[ed] OTARD procedure for impartial adjudication" by "adjudicating" the petition at the "screening phase" and acting as "prosecutor, judge, and jury."[108]  As noted above, no purpose would be served by initiating a proceeding at this point.  Alternatively and independently, we find this argument unpersuasive on the merits.  In making a threshold determination, based on the petitions and additional record submissions, that the OTARD rule does not apply to the antennas at issue, the Bureau acted reasonably and did not deprive Indian Peak of an impartial adjudication.  To the extent

---

[102] *Board of Regents v. Roth*, 408 U.S. 564, 569-570.

[103] Application at 23.

[104] In any event, Indian Peak received abundant due process.  The City obtained a court order authorizing it to remove the antennas — a court order granted after years of judicial process affording Indian Peak notice and opportunity to be heard, including full state appellate review.  *See* May 6 City Letter & Attachments; Notice filed in *In re Indian Peak Props. LLC*, No. 22-1098 (D.C. Cir. filed Aug. 3, 2022) (attached to e-mail from Julian Gehman, Counsel to Indian Peak Properties, to OTARD@fcc.gov (Aug. 3, 2022, 5:15 pm)) (stating that Indian Peak removed antennas to comply with an "state court judgment ordering removal").  In the course of that litigation, Indian Peak raised its OTARD arguments unsuccessfully before filing petitions with the Commission.  *See City of Rancho Palos Verdes v. Indian Peak Properties*, B303638, 2021 Cal. App. Unpub. LEXIS 7247, at *37 (Cal. Ct. App. 2021) (attached to February 6 City Letter at 9)**;** 47 CFR § 1.4000(e) ("Parties may petition the Commission . . . or a court of competent jurisdiction, to determine whether a particular restriction is permissible or prohibited under this section.").

[105] Application at 18-19.

[106] 47 CFR § 1.115(c).

[107] Application at 24.

[108] Application at 19-21.

**Federal Communications Commission**                                                    **FCC 24-25**

Indian Peak is claiming the Bureau unfairly treated it differently from other petitioners,[109] Indian Peak does not acknowledge that, unlike the case at hand, each of the cases it cites involved antennas used by consumers. Furthermore, on the basis of the current record, we reject any allegation of unfair treatment.

## IV.   ORDERING CLAUSE

37.     Accordingly, IT IS HEREBY ORDERED, pursuant to sections 1, 4(i), 4(j), 5(c), 201(b), 202(a), 205, 251, 253, 303, 316, and 332 of the Communications Act of 1934, 47 U.S.C. §§ 151, 154(i), 154(j), 155(c), 201(b), 202(a), 205, 251, 253, 303, 316, 332; sections 207 and 706 of the Telecommunications Act of 1996, Pub. L. No. 104-104, §§ 207, 706, 110 Stat. 56, 114, 153; and sections 1.115 and 1.4000 of the Commission's rules, 47 CFR §§ 1.115, 1.4000, that the Application for Review is DENIED IN PART and DISMISSED IN PART with respect to issues addressed in parts III. A and B of this Order and is DISMISSED OR DISMISSED AND IN THE ALTERNATIVE DENIED with respect to issues addressed in part III.C of this Order.

FEDERAL COMMUNICATIONS COMMISSION

Marlene H. Dortch
Secretary

---

[109] *See* Application at 22 (stating that Indian Peak "was the only petitioner to face zoning litigation that did not receive the OTARD shield from litigation").