**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

INDIAN PEAK PROPERTIES LLC,
*Petitioner*

v.

THE FEDERAL COMMUNICATIONS COMMISSION AND
THE UNITED STATES OF AMERICA,
*Respondents*

Petition for Review of an Order of the Federal Communications
Commission

**OPENING BRIEF OF PETITIONER**

Julian Gehman
GEHMAN LAW PLLC
1050 Connecticut Ave NW
Suite 500
Washington, DC 20036
(202) 341-0198
julian@gehmanlaw.com

*Counsel for Indian Peak
Properties LLC*

# CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), Petitioner Indian Peak Properties LLC certifies as follows:

**Parties and Amici.**

<u>Petitioner</u>:   Indian Peak Properties LLC

<u>Respondents</u>:   The Federal Communications Commission and The United States of America.

<u>Intervenors</u>:   None.

<u>Amici</u>:   None.

**Ruling Under Review.**

The Federal Communications Commission's order captioned *In the Matter of Indian Peak Properties LLC, Petitions for Declaratory Ruling Seeking Preemption Under the Rule Governing Over the Air Reception Devices,* Order on Review (Mar. 7, 2024) ("*Order*").

**Related Cases.**

On June 3, 2022, Indian filed its Petition for Writ of Mandamus in this Court, Case Number 22-1098. On September 2, 2022, this Court dismissed as moot Indian's Petition for Mandamus.

On August 18, 2023, Indian filed its Petition for Review in this Court due to agency inaction, Case Number 23-1223. This Court dismissed as premature Indian's Petition for Review in Case Number 23-1223.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rule 26.1, Indian Peak Properties LLC hereby submits this Corporate Disclosure Statement. Indian Peak Properties LLC is a limited liability company formed under the laws of the State of Nevada. Other than its membership interest, which is indirectly wholly owned by James A. Kay, Jr., an individual, Indian Peak Properties LLC issues no stock and is not owned in whole or in part by any publicly held corporation.

# TABLE OF CONTENTS

**Page**

| | | | | |
|---|---|---|---|---|
| | | TABLE OF AUTHORITIES | vi |
| | | GLOSSARY | xiv |
| | | JURISDICTIONAL STATEMENT | 1 |
| | | ISSUES PRESENTED AND STANDARD OF REVIEW | 1 |
| | | STATUTES AND REGULATIONS | 3 |
| | | STATEMENT OF THE CASE | 3 |
| A. | | THE PROPERTY | 3 |
| B. | | CONDITIONAL USE PERMIT | 4 |
| C. | | PROCEEDING BELOW - INDIAN'S PETITIONS TO THE FCC | 5 |
| D. | | INDIAN REMOVED THE DISPUTED ANTENNAS | 7 |
| E. | | ADMINISTRATIVE APPEAL | 8 |
| | | THE FCC'S OVER-THE-AIR RECEPTION DEVICE RULE | 10 |
| | | SUMMARY OF THE ARGUMENT | 12 |
| | | STANDING | 14 |
| | | ARGUMENT | 14 |
| A. | | *AUER* DOCTRINE DEFERENCE DOES NOT APPLY TO THE *ORDER'S* INTERPRETATION OF THE RULE | 14 |
| | 1 | The Rule gives the FCC no discretion in processing a petition | 14 |

| | | | | |
|---|---|---|---|---|
| | | a | Three *Kisor* factors demonstrate that the court should not defer to the FCC's interpretation | 17 |
| | | b | Paragraph(a)(4) of the Rule contradicts the Order's interpretation | 18 |
| | | c | FCC staff have made the 21-day grace period a dead letter, further demonstrating staff's misinterpretation of the Rule | 19 |
| B. | | | INDIAN WAS ENTITLED TO THE PROTECTIONS OF THE RULE EVEN WHERE THE FCC RULED AGAINST INDIAN | 23 |
| | 1 | | FCC Staff Violated the Rule | 23 |
| | 2 | | FCC Staff Breached the Reliance Interest Established by the Rule | 27 |
| C. | | | THE *ORDER* IS WRONG ON THE SUBSTANCE | 31 |
| | 1 | | The *Order's* Logic, When Unpacked, is Found to be Improper | 31 |
| | | a | First, the *Order* abandons staff's rationale in the letter rulings while retaining the same outcome | 31 |
| | | b | Second, the *Order* announces a legislative rule of "sufficient human presence" outside a notice-and-comment proceeding. | 32 |
| | | c | Third, the *Order* improperly places the burden on Indian to demonstrate sufficient human presence at the Property | 32 |
| | | d | Fourth, the *Order* engages in biased fact finding | 33 |
| | | e | Fifth, the *Order* concludes that the Property flunks the "human presence" standard | 33 |
| | 2 | | The "Human Presence" Standard is a Legislative Rule Requiring Notice-and-Comment Rulemaking | 34 |

| | 3 | | The *Order's* Requirement to Plead Facts Demonstrating That Users, Antenna and Services Qualify Under Paragraph(a) is Another Legislative Rule Requiring Notice and Comment | 40 |
|---|---|---|---|---|
| | 4 | | The *Order* Engages in Biased Fact Finding, Making it Arbitrary and Capricious | 41 |
| D. | | | THE FCC VIOLATED INDIAN'S DUE PROCESS RIGHTS | 44 |
| | 1 | | The FCC Implicated Several Due Process Interests | 44 |
| | 2 | | The FCC Refused to Provide an Unbiased Tribunal | 45 |
| | 3 | | The FCC Has Not Given Notice | 46 |
| | | | RELIEF REQUESTED | 48 |

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

| | |
|---|---|
| *Am. Mining Cong. v. MSHA,*<br>    995 F.2d 1106 (D.C Cir. 1993) | 35, 39 |
| *Ass'n of Am. R.R. v. Dep't of Trans.,*<br>    821 F.3d 19 (D.C. Cir. 2016) | 39 |
| *Auer v. Robbins,*<br>    519 U.S. 452 (1997) | 1, 12, 13, 16, 28, 33 |
| *Board of Regents of State Colleges Et. Al. v. Roth,*<br>    408 U.S. 564 (1972) | 43 |
| *Bowles v. Seminole Rock & Sand Co.,*<br>    325 U.S. 410 (1945) | 17 |
| *Chamber of Com. Of U.S. v. Occupational Safety & Health Admin.,*<br><br>    636 F.2d 464, 468 (D.C. Cir. 1980) | 2 |
| *Cinderella Career and Finishing Schools, Inc. v. FTC,*<br>    425 F.2d 583 (D.C. Cir. 1970) | 45 |
| *Corley v. United States,*<br>    556 U.S. 303 (2009) | 22, 23 |
| *FCC v. Fox Television Stations, Inc.*<br>    556 U.S. 502 (2009) | 28 |
| * *Kisor v. Wilkie,*<br>    588 U.S. 558 (2019) | 1, 14, 17, 18, 24, 33 |
| *Marseilles Land and Water Co. v. FERC,*<br>    345 F.3d 916 (D.C. Cir. 2003) | 39 |

| | |
|---|---|
| *Matthews v. Eldridge,*<br>      424 U.S. 319 (1976) | 2, 43 |
| *Motor Vehicle Mfrs. Assn. of United States, Inc. v.*<br>*State Farm Mut. Automobile Ins. Co.,*<br>      463 U.S. 29 (1983) | 2, 40, 43 |
| *Nebraska, Dpt. Of Health & Human Services vs.*<br>*U.S. Dept. of Health and Human Services,*<br>      340 F.Supp.2d 1, 18 (D.D.C. 2001) | 2 |
| *National Min. Ass'n v. McCarthy,*<br>      758 F.3d 243 (2014) | 2, 36, 40 |
| *Reuters Ltd. v. F.C.C.,*<br>      781 F.2d 946 (1986) | 28 |
| *RKO General Inc. v. F.C.C.,*<br>      670 F.2d 215 (D.C. Cir. 1981) | 28 |
| *Rubin v. Islamic Republic of Iran,*<br>      583 U.S. 202 (2018) | 22 |
| *SEC v. Chenery Corp.,*<br>      332 U.S. 194 (1947) | 33 |
| *United States ex rel. Accardi v. Shaughnessy,*<br>      47 U.S. 260 (1954) | 24 |
| *United States v. Lee,*<br>      106 U.S. 196 (1882) | 28 |

\* Authorities upon which we chiefly rely are marked with asterisks.

## U.S. Constitution

| | |
|---|---|
| U.S. CONST. AMEND. V | 44 |

**Statutes**

| | |
|---|---|
| 5 U.S.C. § 553 | 35, 39 |
| 5 U.S.C. § 702 | 1 |
| 5 U.S.C. § 706 | 2 |
| 28 U.S.C. § 1346 | 46 |
| 28 U.S.C. § 2342 | 1 |
| 28 U.S.C. § 2343 | 1 |
| 28 U.S.C. § 2344 | 1 |
| 28 U.S.C. § 2671-80 | 46 |
| 47 U.S.C. § 402 | 1 |
| Pub. L. No. 104-104, § 207, 110 Stat. 56, 114 (1996) | 10, 39 |

**Regulations**

| | |
|---|---|
| * 47 C.F.R. § 1.4000 | 4-8, 10-20, 22-32, 34, 36, 37, 38, 40, 43-47 |

**Federal Communications Commission Decisions**

| | |
|---|---|
| * *Continental Airlines,* Petition for Declaratory Ruling, <br> *  21 FCC Rcd. 13201 (2006). | 35-38 |
| *Victor Frankfurt*, Petition for Declaratory Ruling, <br>  12 FCC Rcd 17631 (CSB 1997) | 24 |

| | |
|---|---|
| *Victor Frankfurt*, Memorandum Opinion & Order, <br> 18 FCC Rcd 18431 (2003) | 20 |
| *John F. Garziglia*, Letter, <br> 28 FCC Rcd 4145 (MB 2013) | 9, 29, 31, 40, 44, 45 |
| Letter Order from Garnet Hanley and Maria Mullarky, FCC, to *Julian Gehman*, counsel to Indian Peak Properties LLC, unpub. (Dec 13, 2022) | 9 |
| *In the Matter of Indian Peak Properties LLC, Petitions for Declaratory Ruling Seeking Preemption Under the Rule Governing Over the Air Reception Devices*, Order on Review, <br> 2024 WL 1068018 (F.C.C.) (Mar 7, 2024) | 1, 2, 9, 10, 13, 16, 17-18, 23, 24, 29-35, 37-42, 44 |
| Letter Order from Garnet Hanley and Maria Mullarky, FCC, to *Toneata Martocchio*, counsel to Indian Peak Properties LLC, unpub. (Jul 18, 2022) | 7, 8 |
| Letter Order from Garnet Hanley, FCC, to *Toneata Martocchio*, counsel to Indian Peak Properties LLC, unpub. (Apr 22, 2022) | 6 |
| *Michael and Alexandra Pinter*, Petition for Declaratory Ruling, <br> 19 FCC Rcd 17385 (MB 2004) | 20 |
| *Promotion of Competitive Networks in Local Telecommunications Markets*, Report and Order, <br> 15 FCC Rcd 22983 (2000) | 10 |
| *Promotion of Competitive Networks in Local Telecommunications Markets*, Order on Reconsideration, <br> 19 FCC Rcd 5637 (2004) | 10 |
| *Richard Rhoad*, Petition for Declaratory Ruling, <br> 24 FCC Rcd 9527 (MB 2009) | 20 |

| | |
|---|---|
| \* *Section 207 of the Telecommunications Act of 1996*, Report and Order,<br>\*    11 FCC Rcd 19276 (1996) | 10, 15, 26, 27 |
| *Section 207 of the Telecommunications Act of 1996*, Order on Reconsideration,<br>   13 FCC Rcd 18962 (1998) | 10, 19 |
| *Section 207 of the Telecommunications Act of 1996,* Second Report and Order,<br>   13 FCC Rcd 23874 (1998) | 10 |
| *Updating the Commission's Rule for Over-the-Air Reception Devices*, Report and Order,<br>   36 FCC Rcd 537 (2021) | 10 |

## Other Authority

| | |
|---|---|
| Henry J. Friendly *Some Kind of Hearing,*<br>   123 U. Pa. L. Rev. 1267 (1975). | 44 |

## FCC Adjudication of Petitions for Over-the-Air Reception Devices

| | |
|---|---|
| *James S. Bannister*, Petition for Declaratory Ruling,<br>   24 FCC Rcd 9516 (MB 2009) (Petition granted). | 20 |
| *Bell Atlantic Video*, Petition for Declaratory Ruling,<br>   15 FCC Rcd 7366 (CSB 2000) (Petition granted). | 20 |
| *Brent Beumel, Jr.*, Petition for Declaratory Ruling,<br>   31 FCC Rcd 1220 (MB 2016) (Petition granted). | 20 |
| *Continental Airlines,* Petition for Declaratory Ruling,<br>   21 FCC Rcd. 13201 (2006) (Petition granted) | 20 |

| | |
|---|---|
| *William Culver*, Petition for Declaratory Ruling, 24 FCC Rcd 9522 (MB 2009) (Petition granted). | 20 |
| *Victor Frankfurt*, Memorandum Opinion & Order, 18 FCC Rcd 18431 (2003) (Application for Review denied, partial grant of Petition upheld); Petition for Declaratory Ruling 16 FCC Rcd 2875 (CSB 2001)(Petition granted: leave antenna in place, non-enforcement of fine and no retroactive application of new restrictions; Petition denied: certain safety measures); Petition for Declaratory Ruling, 12 FCC Rcd 17631 (CSB 1997) (Petition granted). | 20 |
| *Stanley and Vera Holliday*, Petition for Declaratory Ruling, 14 FCC Rcd 17167 (CSB 1999) (Petition granted). | 20 |
| *Constance M. Lane and Daniel F. Lane*, Petition for Declaratory Ruling 24 FCC Rcd 13219 (MB 2009) (Petition granted). | 20 |
| *Star Lambert*, Petition for Declaratory Ruling, 1 2 FCC Rcd 10455 (CSB 1997) (Petition granted). | 20 |
| *Jordan Lourie*, Petition for Declaratory Ruling, 13 FCC Rcd 16760 (CSB 1998) (Petition granted). | 20 |
| *Jay Lubliner and Deborah Galvin*, Petition for Declaratory Ruling, 13 FCC Rcd 4834 (CSB 1997) (Petition granted). | 20 |
| *Policarpo & Lourdes Medios*, Memorandum Opinion & Order, 25 FCC Rcd 15870 (MB 2010) (Petition for Declaratory Ruling granted, Waiver Request for over-size antenna denied). | 20 |
| *Omnivision of San Antonio*, Petition for Declaratory Ruling, 13 FCC Rcd 4826 (CSB 1997) (Petition granted). | 20 |

| | |
|---|---|
| *Jason Peterson*, Petition for Declaratory Ruling, <br>     13 FCC Rcd 2501 (CSB 1998) (Petition granted). | 20 |
| *Michael and Alexandra Pinter*, Petition for Declaratory Ruling, <br>     19 FCC Rcd 17385 (MB 2004) (Petition granted for south facing antenna, denied for east facing antenna). | 20 |
| *Richard Rhoad*, Petition for Declaratory Ruling, <br>     24 FCC Rcd 9527 (MB 2009) (Petition granted for antenna placement in driveway, denied for placement in shrubs next to sidewalk). | 20 |
| *Daniel and Corey Roberts*, Petition for Declaratory Ruling, <br>     16 FCC Rcd 10972 (CSB 2001) (Petition granted). | 20 |
| *James Sadler,* Petition for Declaratory Ruling, <br>     13 FCC Rcd 12559 (CSB 1998) (Petition granted). | 20 |
| *Satellite Broadcasting and Communications Association, et al.*, Petition for Declaratory Ruling, <br>     36 FCC Rcd 144 (MB 2021) (Petition granted - City of Chicago). | 20 |
| *Satellite Broadcasting and Communications Association*, Petition for Declaratory Ruling, <br>     33 FCC Rcd 3797 (MB 2018) (Petition granted - City of Philadelphia). | 20 |
| *Corey & Juanita Walker*, Petition for Declaratory Ruling, <br>     26 FCC Rcd 10531 (MB 2011) (Petition granted). | 20 |
| *Wireless Broadcasting Systems*, Petition for Declaratory Ruling, <br>     12 FCC Rcd 19746 (CSB 1997) (Petition granted). | 20 |
| *Craig Wirth*, Petition for Declaratory Ruling, <br>     25 FCC Rcd 15583 (MB 2010) (Petition granted). | 20 |

| | |
|---|---|
| *Philip Wojcikewicz*, Memorandum Opinion & Order, 22 FCC Rcd 9858 (2007) (Application for Review denied, grant of Petition upheld); Petition for Declaratory Ruling, 18 FCC Rcd 19523 (MB 2003) (Petition granted). | 20 |

# GLOSSARY

City          City of Rancho Palos Verdes, California

FCC or        Federal Communications Commission
Commission

Indian         Petitioner Indian Peak Properties LLC

Order          *In the Matter of Indian Peak Properties LLC,*
*Petitions for Declaratory Ruling Seeking*
*Preemption Under the Rule Governing Over the Air*
*Reception Devices,* Order on Review, 2024 WL
1068018 (F.C.C.) (Mar. 7, 2024)

Property      House, garage and grounds at 26708 Indian Peak Road,
Rancho Palos Verdes, California 90275

Rule           The FCC's Over-the-Air Reception Device Rule, 47
C.F.R. § 1.4000

# JURISDICTIONAL STATEMENT

The *Orde*r is a final agency action disposing of the Commission's adjudication of Indian's petitions for declaratory judgment. The *Orde*r is subject to review pursuant to 5 U.S.C. § 702, 47 U.S.C. § 402(a), and 28 U.S.C. §§ 2342(1) and 2344. Venue is proper in this Court pursuant to 28 U.S.C. § 2343.

# ISSUES PRESENTED AND STANDARD OF REVIEW

1.    Whether the FCC's interpretation of 47 C.F.R. § 1.4000 is subject to *Auer* Doctrine deference where the *Order* requires that a petition must satisfy FCC staff's screen to determine whether antennas, users and services fully comply with Paragraph (a) of this rule.

2.    Whether Indian was entitled to the protections of 47 C.F.R. § 1.4000 where the FCC denied Indian's petitions under this rule.

Standard of Review for Issues 1 and 2: *de novo*. *Kisor v. Wilkie*, 588 U.S. § 558, 574-75 (2019) ("if uncertainty [in an agency regulation] does not exist, there is no plausible reason for deference").

3.	Whether the Order's requirement of "sufficient human presence" is a legislative rule.

Standard of Review: *de novo*. "Whether an agency policy is a rule is a question of law reviewed *de novo*." *Nebraska, Dpt. Of Health & Human Services vs. U.S. Dept. of Health and Human Services*, 340 F.Supp.2d 1, 18 (D.D.C. 2001). "The administrative agency's own label is indicative but not dispositive; we do not classify a rule as interpretive just because the agency says it is." *Chamber of Com. Of U.S. v. Occupational Safety & Health Admin.*, 636 F.2d 464, 468 (D.C. Cir. 1980). S*ee also National Min. Ass'n v. McCarthy*, 758 F.3d 243, 248 (2014) (reviewing *de novo* whether rule is legislative).

4.	Whether the *Order's* fact finding failed to consider relevant factors.

Standard of Review: *arbitrary and capricious*. 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co*., 463 U.S. 29, 43 (1983).

5.	Whether the FCC violated Indian's 5th Amendment due process rights by refusing Indian the protections of 47 C.F.R. § 1.4000.

Standard of Review: *de novo. Matthews v Eldridge*, 424 U.S. 319 (1976).

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the attached Addendum.

## STATEMENT OF THE CASE

## A.  THE PROPERTY

This appeal concerns a house at 26708 Indian Peak Road, Rancho Palos Verdes, California 90275 (the "Property"), owned by Petitioner Indian Peak Properties LLC ("Indian").  Indian or its owner, James Kay, has owned the Property since 1994, using it as income property by leasing to residential tenants and also renting two "radio rooms" to wireless communications providers.  When acquired, the Property was unlivable and only the radio rooms generated income.  In approximately 2000, Indian renovated to make the Property attractive as a residence.  Since then, Indian has rented to a succession of long-term residential tenants, but with stretches where there was no residential tenant.  Most

recently on April 1, 2023, Indian rented to a residential tenant who has remained in the Property until the present. During the FCC proceeding reviewed here, no one was living in the Property. Throughout, the radio rooms have been rented. Personnel from the wireless providers work in the radio rooms, entering from a side entrance so as not to disturb the residential tenants.

**B.    CONDITIONAL USE PERMIT**

In December 2004, the City Council of the City of Rancho Palos Verdes (the "City") adopted a Conditional Use Permit allowing the placement of five UHF antennas on the rooftop of the Property. These antennas stood nine feet tall, each with four radiating elements, and were anchored to the roof by a two-foot high horizontal, metal lattice support structure which in turn was bolted into the roof. Over the years, other antennas were installed which were smaller and lower in profile than the UHF antennas.

In August 2018, the City Council revoked the Conditional Use Permit. Indian complied by removing the UHF antennas and some other antennas, but left on the rooftop antennas that Indian believed to be

covered by 47 C.F.R. § 1.4000, the FCC's prohibition of zoning enforcement against over-the-air reception devices.

The City sued in Superior Court of Los Angeles County to force Indian to remove all antennas. In the course of this litigation, Indian raised the defense of 47 C.F.R. § 1.4000. However, the Court of Appeal of the State of California rejected it on procedural grounds, finding that Indian had not raised the defense at the trial court level and therefore "[a]ny reliance on that rule has been forfeited." JA1 36. No court has adjudicated the merits of Indian's claim under 47 C.F.R. § 1.4000.

## C. PROCEEDING BELOW - INDIAN'S PETITIONS TO THE FCC

On April 17, 2020, Indian submitted to the FCC its Petition for Declaratory Ruling for ten antennas under 47 C.F.R. § 1.4000. JA2. The petition alerted the Commission to the City's zoning enforcement litigation. *Id.* 1-3. As required by 47 C.F.R. §§ 1.4000(f) and (h), the petition was served on the City and affidavits supported the Petition's factual statements. The Petition demonstrated that each antenna met the size, use and other requirements of 47 C.F.R. 1.4000. *Id.* 8-10. The petition was prepared and filed by Robert Keller, an experienced

communications attorney who subsequently joined the FCC's Enforcement Bureau.

Indian's petition remained pending at the FCC for over two years. On December 10, 2021, Indian wrote to the FCC requesting expedited action and describing the City's litigation.  JA3.  On April 19, 2022, Indian wrote "to urgently request expedited action on this matter" (JA4 1) and "to respectfully implore the Commission to issue an order directing the City to cease and desist from" litigation during the pendency of the petition, as required by 47 C.F.R. § 1.4000 (JA4 3).  The FCC never shielded Indian from litigation.

On April 22, 2022, the Commission dismissed the petition without prejudice, stating "it fail[ed] to provide sufficient information to support a showing that each antenna meets all of the criteria required for protection under" 47 C.F.R. § 1.4000 (JA5 2).  This letter ruling did not explain why the FCC ignored Indian's requests for litigation shield.  *Id.*

Attempting to provide information that the FCC said was missing, on May 1, 2022, Indian filed five petitions for declaratory ruling

covering Antennas 1, 2, 3, 4 and 5, respectively JA6.  Indian

supplemented the petitions on May 26, 2022 JA7 and July 5, 2022 JA8.

Concerned that the Commission might take another two years to

consider these petitions, on June 3, 2022, Indian petitioned this Court,

seeking a Writ of Mandamus ordering the FCC to (a) take action on

Indian's petitions for declaratory ruling, or (b) acknowledge receipt of

Indian's petitions and declare that a "proceeding" was initiated under 47

C.F.R. § 1.4000. JA9  This Court required the FCC to respond. JA10.  In

response, on July 18, 2022, the FCC again dismissed the Petitions

without prejudice.  The Commission's letter ruling said, for the first

time, that no "proceeding" had commenced under 47 C.F.R. § 1.4000.

JA11

## D.   INDIAN REMOVED THE DISPUTED ANTENNAS

Indian's defense against the City's litigation was that Indian's

Petitions started a "proceeding" under 47 C.F.R. § 1.4000(a)(4), which

suspended the City's ability to enforce its zoning ordinance.  However,

upon review of the FCC's no-proceeding ruling, Indian determined that

it could no longer in good faith raise this defense in state court litigation

and that it had no other viable defense.  On July 27, 2022, Indian acceded to the City, removed the disputed antennas from the rooftop, and so notified this Court and the FCC on August 3, 2022.  JA12

The state court found Indian liable to the City for attorneys fees and costs.  Indian paid $112,000 to the City, and $544,698 to Indian's law firm for representation in this litigation.  These amounts do not include legal fees paid to communications counsel for the administrative appeal at the FCC.

## E.    ADMINISTRATIVE APPEAL

The City had agreed that one of the five disputed antennae qualified under 47 C.F.R. § 1.4000, and Indian left it on the rooftop where it remains.  Indian decided not to pursue another antenna.  Indian mounted an administrative appeal at the FCC for the three remaining antennas, Antennas 2, 3 and 4.

The FCC's letter ruling, of July 18, 2022, stated at page 6:

Because the [over-the-air reception device] rule does not protect antennas where the user is a service provider, and the identified users of Antennas 2-4 are FCC licensees who appear to be service providers, we dismiss Petitions 2-4 without prejudice.  JA11

The letter rulings disqualified communications service providers (who used the radio rooms of the Property) from being a "user" under 47 C.F.R. 1.4000(a). This ruling, which the *Order* calls "the service provider exception" *Order* at ¶¶ 2, 8, 11, JA13, was a focus of: (a) Indian's Petition for Reconsideration, submitted on August 3, 2022 (JA14 9-11), (b) FCC staff's subsequent denial of reconsideration by letter ruling dated December 13, 2022 (JA15 3-4), and (c) Indian's Application for Review by the full Commission dated January 12, 2023 (JA16 7-12).

Indian's administrative appeal also attacked the letter ruling's procedural claim (JA11 8-10) that FCC staff were not required to place Indian's petitions on public notice or declare a "proceeding" to protect Indian from litigation. The letter ruling of July 18, 2021, *id.,* cited to another letter ruling, *John F. Garziglia*, Letter, 28 FCC Rcd 4145, 4146 (MB 2013) ("*Garziglia Letter*") JA17, as authority for this proposition. Indian challenged the provenance and applicability of the *Garziglia Letter* in its Petition for Reconsideration, JA14 6-9, and Application for Review, JA16 12-19.

In response, the *Order* abandons both the "service provider exception" and the *Garziglia Letter*. In place of the "service provider exception," the Order substitutes its new "human presence" requirement. *Order* ¶ 3 JA13. In place of the *Garzielgia Letter*, the letter says that Indian's due process claims are moot. *Order* ¶ 32.

## THE FCC'S OVER-THE-AIR RECEPTION DEVICE RULE

The Telecommunications Act of 1996 instructed the Commission to "promulgate regulations to prohibit restrictions that impair a viewer's ability to receive video programming services through devices designed for over-the-air reception" of certain services. Telecommunications Act of 1996, No. 104-104, § 207, 110 Stat. 56, 114 (1996). Via notice-and-comment rulemaking, the Commission promulgated 47 C.F.R. § 1.4000, its Over-The-Air Reception Device rule (the "Rule"). *Section 207 of the Telecommunications Act of 1996*, Report and Order, 11 FCC Red 19276 (1996). The Commission subsequently promulgated additional notice-

and-comment rulemakings explaining and expanding the Rule.[1]  The

Rule is straightforward, as outlined in the following table.

| 47 C.F.R. § 1.4000 | Topic |
|---|---|
| ¶ (a) | Prohibits restrictions on certain antennas and details the antennas, services and users covered by the Rule. |
| ¶ (b) | Exceptions for safety and historic preservation. |
| ¶ (c) | Reserved. |
| ¶ (d) | Local governments and associations may apply for a waiver. |
| ¶ (e) | Party may petition the Commission or a court for declaratory ruling whether a restriction is permissible. |
| ¶ (f) | Interested parties must be served in waiver and petition proceedings. |
| ¶ (g) | Burden of proof is on the party seeking to impose or maintain a restriction. |
| ¶ (h) | Factual allegations must be supported by affidavit. |

The Rule prohibits or limits zoning or other restrictions on antennas

of specified size, type, service and user.  47 C.F.R. § 1.4000(a).  A

---

[1] *Section 207 of the Telecommunications Act of 1996*, Order on Reconsideration, 13 FCC Rcd 18962 (1998); *Section 207 of the Telecommunications Act of 1996,* Second Report and Order, 13 FCC Rcd 23874 (1998); *Promotion of Competitive Networks in Local Telecommunications Markets*, Report and Order, 15 FCC Rcd 22983 (2000); *Promotion of Competitive Networks in Local Telecommunications Markets*, Order on Reconsideration; *Updating the Commission's Rule for Over-the-Air Reception Devices*, Report and Order, 36 FCC Rcd 537 (2021).

homeowner or other aggrieved party may petition the Commission for a declaratory ruling that a zoning or other restriction is illegal. 47 C.F.R. § 1.4000(e). Once such proceeding is initiated, zoning enforcement efforts must be suspended pending the outcome of the petition, and no attorneys fees, fine or other penalty against the petitioner may accrue. 47 C.F.R. § 1.4000(a)(4). An unsuccessful petitioner has 21 days to come into compliance with the restriction before any fee, fine or other penalty may be assessed. *Id.* The proponent of the restriction may demonstrate in the same proceeding which resulted in an adverse ruling, that the user's claim was frivolous. *Id.* If the petition is judged frivolous, the proponent may charge the user attorneys fees, fine or other penalty. *Id.* The party seeking to impose or maintain a restriction bears the burden of proving that the restriction complies with the Rule. 47 C.F.R. § 1.4000(g).

## SUMMARY OF THE ARGUMENT

Because the Rule is unambiguous, no deference is owed the FCC's interpretation, and this Court should enforce the plain language of the Rule. Once its procedural requirements are met, the Rule gives FCC

staff no discretion. The Rule requires the FCC to place a petition on public notice and shield the petitioner from litigation, attorneys fees, fines and penalties during the pendency of the petition. FCC staff violated the Rule by: refusing to place Indian's petitions on public notice, flipping the burden of proof against Indian, allowing zoning enforcement to proceed against Indian and allowing Indian to be penalized even after it came into compliance within the Rule's 21 day grace period. FCC staff breached their duty to Indian.

The Rule establishes a reliance interest that a petitioner will be protected from zoning enforcement. FCC staff violated Indian's reliance interest, as well as due process rights, in refusing to shield Indian.

The *Order* reaches beyond mere interpretation of prior precedent to impose a new requirement of human presence. As such, it is a legislative rule required to have been promulgated in a notice-and-comment rulemaking. Because the Commission did not do so, the *Order* should be overturned. Relatedly, the Order arbitrarily and capriciously engages in biased fact finding in order to conclude that there was insufficient human presence in the Property.

## STANDING

Indian has direct standing, having suffered damages from the FCC's denial of its petitions in the proceeding below and refusal to apply the protections of the Rule.

## ARGUMENT

### A. *AUER* DOCTRINE DEFERENCE DOES NOT APPLY TO THE *ORDER'S* INTERPRETATION OF THE RULE

The Rule should be reviewed *de novo* to determine the text, structure, history and purpose of the Rule. *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019). The FCC's interpretation does not qualify for deference because the Rule unambiguously deprives FCC staff of discretion. *Id*.

### 1. The Rule Gives the FCC No Discretion in Processing a Petition.

The Rule sets a low bar for filing a petition. Paragraph (e) establishes the mechanism by which an aggrieved homeowner may challenge a zoning ordinance:

Parties may petition the Commission for a declaratory ruling under § 1.2 of this chapter, or a court of competent jurisdiction, to determine whether a particular restriction is permissible or prohibited under this section. Petitions to the Commission must comply with the procedures in paragraphs (f) and (h) of this section and will be put on public notice. 47 C.F.R. § 1.4000(e).

The referenced paragraphs (f) and (h) in turn require service on interested parties and affidavits supporting statements of fact. Indian complied with these minimal procedural requirements throughout; the FCC has not claimed any procedural violation. Paragraphs (f) and (h) set out the only conditions precedent to placing a petition on public notice. The Rule does *not* require that a petition demonstrate that the user's antennas, services or users satisfy the substantive requirements of Paragraph (a) before starting a proceeding - the purpose of the adversarial proceeding initiated by public notice is to adjudicate whether the petition complies with Paragraph (a). The Rule contains no qualifying language like, "if found to comply with the requirements of Paragraph (a)." The only part of the Rule that goes to the sufficiency of a petition is Paragraph (e), which imposes procedural requirements that Indian satisfied. There is nothing ambiguous about this.

When promulgating the Rule, the Commission stated:

Under these procedures, if [] the antenna user . . . has requested a determination . . . from this Commission on whether the restriction at issue is permitted as an exception for safety or historic preservation, the restriction may be enforced pending this determination. Otherwise, the restriction may not be enforced until the Commission . . . issues a

ruling that the restriction is not preempted. In these circumstances, a viewer may install, use and maintain an antenna while the proceeding is pending. *Section 207 of the Telecommunications Act of 1996*, Report and Order, 11 FCC Rcd 19276, 19308 (1996).

The Commission did *not* say that only a *qualifying* viewer may install, use and maintain an antenna while the proceeding is pending.

The Rule does not give FCC staff discretion to decide whether to place the petition on public notice. The procedural part of the Rule is ministerial, stating that a petition that is served on interested parties and supported by affidavits "will be placed on public notice." The Rule removes from FCC staff even the discretion to weed out a frivolous petition. A frivolous petition still gets shielded from fines, penalties and attorneys fees "unless the proponent of the restriction demonstrates, in the same proceeding which resulted in the adverse ruling, that the user's claim in the proceeding was frivolous." 47 C.F.R. § 1.4000(a)(4). The ministerial role established by the rule is diametrically opposed to FCC staff's approach of reviewing "the

petition for compliance with applicable procedural and substantive standards." *See Order* ¶ 3.

### a. Three *Kisor* factors demonstrate that this Court should not defer to the FCC's interpretation.

There is no ambiguity in the Rule that would allow the Commission to assert an alternative interpretation. The FCC's interpretation is accorded *Auer d*eference, *see Auer v. Robbins*, 519 U.S. 452 (1997), "only if the meaning of the words used is in doubt." *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). There is no confusion as to the meaning of the words in the Rule; the Rule is specific and uses plain language. "If uncertainty does not exist, there is no plausible reason for deference. The regulation just means what it means - and the court must give it effect, as the court would any law." *Kisor,* 588 U.S. at 574-75. Simply put, this Court should enforce the plain language of the Rule. Another reason is that the Rule is not expertise-based. *Kisor,* 588 U.S. at 577-78. One need not be an expert in, say, radio wave propagation, or another technical area to understand the Rule. The Rule is

accessible to any lawyer or layperson. No technical expertise of the Commission was required to formulate the Rule. Finally, the FCC's interpretation of the Rule is unfair. There was no fair notice; staff's treatment violated reliance interests. This third point is discussed below, *infra.* pages 27-31.

### b. Paragraph (a)(4) of the Rule contradicts the *Order's* interpretation.

Under the rationale of the *Order*, a frivolous petition would not "qualify for protection under" the Rule. *See Order* ¶ 5. FCC staff would screen out a frivolous petition because the Rule does not apply, refuse to put the petition on public notice and not accord the petitioner the protections of the Rule. Yet, as noted, Paragraph (a)(4) requires that a frivolous petition go on public notice and the opponent be permitted to argue that the petition is frivolous. Only after this argument is successful and the petition is adjudged to be frivolous, can the Rule's protections be clawed back. This is consistent with Paragraph (e) which mandates that the petition "will be placed on public notice." Obviously, frivolous or defective petitions could be placed on public notice under

the requirement of Paragraph (e). The Rule remedies this by allowing an after-the-fact penalty for frivolous petitions. The Rule does not authorize FCC staff's prophylactic screen. The premise of the Rule is that all petitions filed under the Rule will go on public notice, and all petitions will get protected from zoning enforcement until judged to be frivolous. The contrary premise of the *Order* is that FCC staff are gatekeepers and only selected petitions get protected. The *Order's* premise must yield to the plain language of the Rule.

### c. FCC staff have made the 21-day grace period a dead letter, further demonstrating staff's misinterpretation of the Rule.

The Rule anticipates that losing petitions would be filed and protects the unsuccessful petitioner. The unsuccessful petitioner is shielded from zoning enforcement, penalties and attorneys fees during the pendency of the petition and is given a 21-day grace period to come into compliance after the petition is denied. 47 C.F.R. 1.4000(a)(4). In its *Order on Reconsideration*, the Commission said:

We agree with petitioners that the potential threat of a fine or penalty could operate as a substantial deterrent to viewers exercising their right to install an antenna while such a restriction is under review. We agree that a viewer should be given at least 21 days to comply with an

adverse ruling issued in a proceeding before a fine may be collected from the viewer, unless the proponent of the restriction can show in the same proceeding that the viewer's claim was frivolous. *Section 207 of the Telecommunications Act of 1996*, Order on Reconsideration*,* 13 FCC Rcd 18962 ¶ 47 (1998).

Because it provides extensive due process protections for the unsuccessful petitioner, the rule anticipates that defective petitions would be placed on public notice. If the intent of the Rule really were that only perfect petitions get public notice, there would be no need for a grace period; the petitioner would win every time. This would make the 21-day grace period period superfluous.

Yet, that is exactly what has happened in practice. In the 28 years that the Rule has been in force, there has never been an instance where the FCC afforded a petitioner the 21-day grace period to come into compliance. The petitioner won every single formal adjudication, making the 21-day grace period superfluous. The formal adjudications under the Rule are catalogued on the FCC website (*See* https://www.fcc.gov/media/over-air-reception-devices-rule (viewed Jun 23, 2024)), and also listed in the Table of Authorities to this Brief, *supra,* pages x-xiii, along with their FCC Record citations and dispositions.

Three petitions were granted in part and denied in part.[2] All the other

petitions were granted in full. Every petitioner was able to erect

antennas, including the ones that were denied in part.

These were not real adjudications. There was no actual controversy

as to whether preemption applied. The real adjudication occurred in

screening before the petition was put on public notice. That's where staff

decided whether a petition "implicates" the Rule. *See Order* para. 18.

FCC staff's screening of petitions made the 21-day grace period

provision a dead letter. The result is predictable. The legislative Rule

is, literally, the law of the land. By definition, if the Rule applies (as

confirmed by staff's screen), the restriction is preempted and illegal. In

screening whether the Rule applies, FCC staff effectively conduct an

adjudication. Staff's adjudication is contrary to the Rule: there is no

public notice or protection from zoning enforcement for the petitioner,

and the petitioner faces an adverse burden of proof requiring petitioner

to demonstrate qualification under the Rule.

---

[2] *Richard Rhoad*, Petition for Declaratory Ruling, 24 FCC Rcd 9527
(MB 2009); *Michael and Alexandra Pinter*, Petition for Declaratory
Ruling, 19 FCC Rcd 17385 (MB 2004); *Victor Frankfurt*, Memorandum
Opinion & Order, 18 FCC Rcd 18431 (2003).

The FCC's administration of the Rule violates "one of the most basic interpretive canons, that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 213 (2018) quoting *Corley v. United States*, 556 U.S. 303, 314 (2009). The canon applies to interpretation of the Rule (which is law), as well as statutes. In 28 years, the FCC has never used the 21-day grace period, making inoperative this key provision. FCC staff violate the Rule by deciding whether a petition complies with the Rule before putting the petition on public notice. This assures that the 21-day grace period is superfluous and demonstrates maladministration of the Rule.

In summary, the Rule is unambiguous - there is no confusion as to the meaning of the words in the Rule. The FCC is not owed deference in its interpretation of the Rule. The Rule's treatment of frivolous and losing petitions contradicts FCC staff's procedure. The Rule mandates protection for every petitioner and after-the-fact penalty for a frivolous petition. However, FCC staff impose themselves as gatekeepers. After 28 years of gatekeeping, every formal adjudication favored the

petitioner.  As a result, the 21-day grace period is a dead letter.  The FCC

misconstrues the Rule because a key provision is inoperative by staff's

misapplication.  *Rubin v. Islamic Republic of Iran, supra.*

## B.  INDIAN WAS ENTITLED TO THE PROTECTIONS OF THE RULE EVEN WHERE THE FCC RULED AGAINST INDIAN

### 1.  FCC Staff Violated the Rule

It is well established that agencies may not violate their own rules

and regulations to the prejudice of others.  *United States ex rel. Accardi*

*v. Shaughnessy*, 347 U.S. 260 (1954).  However, FCC staff affirmatively

violated or permitted the violation of four different parts of the Rule,

thereby prejudicing Indian.  Because the Rule is unambiguous, the

standard of review is *de novo*.  *Kisor v. Wilkie*, 588 U.S. 558, 574

(2019).

*First*, as quoted above, a petition compliant with paragraphs (f) and

(h) "*will* be put on public notice."  Paragraph (e) (emphasis added).

FCC staff pointedly refused to place any of Indian's petitions on public

notice.  As noted, Paragraph (e) is the only part of the Rule that deals

with sufficiency of the petition, and this paragraph does not say anything

about petitioner's services or users having to qualify under Paragraph (a)

23

before the petition can go on public notice - only that the procedural requirements must be met.  FCC staff affirmatively violated the rule by refusing to place Indian's petitions on public notice where the petitions complied with Paragraphs (f) and (h).

*Second,* the rule provides that "[i]n any proceeding regarding the scope or interpretation of any provision of this section, the burden of demonstrating that a particular [zoning] restriction complies with this section and does not impair [the use of over-the-air devices] shall be on the party that seeks to impose or maintain the restriction."  47 C.F.R. § 1.4000(g).  The *Order* requires "regular human presence" in order for the Rule to apply, *Order* ¶ 3, which is a statement "regarding the scope or interpretation" of the Rule, *see* Paragraph (g).  In short the *Order* interprets the Rule.  Therefore, the *Order* is subject to Paragraph (g), which mandates placement of burden of proof on the City to demonstrate that its zoning ordinance complies with the Rule. Nevertheless, FCC staff placed the burden on Indian: "[w]e find that Indian Peak did not meet its burden to plead facts sufficient to implicate the [over-the-air reception device] rule."  *Order* ¶ 18.  The burden

should have been on the City to show that its restrictions did not unreasonably impair antennas, services or users covered by Paragraph (a).  This is the same question that FCC staff asked of Indian's petitions, except that staff should have required the City to answer the question instead of Indian.  Staff violated the Rule by placing the burden on Indian to prove that Indian's users were covered by the Rule.

*Third,* the Rule provides that upon submission of a petition and initiation of a proceeding, "the entity seeking to enforce the antenna restrictions must suspend all enforcement efforts pending completion of review."  47 C.F.R. § 1.4000(a)(4).  FCC staff were well aware of the City's litigation against Indian and did nothing to stop it despite Indian's pleas to do so.  This is different treatment from other court proceedings where the FCC intervened during the pendency of a petition.  *See, e.g., Victor Frankfurt*, Petition for Declaratory Ruling, 12 FCC Rcd 17631, 17635 ¶ 13 (CSB 1997) (FCC letter to Circuit Court to hold in abeyance homeowner association lawsuit or refer to FCC).  The Rule does not provide for FCC staff to refuse to start a proceeding because they

disagree with the petition.  Staff's refusal to initiate a proceeding violated the Rule.

*Fourth,* the Rule provides that "[i]f a ruling is issued adverse to the user, the user shall be granted at least a 21-day grace period in which to comply with the adverse ruling and neither a fine nor a penalty may be collected from the user if the user complies [] during this grace period," except in the case of a frivolous claim.  47 C.F.R. § 1.4000(a)(4).  Indian considered the City's zoning enforcement to be illegal because the Rule provides that "[n]o civil, criminal, administrative, or other legal action of any kind shall be taken to enforce any restriction or regulation prohibited by" the rule.  *Id.*  It was on this basis that Indian in good faith resisted the City's zoning enforcement litigation.  However, when FCC staff issued the letter ruling of July 18, 2022, stating for the first time that Indian's petitions had not initiated a "proceeding," Indian promptly removed the antennas.  Indian did so nine days after the FCC letter ruling, or well within the 21-day grace period established by Section § 1.4000(a)(4).  Nevertheless, Indian was penalized.

In summary, even where the FCC ruled against Indian's petitions, Indian was entitled to the Rule's protections from litigation, attorneys fees, fines and penalties. FCC staff breached their duty by refusing to afford Indian these protections. It is black letter law that government officials must follow the law, including the legislative Rule, for deprivation of property. *United States v. Lee,* 106 U.S. 196 (1882). As an earlier panel of this Court reminded the Commission, "rules are rules, and fidelity to the rules which have been properly promulgated . . . is required." *Reuters Ltd. v. FCC*, 781 F.2d 946, 951 (1986).

### 2. FCC Staff Breached the Reliance Interest Established by the Rule.

*Auer* deference does not apply to agency action that is unfair to regulated parties, including failure to respect reliance interests. *Kisor v. Wilkie*, 588 U.S. 558, 579 (2019). The Commission is held to the reliance interest its pronouncements establish. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009); *RKO General Inc. v. FCC*, 670 F.2d 215, 223 (D.C. Cir. 1981), *cert. denied*, 452 U.S. 927 (1982). The standard of review of a reliance interest is *de novo. Id.*

Paragraph (e) of the Rule says that "[p]arties may petition the Commission for a declaratory ruling." Unlike other declaratory ruling petitions, the Commission specifically invites a petition under the Rule. As quoted above, in 1996, the FCC said that if an antenna user has requested a determination from the Commission, the zoning restriction may not be enforced where there is no safety or historical preservation issue. *Section 207 of the Telecommunications Act of 1996*, 11 FCC Red at 19308. The Commission essentially said, "Go ahead, put up your antennas, and you will be protected from zoning enforcement until your petition is adjudicated." An antenna user is invited to disobey inconsistent zoning ordinances, and then rely on the FCC when local authorities seek to enforce the ordinance. This is perhaps the only instance where the Commission advocates civil disobedience. The FCC tells the disobedient antenna user:

**Q: Can I continue to use my antenna while the petition or waiver request is pending?**

A: Yes, unless a restriction being challenged or for which a waiver is sought is necessary for reasons of safety or historic preservation. Otherwise, the restriction cannot be enforced while the petition is pending. https://www.fcc.gov/media/over-air-reception-devices-rule (viewed Jun 23, 2024).

There were no safety or historic preservation issues raised with respect to Indian's antennas. These statements create a reliance interest among antenna users: if an antenna user puts himself at risk of zoning enforcement by erecting an antenna, he will be shielded from enforcement during the pendency of the petition and for 21 days after an adverse ruling. That's a reliance interest.

However, the Commission's words do not match its actions: there is no caveat that only petitions with antennas, services and users that comply with 47 C.F.R. § 1.4000(a) will be protected; no notice that FCC staff will first screen a petition and require the petitioner to demonstrate compliance with Paragraph (a); and no warning about the adverse consequences if a staff member disagrees with the petition.

In the absence of any warning, how is the public supposed to know whether a particular petition will be protected? The public and, indeed, even communications lawyers cannot predict whether FCC staff would accept or reject a petition. Yet, the FCC's website and other pronouncements invite a property owner to incur litigation risk on the promise of protection from zoning enforcement during the pendency of

the petition.  The Commission invites detrimental reliance but keeps its fingers crossed behind its back.

Indian's petitions were rejected because of an obscure ruling about what constitutes an appropriate user, and not because of something obvious like an over-sized antenna.  In fact, the *Order*'s rationale is so far "in the weeds" that not even the Division Chiefs of the Wireless Telecommunications Bureau and Media Bureau (who signed the letter rulings JA11, 15) could correctly identify the rationale that the Commission adopted in the *Order*.  The Order disclaims the "service provider" rationale and the *Garziglia Letter*, on which staff's letter rulings relied extensively, and instead announces a new "human presence" requirement.

The point is, if Commission insiders - Division Chiefs - couldn't predict the rationale of the *Order*, how is the public supposed to know?  The public can only rely on the plain language of the Commission's public pronouncements.  These pronouncements give no hint of the procedure FCC staff actually used to process Indian's petitions, or the Commission's eventual rationale for denying the petitions.

In summary, FCC pronouncements established a reliance interest that a petitioner under the Rule would be protected from zoning enforcement during the pendency of the petition and for 21 days after any adverse ruling. The FCC breached that reliance interest and its duty to Indian.

## C. THE *ORDER* IS WRONG ON THE SUBSTANCE

### 1. The *Order's* Logic, When Unpacked, is Found to be Improper.

In order to reach its conclusion, the *Order* takes five analytical steps, which are set out below. Each step has an issue.

#### a. First, the *Order* abandons staff's rationale in the Letter Rulings while retaining the same outcome.

The *Order* abandons the "service provider" exception and also declines to endorse the *Garziglia Letter*, on which staff's Letter Rulings relied extensively. If it were more straightforward, the *Order* would acknowledge that Indian won the first two rounds and the Commission developed new rationale in an attempt to preserve the outcome. With minimal acknowledgment that it is shifting gears, the *Order* announces a new "sufficient human contact" standard to replace the "service provider" exception, *Order* ¶ 18, and summarily declares Indian's due

process complaint to be moot, *Order* ¶ 32, rather than cite to the *Garziglia Letter*.

Nothing prohibits the the Commission from reaching the same result utilizing different rationale. *SEC v. Chenery Corp.,* 332 U.S. 194 (1947). However, the "human contact" standard is not subject to *Auer* Doctrine discretion and must be reviewed *de novo* because it is a *post hoc* rationalization developed for litigation. *Kisor v. Wilkie*, 588 U.S. 558, 578 (2019). The *Order*'s flip-flop is also relevant because of misdirection. Indian responded to the mistaken "service provider" exception and the unauthorized *Garziglia Letter,* and not to the Commission's then un-announced "human contact" standard. Yet, the *Order* cites Indian's pleadings as failing to satisfy the new standard.

**b.** **Second, the *Order* announces a legislative rule of "sufficient human presence" outside a notice-and-comment proceeding**

The *Order* does so in an adjudication but, as discussed below, it should have been promulgated in a notice-and-comment rulemaking.

**c.** **Third, the *Order* improperly places the burden of proof on Indian to demonstrate sufficient human presence at the Property.**

According to the *Order*, "Indian Peak failed to plead facts sufficient to establish a regular human presence at the property." *Order* ¶ 3. The Order similarly rules that Indian did not submit evidence to support certain claims, or that the evidence submitted was insufficient. *Order*. paras. 28-30. These statements place the burden of proof on Indian to demonstrate that it complies with the Rule. As discussed above, this violates the Rule's requirement that the party seeking to maintain the restriction bears the burden of proof. 47 C.F.R. § 1.4000(g).

**d. Fourth, the *Order uses* biased fact finding to reach its conclusion.**

The *Order's* fact finding is biased, which is discussed below.

**e. Fifth, the *Order* concludes that the Property flunks the "human presence" standard.**

This is the result of: a legislative rule announced without notice-and-comment rulemaking, improper assignment of burden of proof and biased fact finding.

## 2. The "Human Presence" Standard is a Legislative Rule Requiring Notice-and-Comment Rulemaking.

The *Order* states

For [over-the-air reception device] protections to attach to a fixed wireless antenna, the petitioner must demonstrate that it is regularly being used to provide signals to human end users at the location where the equipment is installed. We do not address all possible uses or establish a bright-line standard for such use. *Order*, ¶ 23.

This is a new rule. But, is it legislative or interpretive? A legislative rule must undergo notice-and-comment rulemaking while an interpretive rule need not. 5 U.S.C. § 553(b)(3)(A). One of the hallmarks of a legislative rule is that it amends a prior legislative rule where Congress had instructed the agency to promulgate rules, rather than being based on a specific statutory provision. *Am. Mining Cong. v. MSHA*, 995 F.2d 1106, 1110 (D.C. Cir. 1993). Moreover, a legislative rule "purports to impose legally binding obligations or prohibitions on regulated parties," while an interpretive rule "merely interprets a prior statute or regulation, and does not itself purport to impose new obligations or prohibitions or requirements on regulated parties." *Nat'l Mining Assoc. v. McCarthy*, 758 F.3d 243, 251-252 (2014). Whether a rule is legislative or interpretive is subject to *de novo* review. *Id.* "The administrative

agency's own label is indicative but not dispositive; we do not classify a rule as interpretive just because the agency says it is." *Chamber of Com. Of U.S. v. Occupational Safety & Health Admin.*, 636 F.2d 464, 468 (D.C. Cir. 1980).

The *Order* ¶ 22 claims that "[t]he term "customer" has always indicated that the [Rule] requires that the equipment serve a human being on the premises." This is a quintessential *post hoc* rationalization, newly developed for litigation, and is owed no deference. *Kisor v. Wilkie*, 588 U.S. 558, 578 (2019). A review of FCC precedent tells a different story.

The term "customer" also refers to a business. The Rule was updated to address multiple tenant environments, which the Commission deemed important "because a substantial proportion of both residential and business customers nationwide are located in such environments." *Promotion of Competitive Networks*, Report and Order, 15 FCC Rcd 22983, 22991 ¶ 12 (2000). The Commission was concerned that its Report and Order might be "insufficient . . . to secure a full measure of choice for businesses and individuals located in" multiple tenant

environments.  *Id.* 15 FCC Rcd at 22985 ¶ 2.  In this context, the

Commission amended the Rule with respect to certain over-the-air

reception device configurations.  *Id.* 15 FCC Rcd at 23027-23035 ¶¶

94-116.  This Report and Order clearly indicates that its amendment of

the Rule was directed toward business customers, as well as residences.

Because the Rule is for the benefit of businesses and not solely

individuals, the *Order's* "human presence" requirement is a legislative

rule and not merely a logical outgrowth of past precedent.

The *Order* is similarly contradicted by *Continental Airlines,* Petition

for Declaratory Ruling, 21 FCC Rcd. 13201 (2006), where Continental

Airlines, a company, was deemed the cognizable user and customer.

*Continental Airlines* is the only adjudication under the Rule dealing with

service in a commercial setting, like Indian's commercial setting.  As

such, it is the only FCC adjudication on point to the present situation.

All other adjudications involve residential settings.

Continental maintained free Wi-Fi in its President's Club lounge,

allowing passengers to avoid paying a fee that Boston Logan Airport

("Massport") charged for its own Wi-Fi service.  Massport demanded

that Continental discontinue its Wi-Fi. Continental submitted a petition to the FCC under the Rule. The Rule requires that the user of the antenna service in question have a direct or indirect ownership or leasehold interest in the property and have exclusive use and control of the property. 47 C.F.R. § 1.4000(a)(1). Massport contended that the Rule did not protect this Wi-Fi service because Continental's passengers were the Wi-Fi users and because Continental, not the passengers, had a leasehold interest in the lounge premises. The Commission rejected Massport's argument, ruling that Continental was the cognizable user that used the antenna to send and receive signals from its passengers. "That Continental's [passengers] also use the antenna does not alter the analysis." *Continental Airlines*, 21 FCC Rcd. at 13207 ¶ 15.

Under this precedent, the "user" (47 C.FR. § 1.4000(a)(1)) or "customer" (47 C.F.R. §§ 1.4000(a)(2) and (a)(5)), is the commercial provider of the Wi-Fi service. Inevitably, the commercial provider is a company, not an individual. This is necessary to satisfy the Rule's requirements that the "user" have the leasehold interest and exclusive control of the premises (§ 1.4000(a)(1)), and the "customer" have a fixed

customer location (§§ 1.4000(a)(2) and (a)(5)).  Otherwise, no free Wi-Fi service in commercial settings (hotels, restaurants, shopping malls, etc.) would be covered by the Rule; each and every patron and shopper would have to be the direct customer of the Wi-Fi service provider to qualify under the Rule.  This is what Massport argued and the Commission rejected.

The *Order's* claim that "[t]he term "customer" has always indicated that the [Rule] requires that the equipment serve a human being on the premises," ¶ 22, does not comport with *Continental Airlines*, where the company was deemed the user or customer.  As a factual matter, the *Order* is correct that there were passengers using the lounge.  *Order* ¶ 30.  But it was not a requirement to the ruling in *Continental Airlines*; to the contrary, passengers' use "does not alter the analysis."  Something that does not alter the analysis does not logically become the lynchpin of a subsequent FCC order.  An intervening legislative rule is necessary to make a litmus test out of what previously was irrelevant.

The *Order* flunks the test for an interpretive rule, namely, that the rule may not impose a new obligation.  *See Nat'l Mining Assoc., supra.*

The *Order's* new obligation is that a landlord or other commercial provider, which qualifies as the user or customer of the Wi-Fi service for purpose of 47 C.F.R. § 1.4000(a), must in turn maintain sufficient human presence in its premises to satisfy the Order's edict of minimum human contact. Not only must there be a user (Paragraph(a)(1)) or customer (Paragraphs (a)(2) and (5)) to satisfy the Rule, but, if the user or customer is a company, there must also be sufficient "human presence" on the premises to satisfy the *Order's* new edict. In *Continental Airlines*, the user's customers did not "alter the analysis," but under the *Order*, they *do* alter the analysis. This new requirement is a legislative rule.

The Order has the hallmark of a legislative rule, *Am. Mining Cong. v. MSHA*, *supra*. Congress instructed the FCC to "promulgate regulations" about over-the-air signals. Telecommunications Act of 1996, 110 Stat. 56, 114 (1996). The FCC did so with a series of notice-and-comment rulemakings, which the *Order* amends. "[A]n administrative agency may not slip by the notice and comment rule-making requirements needed to amend a rule by merely adopting a *de facto* amendment to its regulation through adjudication." *Marseilles*

*Land and Water Co. v. FERC*, 345 F.3d 916, 920 (D.C. Cir. 2003). The

*Order* is a legislative rule that is required to have been announced in a

notice-and-comment rulemaking. 5 U.S.C. § 553(b)(3). Because that

requirement was not followed, the *Order* should be overturned.

### 3. The Order's Requirement to Plead Facts Demonstrating That Users, Antennas and Services Qualify Under Paragraph (a) is Another Legislative Rule Requiring Notice and Comment.

The *Order* flipped the burden of proof, requiring Indian to

demonstrate that its users qualify under Paragraph (a) of the Rule. As

discussed above, this violates Paragraph (e) of the Rule, mandating that

the petition will be put on public notice and Paragraph (h), requiring that

the opponent bear the burden of proof. In the alternative, however, this

constitutes a new rule and imposes a new requirement not set out in the

Rule or FCC orders. *See Nat'l Mining Assoc., supra.* As such, this is a

legislative rule that was required to be promulgated in a notice-and-

comment rulemaking. This is another reason to overturn the *Order*.

### 4. The *Order* Engages in Biased Fact Finding, Making it Arbitrary and Capricious.

In determining whether the FCC acted arbitrarily and capriciously, this Court must "consider whether the [*Order*] was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto Co.*, 463 U.S. 29, 30-31 (1983). The *Order* engages in biased fact finding and does not articulate relevant factors.

*First*, the *Order* makes much of the claim that Indian did not provide evidence to demonstrate "regular human presence." *Order* ¶ 30. However, Indian spent its pleadings opposing the mistaken "service provider" exception and the unauthorized *Garziglia Letter*. The *Order* disingenuously says Indian had "numerous opportunities" to address the new standard (¶ 30) when in fact the *Order* announced the new standard for the first time after Indian had submitted its administrative appeal. The *Order* fails to consider the relevant factor that Indian had no opportunity to address the new standard.

*Second*, the *Order* fails to acknowledge that income property can have multiple uses. The Property generates rental income from time to

time as a residence and other income as a communications site. Both have been ongoing simultaneously. The residential portion of the Property is leased to a tenant and has been since April 1, 2023 (17 months as of the date of this Brief), although no one lived there during the FCC proceeding under review here. Yet, the *Order* sees a contradiction between the uses (residence and communications site) - seeming to demand that Indian must choose one or the other. *Order* ¶¶ 26, 28-29. Practically every tall, and many not-so-tall buildings have at least two uses: office or residential building and also rooftop antenna farm. There is nothing unusual about the Property's dual use. Yet, the *Order* uses this false contradiction to conclude that Indian's submissions are not credible. *Id.* The *Order* has not considered the relevant factor that it is common for income property to have multiple uses.

*Third*, the *Order* uses churlish language betraying the author's bias against Indian and cherry picks only the parts of Indian's submissions that support the *Order's* outcome. For example, the Order dismisses one of Indian's submissions stating that Wi-Fi access is important when personnel from wireless providers work at the Property, *Order* ¶¶ 27-29

citing JA 8 5, but seizes on the next paragraph of the same submission which says that Internet access is even more important when no one is there, to allow remote monitoring. *Order* ¶ 30. Indisputably, there was itinerant human presence in the Property, which the *Order* refuses to recognize. The *Orde*r provides no principled distinction between the itinerant use of the President's Lounge in *Continental Airlines* and the Property's itinerant use. Like the Property during this FCC proceeding, no one lived at the President's Lounge; people came and went. The Order fails to consider the relevant factor of itinerant use of both the Property and the President's Lounge.

In the current work-from-home environment, does the Commission really intend to disqualify Wi-Fi in mostly empty buildings that are protected by remote monitoring? The *Order* lacks a limiting principle to distinguish from everyday situations like vacant office buildings.[3] The *Order* is arbitrary and capricious, as unconsidered relevant factors cut against its conclusion. *See Motor Vehicle Mfrs. Ass'n., supra*.

---

[3] Moody's Research predicts office vacancy rate of 24 per cent in 2026. https://ma.moodys.com/rs/961-KCJ-308/images/What will be the impact on office demand from WFH.pdf?version=0 (viewed Jun 28, 2024).

## D. THE FCC VIOLATED INDIAN'S DUE PROCESS RIGHTS

### 1. The FCC Implicated Several Due Process Interests.

Violation of constitutional right is reviewed *de novo*. *See, e.g.*, *Matthews v Eldridge*, 424 U.S. 319 (1976). Multiple due process rights are impacted here. *First*, a legitimate claim of entitlement to a benefit forms a property interest for due process purposes. *Board of Regents of State Colleges Et. al. v. Roth*, 408 U.S. 564, 577 (1972). The Rule establishes such a legitimate claim: "[p]etitions to the Commission must comply with the procedures of paragraphs (f) and (h) of this section *and will be put on public notice*." 47 C.F.R. § 1.4000(e) (emphasis added). Indian's petitions complied with paragraphs (f) and (h), and Indian was entitled to have its petitions placed on public notice and shielded from litigation. The FCC deprived Indian of this property by refusing to open a "proceeding." This cost Indian hundreds of thousands of dollars in legal fees, a *second* form of property deprivation.

*Third*, Indian owns the Property and has a separate property interest in the use of the disputed antennas. The FCC's mishandling of Indian's petitions deprived Indian of this property. *Fourth*, and finally, the Rule

is legislative and is law. FCC officials' refusal to follow the law violated Indian's due process rights.

"No clause in our nation's Constitution has as ancient a pedigree as the guarantee that "[n]o person shall . . . be deprived of life, liberty or property without due process of law." *Ass'n of Am. R.R. v. Dep't of Transp.*, 821 F.3d 19, 27 (D.C. Cir. 2016) (quoting U.S. CONST. AMEND. V). Due process depends on an unbiased tribunal and notice of the proceeding. Henry J. Friendly *Some Kind of Hearing,* 123 U. PA. L. REV. 1267 (1975). The FCC provided neither of these.

## 2. The FCC Refused to Provide an Unbiased Tribunal.

In screening Indian's Petitions, FCC staff flipped the burden of proof against Indian and adjudicated the merits in a procedure not sanctioned by the Rule. "The test for disqualification has been succinctly stated as being whether . . . the agency has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." *Cinderella Career and Finishing Schools, Inc. v. F.T.C.*, 425 F.2d 583, 591 (D.C. Cir. 1970) (internal quotation marks and parenthesis omitted). The FCC pre-judged Indian's case, refusing to hear it within the Rule's

procedure, thereby violating Indian's due process right to an impartial adjudication.

### 3. The FCC Has Not Given Notice.

In claiming that staff gave notice, the letter ruling of July 18, 2022 JA11 (which the *Order* now disowns), cited to two bureau publications that supposedly gave notice of the procedure. First, the two-page *Garziglia Letter*, about an arcane broadcast matter, was implausibly claimed to give notice how staff would treat petitions under the Rule. JA 11 8, citing *John F. Garziglia*, Letter, 28 FCC Rcd 4145, 4146 (MB 2013). JA17  However, one would have to be clairvoyant to find this - according to WestLaw's database of the FCC Record, the *Garziglia Letter* has exactly one Citing Reference, namely the *Order*.  Prior to the *Order*, it had never been cited in the FCC Record and therefore does not carry precedential weight.  The *Garziglia Letter* is obscure and cannot serve as adequate notice.

There was also a previous dismissal of a petition under the Rule, JA11  8, citing *Multifamily Broadband Council*, Letter Order, 32 FCC Rcd 3794, 3795-96 (MB 2017) JA18. However, this letter ruling does

not cite to the *Garziglia Letter*, does not discuss procedure used to handle petitions under the Rule and is in a different posture because there was no zoning enforcement. This fleeting bureau-level "notice" is inadequate. The *Order* doesn't waste time repeating these arguments and sweeps it all under the rug, stating that Indian's due process claims are moot. *Order* ¶¶ 32-36. (Indian's claims are not moot. Indian will file claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80, for damages from violation of its due process rights. Indian seeks a ruling in this proceeding that FCC staff breached their non-discretionary duty, an element of the tort claim.)

The FCC did not inform Indian that there was no "proceeding" until its letter ruling of July 18, 2022, JA9 - over two years after Indian's petition and only after this Court ordered a response in the Mandamus proceeding. JA10. The FCC didn't follow the Rule's procedure, didn't tell Indian it wasn't following the Rule's procedure, and didn't say what procedure it was following. To this day, the FCC has not explained its procedure in processing these petitions. That is an unconstitutional refusal to give notice, in violation of Indian's due process rights.

## RELIEF REQUESTED

Indian respectfully asks this Court to (a) rule that the FCC breached its non-discretionary duty, under 47 C.F.R. § 1.4000 and the U.S. Constitution Fifth Amendment, to place Indian's petitions on public notice, thereby starting a proceeding which would have shielded Indian from zoning enforcement; (b) find that the *Order's* "human presence" requirement is a legislative rule required to be promulgated in a notice-and-comment rulemaking proceeding; and (c) overturn the *Order* as arbitrary and capricious and contrary to law and remand to the FCC for action not inconsistent with this Court's order.

Respectfully submitted,

**/s/ Julian Gehman**

_____
Julian Gehman
Gehman Law PLLC
(202) 341-0198
julian@gehmanlaw.com
Mail to:      P.O. Box 13514,
                  Arlington, VA 22219
Office:       1050 Connecticut Ave NW
                  Suite 500
                  Washington, DC 20036
Attorney for Indian Peak Properties
LLC

## AFFIDAVIT

I, James A. Kay, Jr., hereby declare under penalty of perjury that, except for those facts of which administrative notice may be taken, the facts set forth in the foregoing PETITIONER'S OPENING BRIEF are true and correct to the best of my knowledge, information and belief.

_____
James A. Kay, Jr.

_____
Date

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and this Court's order because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), this document contains 9,079 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Apple Pages in 14-point or greater Times New Roman.

**/s/ Julian Gehman**

Julian Gehman

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing OPENING BRIEF OF PETITIONER

was electronically filed using this Court's CM/ECF system, which will send a notice of filing to all registered CM/ECF users; and

was timely sent by Federal Express, postage prepaid, on the following:

Ms. June S. Ailin
Aleshire & Wynder LLP
3701 Wilshire Blvd., Suite 725
Los Angeles, CA 90010

Teri Takaoka, City Clerk
City of Ranchos Palos Verdes
3940 Hawthorne Blvd.
Rancho Palos Verdes, CA 90275


**/s/ Julian Gehman**

Julian Gehman



## Constitution of the United States

# Fifth Amendment

<div style="float:right; border:1px solid; padding:4px;">Fifth Amendment Explained</div>

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
 Title 5. Government Organization and Employees (Refs & Annos)
  Part I. The Agencies Generally
   Chapter 5. Administrative Procedure (Refs & Annos)
    Subchapter II. Administrative Procedure (Refs & Annos)

5 U.S.C.A. § 553

§ 553. Rule making

Effective: July 25, 2023
Currentness

**(a)** This section applies, according to the provisions thereof, except to the extent that there is involved--

**(1)** a military or foreign affairs function of the United States; or

**(2)** a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

**(b)** General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include--

**(1)** a statement of the time, place, and nature of public rule making proceedings;

**(2)** reference to the legal authority under which the rule is proposed;

**(3)** either the terms or substance of the proposed rule or a description of the subjects and issues involved; and

**(4)** the Internet address of a summary of not more than 100 words in length of the proposed rule, in plain language, that shall be posted on the Internet website under section 206(d) of the E-Government Act of 2002 (44 U.S.C. 3501 note) (commonly known as regulations.gov).

Except when notice or hearing is required by statute, this subsection does not apply--

**(A)** to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

**(B)** when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

**(c)** After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

**(d)** The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except--

    **(1)** a substantive rule which grants or recognizes an exemption or relieves a restriction;

    **(2)** interpretative rules and statements of policy; or

    **(3)** as otherwise provided by the agency for good cause found and published with the rule.

**(e)** Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.

### CREDIT(S)

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 383; Pub.L. 118-9, § 2, July 25, 2023, 137 Stat. 55.)

### EXECUTIVE ORDERS

### EXECUTIVE ORDER NO. 12044

Ex. Ord. No. 12044, Mar. 23, 1978, 43 F.R. 12661, as amended by Ex. Ord. No. 12221, June 27, 1980, 45 F.R. 44249, which related to the improvement of Federal regulations, was revoked by Ex. Ord. No. 12291, Feb. 17, 1981, 46 F.R. 13193, formerly set out as a note under section 601 of this title.

Notes of Decisions (1583)

5 U.S.C.A. § 553, 5 USCA § 553
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part I. The Agencies Generally
      Chapter 7. Judicial Review (Refs & Annos)

5 U.S.C.A. § 702

§ 702. Right of review

Currentness

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

**CREDIT(S)**

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 392; Pub.L. 94-574, § 1, Oct. 21, 1976, 90 Stat. 2721.)

Notes of Decisions (1424)

5 U.S.C.A. § 702, 5 USCA § 702
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted  Limitation Recognized by  Krafsur v. Davenport,  6th Cir.(Tenn.),  Dec. 04, 2013

🚩 KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated
　　Title 5. Government Organization and Employees (Refs & Annos)
　　　　Part I. The Agencies Generally
　　　　　　Chapter 7. Judicial Review (Refs & Annos)

5 U.S.C.A. § 706

§ 706. Scope of review

Currentness

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be--

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

**CREDIT(S)**

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 393.)

Notes of Decisions (5547)

5 U.S.C.A. § 706, 5 USCA § 706
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted  Limitation Recognized by  United States v. Jonas,  5th Cir.(Tex.),  Aug. 14, 2020

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated
   Title 28. Judiciary and Judicial Procedure (Refs & Annos)
     Part IV. Jurisdiction and Venue (Refs & Annos)
       Chapter 85. District Courts; Jurisdiction (Refs & Annos)

28 U.S.C.A. § 1346

§ 1346. United States as defendant

Effective: March 7, 2013

Currentness

**(a)** The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

**(1)** Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

**(2)** Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 7104(b)(1) and 7107(a)(1) of title 41. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

**(b)(1)** Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

**(2)** No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).

**(c)** The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section.

**(d)** The district courts shall not have jurisdiction under this section of any civil action or claim for a pension.

**(e)** The district courts shall have original jurisdiction of any civil action against the United States provided in section 6226, 6228(a), 7426, or 7428 (in the case of the United States district court for the District of Columbia) or section 7429 of the Internal Revenue Code of 1986.

**(f)** The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States.

**(g)** Subject to the provisions of chapter 179, the district courts of the United States shall have exclusive jurisdiction over any civil action commenced under section 453(2) of title 3, by a covered employee under chapter 5 of such title.

## CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 933; Apr. 25, 1949, c. 92, § 2(a), 63 Stat. 62; May 24, 1949, c. 139, § 80(a), (b), 63 Stat. 101; Oct. 31, 1951, c. 655, § 50(b), 65 Stat. 727; July 30, 1954, c. 648, § 1, 68 Stat. 589; Pub.L. 85-508, § 12(e), July 7, 1958, 72 Stat. 348; Pub.L. 88-519, Aug. 30, 1964, 78 Stat. 699; Pub.L. 89-719, Title II, § 202(a), Nov. 2, 1966, 80 Stat. 1148; Pub.L. 91-350, § 1(a), July 23, 1970, 84 Stat. 449; Pub.L. 92-562, § 1, Oct. 25, 1972, 86 Stat. 1176; Pub.L. 94-455, Title XII, § 1204(c)(1), Title XIII, § 1306(b)(7), Oct. 4, 1976, 90 Stat. 1697, 1719; Pub.L. 95-563, § 14(a), Nov. 1, 1978, 92 Stat. 2389; Pub.L. 97-164, Title I, § 129, Apr. 2, 1982, 96 Stat. 39; Pub.L. 97-248, Title IV, § 402(c)(17), Sept. 3, 1982, 96 Stat. 669; Pub.L. 99-514, § 2, Oct. 22, 1986, 100 Stat. 2095; Pub.L. 102-572, Title IX, § 902(b)(1), Oct. 29, 1992, 106 Stat. 4516; Pub.L. 104-134, Title I, § 101[(a)][Title VIII, § 806], Apr. 26, 1996, 110 Stat. 1321, 1321-75; renumbered Title I, Pub.L. 104-140, § 1(a), May 2, 1996, 110 Stat. 1327; amended Pub.L. 104-331, § 3(b)(1), Oct. 26, 1996, 110 Stat. 4069; Pub.L. 111-350, § 5(g)(6), Jan. 4, 2011, 124 Stat. 3848; Pub.L. 113-4, Title XI, § 1101(b), Mar. 7, 2013, 127 Stat. 134.)

Notes of Decisions (4220)

28 U.S.C.A. § 1346, 28 USCA § 1346
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated

  Title 28. Judiciary and Judicial Procedure (Refs & Annos)

    Part VI. Particular Proceedings

      Chapter 158. Orders of Federal Agencies; Review (Refs & Annos)

28 U.S.C.A. § 2342

§ 2342. Jurisdiction of court of appeals

Effective: October 6, 2006

Currentness

The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of--

**(1)** all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47;

**(2)** all final orders of the Secretary of Agriculture made under chapters 9 and 20A of title 7, except orders issued under sections 210(e), 217a, and 499g(a) of title 7;

**(3)** all rules, regulations, or final orders of--

  **(A)** the Secretary of Transportation issued pursuant to section 50501, 50502, 56101-56104, or 57109 of title 46 or pursuant to part B or C of subtitle IV, subchapter III of chapter 311, chapter 313, or chapter 315 of title 49; and

  **(B)** the Federal Maritime Commission issued pursuant to section 305, 41304, 41308, or 41309 or chapter 421 or 441 of title 46;

**(4)** all final orders of the Atomic Energy Commission made reviewable by section 2239 of title 42;

**(5)** all rules, regulations, or final orders of the Surface Transportation Board made reviewable by section 2321 of this title;

**(6)** all final orders under section 812 of the Fair Housing Act; and

**(7)** all final agency actions described in section 20114(c) of title 49.

Jurisdiction is invoked by filing a petition as provided by section 2344 of this title.

**CREDIT(S)**

(Added Pub.L. 89-554, § 4(e), Sept. 6, 1966, 80 Stat. 622; amended Pub.L. 93-584, § 4, Jan. 2, 1975, 88 Stat. 1917; Pub.L. 95-454, Title II, § 206, Oct. 13, 1978, 92 Stat. 1144; Pub.L. 96-454, § 8(b)(2), Oct. 15, 1980, 94 Stat. 2021; Pub.L. 97-164, Title I, § 137, Apr. 2, 1982, 96 Stat. 41; Pub.L. 98-554, Title II, § 227(a)(4), Oct. 30, 1984, 98 Stat. 2852; Pub.L. 99-336, § 5(a), June 19, 1986, 100 Stat. 638; Pub.L. 100-430, § 11(a), Sept. 13, 1988, 102 Stat. 1635; Pub.L. 102-365, § 5(c)(2), Sept. 3, 1992, 106 Stat. 975; Pub.L. 103-272, § 5(h), July 5, 1994, 108 Stat. 1375; Pub.L. 104-88, Title III, § 305(d)(5) to (8), Dec. 29, 1995, 109 Stat. 945; Pub.L. 104-287, § 6(f)(2), Oct. 11, 1996, 110 Stat. 3399; Pub.L. 109-59, Title IV, § 4125(a), Aug. 10, 2005, 119 Stat. 1738; Pub.L. 109-304, § 17(f)(3), Oct. 6, 2006, 120 Stat. 1708.)

Notes of Decisions (233)

28 U.S.C.A. § 2342, 28 USCA § 2342
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated

Title 28. Judiciary and Judicial Procedure (Refs & Annos)

Part VI. Particular Proceedings

Chapter 158. Orders of Federal Agencies; Review (Refs & Annos)

28 U.S.C.A. § 2343

§ 2343. Venue

Currentness

The venue of a proceeding under this chapter is in the judicial circuit in which the petitioner resides or has its principal office, or in the United States Court of Appeals for the District of Columbia Circuit.

**CREDIT(S)**

(Added Pub.L. 89-554, § 4(e), Sept. 6, 1966, 80 Stat. 622.)

Notes of Decisions (8)

28 U.S.C.A. § 2343, 28 USCA § 2343

Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

End of Document      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part VI. Particular Proceedings
Chapter 158. Orders of Federal Agencies; Review (Refs & Annos)

28 U.S.C.A. § 2344

§ 2344. Review of orders; time; notice; contents of petition; service

Currentness

On the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies. The action shall be against the United States. The petition shall contain a concise statement of--

**(1)** the nature of the proceedings as to which review is sought;

**(2)** the facts on which venue is based;

**(3)** the grounds on which relief is sought; and

**(4)** the relief prayed.

The petitioner shall attach to the petition, as exhibits, copies of the order, report, or decision of the agency. The clerk shall serve a true copy of the petition on the agency and on the Attorney General by registered mail, with request for a return receipt.

## CREDIT(S)

(Added Pub.L. 89-554, § 4(e), Sept. 6, 1966, 80 Stat. 622.)

Notes of Decisions (133)

28 U.S.C.A. § 2344, 28 USCA § 2344
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted  Limitation Recognized by   Daniel v. United States,   9th Cir.(Wash.),   May 07, 2018

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part VI. Particular Proceedings
      Chapter 171. Tort Claims Procedure (Refs & Annos)

28 U.S.C.A. § 2674

§ 2674. Liability of United States

Currentness

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.

With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

With respect to any claim to which this section applies, the Tennessee Valley Authority shall be entitled to assert any defense which otherwise would have been available to the employee based upon judicial or legislative immunity, which otherwise would have been available to the employee of the Tennessee Valley Authority whose act or omission gave rise to the claim as well as any other defenses to which the Tennessee Valley Authority is entitled under this chapter.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 983; Pub.L. 100-694, §§ 4, 9(c), Nov. 18, 1988, 102 Stat. 4564, 4567.)

Notes of Decisions (567)

28 U.S.C.A. § 2674, 28 USCA § 2674
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 47. Telecommunications (Refs & Annos)
    Chapter 5. Wire or Radio Communication (Refs & Annos)
      Subchapter IV. Procedural and Administrative Provisions

47 U.S.C.A. § 402

§ 402. Judicial review of Commission's orders and decisions

Effective: October 8, 2010
Currentness

**(a) Procedure**

Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28.

**(b) Right to appeal**

Appeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

**(1)** By any applicant for a construction permit or station license, whose application is denied by the Commission.

**(2)** By any applicant for the renewal or modification of any such instrument of authorization whose application is denied by the Commission.

**(3)** By any party to an application for authority to transfer, assign, or dispose of any such instrument of authorization, or any rights thereunder, whose application is denied by the Commission.

**(4)** By any applicant for the permit required by section 325 of this title whose application has been denied by the Commission, or by any permittee under said section whose permit has been revoked by the Commission.

**(5)** By the holder of any construction permit or station license which has been modified or revoked by the Commission.

**(6)** By any other person who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying any application described in paragraphs (1), (2), (3), (4), and (9) of this subsection.

**(7)** By any person upon whom an order to cease and desist has been served under section 312 of this title.

**(8)** By any radio operator whose license has been suspended by the Commission.

**(9)** By any applicant for authority to provide interLATA services under section 271 of this title whose application is denied by the Commission.

**(10)** By any person who is aggrieved or whose interests are adversely affected by a determination made by the Commission under section 618(a)(3) of this title.

**(c) Filing notice of appeal; contents; jurisdiction; temporary orders**

Such appeal shall be taken by filing a notice of appeal with the court within thirty days from the date upon which public notice is given of the decision or order complained of. Such notice of appeal shall contain a concise statement of the nature of the proceedings as to which the appeal is taken; a concise statement of the reasons on which the appellant intends to rely, separately stated and numbered; and proof of service of a true copy of said notice and statement upon the Commission. Upon filing of such notice, the court shall have jurisdiction of the proceedings and of the questions determined therein and shall have power, by order, directed to the Commission or any other party to the appeal, to grant such temporary relief as it may deem just and proper. Orders granting temporary relief may be either affirmative or negative in their scope and application so as to permit either the maintenance of the status quo in the matter in which the appeal is taken or the restoration of a position or status terminated or adversely affected by the order appealed from and shall, unless otherwise ordered by the court, be effective pending hearing and determination of said appeal and compliance by the Commission with the final judgment of the court rendered in said appeal.

**(d) Notice to interested parties; filing of record**

Upon the filing of any such notice of appeal the appellant shall, not later than five days after the filing of such notice, notify each person shown by the records of the Commission to be interested in said appeal of the filing and pendency of the same. The Commission shall file with the court the record upon which the order complained of was entered, as provided in section 2112 of Title 28.

**(e) Intervention**

Within thirty days after the filing of any such appeal any interested person may intervene and participate in the proceedings had upon said appeal by filing with the court a notice of intention to intervene and a verified statement showing the nature of the interest of such party, together with proof of service of true copies of said notice and statement, both upon appellant and upon the Commission. Any person who would be aggrieved or whose interest would be adversely affected by a reversal or modification of the order of the Commission complained of shall be considered an interested party.

**(f) Records and briefs**

The record and briefs upon which any such appeal shall be heard and determined by the court shall contain such information and material, and shall be prepared within such time and in such manner as the court may by rule prescribe.

**(g) Time of hearing; procedure**

The court shall hear and determine the appeal upon the record before it in the manner prescribed by section 706 of Title 5.

**(h) Remand**

In the event that the court shall render a decision and enter an order reversing the order of the Commission, it shall remand the case to the Commission to carry out the judgment of the court and it shall be the duty of the Commission, in the absence of the proceedings to review such judgment, to forthwith give effect thereto, and unless otherwise ordered by the court, to do so upon the basis of the proceedings already had and the record upon which said appeal was heard and determined.

**(i) Judgment for costs**

The court may, in its discretion, enter judgment for costs in favor of or against an appellant, or other interested parties intervening in said appeal, but not against the Commission, depending upon the nature of the issues involved upon said appeal and the outcome thereof.

**(j) Finality of decision; review by Supreme Court**

The court's judgment shall be final, subject, however, to review by the Supreme Court of the United States upon writ of certiorari on petition therefor under section 1254 of Title 28, by the appellant, by the Commission, or by any interested party intervening in the appeal, or by certification by the court pursuant to the provisions of that section.

## CREDIT(S)

(June 19, 1934, c. 652, Title IV, § 402, 48 Stat. 1093; May 20, 1937, c. 229, §§ 11 to 13, 50 Stat. 197; May 24, 1949, c. 139, § 132, 63 Stat. 108; July 16, 1952, c. 879, § 14, 66 Stat. 718; Pub.L. 85-791, § 12, Aug. 28, 1958, 72 Stat. 945; Pub.L. 97-259, Title I, §§ 121, 127(b), Sept. 13, 1982, 96 Stat. 1097, 1099; Pub.L. 98-620, Title IV, § 402(50), Nov. 8, 1984, 98 Stat. 3361; Pub.L. 104-104, Title I, § 151(b), Feb. 8, 1996, 110 Stat. 107; Pub.L. 111-260, Title I, § 104(d), Oct. 8, 2010, 124 Stat. 2762.)

Notes of Decisions (203)

47 U.S.C.A. § 402, 47 USCA § 402
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

　　　　© 2024 Thomson Reuters. No claim to original U.S. Government Works.

## SEC. 207. RESTRICTIONS ON OVER–THE–AIR RECEPTION DEVICES.

Within 180 days after the date of enactment of this Act, the Commission shall, pursuant to section 303 of the Communications Act of 1934, promulgate regulations to prohibit restrictions that impair a viewer's ability to receive video programming services through devices designed for over-the-air reception of television broadcast signals, multichannel multipoint distribution service, or direct broadcast satellite services.

Code of Federal Regulations
   Title 47. Telecommunication
     Chapter I. Federal Communications Commission (Refs & Annos)
       Subchapter A. General [Changed to "Internet Openness" Effective July 22, 2024] (Refs & Annos)
         Part 1. Practice and Procedure (Refs & Annos)
           Subpart S. Preemption of Restrictions that "Impair" the Ability to Receive Television Broadcast Signals, Direct Broadcast Satellite Services, or Multichannel Multipoint Distribution Services or the Ability to Receive or Transmit Fixed Wireless Communications Signals (Refs & Annos)

47 C.F.R. § 1.4000

§ 1.4000 Restrictions impairing reception of television broadcast signals, direct broadcast satellite services or multichannel multipoint distribution services.

Effective: April 10, 2023

Currentness

(a)(1) Any restriction, including but not limited to any state or local law or regulation, including zoning, land-use, or building regulations, or any private covenant, contract provision, lease provision, homeowners' association rule or similar restriction, on property within the exclusive use or control of the antenna user where the user has a direct or indirect ownership or leasehold interest in the property that impairs the installation, maintenance, or use of:

(i) An antenna that is:

(A) Used to receive direct broadcast satellite service, including direct-to-home satellite service, or to receive or transmit fixed wireless signals via satellite, including a hub or relay antenna used to receive or transmit fixed wireless services that are not classified as telecommunications services, and

(B) One meter or less in diameter or is located in Alaska;

(ii) An antenna that is:

(A) Used to receive video programming services via multipoint distribution services, including multichannel multipoint distribution services, instructional television fixed services, and local multipoint distribution services, or to receive or transmit fixed wireless signals other than via satellite, including a hub or relay antenna used to receive or transmit fixed wireless services that are not classified as telecommunications services, and

(B) That is one meter or less in diameter or diagonal measurement;

(iii) An antenna that is used to receive television broadcast signals; or

(iv) A mast supporting an antenna described in paragraphs (a)(1)(i), (a)(1)(ii), or (a)(1)(iii) of this section; is prohibited to the extent it so impairs, subject to paragraph (b) of this section.

(2) For purposes of this section, "fixed wireless signals" means any commercial non-broadcast communications signals transmitted via wireless technology to and/or from a fixed customer location. Fixed wireless signals do not include, among other things, AM radio, FM radio, amateur ("HAM") radio, CB radio, and Digital Audio Radio Service (DARS) signals.

(3) For purposes of this section, a law, regulation, or restriction impairs installation, maintenance, or use of an antenna if it:

(i) Unreasonably delays or prevents installation, maintenance, or use;

(ii) Unreasonably increases the cost of installation, maintenance, or use; or

(iii) Precludes reception or transmission of an acceptable quality signal.

(4) Any fee or cost imposed on a user by a rule, law, regulation or restriction must be reasonable in light of the cost of the equipment or services and the rule, law, regulation or restriction's treatment of comparable devices. No civil, criminal, administrative, or other legal action of any kind shall be taken to enforce any restriction or regulation prohibited by this section except pursuant to paragraph (d) or (e) of this section. In addition, except with respect to restrictions pertaining to safety and historic preservation as described in paragraph (b) of this section, if a proceeding is initiated pursuant to paragraph (d) or (e) of this section, the entity seeking to enforce the antenna restrictions in question must suspend all enforcement efforts pending completion of review. No attorney's fees shall be collected or assessed and no fine or other penalties shall accrue against an antenna user while a proceeding is pending to determine the validity of any restriction. If a ruling is issued adverse to a user, the user shall be granted at least a 21–day grace period in which to comply with the adverse ruling; and neither a fine nor a penalty may be collected from the user if the user complies with the adverse ruling during this grace period, unless the proponent of the restriction demonstrates, in the same proceeding which resulted in the adverse ruling, that the user's claim in the proceeding was frivolous.

(5) For purposes of this section, "hub or relay antenna" means any antenna that is used to receive or transmit fixed wireless signals for the distribution of fixed wireless services to multiple customer locations as long as the antenna serves a customer on whose premises it is located, but excludes any hub or relay antenna that is used to provide any telecommunications services or services that are provided on a commingled basis with telecommunications services.

(b) Any restriction otherwise prohibited by paragraph (a) of this section is permitted if:

(1) It is necessary to accomplish a clearly defined, legitimate safety objective that is either stated in the text, preamble, or legislative history of the restriction or described as applying to that restriction in a document that is readily available to antenna users, and would be applied to the extent practicable in a non-discriminatory manner to other appurtenances, devices, or fixtures that are comparable in size and weight and pose a similar or greater safety risk as these antennas and to which local regulation would normally apply; or

(2) It is necessary to preserve a prehistoric or historic district, site, building, structure or object included in, or eligible for inclusion on, the National Register of Historic Places, as set forth in the National Historic Preservation Act of 1966, as amended, 16 U.S.C. 470, and imposes no greater restrictions on antennas covered by this rule than are imposed on the installation, maintenance, or use of other modern appurtenances, devices, or fixtures that are comparable in size, weight, and appearance to these antennas; and

(3) It is no more burdensome to affected antenna users than is necessary to achieve the objectives described in paragraphs (b)(1) or (b)(2) of this section.

(c) [Reserved by 85 FR 18146]

(d) Local governments or associations may apply to the Commission for a waiver of this section under § 1.3 of this chapter. Waiver requests must comply with the procedures in paragraphs (f) and (h) of this section and will be put on public notice. The Commission may grant a waiver upon a showing by the applicant of local concerns of a highly specialized or unusual nature. No petition for waiver shall be considered unless it specifies the restriction at issue. Waivers granted in accordance with this section shall not apply to restrictions amended or enacted after the waiver is granted. Any responsive pleadings must be served on all parties and filed within 30 days after release of a public notice that such petition has been filed. Any replies must be filed within 15 days thereafter.

(e) Parties may petition the Commission for a declaratory ruling under § 1.2 of this chapter, or a court of competent jurisdiction, to determine whether a particular restriction is permissible or prohibited under this section. Petitions to the Commission must comply with the procedures in paragraphs (f) and (h) of this section and will be put on public notice. Any responsive pleadings in a Commission proceeding must be served on all parties and filed within 30 days after release of a public notice that such petition has been filed. Any replies in a Commission proceeding must be served on all parties and filed within 15 days thereafter.

(f) Copies of petitions for declaratory rulings and waivers must be served on interested parties, including parties against whom the petitioner seeks to enforce the restriction or parties whose restrictions the petitioner seeks to prohibit. A certificate of service stating on whom the petition was served must be filed with the petition. In addition, in a Commission proceeding brought by an association or a local government, constructive notice of the proceeding must be given to members of the association or to the citizens under the local government's jurisdiction. In a court proceeding brought by an association, an association must give constructive notice of the proceeding to its members. Where constructive notice is required, the petitioner or plaintiff must file with the Commission or the court overseeing the proceeding a copy of the constructive notice with a statement explaining where the notice was placed and why such placement was reasonable.

(g) In any proceeding regarding the scope or interpretation of any provision of this section, the burden of demonstrating that a particular governmental or nongovernmental restriction complies with this section and does not impair the installation, maintenance, or use of devices used for over-the-air reception of video programming services or devices used to receive or transmit fixed wireless signals shall be on the party that seeks to impose or maintain the restriction.

(h) All allegations of fact contained in petitions and related pleadings before the Commission must be supported by affidavit of a person or persons with actual knowledge thereof. An original and two copies of all petitions and pleadings should be addressed to the Secretary at the FCC's main office, located at the address indicated in 47 CFR 0.401(a). Copies of the petitions and related pleadings will be available for public inspection through the Reference Information Center.

**Credits**

[66 FR 2333, Jan. 11, 2001; 66 FR 28841, May 25, 2001; 67 FR 13224, March 21, 2002; 82 FR 41103, Aug. 29, 2017; 85 FR 18146, April 1, 2020; 85 FR 64405, Oct. 13, 2020; 86 FR 11442, Feb. 25, 2021; 88 FR 21435, April 10, 2023]

SOURCE: 56 FR 57598, Nov. 13, 1991; 57 FR 187, Jan. 3, 1992; 58 FR 27473, May 10, 1993; 59 FR 22985, May 4, 1994; 61 FR 45618, Aug. 29, 1996; 61 FR 46561, Sept. 4, 1996; 61 FR 52899, Oct. 9, 1996; 62 FR 37422, July 11, 1997; 63 FR 67429, Dec. 7, 1998; 63 FR 71036, Dec. 23, 1998; 64 FR 63251, Nov. 19, 1999; 65 FR 10720, Feb. 29, 2000; 65 FR 19684, April 12, 2000; 65 FR 31281, May 17, 2000; 66 FR 2333, Jan. 11, 2001; 69 FR 77938, Dec. 29, 2004; 71 FR 26251, May 4, 2006; 74 FR 39227, Aug. 6, 2009; 75 FR 9797, March 4, 2010; 76 FR 43203, July 20, 2011; 77 FR 71137, Nov. 29, 2012; 78 FR 10100, Feb. 13, 2013; 78 FR 15622, March 12, 2013; 78 FR 41321, July 10, 2013; 78 FR 50254, Aug. 16, 2013; 79 FR 48528, Aug. 15, 2014; 80 FR 1268, Jan. 8, 2015; 81 FR 40821, June 23, 2016; 81 FR 52362, Aug. 8, 2016; 81 FR 79930, Nov. 14, 2016; 81 FR 86601, Dec. 1, 2016; 82 FR 8171, Jan. 24, 2017; 82 FR 18581, April 20, 2017; 82 FR 20839, May 4, 2017; 82 FR 24561, May 30, 2017; 82 FR 41103, Aug. 29, 2017; 82 FR 41544, Sept. 1, 2017; 82 FR 55331, Nov. 21, 2017; 82 FR 58758, Dec. 14, 2017; 83 FR 2556, Jan. 18, 2018; 83 FR 4600, Feb. 1, 2018; 83 FR 7401, Feb. 21, 2018; 83 FR 46836, Sept. 14, 2018; 83 FR 47095, Sept. 18, 2018; 83 FR 48963, Sept. 28, 2018; 83 FR 61089, Nov. 27, 2018; 83 FR 63095, Dec. 7, 2018; 84 FR 8618, March 11, 2019; 84 FR 50999, Sept. 26, 2019; 84 FR 57363, Oct. 25, 2019; 86 FR 12547, March 4, 2021; 86 FR 15797, March 25, 2021; 88 FR 63744, Sept. 15, 2023; 89 FR 2149, Jan. 12, 2024; 89 FR 4161, Jan. 22, 2024; 89 FR 45553, May 22, 2024; 89 FR 48514, June 7, 2024, unless otherwise noted.

AUTHORITY: 47 U.S.C. chs. 2, 5, 9, 13; 28 U.S.C. 2461 note; 47 U.S.C. 1754, unless otherwise noted.

Notes of Decisions (32)

Current through June 28, 2024, 89 FR 54327. Some sections may be more current. See credits for details.

---

End of Document    © 2024 Thomson Reuters. No claim to original U.S. Government Works.