ORAL ARGUMENT NOT YET SCHEDULED

CASE NO. 24-1108

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

## INDIAN PEAK PROPERTIES LLC

*Petitioner,*

v.

## THE FEDERAL COMMUNICATIONS COMMISSION &
## THE UNITED STATES OF AMERICA

*Respondents.*

Petition for Review of an Order of the
Federal Communications Commission

**Brief of *Amicus Curiae*, City of
Rancho Palos Verdes**

ALESHIRE & WYNDER, LLP
Elena Gerli, City Attorney, Cal St. Bar No. 228866
*egerli@awattorneys.com*
*William W. Wynder, Bar No. 65627
*wwynder@awattorneys.com*
Alison S. Flowers, Bar No. Pending
*aflowers@awattorneys.com*
Christy Marie Lopez, Bar No. 65607
*clopez@awattorneys.com*
1 Park Plaza, Suite 1000
Irvine, California 92614
Telephone: (949) 223-1170
Facsimile: (949) 223-1180

Attorneys for *Amicus Curiae,*
City of Rancho Palos Verdes

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................4

II. THE FACTUAL BACKDROP FOR THIS APPEAL .........................................5

III. ARGUMENT ...................................................................9

   1. INDIAN PEAK IS BOUND, UNDER PRINCIPLES OF COLLATERAL ESTOPPEL, BY THE FINDINGS OF FACT AND CONCLUSIONS OF LAW OF TWO CALIFORNIA COURTS OF APPEAL & ONE FEDERAL DISTRICT COURT ...................................................................9

   2. THE NOTION THE MERE SUBMISSION OF A PETITION TO THE FCC TRIGGERED A "LITIGATION SHIELD," THEREBY INSTANTANEOUSLY STAYING ALL ON-GOING PROCEEDINGS IN THE CALIFORNIA COURTS, IS A MANIFEST ABUSE OF THE PROCESS AND A MISREADING OF GOVERNING LAW .........................................16

   3. AMICUS JOINS IN THE IN RESPONDENTS' BRIEF ...........................18

IV. CONCLUSION & DISPOSITION ....................................................18

# TABLE OF AUTHORITIES

**Federal Cases**                                                                    **Page(s)**

*B & B Hardware, Inc. v. Hargis Industries, Inc.*,
  575 U.S. 138 (2015) ...........................................................................................14

*FCC 04-41* ...........................................................................................................13

*Henglein v. Colt Industries Operating Corp.*,
  260 F.3d 201 (3d Cir. 2001) ...............................................................................15

Hurd, Jr. v. District of Columbia,
  864 F.3d 671 (2017) ............................................................................................14

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*,
  (7th Cir. 2003) 333 F.3d 763 ..............................................................................15

*In re Nangle*,
  (8th Cir. 2001) 274 F.3d 481 ..............................................................................15

*John Morrell & Co. v. Local Union 304A of United Food and Commercial
  Workers, AFL-CIO*,
  (8th Cir. 1990) 913 F.2d 544 ..............................................................................15

*Local Telecommunications Markets*,
  FCC 00-366 .........................................................................................................12

*Local Telecommunications Markets*,
  FCC 04-41 ...........................................................................................................12

*Lummus Company v. Commonwealth Oil Refining Company,*
  (2d Cir. 1961) 297 F.2d 80...................................................................................15

*Matter of Continental Airlines*,
  FCC 06-157 ..........................................................................................................13

*RecoverEdge L.P. v. Pentecost,*
  (5th Cir. 1995) 44 F.3d 1284 ...............................................................................15

**State Cases**

*Davis v. Davis*,
  663 A.2d 499 (D.C. 1995) .................................................................14

*Doe v. Univ. of So. Cal.*,
  (2018) 28 Cal.App.5th 26 .................................................................11

*Patton v. Klein, M.D.*,
  746 A.2d 866 (1999) .........................................................................14

*Rand v. Board of,*
  *Psych.* (2012) 206 Cal.App.4th 565 .................................................11

**Federal Statutes**

Public Law No. 104-104 .......................................................................10

**Federal Rules**

Federal Rule of Evidence 201 .................................................................5

**Federal Regulations**

46 Code of Federal Regulations § 1.4000 ...................................... 16, 17

46 Code of Federal Regulations § 1.4000(d) .......................................17

46 Code of Federal Regulations § 1.4000(e) .......................................17

46 Code of Federal Regulations § 1.4000(f) ........................................17

46 Code of Federal Regulations § 1.4000(a)(4) ...................................17

47 Code of Federal Regulations § 1.4000(a)(1) ...................................10

**Other Authorities**

Restatement (Second) of Judgments § 27, p. 250 (1980) .......................14

# I.

## INTRODUCTION

*Amicus Curiae*, the City of Rancho Palos Verdes, Los Angeles County, State of California (the "City"), respectfully submits this brief in an effort to "set the record straight" regarding the decades-long proceedings in state and federal court that has now led to the present appeal. The City wishes to assist the Court to provide context and to respond to the misstatements of facts contained in the opening brief of Petitioner ("Opening Brief"), Indian Peak Properties LLC "Indian Peak").

Indian Peak has for decades flouted the City's land use laws, ignored its neighboring families, thinks itself above the law, and in the City's view is simply a bad actor attempting to use this appeal as a *post hoc* end-run around five different state or federal court rulings and two prior rejections from the Federal Communications Commission (the "FCC"). Indian Peak took a peaceful, quiet residential neighborhood along the coastal bluffs of the Palos Verdes Peninsula, and ran a commercial business out of a single-family home by erecting an "antenna farm" (pictured below) on its roof line because of the home's hillside prominence.



For the reasons that follow, the City respectfully urges this Court to summarily dismiss this effort by Indian Peak, using yet another litigation tactic, to attempt one more time to circumvent the City's municipal code and reinstall its antenna farm on the roof of this single-family home. And trying to gain the protection of the FCC's rules by expanding the OTARD rule in a way that was not envisioned by the FCC, not authorized by the statute and inconsistent with the legislative intent. On this effort "hangs the law and [Indian Peak] *profits*."

## II.

## THE FACTUAL BACKDROP FOR THIS APPEAL

The City's conflicts with Indian Peak date back to 2014 and involve a pattern and practice of wholesale circumvention of the City's municipal code. The property in question (26708 Indian Peak Road, Rancho Palos Verdes, California 90275) is a single-family home in an entirely residential neighborhood, smack dab in the middle of this uniquely coastal City in what is predominately a bedroom community.

From 2014 until final judgments were entered by two California Courts of Appeal on November 16, 2021, the home was vacant and had been converted into an antenna farm for commercial purposes (including high frequency UHF antenna in the principal bedroom, rendering the home uninhabitable [pictured below]).[1]

---

[1] Pursuant to Federal Rule of Evidence 201, the City requests the Court to take judicial notice of the following three court decisions, each of which is attached to this *amicus* brief:

*City of Rancho Palos Verdes v. Indian Peak Properties LLC,* California Second Appellate District Case No. B303638, slip op., dated November 16, 2021 (Exhibit "A"), the City's code enforcement case;

*Indian Peak Properties LLC v. City of Rancho Palos Verdes¸* California Second Appellate District Case No. B303325, slip op., dated November 16, 2021 (Exhibit "B"), the Indian Peak counter-suit seeking to block the code enforcement case;

*Indian Peak Properties LLC v. City of Rancho Palos Verdes,* United States District Court, Central District of California, Case No. CV 20-457 DSF (Ex), Order



The City's dispute with Indian Peak began on August 5, 2014, in response to a resident complaint regarding the huge number of antennae existing on the roof of the Indian Peak house. City staff conducted an inspection of the home from the public right-of-way and discovered that Indian Peak had 17 roof-mounted commercial antenna masts located on the home (some of which held multiple antennas and radios), far beyond the five antenna masts authorized pursuant to the City's Conditional Use Permit No. 230 ("CUP 230").[2]

For clarity, under CUP 230, Indian Peak was originally permitted to have a maximum of five vertical antenna masts, which could each have four radiating elements affixed on the masts. Over the course of time, however, Indian Peak added eleven additional antenna masts, which had another approximately fifteen separate

Denying Motion for Preliminary Injunction, dated July 15, 2020 (**Dkt** No. 56) (Exhibit "C"), the Indian Peak federal court action to block the City's code enforcement case.

[2]     CUP 230 was, itself, issued as an after-the-fact permit for "an already-existing, roof-mounted horizontal antenna rack" (a classic Indian Peak practice of "install first, ask permission only if caught"), just the first act in a pattern of wholesale disregard for the City's land use regulations.

antennae, in complete contravention to CUP 230. Indian Peak also added a 4-foot diameter microwave dish on the roof of the residence after the issuance of CUP 230. During this time the residential home remained vacant; except, of course for the commercial activity related the antenna farm.

After years-long efforts[3] by the City to obtain voluntary removal of the illegal antenna array by Indian Peak, the City Council held a duly noticed public hearing and revoked CUP 230. There followed a series of lawsuits, two in state court, followed by two California Courts of Appeal decisions, a foray into federal District Court (which was abandoned by Indian Peak in the face of an adverse preliminary ruling on the merits), and multiple efforts to attract the attention of the FCC. At every turn, the Courts and the FCC have rejected Indian Peak's various claims and legal theories.

In its brief foray into Federal District Court, Indian Peak argued its antenna farm constituted protected "'Over-The-Air Reception Devices,' ordinance-exempt, federally-protected antenna[e] on the roof of a private residence," the same law on which Indian Peak erroneously seeks to rely in the instant proceeding. Indian Peak further argued the City was seeking to enforce zoning restrictions in violation of the federal statutory law.

After filing its federal court action, Indian Peak then brought two *ex parte* applications for a temporary restraining order seeking to prevent the City from taking action to remove the illegal antenna from the home. Both were denied. Indian Peak then filed a motion for preliminary injunction, which was also denied.

---

[3]     It bears noting the City did not immediately resort to litigation to enforce its land use laws. Although not required by law, over the course of the several years, the City attempted to resolve the matter informally with Indian Peak, all to no avail. It was not until November 15, 2018 (some 4 years after the initial resident complaint) the City Council felt compelled to revoke CUP 230 and file its nuisance abatement action against Indian Peak, which was then followed by Indian Peak suing the City in two (2) separate counter-suits. (*See, supra,* n. 1 & cases identified therein.)

The ruling of the federal district judge on the merits of the preliminary injunction motion, found the FCC's OTARD regulations do not apply to "'hub or relay antennas used to transmit signals to and/or receive signals from multiple customer locations.'" The district court further noted that Indian Peak claimed to be the "customers" on the premises, which the court found "suspect given the circumstances," but also that on-site customer use (which would be the resident of the Property) was not the purpose of the antennas.

Most damning, the federal district judge also found that ***Indian Peak is clearly – and fairly openly – attempting to circumvent the generally applicable rules by locating its hub site on its own property – not even an ordinary customer's – and then claiming to also be a customer.*** Within a week of this ruling, Indian Peak filed a motion to voluntarily dismiss its federal court case.

As if these three lawsuits were not enough, Indian Peak mailed its first Petition (of what will become six petitions in total) to the FCC on or about April 17, 2020. Indian Peak asked the FCC to declare the antenna farm installed on the roof of this home as protected pursuant to the FCC's rules providing certain exemptions related to OTARDs.

That mailing was not given a matter or petition number and, on April 22, 2022, the FCC summarily denied the same. Moreover, the FCC rejected Indian Peak's proposition that businesses utilizing or leasing the illegal antenna farm on the roof of the home were "customers" within the meaning of the OTARD rule.

After years and years of refusal to comply with City land use laws, and despite an utter lack of success in both federal and state courts, the unpermitted and illegal antenna farm was finally removed on or about July 27, 2022 in accordance with the permanent injunction issued by the California Court of Appeals (a more than 8-year struggle to obtain compliance with City laws). Indian Peak's compliance was a grudging "bare minimum" compliance in an effort to avoid further enforcement

actions by the City. Below are photographs of the removed antenna being stored on the premises ready for reinstallation the moment Indian Peak can find a way around the City's land use laws.









## III.

## <u>ARGUMENT</u>

**1. INDIAN PEAK IS BOUND, UNDER PRINCIPLES OF COLLATERAL ESTOPPEL, BY THE FINDINGS OF FACT AND CONCLUSIONS OF LAW OF TWO CALIFORNIA COURTS OF APPEAL & ONE FEDERAL DISTRICT COURT**

In its opening brief, Indian Peak attempts a re-write of the facts and law as determined by two California appellate courts. (See, *Indian Peak Properties, supra,*

Exhibit "A," at pp. 2-12: *City of Rancho Palos Verdes, supra,* Exhibit "B," at pp. 2-14.) Principles of collateral estoppel prevent Indian Peak from its efforts at this revisionist history.

While word-count limitations preclude a recitation of the history of the bad faith dealings on the part of Indian Peak with the City, several points found by state and federal courts deserve highlighting here. First, the notion that Indian Peak lost before two California courts of appeal only on "procedural grounds" is a gross mischaracterization of the findings by those two courts. (Opening Brief, p. 5.) As the Second Appellate District noted in its opinion in *Indian Peak Properties, supra,* Exhibit "B," pp. 26-27:

> Indian Peak asserted the federal Telecommunications Act of 1996 (Pub.L. No. 104-104 (Feb. 8, 1996) 110 Stat. 56) prohibited restrictions on "over-the-air reception devices." Specifically, it explained state and local governments are prohibited from restricting a property owner's installation, maintenance or use of antennae used to receive direct broadcast satellite service, video programming service or television broadcast signals, citing 47 Code of Federal Regulations part 1.4000(a)(1). Indian Peak *identified only the satellite dish drum antenna as protected* by this federal regulation . . . . (Emphasis added.)

Indian Peak choose to "wait in the weeds" with respect to its global argument the City could not regulate or remove any of its antenna farm as a public nuisance. This, the California Second Appellate District would not countenance:

> Indian Peak now contends revocation of CUP 230 was arbitrary (or unlawful) because the City proceeded without first obtaining expert testimony concerning the scope of federal preemption of land use regulations potentially impacting Indian Peak's extensive antenna array

> . . . . Because this argument was not presented in the administrative proceedings or the trial court, it is forfeited.

(See, *Indian Peak, supra,* Exhibit "B," at p. 27.) This is litigation filed by Indian Peak against the City in response to the City's nuisance abatement action.

Second, it is disingenuous for Indian Peak to argue the California Court of Appeal rejected its federal preemption arguments on "procedural grounds." One cannot simply hide the ball only to raise a new and expanded argument for the first time on appeal. (*Doe v. Univ. of So. Cal.* (2018) 28 Cal.App.5th 26, 37; *Rand v. Board of Psych.* (2012) 206 Cal.App.4th 565, 587.)

This after-the-fact argument was another attempt by Indian Peak to prevent the California courts from enforcing the law. Fortunately, the Second Appellate District would have none of it, holding:

> In any event, Indian Peak misapprehends the significance of federal preemption. Federal law precludes local restrictions that impair (unreasonably interfere with) certain types of communications-related activities. *It does not mandate local approval of them—that is, the City is not obligated to issue (or continue in effect) a conditional use permit affirmatively authorizing installation and operation of antennae that come within the scope of federal preemption, whatever that may be. . . *. But Indian Peak has provided no legal authority, as was its obligation, for its contention the City acted arbitrarily when it revoked CUP 230.

(*Id.*, Exhibit "B," at p. 28 [emphasis added].)

Third, the Federal District Court in California expressly rejected Indian Peak's preemption argument, which Indian Peak again advances here. In its ruling denying the motion for a preliminary injunction "barring [the City] from removing any antenna from the property at issue or even from entering the property," the District Court reasoned:

[T]he Federal Communications Commission has consistently stated that the OTARD regulation at issue "applies only to antennas at the customer end of a wireless transmission" and generally excludes "hub or relay antennas used to transmit signals to and/or receive signals from multiple customer locations." *In the Matter of Promotion of Competitive Networks in Local Telecommunications Markets*, FCC 00-366, ¶ 99. The FCC has stated that some hub or relay antennas fall within the OTARD regulation when a network is designed with a point-to-point or mesh configuration where customer antennas also forward signals to other customers. *In the Matter of Promotion of Competitive Networks in Local Telecommunications Markets*, FCC 04-41, ¶¶16-18. But "in order to invoke the protections of the OTARD rule, the equipment *must be installed in order to serve the customer on such premises* . . . ." Id. ¶ 17 (emphasis in original).

Plaintiffs now claim to be customers of the companies that are transmitting from the property's antennas. There are three categories of antennas at issue – the "LT-WR antenna," the "One Internet America antenna," and the "Geolinks antenna[s]." . . . [W]hether or not Indian Peak is technically allowed to use the internet services provided by One Internet America and Geolinks, it is obvious that on-site customer use is not the purpose of the antennas. **Indian Peak does not appear to engage in any activities on the site other than hosting the antenna array. Even if it did, it strains credibility that Indian Peak would be a bona fide customer of three separate internet providers for whatever minimal activities that might occur at the property.**

The FCC was clear that opening the OTARD regulation to certain point-to-point and mesh network configurations was not

intended to open an enormous loophole for companies like Plaintiffs to run a hub site free from local zoning regulations. *"[I]n order to invoke the protections of the OTARD rule, "the equipment must be installed in order to serve the customer on such premises, . . . ." FCC 04-41, ¶ 17 (emphasis in original). The use of "in order to" strongly implies that the primary use of the antenna and the reason for its installation must be for the service of the on-site customer.* In another decision, the FCC found that an antenna fell within the OTARD rules specifically because the antenna owner "cannot be considered a carrier that is trying to circumvent section 332(c)(7) by locating a hub site on the premises of a customer." *In the Matter of Continental Airlines*, FCC 06-157, ¶ 21; see also *id*. ¶ 21 n. 68 ("Unlike the targeted subjects of local zoning authorities, Continental's antenna is of a type commonly used by consumers, is located indoors, and is being used to provide service to the antenna user solely within the leased premises.").

**Indian Peak is clearly – and fairly openly – attempting to circumvent the generally applicable rules by locating its hub site on its own property –** *not even an ordinary customer's – and then claiming to* **also** *be a customer.* The available evidence strongly points to the conclusion that the OTARD rule does not apply to the One Internet America and Geolinks antennas at issue in this case and that the FCC did not intend for it to apply.

(See, *Indian Peak Properties, supra,* Exhibit "C," at pp. 2-4 [some emphasis added & some in original].) Following this adverse ruling, Indian Peak immediately sought to dismiss its federal court action. Only after Indian Peak reimbursed the City some of its attorneys' fee for opposing this failed effort would the District Court permit dismissal of that action. This is the federal district court lawsuit Indian Peak filed

against the City in yet another attempt to block the City's nuisance abatement efforts.[4]

The federal court's denial of Indian Peak's motion for preliminary injunction should be given preclusive effect. "The general rule is that '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" (*B & B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 148 (2015) [citing Restatement (Second) of Judgments § 27, p. 250 (1980)].)

"Under D.C. law, issue preclusion generally prevents parties from re-litigating issues of fact or law decided in an earlier proceeding if '(1) the issue was actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.'" (Hurd, Jr. v. District of Columbia, 864 F.3d 671, 680 (2017) (citing *Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995).)[5]

---

[4]     Indian Peak seems to complain about the legal fees it was required to pay the City in one of the two underling state court litigation matters. The fees it was ordered to pay were a small portion of the legal fees incurred by the City in defending or prosecuting three separate legal proceedings, two in state court and one in federal district court – also initiated by Indian Peak. Under the City's municipal code, the City is allowed to recover attorneys' fees only in actions to enforce its municipal code (representing a partial recovery of fees in one of three litigation matters). (*See,* Rancho Palos Verdes Municipal Code § 8.20.090(c).)

[5]     "A privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case. Traditional categories of privies include those who control an action although not parties to it . . . ; those whose interests are represented by a party to the action . . . ; [and] successors in interest.'" (*Patton v. Klein, M.D.*, 746 A.2d 866, 870 (1999) (citations and internal quotations omitted).)

Moreover, under federal law, "'finality' for purposes of issue preclusion is a more pliant concept than it would be in other contexts." (*Henglein v. Colt Industries Operating Corp.*, 260 F.3d 201, 210 (3d Cir. 2001) [internal quotations and citation omitted].) It is widely recognized that the finality requirement is less stringent for issue preclusion than for claim preclusion. Section 13 of the *Restatement Second of Judgments* makes clear that "for purposes of issue preclusion (as distinguished from [claim preclusion]), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." (*Citing, e.g., In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation* (7th Cir. 2003) 333 F.3d 763, 767; *RecoverEdge L.P. v. Pentecost* (5th Cir. 1995) 44 F.3d 1284, 1295.)

In practice, "this may mean '"little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."' [Citation.]" (*In re Nangle* (8th Cir. 2001) 274 F.3d 481, 485, quoting *John Morrell & Co. v. Local Union 304A of United Food and Commercial Workers, AFL-CIO* (8th Cir. 1990) 913 F.2d 544, 563, quoting *Lummus Company v. Commonwealth Oil Refining Company* (2d Cir. 1961) 297 F.2d 80, 89.)

The ruling on Indian Peak's motion for preliminary injunction satisfies the finality requirement, warranting preclusive effect of whether Indian Peak's commercial antennas fall within the OTARD rule. And while the instant Petition is between the FCC and Indian Peak, the City is in privity with the FCC because it is representing the same legal right regarding Indian Peak's claim that its antennae fall within the OTARD rule.

/ / /

/ / /

/ / /

/ / /

## 2. THE NOTION THE MERE SUBMISSION OF A PETITION TO THE FCC TRIGGERED A "LITIGATION SHIELD," THEREBY INSTANTANEOUSLY STAYING ALL ON-GOING PROCEEDINGS IN THE CALIFORNIA COURTS, IS A MANIFEST ABUSE OF THE PROCESS AND A MISREADING OF GOVERNING LAW

Indian Peak mailed its first Petition to the FCC on or about April 17, 2020. Indian Peak asked the FCC to declare the antenna farm installed on the roof of the home as protected pursuant to the FCC's rules providing certain exemptions related to "over the air reception devices" ("OTARDs").

The mailing of this first petition to the FCC was not immediately given a matter or petition number and, on April 22, 2022, the FCC ultimately denied the same. Indian Peak now argues the mere submission of its April 2020, petition should have stayed all efforts of the City to enforce its municipal code and prosecute (by this time on appeal) its nuisance abatement action. Indian Peak relies on 46 C.F.R. § 1.4000(a)(4) for this proposition. However, as the FCC points out in its Respondents' Brief, "the Communications Act authorizes the Commission to 'conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice.' . . . Consistent with this notion, the Bureaus explained that they have previously dismissed OTARD petitions without first initiating a proceeding . . . . " (Respondents' Brief, p. 33.)

Moreover, Section 1.4000(a)(4) is triggered only after a "local government" has applied to the FCC "for a waiver," pursuant to Section 1.4000(d), or once a "petition" to the FCC *or* to a "court of competent jurisdiction to determine whether a particular restriction is permissible," has been filed pursuant to Section 1.4000(e) and served pursuant to Section 1.4000(f). There is nothing in Section 1.4000 that provides that a mere mailing to the FCC *ipso facto* triggers an automatic stay of pre-existing and on-

going state court enforcement proceeding by the City to abate a nuisance, nor do these sections impose a deadline for the FCC to put the same "on public notice."

Equally important, there is nothing in 46 C.F.R. § 1.4000, or any of its sub-sections, that imposes a "litigation shield" upon the mere submission of a petition or request for ruling to the FCC. This is "[p]articularly [true] where, as here, the initiation of a proceeding immediately alters the parties' legal rights by staying local government action . . . the decision not to initiate a proceeding to solicit responsive pleadings on a defective petition is well within the Commission's discretion to 'conduct its proceedings as will best conduce to the proper dispatch of business and the ends of justice.'" (*Id.*)

Further, as the FCC aptly argues "Indian Peak [had no] legitimate 'reliance interest' in being 'shielded from enforcement' by the Commission without the viability of its Petitions being scrutinized first. . . . It is unclear how the Commission could have 'shielded' Indian Peak from enforcement efforts that the City initiated *before* Indian Peak filed its first petition, and ***Indian Peak does not cite a single example of the Commission halting ongoing litigation upon receiving an OTARD petition*** . . . .  In any event, the City did *not* remove Indian Peak's antennas while its Petitions were being considered; Indian Peak removed them *after* the Bureaus ruled but before the Commission decided Indian Peak's Application for Review." (Respondents' Brief, pp. 36-37 [emphasis added & in original].)

Finally, Indian Peak would have this Court and the FCC believe that no matter what antenna is at issue, and no matter how deficient the antenna owner's petition, the FCC is required to put the matter on "public notice."  If such an argument was accurate, it would negatively impact government functions nationwide.  That is, if all petitions were put on public notice, the obligations that would subsequently fall on the FCC (and potentially other federal agencies) and local entities nation-wide would be substantial and have a real potential to exceed the public resources available at both the federal

and local level. As such, not only is there no support or precedent for Indian Peak's position on this matter, public policy dictates that the Court confirm the FCC is not required to put every OTARD petition on public notice, especially when the petition is lacking in merit.

### 3. AMICUS JOINS IN THE IN RESPONDENTS' BRIEF

The City hereby joins in, and adopts herein, the Statement of Facts in the Brief for Respondents, at Section II, subsections "A" & "B," pp. 9-15, and the Argument, also in the Brief for Respondents, at Section II, subsections "A" & "B."

**IV.**

**<u>CONCLUSION & DISPOSITION</u>**

The City respectfully urges this Court to see the pending appeal (and underlying petitions to the FCC) for what it truly is. Using any and every device or strategy imaginable, Indian Peak wants to be allowed to reinstall its antenna farm on a home, City land use laws, the peace and quiet of its neighboring homeowners, and the blight resulting therefrom be damned.

Stored on the premises are each of the illegal antennae just waiting for immediate re-installation. Like its sister courts in California, this Honorable Court should not countenance this effort, see this appeal for what it really is and dismiss the same with prejudice. To do otherwise could force the City to go back to its residents and tell them that, nothing withstanding its decades long effort to protect them from the commercial antenna farm, Indian Peak has accomplished an end run around their peace, quiet, and the general welfare of the community.

It is the City's earnest hope not to be faced with such a task!

DATED: October 24, 2024       ALESHIRE & WYNDER, LLP
ELENA GERLI
WILLIAM W. WYNDER
ALISON S. FLOWERS
CHRISTY MARIE LOPEZ


By:    /s/ William W. Wynder
      WILLIAM W. WYNDER
      Attorneys for Rancho Palos Verdes

EXHIBIT A



Filed: 11/16/21

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CITY OF RANCHO PALOS VERDES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>INDIAN PEAK PROPERTIES, LLC,<br><br>    Defendant and Appellant. | B303638<br><br>(Los Angeles County Super. Ct. No. 18STCV03781) |

APPEAL from a judgment and postjudgment order of the Superior Court of Los Angeles County, Monica Bachner, Judge. Reversed and remanded with directions.

Bradley & Gmelich, Barry A. Bradley and Dawn Cushman for Defendant and Appellant.

Aleshire & Wynder, William W. Wynder, June S. Ailin and Alison S. Flowers for Plaintiff and Respondent.

_____

Indian Peak Properties, LLC appeals the judgment entered in favor of the City of Rancho Palos Verdes in the City's lawsuit to abate a public nuisance. Indian Peak contends the trial court in granting the City's motion for summary judgment misapplied the legal standard for proving a public nuisance and, in any event, triable issues of material fact exist as to the elements of each of the City's three nuisance causes of action and Indian Peak's defenses to them. Indian Peak also argues the court abused its discretion by failing to stay the City's nuisance action pending finality of the decision in Indian Peak's related mandamus action challenging the City's revocation of the conditional use permit authorizing Indian Peak to operate commercial antennae on a residential property. Finally, Indian Peak appeals the postjudgment order awarding the City attorney fees as the prevailing party in the action.

We agree the court erred in granting summary adjudication as to one of the three causes of action alleged in the City's amended complaint. Accordingly, we reverse the judgment with directions and reverse as premature the postjudgment order awarding attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Indian Peak's Conditional Use Permit, Notice of Violation and Revocation*

The City has a municipal ordinance that regulates the installation and operation of commercial antennae. (Rancho Palos Verdes (RPV) Mun. Code, § 17.76.020, subd. (A).) Indian

Peak is in the business of providing commercial and noncommercial radio communications.

On June 21, 2001 James Kay, Jr. (Indian Peak's principal and its predecessor in interest) applied for a conditional use permit authorizing the use for commercial purposes of what he described as preexisting noncommercial amateur antennae on the roof of residential property he owned on Indian Peak Road, Rancho Palos Verdes.[1] At that time there was a horizontal antenna rack mounted on the roof with five vertical antenna masts for the reception and transmission of radio and Internet signals; each mast had four radiating elements. There were also two television antennae on the roof.

The City issued the permit (CUP 230), which, after two proceedings in federal court, ultimately authorized the antenna array as configured in 2001. The resolutions concluding this phase of the parties' ongoing dispute required approval by the city council of an amendment to CUP 230 for any "future

---

[1] The evidence before the trial court on summary judgment concerning the controversy between Indian Peak and the City over Indian Peak's installation and operation of the antennae, which culminated in the revocation of Indian Peak's conditional use permit on August 21, 2018, was essentially identical to the evidence presented in support of and opposition to Indian Peak's petition for a writ of administrative mandamus, the subject of Indian Peak's appeal in *Indian Peak Properties, LLC v. City of Rancho Palos Verdes* (Nov. 16, 2021, B303325) [nonpub. opn.].) On July 15, 2021, although denying Indian Peak's motion to formally consolidate that appeal with this appeal from the judgment in the nuisance action, we advised the parties we would consider the two matters concurrently for purposes of decision. Accordingly, in this opinion we omit some of the history of the dispute, which is described in detail in our opinion in B303325.

changes to the location or configuration or which increase the number or the height of any approved antennae or element" of the original antenna array.

The City received a complaint in August 2014 (nine years after the final resolution modifying CUP 230) regarding the number of commercial antennae on the roof of the property. The City inspected the property and discovered there were now at least 11 vertical antennae (or antenna masts) and other equipment on the roof. On August 15, 2014 the City mailed Indian Peak a notice it was in violation of the provisions of CUP 230 and directed Indian Peak to "[r]emove all but five of the vertical antennae from the roof, and ensure the remaining five antennae meet the requirements as described" in CUP 230 or "[s]ubmit an application to the City, with the required fee, to request a revision to Conditional Use Permit No. 230 to allow the existing antennae to remain."

During the remainder of 2014 the City conducted additional inspections of the property, which confirmed that no changes had been made. A second notice of violation was sent on October 14, 2014, and a final notice on October 28, 2014. The last notice warned, if the violations continued to exist and no revision application was submitted, the matter would be referred to the city attorney's office. Counsel for Indian Peak asserted no revision to CUP 230 was required for the operation of the additional antennae.

Over the next three-plus years the City's attorneys and Indian Peak's counsel exchanged letters regarding the additional antennae, Indian Peak's obligation to comply with CUP 230 and the terms for an application to revise CUP 230. Of particular significance for the issues raised in the City's summary judgment

motion, on May 5, 2016 Indian Peak's counsel proposed, as a compromise, applying for a modification of CUP 230 under the expedited, "over-the-counter" review procedure provided in RPV Municipal Code section 17.76.020, subdivision (A)(12)(b), for new antennae on existing towers (with a $500 filing fee), with approval required only from the City's director of community development, rather than the full process for modification of a residential conditional use permit. In a July 26, 2016 response the City explained CUP 230 expressly required that any additions to the antenna array be approved by the city council or through a formal modification of the conditional use permit, so the expedited process could not be used. However, the City agreed to a lower fee for the application and authorized Indian Peak to submit with its application only the information required under the expedited process, rather than the more extensive information required for an amendment to a conditional use permit.

Indian Peak submitted an application for revision of CUP 230 on October 28, 2016. On November 23, 2016 City staff notified Indian Peak it had reviewed the application and "due to missing information and/or inconsistencies between the project plans and submitted application, it has been determined that the application is incomplete." City staff provided a detailed summary of the items that needed clarification or amplification and listed the additional information required. Counsel for Indian Peak objected to the request, insisting it had provided all the information required by the City's July 26, 2016 letter.

The matter remained unresolved. Indian Peak did not provide any additional information, and the City did not process the revision application. On August 2, 2018 the City issued a

notice of public hearing to consider revocation of CUP 230 "because of the Installation of unpermitted antennas exceeding the maximum of 5 Council-approved, roof-mounted antennae and support pole masts." The hearing was scheduled for August 21, 2018.

Indian Peak retained new counsel, who requested an extension of time to respond to the notice and a continuance of the revocation hearing. The request was denied.

Indian Peak's counsel submitted a written response to the notice, which stated Indian Peak was willing to work with the City and requested an additional 60 days to provide the documentation required for its application to revise CUP 230. At the August 21, 2018 hearing Indian Peak's counsel explained that with additional time she expected Indian Peak would "work with the City as far as removing some of the antennas but not all of the antennas that have been placed on here since the issuance of the original conditional use permit." Following counsel's comments, a staff presentation and public testimony from four neighbors, the city council voted to adopt resolution no. 2018-61 revoking CUP 230 in its entirety, effective immediately.

2. *The City's Lawsuit To Abate a Public Nuisance and Indian Peak's Petition for Writ of Administrative Mandamus*

On August 29, 2018 the City sent Kay a cease-and-desist demand notice, explaining CUP 230 had been revoked because of the installation of unpermitted roof-mounted antennae and directed that "all antennae-related operations cease and desist, and that all roof-mounted antennas must be removed from the

premises immediately." The notice warned that noncompliance would result in immediate enforcement action.

On November 5, 2018 the City filed its original complaint in this action, alleging the existence of a public nuisance and seeking its abatement. The complaint named as defendants Indian Peak, Lucky's Two Way Radio (a Nevada corporation) and Kay, and alleged three causes of action for public nuisance and a cause of action for violation of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.).

Indian Peak filed a complaint for damages and petition for writ of administrative mandamus pursuant to section 1094.5 on November 19, 2018. The writ causes of action sought to compel the City to set aside its resolution revoking CUP 230 and either hold a new public hearing providing Indian Peak with an adequate opportunity to present a defense or determine Indian Peak's application for a revision to CUP 230 on the merits. In support of the writ petition, Indian Peak argued it had been denied due process and deprived of a fair hearing because its counsel was not provided a reasonable opportunity to prepare and present a defense. It also argued the City's action in revoking CUP 230 was arbitrary and capricious because the restrictions imposed were prohibited (or preempted) by federal law and the City had failed to consider the merits of its application for a revision to CUP 230.

After Indian Peak demurred to the original complaint, the City on February 13, 2019 filed the operative first amended complaint to abate a public nuisance, which named only Indian Peak as a defendant. The first cause of action alleged Indian Peak maintained a public nuisance based on its installation and operation of commercial antennae in violation of CUP 230, which

constituted a violation of the RPV Municipal Code.  The second
cause of action alleged Indian Peak maintained a public nuisance
based on its operation of commercial antennae without an
approved conditional use permit, which violated a separate
provision of the RPV Municipal Code.  The third cause of action
for maintaining a public nuisance, brought pursuant to Civil
Code sections 3479 and 3480 (mislabeled as provisions of the
Code of Civil Procedure), alleged the installation and operation of
commercial antennae by Indian Peak on its property "are
injurious to the public health, safety, and welfare and are so out
of harmony with community standards and permissible land use
to constitute a public nuisance and/or public nuisance per se."
The City requested that Indian Peak be enjoined from installing
or operating any unpermitted antennae and ordered to abate all
conditions causing the nuisances described in the pleading.  The
first amended complaint also requested an order that Indian
Peak pay all outstanding citations, fines and penalties and that
the City recover its costs of suit, including reasonable attorney
fees.

Indian Peak filed a verified answer on March 19, 2019.[2]
Among its 19 affirmative defenses Indian Peak alleged the City

---

[2]    Indian Peak's verified answer contained a lengthy
"statement of facts," including, as paragraph KK, that, "[s]ince
the City granted CUP No. 230, the only changes at the Subject
Property were the number and type of antennas mounted on the
horizontal support cross-arm.  It is incorrect for the City to assert
that vertical antenna masts, or elements on those masts are
'additional towers.'  There is only one tower and one horizontal
cross-arm support structure to which the vertical antenna masts
are attached."

had consented to its conduct and the operative complaint was preempted by federal law.

3. *The City's Motion for Summary Judgment; Indian Peak's Opposition and Request for a Stay of the Action*

On March 26, 2019, one week after Indian Peak answered the first amended complaint, the City moved for summary judgment or, in the alternative, for summary adjudication. As to its first two causes of action the City argued the evidence established Indian Peak installed and operated antennae not authorized by CUP 230, which violated RPV Municipal Code section 17.060.080 and constituted a nuisance per se under RPV Municipal Code section 1.08.010, subdivision (D), and continued to operate the antennae after CUP 230 was revoked, which violated RPV Municipal Code section 17.76.020, subdivision (A), and also constituted a nuisance per se. As to its third cause of action for maintaining a public nuisance in violation of Civil Code sections 3479 and 3480, the City argued the undisputed facts established Indian Peak's operation of the commercial antennae impaired the public's use and enjoyment of the surrounding properties.

As part of the evidence in support of its motion, the City submitted the declaration of E. Lee Afflerbach, a telecommunications engineer, whose company had been retained by the City's counsel to provide a technical review of the equipment authorized by CUP 230 and the equipment currently installed on Indian Peak's property and to opine whether the current equipment was the same as the equipment permitted by CUP 230, a modification of that equipment or an addition to it. In his declaration Afflerbach explained, "The five vertical antenna 'masts' on the property at the time CUP No. 230 was

approved were vertical self-supporting antenna masts, each with four (4) radiating elements. The 'masts' did not have a separate support structure. These antennas were designed to transmit and receive communication signals to and from hand-held and vehicle-mounted radios." According to Afflerbach, the original five antenna masts were still on the property's roof but had been moved to a slightly different position. "In addition to these self-supporting antenna masts, the property has eleven (11) additional antenna masts. Attached to these 11 additional masts are approximately fifteen (15) separate antennas. These antennas have different functionalities from the antennas affixed to the original five antenna masts. These antennas are designed to provide wireless internet service provider signals. In addition to these 11 antenna masts and 16 antennas, one (1) 4-foot-diameter microwave dish has also been installed on the property subsequent to the issuance of CUP No. 230. This dish is designed to create a communications link between two specific locations. None of these additional antennas is consistent with CUP No. 230, nor could the antennas be considered as modifications to the masts and antennas allowed by CUP No. 230."

Indian Peak filed an untimely opposition on June 21, 2019, which did not address the merits of the City's motion. Instead, after explaining that the attorney with responsibility for the case had unexpectedly left the law firm representing it, Indian Peak requested a stay of the proceedings pending resolution of Indian Peak's mandamus action or, alternatively, a continuance of the motion hearing for at least 50 days pursuant to Code of Civil

Procedure section 437c, subdivision (h),[3] because of the need for additional discovery to respond to the motion.[4]

Concurrently with its opposition memorandum Indian Peak filed an ex parte application pursuant to California Rules of Court, rule 3.1204 for an order staying the nuisance action or continuing the summary judgment hearing or, alternatively, for an order shortening time for the filing and hearing of a noticed motion seeking a stay or continuance. The City opposed the ex parte application. With respect to the requested stay of proceedings due to the pendency of Indian Peak's mandamus action, the City emphasized that two of its three nuisance causes of action did not depend on the revocation of CUP 230 and pointed out that Indian Peak had filed its mandamus petition and damage claims as an independent proceeding after the nuisance lawsuit was filed, rather than as a cross-complaint, and had made no effort to consolidate or relate the two actions. The trial court granted the application in part, continuing the summary judgment motion hearing eight weeks (to August 27, 2019).

On August 13, 2019 Indian Peak again applied ex parte to continue the summary judgment hearing, this time for an additional 45 days, to permit it to complete additional discovery necessary for it to prepare its opposition memorandum and "to determine and analyze what appears to be the adverse resolution

---

[3]    Statutory references are to this code unless otherwise stated.

[4]    The trial court had previously granted the parties' stipulated request to continue the hearing 21 days to allow Indian Peak to depose the City's director of community development.

of the Administrative Mandamus Hearing in the companion case pending between the parties."[5]  The application, not heard until after Indian Peak had filed its opposition to the summary judgment motion, was denied as moot.[6]

In its supplemental opposition papers filed August 13, 2019 Indian Peak argued the City had failed to present evidence showing any condition on its property could be considered injurious to public health or adversely affecting the public's enjoyment of life or property.  In addition, Indian Peak argued the City had not carried its burden of proof because it consented to the original installation of the antennae and authorized Indian Peak to submit a revision application concerning the additional antennae.  Indian Peak also requested a continuance of the hearing because further discovery was required and the mandamus action was still pending.[7]  Indian Peak filed objections

---

[5]  On August 9, 2019, two court days before Indian Peak's application, the superior court had issued its 10-page ruling denying Indian Peak's petition for writ of administrative mandamus.  Indian Peak noted in its application the ruling was neither a judgment nor a final appealable order (because Indian Peak's damage claims remained pending).

[6]  The application could not be heard on August 13, 2019 in Department 71, where the City's nuisance case was pending, and was submitted instead to Department 72.  Rather than rule on the merits, the court "on its own motion" continued the application to August 20, 2019 in Department 71—one week after Indian Peak's deadline for filing its opposition papers under section 437c, subdivision (b)(2).

[7]  Requesting a continuance of the summary judgment hearing date, not a stay of the proceedings, Indian Peak asserted, "There is no existing Order in the Mandamus Action and no Order will become final for another 60 days, at the very least.

to numerous portions of the declarations submitted by the City in support of its motion, including Afflerbach's expert declaration. The City filed a reply memorandum supporting its motion and arguing further delay of the hearing was unjustified and the additional discovery sought by Indian Peak was unnecessary.

At the hearing on August 28, 2019 the court granted Indian Peak's request to continue the matter, setting a new hearing date of October 29, 2019. The court found persuasive Indian Peak's argument it needed certain additional discovery relating to its contention the City's code enforcement had been arbitrary, but rejected other arguments it advanced.

Indian Peak submitted a second supplemental opposition and supporting papers on October 16, 2019, which included a request for a stay because the now-final judgment in the mandamus action had been appealed to this court. In these opposition papers Indian Peak argued the City had acted arbitrarily and contrary to its custom and practice in revoking CUP 230 and asserted its installation of federally protected, exempt antennae was privileged. The City filed a supplemental reply, which, in addition to responding to the substantive points in Indian Peak's papers, argued a stay of an action could not be sought in an opposition memorandum and noted this court had denied Indian Peak's petition for a writ of supersedeas to stay the City's order revoking CUP 230 and related enforcement actions pending determination of the mandamus appeal.

The summary judgment hearing was held on October 29, 2019. The court provided a tentative ruling, heard argument and took the matter under submission. Ten days later (November 8,

_____

Therefore, the lack of finality of the Mandamus Action compels a continuance of this hearing."

2019) Indian Peak filed a motion to abate and stay all proceedings pending the appeal in the mandamus action. The scheduled hearing date for the motion was March 3, 2020. The following week Indian Peak applied without statutory notice to stay the proceedings or, in the alternative, to specially set its noticed motion to abate and stay for some time in December 2019. On the same day the court denied the application without prejudice because it did not "meet the standards under California Rules of Court."

### 4. *The Trial Court's Order Granting Summary Judgment*

The trial court granted the City's motion for summary judgment in a 17-page ruling issued November 20, 2019. Addressing at the outset Indian Peak's request for a stay of the City's nuisance action pending an appellate decision in Indian Peak's mandamus action, the court stated Indian Peak had failed to demonstrate how the first cause of action for operating commercial antennae in violation of CUP 230 was implicated by Indian Peak's challenge to the revocation of CUP 230 or how a decision on the second cause of action based on the evidence before the court and in a manner that did not conflict with the superior court's denial of Indian Peak's petition would be premature. Nonetheless, the court declined to rule on the request because, by making it in its supplemental opposition papers, rather than a noticed motion, Indian Peak had not given the parties an opportunity to fully brief the issues and present evidence in support of and opposition to the proposed stay.

Turning to the merits of the City's motion,[8] as to the first cause of action, installation and operation of commercial antennae in violation of the existing conditional use permit, the court ruled the City had provided evidence (which the court summarized) that Indian Peak had violated the conditions of CUP 230, constituting a nuisance per se, and that Indian Peak, with the burden shifted to it, had failed to demonstrate a triable issue of material fact as to the elements of the City's case or any defense to it.[9] The court explained the federal Telecommunications Act of 1996 (TCA) (Pub.L. No. 104-104 (Feb. 8, 1996) 110 Stat. 56), which Indian Peak asserted exempted its installation of antennae from local enforcement action, does not preclude a city from regulating personal wireless service facilities. Instead, the court continued, it prohibits regulation that unreasonably discriminates among providers of personal wireless services or has the effect of prohibiting the provision of those services, citing title 47 United States Code section 332(c)(7). Although Indian Peak claimed the City had unreasonably discriminated against it by determining it had violated CUP 230 and initiating enforcement proceedings based on a single complaint and without determining the function of its

---

[8]     The court overruled all of the multiple evidentiary objections filed by Indian Peak to the City's evidence and the two objections to Indian Peak's evidence filed by the City.

[9]     The court added that Kay, in his declaration in opposition to the motion, admitted he had "'added antenna to the subject property'" since issuance of CUP 230 and had "explain[ed] the purposes of the 'additional antenna added' as distinct from the original five antennae. [Citation.] Accordingly, there is no triable issue of material fact that antennae were added to the property in violation of the provisions of CUP 230."

additional antennae, the court found that none of the evidence submitted by Indian Peak created a triable issue of fact as to whether the City's actions were discriminatory.  Because the City had determined Indian Peak's revision application was incomplete, the court reasoned, neither the failure of the City to consider that application nor the length of time that revision applications were pending from other providers without initiation of enforcement action by the City constituted evidence of discrimination.  Noting the City's first notice of violation was given in August 2014, four years prior to the revocation hearing, the court found Indian Peak had presented no evidence it was not provided a reasonable opportunity to cure its violations of the conditions of CUP 230.

The trial court also found Indian Peak had submitted no evidence the City consented to the operation of the commercial antennae, either by virtue of the provisions of the original conditional use permit or through the exchange of correspondence relating to submission of a revision application.  Similarly, the court found there was no evidence the City had failed to follow its own custom and practice with respect to following up on the incomplete revision application, but that, even if it had, that failure was irrelevant to whether Indian Peak's operation of antennae violated the provisions of CUP 230.[10]  And the

---

[10]     Reviewing the evidence before it, the court explained the City had followed up with Indian Peak multiple times regarding its operation of additional antennae, the need for an amendment to CUP 230 and the information necessary for a revision application to be processed.  There was no evidence the City's failure to contact Indian Peak after February 2018 when promised (and necessary) supplemental materials were not submitted violated its normal practice.

declaration submitted with Indian Peak's opposition indicating the provision of certain services would be adversely affected by the City's enforcement of its municipal code against Indian Peak did not demonstrate any discriminatory action by the City.[11]

As to the second cause of action, operation of commercial antennae without a valid conditional use permit, the City's evidence of the circumstances leading to the revocation of CUP 230 and Indian Peak's continued operation of the commercial antennae following that revocation and the City's notice to cease and desist constituted sufficient evidence of a nuisance per se. Again, the court found, Indian Peak failed to demonstrate a triable issue of fact regarding the elements of the cause of action or a defense to it. The same arguments and evidence regarding the City's purported discriminatory actions advanced in response to the first cause of action failed as to the second cause of action as well.

Finally, the court stated the City's third cause of action pursuant to Civil Code section 3479 was based on Indian Peak's

_____

[11]     Elaborating on this point when considering it in connection with the City's second cause of action, the court explained, "A declaration from Defendant's customer asserting that revoking Defendant's CUP would cause a decrease in that customer's ability to provide coverage for its own customers does not address whether or how Plaintiff's revocation (or enforcement of its municipal code) was discriminatory or arbitrary. Absent any evidence that Plaintiff otherwise has not revoked CUPs held by entities that provide radio services that benefit the public notwithstanding the CUP holder's violation of the terms of the CUP, Defendant's evidence that revocation of Defendant's CUP may cause harm to its customer does not create a triable issue of material fact as to whether Plaintiff's revocation was discriminatory or arbitrary."

alleged violations of the City's municipal code, as asserted in the first two causes of action, and thus "appears to be duplicative" of those causes of action "in that, provided that Plaintiff established Defendant's conduct is in violation of one or both of the referenced code sections, and that Defendant has no defenses, it has established nuisance per se.  As such, it appears that if Plaintiff prevails on either of the first two causes of action, it also prevails on the instant cause of action."

The court granted the City's motion for summary judgment and, "for appeal purposes only," separately granted the motion for summary adjudication as to the first, second and third causes of action.  Judgment was entered on December 5, 2019.  Indian Peak filed a timely notice of appeal on January 13, 2020.

5. *The Postjudgment Award of Attorney Fees*

Following entry of judgment the City on December 18, 2019 moved for an award of $114,220 in attorney fees as the prevailing party in the action pursuant to Code of Civil Procedure section 1033.5, subdivision (a)(10)(B); Government Code section 38773.5, subdivision (b); and RPV Municipal Code section 1.08.10, subdivision (D)(3).[12]  Indian Peak opposed the

---

[12]     Code of Civil Procedure section 1033.5, subdivision (a)(10)(B), allows an award of attorney fees as costs when authorized by statute.  Government Code section 38773.5, subdivision (b), authorizes a city, by ordinance, to provide for the recovery of attorney fees by the prevailing party in any action to abate a nuisance.  RPV Municipal Code section 1.08.010, subdivision (D)(3), in turn, provides, "The prevailing party in any proceeding associated with a violation of the code, the abatement of a public nuisance, or where a violation of any provision of the code has been declared a public nuisance, shall be entitled to recovery of attorneys' fees incurred in any such proceeding, where the city has

motion, contending as a practical matter the City was not yet the prevailing party because the related mandamus action had not yet been finally determined.  It also argued the City had not prevailed on the dismissed fourth cause of action in the original complaint (for unfair competition) and challenged the reasonableness of the fees requested, pointing to particular instances of duplicative work by lawyers and attorney time for the mandamus action that was billed to this case.  It sought a reduction of fees requested (if any were awarded) of $24,316.50.

The court granted the motion, modestly reducing the amount requested, and awarded the City $107,791.50 in attorney fees.

On March 16, 2020 Indian Peak filed a timely notice of appeal from the postjudgment order.  At Indian Peak's request we consolidated its January 13, 2020 and March 16, 2020 appeals.

## DISCUSSION

1. *Standard of Review*

    a. *Summary judgment*

A plaintiff may move for summary judgment "if it is contended . . . that there is no defense to the action or proceeding" (§ 437c, subd. (a)) and for summary adjudication of a cause of action "if the plaintiff asserts there is 'no defense' to that cause of action."  (*Paramount Petroleum Corp. v. Superior Court* (2014) 227 Cal.App.4th 226, 241.)  The plaintiff has carried his or her burden of showing there is no defense to a cause of action "if that party has proved each element to the cause of action entitling the

---

elected, at the initiation of that individual action or proceeding, to seek recovery of its own attorneys' fees."

party to judgment on the cause of action." (§ 473c, subd. (p)(1); see *Paramount Petroleum*, at pp. 239-240 ["a plaintiff can seek summary judgment by contending there is 'no defense' to the action, and it proves there is 'no defense' by establishing every element of its causes of action"].) The motion is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 473c, subd. (c).)

We review a grant of summary judgment de novo (*Samara v. Matar* (2018) 5 Cal.5th 322, 338) and, viewing the evidence in the light most favorable to the nonmoving party (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618), decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)

      b. *Attorney fees*

We review the legal basis for an award of attorney fees de novo and the amount of fees awarded for abuse of discretion. (See *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 ["'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo'"]; *Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 406 [same]; see also *Galan v. Wolfriver Holding Corp.* (2008) 80 Cal.App.4th 1124 [the trial court has broad discretion to determine which party is a prevailing party within the meaning of statutes authorizing attorney fees].)

2. *Governing Law*

a. *Public nuisances (nuisances in fact)*

Civil Code section 3479 defines a nuisance as "[a]nything which is injurious to health, . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ." Civil Code section 3480, in turn, provides, "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."[13]

"Unlike the private nuisance—tied to and designed to vindicate individual ownership interests in *land*—the 'common' or *public* nuisance emerged from distinctly different historical origins. The public nuisance doctrine is aimed at the protection and redress of *community* interests and, at least in theory, embodies a kind of collective ideal of civil life which the courts have vindicated by equitable remedies since the beginning of the 16th century." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1103.) "Of course, not every interference with collective social interests constitutes a public nuisance. To qualify . . . the interference must be both *substantial* and *unreasonable*." (*Id.* at p. 1105.) "'It is substantial if it causes significant harm and unreasonable if its social utility is outweighed by the gravity of the harm inflicted.'" (*People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 112; accord, *County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 305; see CACI

---

[13]     "Every nuisance not included in the definition of [Civil Code section 3480] is private." (Civ. Code, § 3481.)

No. 2020 [to establish a claim for public nuisance, the plaintiff must prove, among other elements, that the seriousness of the harm outweighs the social utility of the defendant's conduct].)

      b. *Nuisance per se*

"The concept of a nuisance per se arises when a legislative body with appropriate jurisdiction, in the exercise of the police power, expressly declares a particular object or substance, activity, or circumstance, to be a nuisance. . . . [W]here the law expressly declares something to be a nuisance, then no inquiry beyond its existence need be made and in this sense its mere existence is said to be a nuisance per se." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1206-1207; accord, *Urgent Care Medical Services v. City of Pasadena* (2018) 21 Cal.App.5th 1086, 1095 ["'"[n]uisances per se are so regarded because no proof is required, beyond the actual fact of their existence, to establish the nuisance"'"]; *City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1086 ["[a]n act or condition legislatively declared to be a public nuisance is '"a nuisance per se against which an injunction may issue without allegation or proof of irreparable injury"'"].)

Government Code section 38771 provides, "By ordinance the city legislative body may declare what constitutes a nuisance." (See *City of Bakersfield v. Miller* (1966) 64 Cal.2d 93, 100 ["[c]ity legislative bodies are empowered by Government Code section 38771 to declare what constitutes a nuisance"]; *Clary v. City of Crescent City* (2017) 11 Cal.App.5th 274, 288-289.) The City in RPV Municipal Code section 1.08.010, subdivision (D)(1), has specified, "[A]ny condition caused or permitted to exist in violation of the provisions of this code shall be deemed a public nuisance and may be abated as such at law or

equity." As pertinent here, RPV Municipal Code
section 17.76.020, subdivision (A), provides, "The installation
and/or operation of a commercial antenna shall require the
submittal and approval of a conditional use permit." Pursuant to
RPV Municipal Code section 17.60.080, "[i]f any of the conditions
to the use or development are not maintained, then the
conditional use permit shall be null and void. Continued
operation of a use requiring a conditional use permit after such
conditional use permit expires or is found in noncompliance with
any condition of a conditional use permit shall constitute a
violation of this title."

     3. *The Trial Court Did Not Abuse Its Discretion by*
       *Declining To Rule on Indian Peak's Procedurally*
       *Improper Request for a Stay*

Ignoring its own procedural failures, as well as the
shortcomings of its argument on the merits, Indian Peak
contends the trial court abused its discretion by not ruling on its
request to stay the nuisance action pending final resolution of the
mandamus proceedings, a request it included in its second
supplemental opposition to the City's motion for summary
judgment, filed October 16, 2019, rather than through a noticed
motion. (Cf. *Bains v. Moores* (2009) 172 Cal.App.4th 445, 480
[trial court's denial of a motion for a stay reviewed for abuse of
discretion].) In doing so, Indian Peak argues, the court
improperly "elevate[d] form over substance."

The requirement of a properly noticed motion to seek
affirmative relief, however, is not a mere technicality, but a
fundamental procedural rule designed to protect the rights of the
parties. As the trial court explained in declining to rule on the
stay request, the inclusion of an affirmative request in opposition

papers filed less than two weeks before the continued summary judgment hearing deprived the City of a fair opportunity to respond with argument and evidence in opposition. (See *Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 930 [the requirements for a noticed motion in section 1010 are "intended to provide both the adverse party and the court with an adequate opportunity to address the issues presented"].) Requesting a stay in this belated and procedurally irregular manner was entirely unnecessary: Even putting aside that it was Indian Peak's decision not to file the mandamus action as a cross-complaint in the City's lawsuit or seek to have the two matters consolidated, Indian Peak could have moved for abatement or stay of the mandamus action as early as January 2019 when it demurred to the City's original nuisance complaint; yet it elected not to do so. When the trial court did not rule on Indian Peak's June 21, 2019 ex parte application for a stay of the case, granting instead its alternate request for a continuance of the hearing date to permit additional discovery, Indian Peak again chose not to file a noticed motion to obtain the relief it purportedly wanted. Then, when it filed its first supplemental opposition on August 13, 2019, Indian Peak asked the court to continue the hearing 60 days to permit the superior court's August 9, 2019 order denying the petition for writ of administrative mandamus to become final (and to permit additional discovery); it did not request a stay of the proceedings, either in its opposition papers or by separate motion. Having made these tactical decisions, Indian Peak cannot now complain of the consequences.

To be sure, section 437c, subdivision (h), as Indian Peak argues on appeal, authorizes the court to continue the summary

judgment hearing or "make any other order as may be just" if a party opposing the motion makes a sufficient showing in its opposition papers that "facts essential to justify opposition may exist but cannot, for reasons stated, be presented."  Indian Peak's reliance on this section is doubly flawed.  First, Indian Peak did not cite section 437c, subdivision (h), in its second supplemental opposition papers to support its request for a stay.  (Indeed, in its original opposition papers, when it requested either a stay or a continuance of the hearing to conduct additional discovery, Indian Peak cited section 437c, subdivision (h), to support the latter request, but not the former.)  Second, the stay was not sought because facts "may exist" that would support Indian Peak's opposition, the prerequisite for any order under section 437c, subdivision (h).  Rather, Indian Peak simply hoped facts would develop in the future (a reversal on appeal) that would aid in its defense to the nuisance lawsuit.  (Cf. *Bains v. Moores*, *supra*, 172 Cal.App.4th at pp. 485-486 [denying stay pending resolution of criminal proceedings to permit discovery from witnesses asserting their constitutional right not to incriminate themselves; plaintiffs "do not address the likelihood that the related criminal proceedings would be resolved within a reasonable period of time so as to allow plaintiffs to obtain such evidence"].)

In addition to being procedurally improper, Indian Peak's stay request was substantively deficient.  As the trial court observed, Indian Peak failed to explain how the mandamus action challenging revocation of CUP 230 based on the City's purported failure to provide Indian Peak a fair hearing (by denying its newly retained counsel a continuance) and arbitrary action (revoking the conditional use permit while its revision

application was pending) could affect the first cause of action, which established a nuisance per se because Indian Peak had admittedly installed and operated commercial antennae not authorized by CUP 230. Whatever the appropriate exercise of discretion might have been in response to a properly noticed motion to stay the second cause of action, the trial court did not abuse its discretion when it declined to rule on Indian Peak's procedurally irregular request to stay the entire nuisance lawsuit.

4. *The City Established the Elements of Its First and Second Causes of Action but Not Its Third Cause of Action for Public Nuisance*

a. *The first and second causes of action*

The City presented evidence, including Afflerbach's expert declaration, establishing that Indian Peak had installed and operated commercial antennae in violation of the provisions of CUP 230 and the pertinent provisions of the RPV Municipal Code and continued to do so after CUP 230 was revoked in violation of other provisions of the Municipal Code. Indian Peak admitted it added antennae not authorized by CUP 230, yet nonetheless challenges the trial court's ruling its conduct established the affirmative elements of nuisance per se as alleged in the City's first and second causes of action. (Indian Peak also asserts defenses to the causes of action, which we address in the following section of our opinion.)

Indian Peak's argument is based on a fundamental misreading of the court of appeal's decision in *Clary v. City of Crescent City*, *supra*, 11 Cal.App.5th 274. As the *Clary* court explained, the Supreme Court in *City of Bakersfield v. Miller*, *supra*, 64 Cal.2d 93 held state laws more specific than Civil Code

section 3479 defining certain nuisances with greater particularity—there, a state housing regulation—do not define the limits of what may be declared a nuisance by municipal law under Government Code section 38771. However, the Supreme Court did not decide whether municipalities' power to declare nuisances applied only to specific conditions within the general areas of regulation enumerated in Civil Code section 3479 because the fire hazard addressed by the Bakersfield ordinance clearly fell within the definition of public nuisance in Civil Code section 3479. (*City of Bakersfield*, at p. 100.)

The court of appeal in *Clary* answered the question unresolved in *City of Bakersfield*, agreeing with *Golden Gate Water Ski Club v. County of Contra Costa* (2008) 165 Cal.App.4th 249, 255-256 that local governments have the "authority to impose and enforce land use regulations, through a nuisance ordinance or otherwise, without regard to whether the prohibited use falls within the Civil Code definition of nuisance." (*Clary v. City of Crescent City*, *supra*, 11 Cal.App.5th at p. 289.)[14] Thus, far from supporting Indian Peak's argument a local government's land use ordinance cannot be the basis for a nuisance per se determination and the municipality must demonstrate not only that its ordinance was violated but also that the prohibited

---

[14]     The *Clary* court also held the overgrown vegetation defined as a nuisance by the weed abatement ordinance at issue in the case fell within the statutory definition of public nuisance in Civil Code section 3479. (*Clary v. City of Crescent City*, *supra*, 11 Cal.App.5th at p. 289.) Indian Peak mistakenly asserts this alternate basis for the decision vitiates the court's holding that Civil Code section 3479 does not limit the scope of a local government's authority to enforce land use regulations through nuisance law.

conduct at issue satisfied the elements of the statutory definition of public nuisance in Civil Code section 3479, including balancing the harmful effect of the defendant's conduct against its social utility, *Clary* holds precisely to the contrary.  Nothing more than the fact of the violation's existence is necessary to establish a nuisance per se.  (See *Urgent Care Medical Services v. City of Pasadena*, *supra*, 21 Cal.App.5th at p. 1095.)  The trial court properly concluded the City had established the elements of its first two causes of action for nuisance per se.  (See *Clary*, at p. 289 ["We agree with the City that *Golden Gate Water Ski Club* is dispositive here.  There can be no doubt that the City's police powers are broad enough to encompass aesthetic concerns"].)

Indian Peak's objections to Afflerbach's expert declaration that none of the antennae added by Indian Peak was "consistent with CUP No. 230, nor could the antennas be considered as modifications to the masts and antennas allowed by CUP No. 230," even if they had been well-taken,[15] do not compel a

---

[15]    Indian Peak objected the terms "consistent" and "modification" were vague and ambiguous and Afflerbach's opinion was irrelevant because it failed to prove a violation of CUP 230.   Indian Peak also objected to two other portions of Afflerbach's declaration as argumentative and irrelevant because they failed to prove a violation of the City's municipal code.  The trial court overruled the objections.  On appeal Indian Peak argues its objections should have been sustained because Afflerbach's declaration failed to provide information sufficient to establish public nuisance and thus were "irrelevant, improper expert opinion, and speculative."

Whether evaluated de novo or under an abuse of discretion standard of review (see *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535; *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 368), the trial court did not err in

different result. It was undisputed, as Afflerbach established in portions of his declaration to which Indian Peak did not object and as Indian Peak admitted in its verified answer, that additional antennae not authorized by CUP 230 had been added to the antennae array on the roof of the residence on Indian Peak Road. Although Kay, in his declaration in opposition to the City's motion, asserted that "[m]any of the additional antenna" functioned as "wireless internet service providers, providing internet to the home and allow[ing] for the operation of internet at the Subject Property" and thus, in his lay opinion, did not qualify as "commercial radio services" subject to the City's regulation, he did not contend all the additional antennae fell into that category or were otherwise permissible without an amendment or revision to CUP 230.

  b. *The third cause of action*

  In its motion for summary judgment the City argued its third cause of action for public nuisance in violation of Civil Code sections 3479 and 3480 was predicated on the doctrine of nuisance per se and Indian Peak's violation of the provisions of

---

admitting this evidence. That an expert's opinion ultimately may not be persuasive on the issue for which it is proffered is not a proper ground for excluding his or her testimony. (See *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 772 [The trial court's role as gatekeeper "to exclude 'clearly invalid and unreliable' expert opinion" is not a decision on its persuasiveness. "The court must not weigh an opinion's probative value or substitute its own opinion for the expert's opinion. Rather, the court must simply determine whether the matter relied on can provide a reasonable basis for the opinion or whether that opinion is based on a leap of logic or conjecture"].)

CUP 230 and its continued operation of commercial antennae on the property after CUP 230 had been revoked. The same 46 material facts were asserted in support of the third cause of action as for the first two causes of action. Thus, it is not altogether surprising the trial court observed the third cause of action was duplicative of the first two.

A trial court when ruling on a motion for summary judgment is required to determine whether undisputed facts entitle the moving party to judgment as a matter of law based on the issues as framed by the pleadings, not by the moving party's motion papers. (See generally *Turner v. Anheuser-Busch* (1994) 7 Cal.4th 1238, 1252; *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444.) As discussed, the City's third cause of action for public nuisance, although incorporating by reference the preceding paragraphs of the pleading and averring that Indian Peak's actions violated the RPV Municipal Code (without specification of any particular section), alleged, "The installation and operation of commercial antennae on the Property by the Defendant are injurious to the public health, safety, and welfare and are so out of harmony with community standards and permissible land use to constitute a public nuisance and/or public nuisance per se." That is, as set forth in the operative pleading, the City alleged a public nuisance within the meaning of the statutory definition in Civil Code section 3479—something in addition to, not duplicative of, its first two causes of action. Yet its evidence in support of summary judgment failed to address the elements of this cause of action, in no way demonstrating, for example, how large a portion of the relevant community was affected by the antenna array (notwithstanding the City's explanation it had one complaint in

2014 and four individuals testified in support of revoking CUP 230 at the public hearing), let alone establishing as an undisputed fact that the harm caused by Indian Peak's continued operation of the antennae outweighed the social benefit of its conduct.

In short, the trial court erred in granting summary adjudication in favor of the City on the third cause of action and, as a consequence, in granting the motion for summary judgment.

5. *Indian Peak Failed To Demonstrate Triable Issues of Fact Regarding Its Defenses of Invalidity of the City's Municipal Code Provisions, Federal Preemption and Consent*

Indian Peak argues on appeal the City's zoning ordinances on which the nuisance causes of action are based violate due process and the City's enforcement action is barred by federal preemption and consent. None of these purported defenses has merit.

a. *Due process*

Indian Peak did not argue in the trial court, as it does on appeal, that the City's ordinances violate due process by allowing arbitrary and irrational enforcement actions. The issue has been forfeited. (*Cabatit v. Sunnova Energy Corp.* (2020) 60 Cal.App.5th 317, 322 ["[i]f a party fails to raise an issue or theory in the trial court, we may deem consideration of that issue or theory forfeited on appeal"]; *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 264 ["[a]s a general rule, issues not raised in the trial court cannot be raised for the first time on appeal," internal quotation marks omitted]; accord, *People v. Covarrubias* (2016) 1 Cal.5th 838, 894.) Moreover, to the extent Indian Peak's constitutional

argument is directed to the process leading to revocation of CUP 230 (for example, that the City acted arbitrarily in determining Indian Peak's revision application was incomplete or in purportedly deviating from its usual practice in providing opportunities for those in violation of conditional use permits to cure the violations), those matters were properly raised, if at all, in the mandamus proceeding.

Indian Peak's additional contention the ordinances and their enforcement in this case lacked any substantial relationship to a legitimate governmental purpose (that is, to the protection of the public health or safety or general welfare) is simply a repackaged version of its argument that a local ordinance cannot define a nuisance per se unless the prohibited conduct satisfies the statutory definition of a public nuisance. As discussed, this purported limitation on the local police power is contrary to well-established law.

b. *Federal preemption*

The TCA prohibits state or local regulation of the placement, construction and modification of personal wireless service facilities[16] by any state or local government that unreasonably discriminates among providers of functionally equivalent services and state or local regulations that have the effect of prohibiting the provision of personal wireless services. (47 U.S.C. § 332(c)(7)(B)(i).)[17] Indian Peak asserted in the trial

---

[16] "'[P]ersonal wireless services' means commercial mobile services, unlicensed wireless services, and common carrier wireless exchange access services." (47 U.S.C. § 332(c)(7)(C)(i).)

[17] In a statement that comes perilously close to violating counsel's ethical obligation of candor to this court (Rules Prof. Conduct, rule 3.3(a)(1) [a lawyer shall not knowingly make a false

court that the City's conduct in declaring a violation of CUP 230 and revoking CUP 230 based on the installation of exempt-from-regulation antennae unreasonably discriminated against Indian Peak and had the effect of prohibiting Indian Peak's provision of personal wireless services.  On appeal, in addition to title 47 United States Code section 332(c)(7), Indian Peak cites for the first time in this case 47 Code of Federal Regulations part 1.4000, which prohibits restrictions that impair the installation, maintenance or operation of certain antennae used to receive or transmit fixed wireless signals, including direct-to-home satellite dishes that are less than one meter in diameter (the Over-the-Air-Reception Devices (OTARD) rule).  Indian Peak

---

statement of fact or law to a tribunal]), in its opening brief Indian Peak, citing title 47 United States Code section 332(c)(7)(B)(i), incorrectly asserts that federal law "expressly prohibits municipalities' regulation of 'the placement, construction and modification of personal wireless service facilities.'"  In fact, the limited restrictions on state and local regulation of personal wireless service facilities in that subdivision, summarized in the text, is part of a more general provision of the TCA concerning regulatory treatment of mobile services titled, "Preservation of local zoning authority," which states, "Except as provided in this paragraph, nothing in this Act shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities."  (47 U.S.C. § 332(c)(7)(A); see *Omnipoint Communications, Inc. v. City of Huntington Beach* (9th Cir. 2013) 738 F.3d 192, 195 ["§ 332(c)(7)(A) functions to preserve local land use authorities' legislative and adjudicative authority subject to certain substantive and procedural limitations"].)  That is, only certain specific types of regulations are prohibited—those that discriminate or would effectively preclude any provision of wireless services.

argues there are triable issues of material fact as to whether the additional antennae it installed are "exempt" under federal law and whether the City's ordinances and enforcement actions in preventing the installation and continued operation of those antennae are preempted by federal law.

Specifically, Indian Peak contends the City's enforcement action violated federal law (or that it demonstrated the existence of triable issues of fact as to whether the abatement proceedings violated federal law) because the City never attempted to determine, through consulting with experts or otherwise, whether any of the roof-mounted antennae installed by Indian Peak were "exempt" from regulation. As discussed, however, under title 47 United States Code section 332(c)(7)(A) & (B), antennae for personal wireless services are not exempt from regulation, as Indian Peak misleadingly asserts; rather, local regulation may not discriminate among providers of personal wireless services or generally prohibit the provision of those services. Indian Peak failed to present any evidence that would establish a violation of those limitations as a defense to the City's nuisance action or explain why, in the absence of any such evidence, it was the City's responsibility (and not Indian Peak's) to investigate the nature and function of the antennae maintained by Indian Peak in violation of CUP 230 and evaluate their status under federal law.

Indian Peak argued in the trial court that the City's actions were discriminatory, citing the City's treatment of an application for a conditional use permit by Marymount College and an application for modification of a conditional use permit by AT&T. The trial court found the evidence insufficient to create a triable

issue of fact,[18] and Indian Peak does not repeat that contention on appeal.  Similarly, although the City's abatement action may prevent Indian Peak from continuing to provide personal wireless services, at least until it complies with local zoning rules and obtains a new conditional use permit, Indian Peak presented no evidence the City's requirement that personal wireless service providers obtain conditional use permits before installing and maintaining commercial antennae on residential property effectively precluded the provision of personal wireless services within a significant portion of the City.  (See, e.g., *Omnipoint Holdings, Inc. v. City of Cranston* (1st Cir. 2009) 586 F.3d 38, 48 ["[w]hen a carrier claims an individual denial is an effective prohibition, virtually all circuits require courts to (1) find a 'significant gap' in coverage exists in an area and (2) consider whether alternatives to the carrier's proposed solution to that gap mean that there is no effective prohibition"]; see also *Green Mt. Realty Corp. v. Leonard* (1st Cir. 2012) 688 F.3d 40, 57 ["while 'an individual denial is not automatically a forbidden prohibition . . . [,] we [cannot] rule out the possibility that—based on language or circumstances—some individual decisions could be shown to reflect, or represent, an effective prohibition on personal wireless service'"].)

---

[18]     The trial court explained Indian Peak had submitted no evidence the Marymount application was comparable to Indian Peak's revision application, so that it was not possible to evaluate whether any purported differences in the review process were discriminatory.  Similarly, Indian Peak presented no evidence whether the AT&T application was ever completed, let alone ultimately granted, again precluding any evaluation whether Indian Peak was the victim of discriminatory or arbitrary action by the City.

The OTARD rule, like title 47 United States Code section 332, does not "exempt" covered antennae from all local laws or regulations; rather, it prohibits restrictions or requirements that "impair"—that is, that unreasonably delay or prevent or unreasonably increase the cost of[19]—the installation, maintenance or operation of antennae used to receive video programming services, including direct-to-home satellite service, or to receive or transmit fixed wireless signals via satellite on property within the exclusive use or control of the antenna user. (See 47 C.F.R. § 1.4000(a)(1).) Indian Peak asserts its roof-mounted satellite dish antenna is exempt from any regulation under the OTARD rule and complains the trial court never mentioned this OTARD exemption. But Indian Peak never cited the OTARD rule in the trial court or contended it provided a defense to the City's nuisance action. Any reliance on that rule has been forfeited. (*Cabatit v. Sunnova Energy Corp.*, *supra*, 60 Cal.App.5th at p. 322; *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker*, *supra*, 2 Cal.App.5th at p. 264.)[20]

---

[19] The OTARD rule specifies "a law, regulation, or restriction impairs installation, maintenance, or use of an antenna if it: [¶] (i) Unreasonably delays or prevents installation, maintenance, or use; [¶] (ii) Unreasonably increases the cost of installation, maintenance, or use; or [¶] (iii) Precludes reception or transmission of an acceptable quality signal." (47 C.F.R. § 1.4000(a)(3).)

[20] Responding to the City's argument that Indian Peak had forfeited its OTARD arguments, Indian Peak insists in its reply brief that OTARD was raised in its second supplemental opposition memorandum. It was not. Indian Peak asserted its satellite dish antennae was exempt from regulation under

Even were the merits of its OTARD argument properly before this court, Indian Peak presented no evidence its satellite dish antenna came within the scope of the rule, which does not apply to antennae larger than one meter in diameter (47 C.F.R. § 1.4000(a)(1)(i)(B)), or that any of the other multiple antenna masts and antennae it had added to the roof of the property since 2005 were protected by the OTARD rule. Neither has it explained, much less cited authority for, the proposition essential to its argument that, when a collection of antennae includes both federally protected and unprotected items, requiring a conditional use permit for the entire array constitutes an unreasonable burden on the installation or maintenance of the protected antennae, which is all that the OTARD rule precludes.[21] In sum, Indian Peak failed to demonstrate a triable issue of fact existed as to its defense of federal preemption.

---

RPV Municipal Code section 17.76.020, subdivision (B)(2), but did not cite, let alone discuss, OTARD or 47 Code of Federal Regulations part 1.4000. Indian Peak did argue the roof-mounted satellite dish antenna was protected by 47 Code of Federal Regulations part 1.4000 in superior court in its papers supporting its request for a petition for writ of administrative mandamus.

[21] Even if one or more of Indian Peak's antennae were protected by the OTARD rule, there appears no reason the installation and maintenance of other, unprotected antennae in violation of a conditional use permit could not properly be found to be a nuisance per se. The extent of the ensuing injunction or order of abatement might be affected, but not the underlying nuisance determination. Indian Peak does not argue on appeal the scope of the injunction against it should be narrowed.

### c. *Consent*

Consent can be a defense to a claim of nuisance (*Mangini v. Aerojet-General Corp.* (1991) 230 Cal.App.3d 1125, 1138), although not necessarily to an action for the abatement of a public nuisance.  (*Id.* at p. 1139 ["we do not suggest that consent of an owner/lessor can impede the *abatement* of a public nuisance"]; accord, *Beck Development Co. v. Southern Pacific Transportation Co.*, *supra*, 44 Cal.App.4th at p. 1215; cf. *Hansen Bros. Enterprises, Inc. v. Board of Supervisors* (1996) 12 Cal.4th 533, 564 ["the county lacks the power to waive or consent to violation of the zoning law"].)  In any event, Indian Peak's defense of consent fails as a factual matter.

Indian Peak's initial installation of its antenna array, although accomplished without prior consent, was ultimately approved with the issuance of CUP 230.  But Indian Peak violated the provisions of CUP 230 by installing and maintaining additional commercial antennae, and the permit was revoked.  There was no longer consent for Indian Peak's continuing operation of its original antennae, let alone for the new ones it had added.

Indian Peak does not dispute those basic facts, but contends any violation of CUP 230 was cured, and its operation of additional commercial antennae was pursuant to the City's "consent," because it submitted a revision application in accordance with the City's July 26, 2016 letter.  Simply put, a pending application to revise the conditional use permit—asking for consent—is not consent.  Moreover, this court in the companion mandamus appeal, *Indian Peak Properties, LLC v. City of Rancho Palos Verdes*, *supra*, B303325), held, because Indian Peak failed to exhaust available administrative remedies

to challenge the City's actions in determining the revision
application was incomplete, the decision not to process the
application did not in any way undermine the propriety of the
decision to revoke CUP 230.

   6. *Reversal of the Judgment Requires Reversal of the
      Postjudgment Award of Attorney Fees*

Our reversal of the judgment in favor of the City
necessarily requires reversal of the postjudgment award of
attorney fees to it as the prevailing party in the action.  (See
*Friends of the Hastain Trail v. Coldwater Development LLC*
(2016) 1 Cal.App.5th 1013, 1037; *Samples v. Brown* (2007)
146 Cal.App.4th 787, 811; see also *Gillan v. City of San Marino*
(2007) 147 Cal.App.4th 1033, 1053 [after a judgment is reversed
on appeal, the issue of trial costs is "'set at large'"]; *Allen v. Smith*
(2002) 94 Cal.App.4th 1270, 1284 [same].)

## DISPOSITION

The judgment and postjudgment order are reversed.  The
cause is remanded with directions to the trial court to enter a
new order denying the City's motion for summary judgment,
granting the motion for summary adjudication as to the first and
second causes of action and denying the motion for summary
adjudication as to the third cause of action.  The parties are to
bear their own costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.                    IBARRA, J.*

---

\*      Judge of the Santa Clara Superior Court, assigned by the
Chief Justice pursuant to article VI, section 6 of the California
Constitution.

EXHIBIT B


Filed: 11/16/21

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| INDIAN PEAK PROPERTIES, LLC,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>CITY OF RANCHO PALOS VERDES et al.,<br><br>      Defendants and Respondents. | B303325<br><br>(Los Angeles County Super. Ct. No. 18STCP02913) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff and Patricia D. Nieto, Judges. Affirmed.

Bradley & Gmelich, Barry A. Bradley and Dawn Cushman for Plaintiff and Appellant.

Aleshire & Wynder, William W. Wynder, June S. Ailin and Alison S. Flowers for Defendants and Respondents City of

Rancho Palos Verdes and Rancho Palos Verdes Planning Commission.

_____

The City of Rancho Palos Verdes revoked Indian Peak Properties, LLC's conditional use permit (CUP 230) for the operation of commercial antennae on residential property based on Indian Peak's installation and operation of additional antennae in violation of permit conditions. The trial court denied Indian Peak's petition for a writ of mandamus pursuant to Code of Civil Procedure sections 1094.5 and 1085,[1] rejecting its arguments the City had not provided it a fair hearing and revocation of CUP 230 was an abuse of discretion. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Issuance of CUP 230*

The City has a municipal ordinance that regulates the installation and operation of commercial antennae. (Rancho Palos Verdes (RPV) Mun. Code, § 17.76.020, subd. (A).) On June 21, 2001 James Kay, Jr. (now president of Indian Peak) applied for a conditional use permit authorizing the use for commercial purposes of what he described as preexisting noncommercial amateur antennae on the roof of residential property he owned on Indian Peak Road, Rancho Palos Verdes.[2] At that time there was a horizontal antenna rack mounted on the roof with five vertical antenna masts for the reception and

_____

[1]     Statutory references are to this code unless otherwise stated.

[2]     Kay purchased the property in 1994, purportedly intending to use it as a second home. He received his first notice of violation regarding antennae on the roof of the home in 1997.

transmission of radio and Internet signals; each mast had four radiating elements. There were also two television antennae on the roof.

Following three public hearings the City's planning commission conditionally approved the request on November 15, 2001, but limited the number and placement of the antennae. Kay appealed to the city council, which denied the appeal and formally approved CUP 230, limited to two vertical antenna masts and television antenna with a number of additional conditions (resolution no. 2002-27). Kay filed a federal lawsuit challenging the limits and conditions. On July 14, 2004 the district court ruled in Kay's favor and ordered the City to issue a new resolution allowing Kay to use the original antenna array (the five mast structure with two television aerial antennae) subject to reasonable conditions. The City adopted a new resolution as ordered, permitting operation of the original antenna array as depicted in Kay's June 21, 2001 application and amending eight conditions for approval of CUP 230 (resolution no. 2004-109).

Kay returned to federal court, arguing the conditions imposed by the new resolution were unreasonable. The district court agreed that requiring Kay to use the property as his primary residence was unreasonable, but otherwise denied Kay's challenges to the conditions imposed. The City adopted a new resolution in 2005 amending the invalidated condition to require only that the residence be maintained in a manner suitable for occupancy as a single-family residence in compliance with the City's municipal code (resolution no. 2005-75). The resolutions approving and modifying CUP 230 require approval by the city council of an amendment to CUP 230 for any "future changes to

the location or configuration or which increase the number or the height of any approved antennae or element" of the original antenna array.

2. *Addition of Antennae and Notice of Violation of CUP 230*

Indian Peak, Kay's limited liability company, apparently obtained title to the property directly from Kay or through an intermediary sometime in 2005. As acknowledged in its opening brief, "[f]rom approximately 2001 to 2014, Indian Peak owned and operated the Property and used the antenna array with modifications and changes and additions to the antenna."

The City received a complaint in August 2014 regarding the number of commercial antennae on the roof of the property. The City inspected the property and discovered there were now at least 11 vertical antennae and other equipment on the roof. On August 15, 2014 the City mailed Indian Peak a notice it was in violation of the conditions of CUP 230 and directed Indian Peak to "[r]emove all but five of the vertical antennae from the roof, and ensure the remaining five antennae meet the requirements as described" in CUP 230 or "[s]ubmit an application to the City, with the required fee, to request a revision to Conditional Use Permit No. 230 to allow the existing antennae to remain." The City's notice further stated a review of the case would be conducted on September 12, 2014, and cautioned, "If the property has not been brought into compliance with CUP No. 230, or if an application has not been submitted to the City to request a revision to the Conditional Use Permit by said deadline, further code enforcement action will occur."

Indian Peak apparently requested extensions of time, indicating it intended to submit an application for a revision to CUP 230. The City conducted additional inspections of the

property, which determined that no changes had been made. A second notice of violation was sent on October 14, 2014 and a final notice on October 28, 2014. The final notice stated, "A re-inspection of your property, and review of this case, will be conducted on November 5, 2014. If upon re-inspection of your property the violations continue to exist, and the CUP revision application has not been submitted to the City, there will be no further notices. Referral to the City Attorney's office will follow in hopes of resolving the matter before legal action ensues."

Counsel for Indian Peak (the successor law firm to the firm that had represented Kay during the initial CUP application process)[3] responded to the notices in December 2014, asserting the proposed $5,000 fee for an application to revise CUP 230 was an unlawful special tax and proposing a $500 fee to process the application. The letter also stated, "[O]ur client contends that to the extent that there have been any changes to the antennae and structures located on the property, those changes do not require a CUP revision as they constitute no more than the sort of changes that could be expected to occur over multiple years in the ordinary course of business at a property of this sort." Finally, the letter warned, if the City did not comply with Indian Peak's requests, Indian Peak intended to pursue construction of "a commercial antenna of over enormous proportions," attaching a photograph of such a structure to emphasize its threat.

---

[3]     In 2001 Kay was represented by C.D. Michel and Trutanich-Michel, LLP. In 2014 Indian Peak was represented by C.D. Michel and Michel & Associates, P.C.

3. *Further Discussions and Indian Peak's Application To Revise CUP 230*

Over the next three-plus years the City's attorneys and Indian Peak's counsel engaged in a sometimes-contentious exchange of letters regarding the additional antennae, Indian Peak's obligation to comply with CUP 230 and the terms for an application to revise CUP 230.  On October 21, 2015 the City again wrote that Indian Peak must remove all but five of the vertical antennae and ensure the remaining antennae met the requirements of CUP 230 or submit an application to revise CUP 230 with the required application fee or request for a fee waiver.  Counsel for Indian Peak responded on November 6, 2015 noting no additions to the roof antenna array had been made in the past five years and asserting, whatever modifications had been made in the past, no revision or amendment to CUP 230 was necessary "because all of the antennas are compliant with CUP No. 230 and with all applicable federal laws and municipal code sections."  The letter asserted that a large dish drum antenna on the roof, which the City had indicated was not authorized by CUP 230 and needed to be removed, was exempt from local regulation under federal law.  Counsel also stated the fee proposed for an application to modify CUP 230 was unreasonable.

The city attorney wrote in March 2016 that modifications to Indian Peak's antenna array had, in fact, been made in 2014 and 2015 and requested citation to federal authority exempting the satellite dish drum from local regulation.[4]  In April 2016 Indian

_____

[4]     Indian Peak finally provided its authority for the argument local regulation of the satellite dish drum was preempted by

Peak appeared to acknowledge it was not strictly complying with CUP 230 and requested the City "approve the additional antenna as a director's approval under Municipal Code § 17.76.020[, subdivision] A12b and to charge my client fees that are commensurate with a simple modification for a Commercial Antenna."[5]  Counsel also wrote, "We do not believe that the additional antennas that were installed necessitate a Revision to the entire CUP and do not justify fees for a CUP Revision."  The city attorney responded that removal of the additional antennae or modification of CUP 230 was necessary and reminded Indian Peak that CUP 230 required City approval of additional antennae before they were installed, not after-the-fact.  The letter set a deadline of May 2, 2016 for submission of an application to modify CUP 230.

---

federal law in June 2019 in its opening brief in support of its petition for writ of administrative mandamus.

[5]      RPV Municipal Code section 17.76.020 governs antennas generally; subdivision (A) relates to commercial antennas and provides, "The installation and/or operation of a commercial antenna shall require the submittal and approval of a conditional use permit by the planning commission."  Subdivision (A)(11) reiterates that the installation and/or operation of a commercial antenna requires submission of an application for a conditional use permit and details the requirements for the application package.  It does not distinguish between installation of antennae and the addition of antennae to an existing tower.
Subdivision (A)(12)(a) specifies the review procedures for new towers, related structures and tower sites.  Subdivision (A)(12)(b) provides, "New antennas mounted on existing towers or structures that would not require substantial modifications may be approved by the director [of community development] with the following required information . . . ."

On May 5, 2016 Indian Peak's counsel proposed, as a compromise, applying for a modification of CUP 230 under the expedited, "over-the-counter" review procedure provided in RPV Municipal Code section 17.76.020, subdivision (A)(12)(b), for new antennae on existing towers (with a $500 filing fee), with approval required only from the City's director of community development, rather than the full process for modification of a residential conditional use permit. Counsel also stated the application could not be submitted by the City's deadline.

In a July 26, 2016 response the City explained that CUP 230 expressly required any additions to the antenna array be approved by the city council or through a formal modification of the conditional use permit, so the expedited process identified in RPV Municipal Code section 17.76.020, subdivision (A)(12)(b), could not be used. However, the City agreed to a fee of $1,311 for the application and authorized Indian Peak to submit with its application only the information required under the expedited process in RPV Municipal Code section 17.76.020, subdivision (A)(12)(b) (except for a frequency compatibility study), rather than the more extensive information required under RPV Municipal Code section 17.76.020, subdivision (A)(11). The new deadline for removal of the additional antennae or submission of the application for modification was August 26, 2016.

After several extensions of the deadline, Indian Peak submitted an application for revision of CUP 230 on October 28, 2016. On November 23, 2016 City staff notified Indian Peak it had reviewed the application and "due to missing information and/or inconsistencies between the project plans and submitted application, it has been determined that the application is

incomplete." City staff provided a detailed summary of the items that needed clarification or amplification and listed the additional information required. Counsel for Indian Peak objected to the request for additional information, insisting it had provided all the information required under RPV Municipal Code section 17.76.020, subdivision (A)(12)(b), as required by the City's July 26, 2016 letter, and that the additional information was unnecessary to process the application.

On March 21, 2017, having been advised the matter would be discussed at a closed session of the city council, counsel for Indian Peak wrote a five-page status letter to council members, describing the on-going discussions with the City regarding Indian Peak's modifications to the antenna array and its belief that only minor revisions, if any, might be needed to CUP 230. The city attorney responded on April 14, 2017, and the parties exchanged several more letters and met in person on two occasions (in June and December) during 2017.

Although Indian Peak agreed to provide additional information to the City at the parties' December 2017 meeting and the City, in turn, suspended any enforcement action, no further information was provided by Indian Peak by the February 28, 2018 extended deadline. Indian Peak continued to be represented in its communications and meetings with the City by the same law firm.

4. *Notice and Hearing To Consider Revoking CUP 230*

On August 2, 2018 the City issued its notice of public hearing to consider revocation of CUP 230 "because of the Installation of unpermitted antennas exceeding the maximum of

5 Council-approved, roof-mounted antennae and support pole masts."[6]  The hearing was scheduled for August 21, 2018.

Indian Peak retained new counsel on August 8, 2018, who requested via email on August 9, 2018 an extension of time to respond to the notice and a continuance of the hearing.  Counsel explained that "Mr. Kay had retained a permit expediter to assist in this matter who has basically walked off the job.  We are in the process of retaining another permit expediter/architect to work on this project but we were just retained to handle this matter late yesterday afternoon."

In a letter dated August 10, 2018 Indian Peak's new counsel stated the request for an extension had been denied by counsel for the City.  Accordingly, the nine-page letter constituted Indian Peak's "comments and concerns about the proposed project" in response to the City's August 2, 2018 notice.  In addition to reviewing the history of the dispute and once again asserting only approval by the director of community development, not the city council, was required for any necessary minor modifications in CUP 230, counsel stated the client "was more than willing to work with the City to present alternatives to modify and update the presentation and appearance of the

---

[6]     RPV Municipal Code section 17.86.060 provides, "The officer or body taking final action granting any permit pursuant to the provision of this title may, after following the same procedures utilized for approving such a permit, revoke or suspend the permit if:  [¶] . . . [¶]  D. The permit is being or recently has been, exercised contrary to the terms or conditions of such permit.  [¶]  No permit shall be revoked prior to providing a ten calendar day written notice to the holder of the permit and an opportunity to be heard before the officer or body considering revocation or suspension of the permit."

telecommunications antennae on the subject property to be less conspicuous" and asked for "a 60 day extension in which to supply the required documentation in order to complete the Application for Revision of Conditional Use Permit No. 230 and to provide representations and appropriate plans and specifications for updating and replacing the structures with less conspicuous antennae."

The hearing went forward on August 21, 2018.[7] Each party was given 10 minutes for its presentation with additional time for questions by members of the city council, followed by comments from the public. During her presentation counsel for Indian Peak stated her goal was "to secure yet another extension for Mr. Kay and Indian Peak Properties to work with my office, his new counsel, on addressing these issues and working cooperatively with the City to come to some kind of a resolution."[8] During an exchange with members of the council, Indian Peak's attorney was asked what type of proposal would be made if a continuance was granted. She responded, "My expectation is that Mr. Kay is willing to work with the City as far as removing some of the antennas but not all of the antennas that have been placed on

---

[7] The city attorney explained at the outset of the hearing that, as the advisor to the city council, he could not present the evidence in support of the staff recommendation to revoke CUP 230 and that outside counsel, who had been representing the City in negotiations with Indian Peak during the past several years, would perform that function.

[8] Counsel added, "For whatever reason, and I can't comment on it, Mr. Kay's prior counsel just did not engage in the cooperative process with City staff and that's why there was delay. But I can assure the City that now that my office is on board, we will work diligently to address these issues."

here since the issuance of the original conditional use permit, but if—if the City is pleased and will agree to, you know, the installation of some kind of a covering on the structures of all the antennas, then that would be Mr. Kay's preference, of course. But—but I will represent to City staff and City Council that Mr. Kay is willing to work with the City in order to come to some kind of a resolution even if that involves removing some of the antennas."

Following the staff presentation, the comments from Indian Peak's counsel and public testimony from four neighbors, the city council voted to adopt resolution no. 2018-61 revoking CUP 230 in its entirety, effective immediately. During their deliberations before voting on the resolution, several members of the council expressed displeasure with, as one member phrased it, Indian Peak and Kay's "clear pattern and lack of cooperation with the City in this process."[9]

---

[9]     The Agenda Report stated, as an option available to the city council rather than adopting the staff recommendation to revoke CUP 230, "Continue the public hearing, as requested by the property owner's new legal counsel, to a date certain to allow the property owner additional time to respond to the revocation notice." In addition, immediately prior to the start of the city council's deliberations, the city attorney advised the members, "Included in the evidence tonight is a request for a continuance. While that's not an evidentiary basis to oppose revocation of the conditional use permit, it is a request that in the Council's sound discretion it can elect to grant or deny. Once it's weighed all of the evidence, considered and determined to grant or deny a continuance, then it deliberates and it has to adopt findings consistent with its deliberations. Staff has prepared a resolution of denial upon which it believes there is evidence to support that

5. *Indian Peak's Petition for Writ of Mandate*

Indian Peak filed a complaint for damages and petition for writ of administrative mandamus pursuant to section 1094.5 and for writ of mandate pursuant to section 1085 on November 19, 2018. In addition to its writ causes of action, which sought to compel the City to set aside its resolution revoking CUP 230 and either hold a new public hearing providing Indian Peak with an adequate opportunity to present a defense or determine Indian Peak's application for a revision to CUP 230 on the merits, Indian Peak alleged causes of action for inverse condemnation, intentional interference with contractual relations and intentional interference with prospective economic advantage. After the City answered, the court stayed the three damage claims pending decision on the petition for writ of administrative mandamus and related causes of action.

In its opening brief in support of the writ petition, Indian Peak argued it had been denied due process and deprived of a fair hearing because its counsel was not provided a reasonable opportunity to prepare and present a defense. Indian Peak additionally argued the City's action in revoking CUP 230 was arbitrary and capricious because the restrictions imposed were prohibited (or preempted) by federal law and the City had failed to consider the merits of its application for a revision to CUP 230. In its opposition memorandum the City argued, in part, Indian Peak had failed to exhaust available administrative remedies to challenge staff's assessment the application for revision of CUP 230 was incomplete. The City conceded federal law

denial and the Council can review that, agree with it, modify it, add to it, subtract from it and then ultimately take an action."

restricted its right to regulate the satellite dish drum antenna but contended its insistence Indian Peak remove or receive authorization for all other antennae beyond those approved in CUP 230 was not limited by federal law.  In its reply Indian Peak argued any failure to exhaust administrative remedies was excused as futile.

Following the hearing the court denied Indian Peak's petition for writ of administrative mandamus and related causes of action, issuing a 10-page order explaining the ruling.  The court initially ruled the City provided Indian Peak a fair hearing.  The court noted Indian Peak did not contend the City had not complied with its own policies and procedures—the applicable ordinance required 10 days' notice for the hearing; Indian Peak had 19 days' notice—or that 10 (or 19) days' notice was insufficient as a matter of law.  Rather, its claim was that denial of its newly retained counsel's request for a continuance was a prejudicial abuse of discretion.  The court rejected that argument for several reasons, viewing it "[t]hrough the prism of independent judgment."  First, Indian Peak's noncompliance with CUP 230 had been the subject of discussion and negotiation between the City and Indian Peak for four years prior to issuance of the notice of revocation during which time Indian Peak had been represented by counsel; the issues raised by the notice of revocation were not new.  Second, Indian Peak did not present any evidence its decision to change counsel after issuance of the notice was due to circumstances outside its control.  Third, counsel in her letter and oral presentation did not state the continuance was needed to defend against the City's allegations Indian Peak was in violation of CUP 230 (in fact, counsel had effectively conceded that point, although disputing the extent of

the violation). Rather, the additional time was for Indian Peak to prepare an additional proposal to the City to resolve the dispute that would allow Indian Peak to continue to have at least some (or perhaps all) of the additional antennae added since issuance of CUP 230. The court also pointed out that, while the city council did not expressly discuss the request for a continuance before voting to revoke CUP 230, the city attorney had advised the members the request was before it and could be granted in its discretion.

The court then rejected Indian Peak's argument revocation of CUP 230 violated federal law or was otherwise arbitrary or an abuse of discretion. The City had conceded federal law preempted local land use regulations that impaired the installation, maintenance or use of certain types of antennae for direct broadcast satellite service and related signals, which would include Indian Peak's satellite dish drum. But the court agreed the weight of the evidence established Indian Peak had failed to comply with conditions associated with CUP 230 without regard to the satellite dish drum, as Indian Peak's counsel had conceded at the hearing: "The evidence in the record demonstrates Petitioner was in violation of the conditions association with CUP No. 230, even though the court recognizes it may not consider the satellite dish drum as a 'violation' of conditions. Thus, the decision to revoke CUP No. 230 does not violate federal law." The court expressly noted that any future enforcement actions by the City based on its revocation of CUP 230 "are not before this court."

As to Indian Peak's argument concerning the staff determination its revision application was incomplete, the court agreed with the City's position Indian Peak had failed to exhaust

its administrative remedies by seeking review of that decision as permitted by the RVP Municipal Code.  Although Indian Peak cited a statement in the record that staff would recommend denying Indian Peak's request to modify CUP 230, that failed to establish the futility exception to exhaustion, the court reasoned, because the city council had full authority to approve a modification notwithstanding staff's recommendation.

After the trial court denied the writ-related causes of action, Indian Peak's request to dismiss its damage claims without prejudice was granted.   Judgment was entered on December 9, 2019.  Indian Peak filed a timely notice of appeal.

## DISCUSSION

1. *Standard of Review*

    a. *Administrative mandamus*

Code of Civil Procedure section 1094.5, the administrative mandamus statute, provides for judicial review of administrative orders or decisions.  (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514.)  The question presented by a petition for writ of administrative mandate is whether the agency or tribunal that issued the decision being challenged "proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion."  (§ 1094.5, subd. (b).)  "Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."  (*Ibid*.)

The nature of the trial court's review of the agency's decision depends on the right at issue.  If a fundamental vested right is involved, the trial court reviews the sufficiency of the

evidence supporting the administrative decision under the independent judgment standard. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 811 (*Fukuda*) ["when a court reviews an administrative determination [affecting a vested fundamental right,] the court must 'exercise its independent judgment on the facts, as well as on the law'"]; *Schmid v. City and County of San Francisco* (2021) 60 Cal.App.5th 470, 484 (*Schmid*); *Young v. City of Coronado* (2017) 10 Cal.App.5th 408, 418.) In such cases, "'abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence.'" (*Fukuda*, at p. 811; *Young*, at p. 418.)[10] If no such right is involved, the trial court applies the substantial evidence standard of review. (*Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 850.) In either situation the petitioner has "'"the burden of proving that the agency's decision was invalid and should be set aside, because it is presumed that the agency regularly performed its official duty."'" (*Schmid*, at p. 484.)

"[T]he grant of a CUP with subsequent reliance by the permittee creates a fundamental vested right that subjects a revocation to judicial review under the independent judgment test." (*Malibu Mountains Recreation, Inc. v. County of Los Angeles* (1998) 67 Cal.App.4th 359, 368.) On appeal from the judgment in such a case, we review the trial court's factual

---

[10]     In *Fukuda*, *supra*, 20 Cal.4th at page 817 the Supreme Court explained, "In exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence."

findings for substantial evidence. (*Paratransit, Inc. v. Unemployment Ins. Appeals Bd.* (2014) 59 Cal.4th 551, 562; *Fukuda*, *supra*, 20 Cal.4th at p. 823.)[11] "However, the appellate court may disregard the superior court's conclusions when the probative facts are undisputed and clearly require different conclusions. [Citations.] "'Appellate review in such a case is based not upon the substantial evidence rule, but upon the independent judgment rule.'"" (*Paratransit*, at p. 562.)

The trial court's legal determinations are reviewed de novo. (*Schmid*, *supra*, 60 Cal.App.5th at p. 485; *Valero Refining Co.— California v. Bay Area Air Quality Management Dist. Hearing Bd.* (2020) 49 Cal.App.5th 618, 637; *Department of Health Care Services v. Office of Administrative Hearings* (2016) 6 Cal.App.5th 120, 140; see *Flethez v. San Bernardino County Employees Retirement Assn.* (2017) 2 Cal.5th 630, 639.) Similarly, "'[a] challenge to the procedural fairness of the administrative hearing is reviewed de novo on appeal because the ultimate determination of procedural fairness amounts to a question of law.'" (*Gonzalez v. Santa Clara County Dept. of Social Services* (2014) 223 Cal.App.4th 72, 96; accord, *Malaga County Water Dist. v. State Water Resources Control Bd.* (2020) 58 Cal.App.5th 447, 461; *Doe v. University of Southern California* (2018) 28 Cal.App.5th 26, 34; see *Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1443 ["foundational factual

---

[11]     On appeal from the judgment on a petition for writ of administrative mandate in a case not involving fundamental vested rights, we review the agency's findings, not the superior court's decision, for substantial evidence. (*Doe v. University of Southern California* (2018) 28 Cal.App.5th 26, 34; *Benetatos v. City of Los Angeles* (2015) 235 Cal.App.4th 1270, 1281.)

findings must be sustained if supported by substantial evidence; however, the ultimate determination of whether the administrative proceedings were fundamentally fair is a question of law to be decided on appeal"].)

### b. *Traditional mandamus*

A traditional writ of mandate under section 1085 "'is used to compel a public entity to perform a legal and usually ministerial duty. [Citation.] The trial court reviews the challenged administrative action to determine whether it was arbitrary, capricious, or entirely lacking in evidentiary support, or whether the agency failed to follow the procedure and give the notices the law requires. [Citation.] On appeal, the trial court's factual findings must be upheld if they are supported by substantial evidence. However, legal issues present a question of law that this court reviews de novo on appeal.'" (*Schmid, supra,* 60 Cal.App.5th at pp. 484-485.)

### 2. *Indian Peak Was Not Denied a Fair Hearing*

Applying the correct independent judgment standard of review, the trial court found the weight of the evidence supported the City's findings Indian Peak had violated the conditions associated with CUP 230 (separate from any purported violation based on the satellite dish drum antenna). Substantial evidence supports the trial court's finding, which is not challenged by Indian Peak on appeal. Significantly, the fact of violation— although disputed for years by its former counsel—was not contested by Indian Peak at the public hearing before the city council, and newly retained counsel's request for a continuance was to allow further settlement discussions with a goal of

modifying or revising CUP 230, not to prepare a defense.[12]  After
years of unproductive discussions, the City's decision not to
engage yet again in negotiations with Indian Peak was entirely
reasonable.

"'[T]he "fair trial" requirement [of section 1094.5] is
equivalent to a prescription that there be a fair administrative
hearing.'"  (*Mountainlands Conservancy, LLC v. California
Coastal Com.* (2020) 47 Cal.App.5th 214, 235.)  "The essence of
due process is the requirement that a person in jeopardy of
serious loss be given notice of the case against him and
opportunity to meet it.  The opportunity to be heard must be
afforded at a meaningful time and in a meaningful manner."
(*Lent v. California Coastal Com.* (2020) 62 Cal.App.5th 812, 842
[cleaned up]; accord, *Alpha Nu Assn. of Theta XI v. University of
Southern California* (2021) 62 Cal.App.5th 383, 418 ["'[g]enerally,
a fair procedure requires "notice reasonably calculated to apprise
interested parties of the pendency of the action . . . and an
opportunity to present their objections"'"]; *Cardinal Care
Management, LLC v. Afable* (2020) 47 Cal.App.5th 1011, 1022
[procedural due process principles require reasonable notice and
opportunity to be heard before governmental deprivation of a
significant property interest].)  Indian Peak had both notice and
an opportunity to defend its conduct and fully exercised its right
to be heard by submitting a written response prepared by counsel

_____

12      Indian Peak's complaint and petition for writ of
administrative mandamus confirm that its counsel at the
revocation hearing "then requested an extension of time to
provide plans and specifications for updating and replacing the
structures with less conspicuous antennas and structures,
including covering."

and making an oral presentation and responding to questions at the revocation hearing.

The City's denial of Indian Peak's request for a continuance of the revocation hearing after it selected new counsel to represent it did not transform an otherwise fair procedure into one that was unfair. While Indian Peak was certainly permitted to change counsel and was not obligated to explain its reason for doing so, the presence of a new lawyer after four years of debate between the City and Indian Peak's former counsel whether additional antennae on the roof of the residence on Indian Peak Road violated CUP 230—the precise issue to be addressed at the revocation hearing[13]—did not automatically entitle Indian Peak to yet more time to research possible defenses to a charge first

---

[13] In an attempt to minimize the significance of the four years of negotiations between its counsel and the City concerning the unauthorized expansion of its antenna array, Indian Peak points out that, prior to the August 2, 2018 notice, the City had never warned it a continued violation of CUP 230 would result in revocation of the permit. Putting aside that the City's lawyer informed Indian Peak enforcement action would be initiated if it did not remove the additional antennae or obtain a modification of CUP 230 and that revocation as the consequence of a violation of the conditions imposed with a conditional use permit was clearly stated in the City's Municipal Code (RPV Mun. Code, § 17.60.080) and presumably known to Indian Peak's experienced land use attorney, if not to Kay, Indian Peak's argument misses the point. The issue at the revocation hearing was whether Indian Peak was in violation of the conditions of CUP 230. That was precisely the issue discussed from mid-2014 through early 2018 by its former counsel and the City. The trial court's finding that Indian Peak had more than 19 days to prepare a defense was thus supported by substantial evidence.

made in August 2014.  (See *Ring v. Smith* (1970) 5 Cal.App.3d
197, 202 ["there is no absolute right, even in a criminal trial, to
be represented by a particular attorney, when this is made the
basis of a motion for a continuance"].)  Whether to grant a
continuance, in this case as in general, was a matter of discretion
for the hearing officer.  (See *Arnett v. Office of Admin. Hearings*
(1996) 49 Cal.App.4th 332, 342-343 ["In exercising the power to
grant continuances an administrative law judge must be guided
by the same principles applicable to continuances generally in
adjudicative settings. . . .  But '[t]he factors which influence the
granting or denying of a continuance in any particular case are so
varied that the trial judge must necessarily exercise a broad
discretion'"]; accord, *Bussard v. Department of Motor Vehicles*
(2008) 164 Cal.App.4th 858, 864.)

 Here, as discussed, Indian Peak's counsel did not seek a
continuance in order to develop a defense to the charge of
violating the conditions imposed with CUP 230, nor was there
any showing why former counsel, who had argued there were no
violations of CUP 230, was not available to assist new counsel in
presenting any colorable defense that might exist, if that was
Indian Peak's intention.  Indeed, before proceeding to vote on the
resolution revoking CUP 230, one of the council members asked
Indian Peak's counsel what could be expected if a continuance
were granted, and the response was a proposal for revisions to
the conditional use permit that would allow Indian Peak to
continue to maintain and operate more antennae than previously
authorized.  Against a backdrop of years of fruitless discussion, it

was not an abuse of discretion to deny a continuance requested only for that purpose.[14]

Nor did that denial prejudice Indian Peak's right to a fair hearing. Indian Peak's counsel admitted new antennae had been added to the rooftop array in violation of CUP 230, only seeking additional time to try to work out a settlement. Absent a showing of prejudice, the petition for writ of administrative mandamus was properly denied. (See *Thornbrough v. Western Placer Unified School Dist.* (2013) 223 Cal.App.4th 169, 200 ["'A writ of administrative mandamus will not be issued unless the court is persuaded that an abuse of discretion was prejudicial. [Citation.] In other words, the reviewing court will deny the writ, despite abuse of discretion, if the agency's error did not prejudicially affect the petitioner's substantial rights'"]; see generally *Brue v. Al Shabaab* (2020) 54 Cal.App.5th 578, 589

---

[14]    In briefing in this court Indian Peak argues a continuance would have permitted it to retain expert witnesses to develop the argument federal law precluded local land use regulation of its antennae in addition to the satellite dish drum antenna (a contention previously made by counsel for Indian Peak during the multi-year negotiation process). This purported basis for a continuance was not articulated in counsel's August 10, 2018 letter to the City or her presentation at the August 21, 2018 revocation hearing, nor was it raised in the trial court in support of Indian Peak's petition for writ of administrative mandamus. Even were the argument not forfeited (*Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 587 [issue not raised in administrative proceedings or in the trial court deemed forfeited]; *Owen v. Sands* (2009) 176 Cal.App.4th 985, 995 [same]), Indian Peak fails to explain how the city council's failure to consider granting a continuance for a reason never mentioned by its lawyer could constitute an abuse of discretion.

[procedural due process errors, even if proved, are subject to harmless error analysis]; *Doe v. University of Southern California*, *supra*, 28 Cal.App.5th at p. 40 [rejecting fair hearing claim when petitioner failed to show how alleged procedural error prejudiced his case].)

### 3. *Revocation of CUP 230 Was Neither Unlawful Nor Arbitrary*

Indian Peak contends the City's action in revoking CUP 230 was arbitrary because it violated its July 2016 agreement to consider Indian Peak's revision application based on limited information and did not consider whether aspects of the antenna array were protected from local land use regulation by federal law. Neither argument has merit.

With respect to Indian Peak's revision application, as the trial court found, Indian Peak failed to utilize available administrative remedies to challenge staff's November 2016 assessment the application was incomplete, an essential prerequisite to challenging that decision in court as arbitrary. To the contrary, as discussed, at their December 2017 in-person meeting Indian Peak's counsel agreed to provide additional information to the City's staff.[15]

---

[15]     Responding to the substance of Indian Peak's contention it had breached its purported agreement to consider the revision application on limited information, the City emphasizes the July 26, 2016 letter, while authorizing Indian Peak to submit the application with the more limited information required for the expedited review process, expressly stated that process could not be used for Indian Peak's application under the terms of CUP 230. Staff requests for additional information when reviewing an application for an amendment to a conditional use permit, it explained, are a normal part of the review process.

"[T]he rule of exhaustion of administrative remedies is well established in California jurisprudence . . . . 'In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' [Citation.] The rule 'is not a matter of judicial discretion, but is a fundamental rule of procedure . . . binding upon all courts.'" (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 321; accord, *Upshaw v. Superior Court* (2018) 22 Cal.App.5th 489, 505.) "The exhaustion doctrine operates as a defense to litigation commenced by persons who have been aggrieved by action but who have failed to exhaust the administrative remedy available to them." (*Los Globos Corp. v. City of Los Angeles* (2017) 17 Cal.App.5th 627, 633.)

Indian Peak contends, as it did in the trial court, its argument the City breached its agreement to consider the revision application is not barred by the rule requiring exhaustion of administrative remedies because exhaustion would have been futile. But "'"[f]utility is a narrow exception to the general rule"' requiring exhaustion of remedies. [Citation.] The exception applies only if the party invoking it can positively state that the administrative agency has declared what its ruling will be in a particular case." (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1313; accord, *Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 936.) Rather than point to anything in the administrative record indicating the City's planning commission or city council had clearly indicated its view on the documentation necessary to consider a revision

Indian Peak implicitly recognized this when it agreed to provide additional information in December 2017.

application, Indian Peak offers a tautology: The entire process was futile, it asserts, because the City refused to process the revision application in accordance with the terms of the agreement reached and then (two years later) revoked CUP 230. Far more is required to establish futility. (See *Upshaw v. Superior Court*, *supra*, 22 Cal.App.5th at p. 507 ["[b]ecause there is no evidence the Sheriff had taken any position, let alone declared what its ruling would be, Upshaw cannot establish futility in pursuing the required administrative procedures"]; see also *Bennett v. Borden, Inc.* (1976) 56 Cal.App.3d 706, 710 ["[p]laintiff's preconception of the futility of administrative action did not permit him to bypass the administrative remedy"].)

As to Indian Peak's federal law argument, in its opening and reply memoranda in support of the petition for writ of administrative mandamus in the trial court, Indian Peak asserted the federal Telecommunications Act of 1996 (Pub.L. No. 104-104 (Feb. 8, 1996) 110 Stat. 56) prohibited restrictions on "over-the-air reception devices." Specifically, it explained state and local governments are prohibited from restricting a property owner's installation, maintenance or use of antennae used to receive direct broadcast satellite service, video programming service or television broadcast signals, citing 47 Code of Federal Regulations part 1.4000(a)(1). Indian Peak identified only the satellite dish drum antenna as protected by this federal regulation and argued, because the City's notices of violation sought removal of that device, its subsequent notice of revocation, predicated on those earlier notices, was arbitrary and invalid.

As discussed, the City conceded it could not regulate the satellite dish drum,[16] and the trial court acknowledged, "[I]f the satellite dish drum was the sole basis for the City's finding Petitioner was not in compliance with the conditions of CUP No. 230, the writ petition would be granted." The court, however, found the weight of the evidence supported the City's finding Indian Peak was in violation of conditions associated with CUP 230 apart from the installation and maintenance of the satellite dish drum.

In this court Indian Peak again argues the City's attempt to have it remove the satellite dish antennae in contravention of federal law invalidated the revocation proceeding, but it does not address the trial court's ruling that revocation was justified based on its installation and operation of other antennae in violation of the conditions of CUP 230. Rather, Indian Peak now contends revocation of CUP 230 was arbitrary (or unlawful) because the City proceeded without first obtaining expert testimony concerning the scope of federal preemption of land use regulations potentially impacting Indian Peak's extensive antenna array, suggesting that "perhaps more" than the single satellite dish was protected. Because this argument was not presented in the administrative proceedings or the trial court, it is forfeited. (See *Doe v. University of Southern California*, *supra*,

---

[16]    In fact, certain satellite dish antennae—those one meter or less in diameter—are exempted from regulation by RPV Municipal Code section 17.76.20, subdivision (B)(2). The federal regulation cited by Indian Peak, 47 Code of Federal Regulations part 1.4000(a)(1)(i)(B), contains the same size limitation. Indian Peak does not direct us to any information in the record on appeal indicating the size of the satellite dish drum at issue in the case.

28 Cal.App.5th at p. 37; *Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 587.)

In any event, Indian Peak misapprehends the significance of federal preemption. Federal law precludes local restrictions that impair (unreasonably interfere with) certain types of communications-related activities. It does not mandate local approval of them—that is, the City is not obligated to issue (or continue in effect) a conditional use permit affirmatively authorizing installation and operation of antennae that come within the scope of federal preemption, whatever that may be. Thus, federal law might, in theory, protect Indian Peak from (or preempt) an enforcement action based on operating covered antennae without a conditional use permit, which the trial court recognized, noting the City's future enforcement actions, "if any, are not before this court," and which Indian Peak argued in defense of the nuisance lawsuit subsequently filed by the City. But Indian Peak has provided no legal authority, as was its obligation, for its contention the City acted arbitrarily when it revoked CUP 230 without first considering the issue of potential federal preemption. (See *Shenouda v. Veterinary Medical Bd.* (2018) 27 Cal.App.5th 500, 512 ["[b]ecause judgments of the trial court are presumed to be correct, the appellant bears the burden to affirmatively demonstrate error, and must show that the error was prejudicial"]; *Kuperman v. San Diego County Assessment Appeals Bd. No. 1* (2006) 137 Cal.App.4th 918, 931 ["as appellant, Kuperman is obligated to support his assertion of error with relevant legal authority and analysis; he has the burden of showing error occurred"].)

## DISPOSITION

The judgment is affirmed.  The City is to recover its costs on appeal.

PERLUSS, P. J.

We concur:

SEGAL, J.

IBARRA, J.[*]

---

[*]    Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

EXHIBIT C

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIAN PEAK PROPERTIES, LLC, et al., <br>　　　Plaintiffs, <br><br>　　　　　　v. <br><br>CITY OF RANCHO PALOS VERDES, et al., <br>　　　Defendants. | CV 20-457 DSF (Ex) <br><br> Order DENYING Motion for Preliminary Injunction (Dkt. No. 48) |

Plaintiffs move for a preliminary injunction barring Defendants from removing any antenna from the property at issue or even from entering the property.  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  The hearing set for July 20, 2020 is removed from the Court's calendar.

The Court previously denied two temporary restraining order applications.  The first was denied for lack of exigency.  The second was denied both for lack of exigency and for a failure to demonstrate a strong likelihood of success on the merits.

The present motion does little to improve Plaintiffs' position.  As noted in the order denying the second TRO application, the Federal Communications Commission has consistently stated that the OTARD regulation at issue "applies only to antennas at the customer end of a

wireless transmission" and generally excludes "hub or relay antennas used to transmit signals to and/or receive signals from multiple customer locations." In the Matter of Promotion of Competitive Networks in Local Telecommunications Markets, FCC 00-366, ¶ 99. The FCC has stated that some hub or relay antennas fall within the OTARD regulation when a network is designed with a point-to-point or mesh configuration where customer antennas also forward signals to other customers. In the Matter of Promotion of Competitive Networks in Local Telecommunications Markets, FCC 04-41, ¶¶16-18. But "in order to invoke the protections of the OTARD rule, the equipment *must be installed in order to serve the customer on such premises* . . . ." Id. ¶ 17 (emphasis in original).

Plaintiffs now claim to be customers of the companies that are transmitting from the property's antennas. There are three categories of antennas at issue – the "LT-WR antenna," the "One Internet America antenna," and the "Geolinks antenna[s]."[1] For all three antennas, Plaintiffs claim that "[u]ntil recently, the agreement between Indian Peak and [company] was verbal and informal. The agreement recently was reduced to writing in order to bring clarification to the nature of the relationship and Indian Peak's use of the internet services as a customer of [company] at the Subject Property." See Kay Decl. ¶¶ 9, 13, 18.

There are several reasons why this does not change the Court's analysis. First, the whole claim is somewhat suspect given the circumstances, but the Court need not resolve such credibility issues here. More importantly, whether or not Indian Peak is technically allowed to use the internet services provided by One Internet America and Geolinks, it is obvious that on-site customer use is not the purpose of the antennas. Indian Peak does not appear to engage in any

---

[1] At least this is the Court's best impression. Both parties insist on discussing numerous antennas that do not appear at issue in this case. There appears to be no dispute that the DirecTV antenna on the property qualifies as an OTARD and no dispute that the antennas previously allowed by Defendants under CUP No. 230 are not OTARD.

activities on the site other than hosting the antenna array.[2]  Even if it did, it strains credibility that Indian Peak would be a bona fide customer of *three* separate internet providers for whatever minimal activities that might occur at the property.

The FCC was clear that opening the OTARD regulation to certain point-to-point and mesh network configurations was not intended to open an enormous loophole for companies like Plaintiffs to run a hub site free from local zoning regulations.  "[I]n order to invoke the protections of the OTARD rule, "the equipment *must be installed in order to serve the customer on such premises*, . . . ."  FCC 04-41, ¶ 17 (emphasis in original).  The use of "in order to" strongly implies that the primary use of the antenna and the reason for its installation must be for the service of the on-site customer.  In another decision, the FCC found that an antenna fell within the OTARD rules specifically because the antenna owner "cannot be considered a carrier that is trying to circumvent section 332(c)(7) by locating a hub site on the premises of a customer."  In the Matter of Continental Airlines, FCC 06-157, ¶ 21; see also id. ¶ 21 n.68 ("Unlike the targeted subjects of local zoning authorities, Continental's antenna is of a type commonly used by consumers, is located indoors, and is being used to provide service to the antenna user solely within the leased premises.").

Indian Peak is clearly – and fairly openly – attempting to circumvent the generally applicable rules by locating its hub site *on its own property* – not even an ordinary customer's – and then claiming to *also* be a customer.  The available evidence strongly points to the conclusion that the OTARD rule does not apply to the One Internet America and Geolinks antennas at issue in this case and that the FCC did not intend for it to apply.

---

[2] It is unclear whether Indian Peak provides maintenance services to the antenna owners or solely rents space at the property for the antennas to be installed and maintained by their owners.

The LT-WR antenna may have a different use than the One Internet America and Geolinks antennas and could more likely qualify as an OTARD.  Indian Peak claims that the LT-WR antenna solely transmits and receives point-to-point signals and those signals are not passed to any customer or point beyond the property.

However, even if this is the case, Plaintiffs have not shown any significant chance of irreparable harm that would warrant an injunction or any public interest in such an injunction.  Defendants have repeatedly disclaimed any intention to remove the purportedly OTARD antennas during the pendency of this lawsuit.  And even if the LT-WR antenna were to be removed, at most this might disrupt internet service to an unoccupied residential property.  There is no evidence that this kind of harm would be significant and would not be compensable.  In addition, given that no one is living at the property, any need for internet use at the property related to Indian Peak's operation that is provided by the LT-WR antenna would presumably be lessened if the other, non-OTARD antennas were also removed at the same time.  The Court finds that potential interest of a hypothetical future residential tenant at the property in continued internet access through the LT-WR antenna is minimal given that a residential tenant is often expected to provide his own utilities, including internet service.

The motion for a preliminary injunction is DENIED.  Plaintiffs have shown very little chance of success on the merits with respect to the One Internet America and Geolinks antennas.  Planitiffs have shown a

greater chance of success on the merits with respect to the LT-WR antenna, but an insufficient likelihood of irreparable harm and little public interest in an injunction. [3]

IT IS SO ORDERED.

Date: July 15, 2020

Dale S. Fischer
United States District Judge

---

[3] The Court also notes that the relief requested by Plaintiffs is too broad and unsupported by their arguments, even if those arguments were persuasive. Even if there was a significant possibility that the antennas fell within the OTARD regulation and there could be significant irreparable harm, there is no reason to prevent Defendants from entering and inspecting the property, assuming that they are otherwise entitled to under applicable law.

## STATEMENT OF RELATED CASES

*Amicus* are not aware of any related cases pending before the Court.


DATED: October 25, 2024          ALESHIRE & WYNDER, LLP
                                 WILLIAM W. WYNDER
                                 ALISON S. FLOWERS
                                 CHRISTY MARIE LOPEZ


                            By:   /s/ William W. Wynder
                                 ───────────────────────────
                                 WILLIAM W. WYNDER
                                 Attorneys for Rancho Palos Verdes

**CERTIFICATE OF COMPLIANCE PURSUANT TO
FED. R. APP. 32(A)(7)(C)**

Pursuant to Fed. R. App. P. 32 (a)(7)(C), I certify that the attached brief is

proportionally spaced, has a typeface of 14 points and contains <u>4307</u> words.


DATED: October 25, 2024     ALESHIRE & WYNDER, LLP
                      WILLIAM W. WYNDER
                      ALISON S. FLOWERS
                      CHRISTY MARIE LOPEZ


By:  /s/ William W. Wynder
       WILLIAM W. WYNDER
       Attorneys for Rancho Palos Verdes

<u>**CERTIFICATE OF SERVICE**</u>

On **October 25, 2024**, I served true copies of the following document(s) described as **BRIEF OF *AMICUS CURIAE*, CITY OF RANCHO PALOS VERDES** on the interested parties in this action as follows:

| | |
|---|---|
| Julian Gehman, Esq.<br>GEHMAN LAW PLLC<br>1050 Connecticut Ave. NW, Suite 500<br>Washington, DC 20036 | Attorneys for Petitioner,<br>**INDIAN PEAK PROPERTIES,<br>LLC, a Nevada LLC** |

Telephone: (202) 341-0198
Email: julian@gemanlaw.com

| | |
|---|---|
| Matthew J. Dunne, Esq.<br>Sarah E. Citrin, Esq.<br>John R. Grimm, Esq.<br>Jacob M. Lewis, Esq.<br>**Federal Communications Commission**<br>45 L. Street NE<br>Washington, D.C. 20554 | Attorneys for Respondent,<br>**FEDERAL COMMUNICATIONS<br>COMMISSION** |

Telephone: (202) 418-1740
Email: matthew.dunne@fcc.gov
        fcclitigation@fcc.gov

| | |
|---|---|
| Robert B. Nicholson, Esq.<br>Matthew A. Waring, Esq.<br>**U.S. Department of Justice**<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530-0001 | Attorneys for Respondent,<br>**UNITED STATE OF AMERICA** |

Telephone: (202) 514-2489
Email: robert.nicholson@usdoj.gov

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

**BY FEDEX:** I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on **October 24, 2024**, at Los Angeles, California.


_____
/s/ William W. Wynder
William W. Wynder