## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

INDIAN PEAK PROPERTIES LLC,
*Petitioner*

v.

THE FEDERAL COMMUNICATIONS COMMISSION AND
THE UNITED STATES OF AMERICA,
*Respondents*

Petition for Review of an Order of the Federal Communications
Commission

## REPLY BRIEF OF PETITIONER

Julian Gehman
GEHMAN LAW PLLC
1050 Connecticut Ave NW
Suite 500
Washington, DC 20036
(202) 341-0198
julian@gehmanlaw.com

*Counsel for Indian Peak
Properties LLC*

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| | | **ARGUMENT** | 1 |
| 1 | | The FCC Brief Misconstrues the Rule | 1 |
| 2 | | Even if Reasonable, the FCC Failed to Provide Fair Notice | 3 |
| | a. | FCC failed to give notice of its procedure | 4 |
| | b. | FCC failed to give notice of its "human presence" rule | 5 |
| | c. | FCC violated Indian's due process rights and reliance interests | 7 |
| 3 | | The Bureaus Violated the Rule and Engaged in *Ultra Vires* Action | 10 |
| | a. | FCC admits it violated the Rule | 10 |
| | b. | The Bureaus lack lawmaking authority | 10 |
| | c. | The Bureaus' processing of Indian's petitions constituted *ultra vires* action | 13 |
| | d. | Indian's rule-violation claim is not moot | 15 |
| 4 | | The *Order's* "Human Presence" Rule is Legislative, Requiring Notice-and-Comment Rulemaking | 17 |
| | a. | Indian's notice-and-comment claim is properly before the Court | 17 |
| | b. | Because the Bureaus acted outside delegated authority, the *Order* does not qualify as an adjudication | 20 |
| | c. | Even if authorized, the *Order* announces a legislative, not an interpretive rule. | 21 |
| | | **CONCLUSION** | 23 |

# TABLE OF AUTHORITIES

| **Federal cases** | **Page** |
|---|---|
| *FCC v. Schreiber,* 381 U.S. 279 (1965) | 12 |
| *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S 120 (2000) | 13 |
| *FEC v. Cruz*, 596 U.S. 289 (2022) | 13 |
| *Gates & Fox Co. v. OSHRC*, 790 F.2d 154 (D.C. Cir. 1986) | 8 |
| *General Elec. Co. v. U.S. EPA*, 53 F.3d 1324 (1985) | 4, 5 |
| *Kisor v. Wilkie,* 588 U.S. 558 (2019) | 3, 11, 13 |
| *La. Pub. Svc. Comm'n v. FCC*, 476 U.S. 355 (1986) | 13, 23 |
| *Nader v. FCC,* 520 F.2d 182 (D.C. Cir. 1975) | 12 |
| *Neustar, Inc. v. FCC*, 857. F.3d 886 (D.C. Cir. 2017) | 22 |
| *NTCH, Inc. v. FCC*, 877 F.3d 408 (D.C. Cir. 2017) | 12 |
| *Radio Athens, Inc. v. FCC* , 401 F.2d 398 (D.C. Cir. 1968) | 8, 9 |
| *Reuters Ltd. v. FCC*, 781 F.2d 946 (D.C. Cir. 1986) | 13 |
| *Satellite B'casting Co., Inc v. FCC,* 824 F.2d 1 (D.C. Cir. 1987) | 4, 5, 9 |
| *SEC v. Chenery*, 332 U.S. 194 (1947) | 21 |
| *U.S. v. Chrysler Corp.*, 158 F.3d 1350 (D.C. Cir. 1998) | 4, 5, 8, 9 |
| *Washington Assoc. for Television and Children v. FCC,* 712 F.2d 677 (D.C. Cir. 1983) | 17, 18, 20 |
| *Waterkeeper Alliance v. EPA*, 853 F.3d 527 (D.C. Cir. 2017) | 10, 11 |

## U.S. Constitution

| U.S. CONST. AMEND. V | 7, 8, 23 |
|---|---|

## Statutes

| | |
|---|---|
| 5 U.S.C. § 553 | 21 - 23 |
| 5 U.S.C. § 706 | 15, 23 |
| 28 U.S.C. § 1346 | 15 |
| 28 U.S.C. § 2671-80 | 15 |
| 47 U.S.C. § 154 | 11, 12, 14 |
| 47 U.S.C. § 155 | 13 |
| 47 U.S.C. § 405 | 17 |
| Pub. L. No. 104-104, § 207, 110 Stat.  56, 114 (1996) | 14,  22 |

## Regulations

| | |
|---|---|
| 47 C.F.R. § 0.61 | 13 |
| 47 C.F.R. § 0.283 | 13 |
| 47 C.F.R. § 1.106 | 18, 20 |
| 47 C.F.R. § 1.4000. (the "Rule") | 1-16, 23 |

## Agency Materials

| | |
|---|---|
| *Continental Airlines*, 21 FCC Rcd 13201 (2006) | 5-7, 19, 20 |
| *Pet'n for Decl. Ruling - Multifamily Broadband Council, Letter Order, 32 FCC Rcd 3794 (MB 2017)* | 12, 13 |
| Question and Answer: Can I continue to use my antenna while the petition or waiver request is pending?  https://www.fcc.gov/media/over-air-reception-devices-rule | 5 |

| | |
|---|---|
| Letter Order from Garnet Hanley and Maria Mullarky, FCC, to *Toneata Martocchio*, counsel to Indian Peak Properties LLC, unpublished (Jul 18, 2022). JA11 | 14, 16 |
| *Updating the Commission's Rule for Over-the-Air Reception Devices*, Report and Order, 36 FCC Rcd 537 (2021) (the "*Order*") | 3-7, 14, 15, 18-23 |

# ARGUMENT

This case could have turned out differently had the Commission given notice of its secret procedure and new "human presence" standard. Indian would have known to satisfy the standard and how to navigate FCC procedure. In this Reply Brief, Indian responds to the FCC Brief.

## 1. The FCC Brief Misconstrues the Rule.

The FCC Brief claims that "[f]or the Rule to apply, an antenna must "transmit or receive" certain video programming . . .." FCC Brief at 3 (citing 47 C.F.R. § 1.4000(a)(1)(I)(A)). This misconstrues 47 C.F.R. § 1.4000 (the "Rule"). The Rule *applies* even if an antenna does not comply with these requirements. A more accurate characterization is that for a restriction to be *preempted* under the Rule, an antenna must comply with the requirements of Paragraph (a) of the Rule. The Rule *applies* where a waiver request is submitted under Paragraph (d) of the Rule or a petition for declaratory ruling is submitted pursuant to Paragraph (e). 47 C.F.R. §§ 1.4000(d) and (e). The Rule imposes a uniform requirement: waiver requests and petitions for declaratory

ruling "must comply with the procedures in paragraphs (f) and (h) of this section and *will be put on public notice.*"  *Id* (emphasis added).

This public notice starts an adversarial process to determine whether the restriction is preempted under the Rule.  A restriction is preempted where the petitioner's antennas, users and services comply with Paragraph (a) of the Rule, and the restriction improperly impairs the petitioner's legitimate use.  These points are to be determined in the adversarial process, with the burden of proof placed on the party urging the restriction.  47 C.F.R. § 1.4000(g).  The party urging the restriction could show that the petitioner's antennas, users or services do not comply with Paragraph (a) of the Rule, that there are safety or historic preservation concerns, or that the restriction otherwise does not unreasonably impair the petitioner's use.

Paragraphs (f) and (h) require notice to adverse parties and affidavits to support facts presented in the pleadings.  47 C.F.R. §§ 1.4000(f) and (h).  The Rule imposes no further requirement before a waiver request or petition goes on public notice.  There is no express or implied authorization for FCC staff to engage in pre-public-notice

"adjudication" to determine suitability under the Rule. To the contrary, "[i]n any proceeding regarding the scope or interpretation of [the Rule], the burden of demonstrating that a particular . . . restriction complies with [the Rule] . . . shall be on the party that seeks to impose or maintain the restriction." 47 C.F.R. § 1.4000(g). Nowhere does it say that only petitions compliant with Paragraph (a) will be placed on public notice. Because the Rule and accompanying FCC orders do not afford discretion on these points, the Court should enforce the plain language of the Rule. *Kisor v. Wilkie,* 588 U.S. 558, 574-575 (2019).

## 2.    Even if Reasonable, the FCC Failed to Provide Fair Notice

The FCC Brief, 30, claims that the Commission reasonably dismissed Indian's petitions without starting a proceeding. As described above, the FCC violated the Rule by refusing to initiate a proceeding. However, even if the Commission's actions were reasonable as claimed by the FCC Brief, or somehow complied with the Rule, the agency's failure to give fair notice of its interpretation of the Rule prejudiced Indian and warrants reversal of the *Order*.

It is well established that an agency may not penalize a private party "for violating a rule without first providing adequate notice of the substance of the rule." *Satellite B'casting Co., Inc v. FCC*, 824 F.2d 1, 3 (D.C. Cir. 1987); *U.S. v. Chrysler Corp.*, 158 F.3d 1350 (D.C. Cir. 1998). This is so, even where the agency's interpretation of the rule is permissible. *General Elec. Co. v. U.S. EPA*, 53 F.3d 1324, 1325 (1985) "The dismissal of an application . . . is a sufficiently grave sanction to trigger this duty to provide clear notice." *Satellite B'casting*, 824 F.2d at 3 (citing cases). Dismissal of Indian's petitions, like the dismissal of an application, triggered the notice requirement.

### a. FCC failed to give notice of its procedure

The FCC provided no public notice that it would conduct an adjudication placing the burden on the petitioner to demonstrate compliance with Paragraph (a) of the Rule. As noted above, there is no statement in the Rule or accompanying FCC orders that only petitions compliant with Paragraph (a) will be placed on public notice. Instead, the FCC invites these petitions, stating that where, as here, there is no safety or historic preservation consideration, "the restriction cannot be

enforced while the petition is pending."  https://www.fcc.gov/media/

over-air-reception-devices-rule (viewed Jun 23, 2024).  The Commission

has given no notice whatsoever of the actual procedure that the Bureaus

use to process these petitions.   This lack of notice prejudiced Indian and

warrants reversal of the *Order*.  *See Satellite B'casting Co., supra; U.S.

v. Chrysler Corp.*, *supra;* and  *General Elec. Co., supra* (reversing

agency orders).

    **b.**    **FCC failed to give notice of its "human presence" rule**

      The FCC Brief, 20-26, claims the Commission correctly construed

the Rule to require a regular human presence at an antenna's location.

However, even if that were the correct construction of the Rule, the FCC

is improperly penalizing Indian, having failed to give fair notice of the

"human presence" requirement.  This is a new requirement.  The *Order*

telegraphs that this is a new requirement by stating "[w]e do not address

all possible uses or establish a bright-line standard for such use." *Order*

¶ 23.  This is the language of an announcement of a new rule.

Nevertheless, the *Order,* at ¶ 30, and the FCC Brief, at 25-26, try to

shoehorn the "human presence" requirement into *Continental Airlines*,

21 FCC Rcd 13201 (2006) and other FCC precedents. In *Continental Airlines*, the airport argued that Continental's passengers using Wi-Fi in the President's Lounge were the cognizable "users" under 47 C.F.R. § 14000(a)(1). Because Continental and not the passengers had the leasehold interest in the President's Club premises, the airport claimed that the Rule did not apply. The FCC rejected this, stating that Continental itself was the cognizable user and the fact that passengers also used the Wi-Fi antenna "does not alter the analysis." *Continental Airlines*, 21 FCC Rcd 13201 at **5, ¶ 15. Curiously, the *Order* and the FCC Brief both avoid discussing the "does not alter the analysis" quote, even after Indian highlighted this phrase as the key analytical step, *see* Indian Brief 36-40. The Commission's silence on this point indicates that it has no good answer.

Prior to the *Order*, a commercial Wi-Fi provider was the cognizable "user" or "customer" under 47 C.F.R. § 1.4000(a), and end-users of the system did not "alter the analysis." In other words, in an office building with Wi-Fi service, the building owner or commercial Wi-Fi provider was the "user" or "customer." The Wi-Fi system's end-

users, who may come and go, or work from home, "[did] not alter the analysis." *Continental Airlines* at ¶ 15. Subsequent to the *Order*, however, there is an additional requirement that they *do* alter the analysis. If, in the Commission's view, there are not enough human end users, with sufficiently frequent use, then the Wi-Fi system loses the protection of the Rule. This interpretation is not apparent from an ordinary reading of *Continental Airlines* and other precedent. The FCC should have given fair notice of this new requirement before penalizing with denial of Indian's petitions.

### c. The FCC violated Indian's due process rights and reliance interests.

In arguing that the Commission did not violate Indian's due process rights or reliance interests, the FCC Brief, 33-38, makes a series of arguments that: (1) Indian forfeited its constitutional claim; (2) Indian and the City had actual notice of Indian's petitions and both participated in the FCC proceeding; (3) in order to implicate due process rights, there has to be an actual deprivation of property and not the mere expectation that an agency will follow procedure; (4) the Commission did not deprive Indian of property, rather, the City and the California courts did

so; and (5) Indian did not have a reliance interest in the Bureaus initiating a proceeding because the Commission rightfully found that the Rule did not apply to Indian's petitions.

To respond to these, (1) to the extent that Indian's constitutional claim was not properly presented, the Commission exercised its discretion in the *Order* ¶¶ 33-36 and addressed the merits, as did the FCC Brief. Indian's constitutional and reliance claims are properly before this Court. (2) It is well established that "[t]he due process clause prevents . . . the application of a regulation that fails to give fair warning of the conduct it prohibits or requires." *U.S. v. Chrysler Corp.*, 158 F.3d 1350, 1354 (D.C. Cir. 1998) (quoting *Gates & Fox Co. v. OSHRC*, 790 F.2d 154, 156 (D.C. Cir. 1986)); *Radio Athens, Inc. v. FCC*, 401 F.2d 398, 404 (D.C. Cir. 1968). As detailed above, the Commission failed to give fair notice of the procedure the Bureaus used in processing Indian's petitions and that a "human presence" would be required for the Rule to apply. The Commission's failure to give notice on these points violated Indian's due process rights. (3) There was an actual deprivation of Indian's property, as described in Indian Brief 44-45. Moreover, it is

well established that FCC dismissal of an application (or in this case dismissal of Indian's petition) is sufficient loss to trigger due process requirements. *Radio Athens, Inc. v. FCC, supra; Satellite B'casting Co., Inc v. FCC*, 824 F.2d 1, 3 (D.C. Cir. 1987). (4) It is well established that a cognizable property loss occurs for due process considerations where an agency action causes a regulatee to lose money, even if the agency itself did not directly assess the penalty or fine. *U.S. v. Chrysler Corp.*, 158 F.3d 1350, 1354-55 (D.C. Cir. 1998) (NHTSA-ordered recall caused Chrysler to spend money). (5). As described in this Reply Brief *supra* 1-2, the Commission misconstrues the Rule as not applying until the FCC "adjudicates" that the petitioner complies with Paragraph (a) of the Rule, 47 C.F.R. § 1.4000(a). In fact, the Rule applies upon the submission of a petition for declaratory ruling that satisfies the procedural requirements of Paragraphs (f) and (h) of the Rule, 47 C.F.R. §§ 1.4000(f) and (h). The Indian Brief 23-31 details how Indian is entitled to the procedural protections of the Rule even where the FCC rules against Indian on the merits of the petition. Indian and all

petitioners under the Rule have a reliance interest that the Commission will follow the procedure set out in the Rule.

### 3. The Bureaus Violated The Rule and Engaged in *Ultra Vires* Action

The FCC Brief 31-33 implausibly argues that the Bureaus need not follow the Rule but instead may fashion their own procedure.

#### a. The FCC admits it violated the Rule

The FCC's quotation that "[a]gencies are not . . . helpless slaves to literalism" essentially admits that the Bureaus did not follow the literal language of the Rule. *See* FCC Brief at 32, quoting *Waterkeeper Alliance v. EPA*, 853 F.3d 527, 535 (D.C. Cir. 2017). The FCC does not deny Indian's repeated claim (Indian Brief 23-27) that FCC staff violated the Rule. The FCC Brief (29-38) claims Indian's rule-violation contentions are moot and the Bureaus acted reasonably. However, the FCC does not deny and therefore admits that it violated the Rule.

#### b. The Bureaus lack lawmaking authority.

The Commission's reliance on *Waterkeeper Alliance, supra,* is misplaced (FCC Brief 32). The *de minimus* exception referenced in *Waterkeeper Alliance* involves administrative agencies conducting

notice-and-comment rulemakings in response to statutory mandates. In certain cases, the agency's lawmaking authority could authorize a *de minimus* exception to Congress' statutory mandate. That is inapposite to the present situation. Here, the Bureaus did an end-run around the Rule, which the Commission had promulgated through notice-and-comment rulemakings. Agencies have law making authority, Bureaus do not. A Bureau's job is to follow the law, including the legislative Rule. The Indian Brief 14-33 repeatedly pointed out that the Rule gives FCC staff members no discretion to disregard the procedure set out in the Rule. In response, the FCC Brief does not deny this and has pointed to no text of the Rule or other FCC order giving staff discretion to disregard the Rule's procedure. In the admitted absence of grant of any such discretion, the Court should enforce the plain language of the Rule. *Kisor v. Wilkie,* 588 U.S. 558, 574-575 (2019).

Instead of referencing any discretionary language in the Rule, the FCC Brief 32 cites to Section 4(j) of the Communications Act. This argument suffers the same defect as the citation to *Waterkeeper Alliance.* Section 4(j) authorizes "[t]he *Commission*" to "conduct its proceedings

in such manner as will best conduce the proper dispatch of business . . . ." 47 U.S.C. § 154(j) (emphasis added). When Congress says "the Commission," it means the FCC, not its delegated subdivisions. *NTCH, Inc. v. FCC*, 877 F.3d 408, 413 (D.C. Cir. 2017); 47 U.S.C. § 154(a) (defining "the Commission" as "composed of five commissioners"). Court decisions discuss that Section 4(j) authorizes the Commission to order its docket or dispose of cases in the way that the agency deems best. *See e.g., Nader v. FCC,* 520 F.2d 182 (D.C. Cir. 1975). However, this discussion of Section 4(j) is in the context of action by the Commission, often after a notice-and-comment rulemaking, and not *ad hoc* action by staff that is contrary to the FCC's established rule. For example, in the leading case of *FCC v. Schreiber*, which cites extensively to Section 4(j), the Commission "promulgated a rule" governing the disputed proceedings. *FCC v. Schreiber,* 381 U.S. 279, 291 (1965). We could find no case under Section 154(j) approving *ad hoc* Bureau action contrary to the agency's established rule. That the Bureau had done this once before does not manufacture the needed authority, as suggested by FCC Brief at 32 (citing *Pet'n for Decl. Ruling*

- *Multifamily Broadband Council*, Letter Order, 32 FCC Rcd 3794 (MB 2017)).  The Commission delegates authority to Bureaus. 47 U.S.C. § 155(c); s*ee, e.g.*, 47 C.F.R. §§ 0.61, 0.283 (Media Bureau).  However, no delegation can authorize overriding the Rule, only another notice-and-comment rulemaking can do that.

The same standard applies to the full Commission or to Bureaus acting on delegated authority: "rules are rules, and fidelity to the rules which have been properly promulgated . . . is required."  *Reuters Ltd. v. FCC*, 781 F.2d 946, 951 (D.C. Cir. 1986).  "If uncertainty does not exist, . . . [t]he regulation just means what it means - and the court must give it effect, as the court would any law."  *Kisor,* 588 U.S. at 574-75.

### c.  The Bureaus' processing of Indian's petitions constituted *ultra vires* agency action.

It is well established that "an agency literally has no power to act . . . unless and until Congress confers power upon it."  *La. Pub. Svc. Comm'n v. FCC*, 476 U.S. 355, 374 (1986); *FEC v. Cruz*, 596 U.S. 289, 301 (2022); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S 120, 161 (2000).  Further, "an agency may not confer power upon itself."  *La. Pub. Svc. Comm'n*, 476 U.S. at 374.

By what authority did Bureau staff conduct the proceeding that is now under review?  Tracing potential authority for this action, Section 207 of the Telecommunications Act of 1996 instructed the FCC to "promulgate regulations" in this area, and the FCC did so via notice-and-comment rulemakings that are codified in the Rule. Indian Brief at 10-12 sets out this history.  The Rule authorizes Bureau staff to act on Indian's petitions in the manner set out in the Rule.

Where they did not follow the Rule, Bureau staff lacked other, "ancillary" authority to process Indian's petitions in a manner not authorized by the Rule. As discussed above, Section 4(j) of the Communications Act confers authority on the FCC acting as the Commission, not on Bureaus acting contrary to the Rule.  47 U.S.C. § 154(j).  Certain leeway may be assumed in the administration of the Rule; a minor variation in procedure enforcing the Rule usually should not be fatal.  However what the Bureaus did was extreme: the Bureaus willfully jettisoned the Rule's procedures, stating in a letter ruling that there was no proceeding.  Indian Brief 7, JA11.  The FCC essentially admits that the Bureaus did not follow the Rule.  There is no authority

for what the Bureaus did. This is *ultra vires* agency action and should be reversed as not in accordance with law. 5 U.S.C. 706(2)(A).

### d. Indian's rule-violation claim is not moot.

FCC Brief 30 claims Indian's showing that the Bureaus violated the Rule by not initiating a proceeding "is not properly before the Court" because the *Order* ruled it moot. Indian's rule-violation claim is not moot for at least three reasons.

First, the agency's extreme violation of the Rule's procedures makes the *Order* not in accordance with law, warranting reversal by this Court. The legislative Rule is law; the FCC's treatment of Indian's petitions violated the Rule and therefore was not in accordance with law. *See* 5 U.S.C. 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action . . . not in accordance with law").

Second, the Court's ruling on whether FCC staff violated the Rule will impact Indian's ability to mount a tort claim against the Commission, which affects the parties' rights. Indian Brief at 46 noted that "Indian's claims are not moot. Indian will file claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80" for damages

from FCC's refusal to follow the Rule. Indian seeks a ruling in this appeal on an element of the tort claim. The FCC Brief does not dispute that this eliminates mootness.

Third, Indian reserves the right to file another petition for declaratory ruling under the Rule and the precedent set here will affect the treatment of that petition.

FCC Brief at 31 also claims that because Indian "asked the Commission to grant its Application for Review without further proceeding, its argument that the Bureaus should have opened a proceeding is not preserved." This is nonsensical. One purpose of initiating a proceeding is to stop enforcement proceedings and assessment of penalties, pending the Commission's adjudication of the petition. 47 C.F.R. 1.4000(a)(4). By the time of the Application for Review (January 12, 2023), the damage was done. On July 18, 2022, the Bureaus announced that there was no proceeding. JA11. Indian determined that, in view of the Bureau ruling, it lacked a good faith defense against the City's zoning laswsuits and capitulated in the litigation. Indian removed the antennas on July 27, 2022, and was

immediately liable for the City's and its own attorneys fees.  A further

FCC proceeding after the Application for Review would not have

remedied this damage.  Moreover, the litigation with the City was

completed by the time of the Application for Review, and an FCC

proceeding at this point would not have prevented other possible

damage.  Indian did not waive its right to an earlier proceeding by

subsequently asking for a grant without a proceeding.

**4.     The Order's "Human Presence" Rule is Legislative, Requiring
        Notice-and-Comment Rulemaking.**

> **a.     Indian's Notice-and-Comment Claim is Properly Before
>        This Court**

Citing 47 U.S.C. § 405(a), the FCC Brief, 38, contends that

Indian's notice-and-comment argument was not preserved because it was

not previously presented to the Commission.  It is well established that

Section 405(a) is not an absolute bar to appellate court consideration but

instead is enforced co-extensive with the traditional principle of

exhaustion of administrative remedies "which permits courts some

discretion to waive exhaustion." *Washington Assoc. for Television and

Children v. FCC*, 712 F.2d 677, 681 (D.C. Cir. 1983) (citing cases).  "It

is not always necessary for a party to raise an issue so long as the Commission has in fact already considered the issue." *Id.* at 682. Futility is recognized as another exception to the exhaustion requirement. *Id.* at 683. Weighing on the futility factor is the Commission's rule that discourages petitions for reconsideration where, as here, an Application for Review was denied. 47 C.F.R. §§ 1.106(b)(2) and (3). The relevant portion of this rule is set out in the footnote.[1]

In arguing that a notice-and-comment proceeding was required, Indian makes two points: (1) the *Continental Airlines* ruling applies to the Property because both were commercial Wi-Fi providers (Indian

---

[1] (2) Where the Commission has denied an application for review, a petition for reconsideration will be entertained only if one or more of the following circumstances are present:

(i) The petition relies on facts or arguments which relate to events which have occurred or circumstances which have changed since the last opportunity to present such matters to the Commission; or

(ii) The petition relies on facts or arguments unknown to petitioner until after his last opportunity to present them to the Commission, and he could not through the exercise of ordinary diligence have learned of the facts or arguments in question prior to such opportunity.

(3) A petition for reconsideration of an order denying an application for review which fails to rely on new facts or changed circumstances may be dismissed by the staff as repetitious.

Brief 36), and (2) the *Order* goes beyond *Continental Airlines* and sets a new rule (Indian Brief 37-38) which should have been put through a notice-and-comment rulemaking. As noted above, prior to the *Order*, a Wi-Fi provider's end users did not affect the analysis, but now they do. The FCC Brief 38 claims that this argument was not preserved since it was not presented to the FCC. However, the Commission has already considered and ruled on the issue. The *Order* finds that *Continental Airlines* does not govern this situation (*Order*, para 30 "Indian Peak argues that this case is analogous to *Continental Airlines*. We disagree."). This contradicts Indian's first point that *Continental Airlines* applies to this case. Then, the *Order* indicates that its "human presence" rule is consistent with *Continental Airlines* (*Id*. In *Continental Airlines*, "[t]here was no question that there was a regular and continuous human presence and that a purpose of the service provided by the antennas was to serve those human users.") This contradicts Indian's second contention that the *Order* goes beyond *Continental Airlines* and sets a new rule. Thus, the *Order* has already considered Indian's points and ruled the opposite way on both.

Logically, once the FCC rejects the premise that *Continental Airlines* applies here, it doesn't matter what follow-on argument Indian makes about *Continental Airlines*; they all fail in the view of the FCC, because the premise failed. This makes futile any argument based on *Continental Airlines*; the Commission has already considered the issue.

Were Indian to have sought reconsideration of the *Order*, as suggested by the FCC Brief, the FCC's rule would have mandated dismissal of that petition: there are no new facts or circumstances, and Indian would be making the same argument about *Continental Airlines*. 47 C.F.R. §§ 1.106(b)(2) and (3). This is the essence of futility, which is an exception to the requirement to exhaust administrative remedies. *Washington Assoc. for Television*, 712 F.2d at 683. The notice-and-comment claim is properly before this Court.

### b. Because the Bureaus acted outside delegated authority, the *Order* does not qualify as an adjudication.

The FCC Brief, 39-41, claims it was conducting an adjudication that need not undergo notice-and-comment rulemaking. However, because it was taken outside delegated authority, the FCC action does not qualify as an adjudication. The Administrative Procedure Act (APA)

grants a narrow exclusion from the rulemaking requirement for interpretive rules 5 US.C. § 553(b)(4)(A). This exclusion carries an implicit requirement that the adjudication be lawfully conducted pursuant to cognizable agency authority. The APA does not sanction rogue agency action. The Commission cannot flout the APA when processing Indian's petitions and then hide behind the APA when challenged. The *Order* does not qualify as an adjudication because the Bureau action it upholds was *ultra vires*.

### c. Even if authorized, the *Order* announces a legislative, not an interpretive rule.

The FCC Brief 39-41 suggests that any adjudication, *carte blanche*, is immune from the APA's rulemaking requirement. However, it's not that simple. By what authority did the FCC issue its "human presence" ruling? The Commission has a choice, at the outset, to interpret a statute through either adjudication or rulemaking. *SEC v. Chenery*, 332 U.S. 194, 202-03 (1947). Where interpreting a statute via adjudications, the FCC may announce new policy without undergoing a rulemaking. That is because, for statutes that the Commission is charged with administering, the statute itself constitutes Congressional

authorization for the FCC to interpret the statute. The FCC Brief, 40, cites to *Neustar, Inc. v. FCC*, 857. F.3d 886, 894 (D.C. Cir. 2017) for the proposition that "statutory interpretation can be rendered in the form of adjudication, not only in rulemaking."

That citation is misplaced, as is the FCC's argument. We are not dealing with statutory interpretation here. Section 207 of the Telecommunications Act of 1996 instructed the Commission to "promulgate regulations," and the FCC has done so through a series of notice-and-comment rulemakings, *see* Indian Brief 10-12. Because there is no statute to interpret, no statute authorizes the FCC to act. In the absence of statutory authorization, the Commission's authority must spring from the APA, 5 U.S.C. § 553. That provision establishes a general or default requirement of notice-and-comment rulemaking, with a limited exception for interpretive rules. 5 US.C. § 553(b)(4). The question is whether the *Order* is interpretive. As discussed above and in Indian Brief 34-40, the "human presence" ruling is legislative, not interpretive, because it imposes a new requirement. Thus, a rulemaking was required. In the absence of such rulemaking, the *Order* represents

the FCC "pulling itself up by its own bootstraps" to manufacture authority. This it may not do. *La. Pub. Svc. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("an agency may not confer power upon itself").

## Conclusion

Indian respectfully asks this Court to (a) rule that the FCC breached its non-discretionary duty, under 47 C.F.R. § 1.4000 and the U.S. Constitution Fifth Amendment, to place Indian's petitions on public notice, thereby starting a proceeding which would have shielded Indian from zoning enforcement; (b) find that the *Order's* "human presence" requirement is a legislative rule required to be promulgated in a notice-and-comment rulemaking proceeding; and (c) overturn the *Order* as arbitrary and capricious and contrary to law and remand to the FCC for action not inconsistent with this Court's order, 5 U.S.C. 706(a)(A).

Respectfully submitted,

**/s/ Julian Gehman**

_____
Julian Gehman
Gehman Law PLLC
(202) 341-0198
julian@gehmanlaw.com
Mail to:    P.O. Box 13514,
                Arlington, VA 22219

Office:    1050 Connecticut Ave NW
            Suite 500
            Washington, DC 20036
Attorney for Indian Peak Properties
LLC

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and this Court's order because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), this document contains 4,509 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Apple Pages in 14-point or greater Times New Roman.

**/s/ Julian Gehman**

Julian Gehman

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing REPLY BRIEF OF INDIAN PEAK PROPERTIES LLC was electronically filed using this Court's CM/ECF system, which will send a notice of filing to all registered CM/ECF users.

**/s/ Julian Gehman**
Julian Gehman



# Constitution of the United States

## Fifth Amendment

Fifth Amendment Explained

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

---

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated
   Title 5. Government Organization and Employees (Refs & Annos)
      Part I. The Agencies Generally
         Chapter 5. Administrative Procedure (Refs & Annos)
            Subchapter II. Administrative Procedure (Refs & Annos)

5 U.S.C.A. § 553

§ 553. Rule making

Effective: July 25, 2023

Currentness

**(a)** This section applies, according to the provisions thereof, except to the extent that there is involved--

   **(1)** a military or foreign affairs function of the United States; or

   **(2)** a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

**(b)** General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include--

   **(1)** a statement of the time, place, and nature of public rule making proceedings;

   **(2)** reference to the legal authority under which the rule is proposed;

   **(3)** either the terms or substance of the proposed rule or a description of the subjects and issues involved; and

   **(4)** the Internet address of a summary of not more than 100 words in length of the proposed rule, in plain language, that shall be posted on the Internet website under section 206(d) of the E-Government Act of 2002 (44 U.S.C. 3501 note) (commonly known as regulations.gov).

Except when notice or hearing is required by statute, this subsection does not apply--

   **(A)** to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

   **(B)** when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

**(c)** After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

**(d)** The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except--

**(1)** a substantive rule which grants or recognizes an exemption or relieves a restriction;

**(2)** interpretative rules and statements of policy; or

**(3)** as otherwise provided by the agency for good cause found and published with the rule.

**(e)** Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.

## CREDIT(S)

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 383; Pub.L. 118-9, § 2, July 25, 2023, 137 Stat. 55.)

## EXECUTIVE ORDERS

### EXECUTIVE ORDER NO. 12044

Ex. Ord. No. 12044, Mar. 23, 1978, 43 F.R. 12661, as amended by Ex. Ord. No. 12221, June 27, 1980, 45 F.R. 44249, which related to the improvement of Federal regulations, was revoked by Ex. Ord. No. 12291, Feb. 17, 1981, 46 F.R. 13193, formerly set out as a note under section 601 of this title.

Notes of Decisions (1595)

5 U.S.C.A. § 553, 5 USCA § 553
Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted  Limitation Recognized by   Krafsur v. Davenport,   6th Cir.(Tenn.),   Dec. 04, 2013

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated
    Title 5. Government Organization and Employees (Refs & Annos)
        Part I. The Agencies Generally
            Chapter 7. Judicial Review (Refs & Annos)

5 U.S.C.A. § 706

§ 706. Scope of review

Currentness

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be--

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## CREDIT(S)

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 393.)

Notes of Decisions (5716)

5 U.S.C.A. § 706, 5 USCA § 706
Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted  Limitation Recognized by   United States v. Jonas,   5th Cir.(Tex.),   Aug. 14, 2020

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 85. District Courts; Jurisdiction (Refs & Annos)

28 U.S.C.A. § 1346

§ 1346. United States as defendant

Effective: March 7, 2013

Currentness

**(a)** The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

**(1)** Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

**(2)** Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 7104(b)(1) and 7107(a)(1) of title 41. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

**(b)(1)** Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

**(2)** No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).

**(c)** The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section.

**(d)** The district courts shall not have jurisdiction under this section of any civil action or claim for a pension.

**(e)** The district courts shall have original jurisdiction of any civil action against the United States provided in section 6226, 6228(a), 7426, or 7428 (in the case of the United States district court for the District of Columbia) or section 7429 of the Internal Revenue Code of 1986.

**(f)** The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States.

**(g)** Subject to the provisions of chapter 179, the district courts of the United States shall have exclusive jurisdiction over any civil action commenced under section 453(2) of title 3, by a covered employee under chapter 5 of such title.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 933; Apr. 25, 1949, c. 92, § 2(a), 63 Stat. 62; May 24, 1949, c. 139, § 80(a), (b), 63 Stat. 101; Oct. 31, 1951, c. 655, § 50(b), 65 Stat. 727; July 30, 1954, c. 648, § 1, 68 Stat. 589; Pub.L. 85-508, § 12(e), July 7, 1958, 72 Stat. 348; Pub.L. 88-519, Aug. 30, 1964, 78 Stat. 699; Pub.L. 89-719, Title II, § 202(a), Nov. 2, 1966, 80 Stat. 1148; Pub.L. 91-350, § 1(a), July 23, 1970, 84 Stat. 449; Pub.L. 92-562, § 1, Oct. 25, 1972, 86 Stat. 1176; Pub.L. 94-455, Title XII, § 1204(c)(1), Title XIII, § 1306(b)(7), Oct. 4, 1976, 90 Stat. 1697, 1719; Pub.L. 95-563, § 14(a), Nov. 1, 1978, 92 Stat. 2389; Pub.L. 97-164, Title I, § 129, Apr. 2, 1982, 96 Stat. 39; Pub.L. 97-248, Title IV, § 402(c)(17), Sept. 3, 1982, 96 Stat. 669; Pub.L. 99-514, § 2, Oct. 22, 1986, 100 Stat. 2095; Pub.L. 102-572, Title IX, § 902(b)(1), Oct. 29, 1992, 106 Stat. 4516; Pub.L. 104-134, Title I, § 101[(a)][Title VIII, § 806], Apr. 26, 1996, 110 Stat. 1321, 1321-75; renumbered Title I, Pub.L. 104-140, § 1(a), May 2, 1996, 110 Stat. 1327; amended Pub.L. 104-331, § 3(b)(1), Oct. 26, 1996, 110 Stat. 4069; Pub.L. 111-350, § 5(g)(6), Jan. 4, 2011, 124 Stat. 3848; Pub.L. 113-4, Title XI, § 1101(b), Mar. 7, 2013, 127 Stat. 134.)

Notes of Decisions (4251)

28 U.S.C.A. § 1346, 28 USCA § 1346
Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part VI. Particular Proceedings
      Chapter 171. Tort Claims Procedure (Refs & Annos)

28 U.S.C.A. § 2672

§ 2672. Administrative adjustment of claims

Currentness

The head of each Federal agency or his designee, in accordance with regulations prescribed by the Attorney General, may consider, ascertain, adjust, determine, compromise, and settle any claim for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred: *Provided*, That any award, compromise, or settlement in excess of $25,000 shall be effected only with the prior written approval of the Attorney General or his designee. Notwithstanding the proviso contained in the preceding sentence, any award, compromise, or settlement may be effected without the prior written approval of the Attorney General or his or her designee, to the extent that the Attorney General delegates to the head of the agency the authority to make such award, compromise, or settlement. Such delegations may not exceed the authority delegated by the Attorney General to the United States attorneys to settle claims for money damages against the United States. Each Federal agency may use arbitration, or other alternative means of dispute resolution under the provisions of subchapter IV of chapter 5 of title 5, to settle any tort claim against the United States, to the extent of the agency's authority to award, compromise, or settle such claim without the prior written approval of the Attorney General or his or her designee.

Subject to the provisions of this title relating to civil actions on tort claims against the United States, any such award, compromise, settlement, or determination shall be final and conclusive on all officers of the Government, except when procured by means of fraud.

Any award, compromise, or settlement in an amount of $2,500 or less made pursuant to this section shall be paid by the head of the Federal agency concerned out of appropriations available to that agency. Payment of any award, compromise, or settlement in an amount in excess of $2,500 made pursuant to this section or made by the Attorney General in any amount pursuant to section 2677 of this title shall be paid in a manner similar to judgments and compromises in like causes and appropriations or funds available for the payment of such judgments and compromises are hereby made available for the payment of awards, compromises, or settlements under this chapter.

The acceptance by the claimant of any such award, compromise, or settlement shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States and against the employee of the government whose act or omission gave rise to the claim, by reason of the same subject matter.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 983; Apr. 25, 1949, c. 92, § 2(b), 63 Stat. 62; May 24, 1949, c. 139, § 125, 63 Stat. 106; Sept. 23, 1950, c. 1010, § 9, 64 Stat. 987; Pub.L. 86-238, § 1(1), Sept. 8, 1959, 73 Stat. 471; Pub.L. 89-506, §§ 1, 9(a), July 18, 1966, 80 Stat. 306, 308; Pub.L. 101-552, § 8(a), Nov. 15, 1990, 104 Stat. 2746.)

Notes of Decisions (24)

28 U.S.C.A. § 2672, 28 USCA § 2672
Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated

   Title 47. Telecommunications (Refs & Annos)

      Chapter 5. Wire or Radio Communication (Refs & Annos)

         Subchapter I. General Provisions (Refs & Annos)

47 U.S.C.A. § 154

§ 154. Federal Communications Commission

Effective: March 23, 2018

Currentness

**(a) Number of commissioners; appointment**

The Federal Communications Commission (in this chapter referred to as the "Commission") shall be composed of five commissioners appointed by the President, by and with the advice and consent of the Senate, one of whom the President shall designate as chairman.

**(b) Qualifications**

**(1)** Each member of the Commission shall be a citizen of the United States.

**(2)(A)** No member of the Commission or person employed by the Commission shall--

  **(i)** be financially interested in any company or other entity engaged in the manufacture or sale of telecommunications equipment which is subject to regulation by the Commission;

  **(ii)** be financially interested in any company or other entity engaged in the business of communication by wire or radio or in the use of the electromagnetic spectrum;

  **(iii)** be financially interested in any company or other entity which controls any company or other entity specified in clause (i) or clause (ii), or which derives a significant portion of its total income from ownership of stocks, bonds, or other securities of any such company or other entity; or

  **(iv)** be employed by, hold any official relation to, or own any stocks, bonds, or other securities of, any person significantly regulated by the Commission under this chapter;

except that the prohibitions established in this subparagraph shall apply only to financial interests in any company or other entity which has a significant interest in communications, manufacturing, or sales activities which are subject to regulation by the Commission.

**(B)(i)** The Commission shall have authority to waive, from time to time, the application of the prohibitions established in subparagraph (A) to persons employed by the Commission if the Commission determines that the financial interests of a person which are involved in a particular case are minimal, except that such waiver authority shall be subject to the provisions of section 208 of Title 18. The waiver authority established in this subparagraph shall not apply with respect to members of the Commission.

**(ii)** In any case in which the Commission exercises the waiver authority established in this subparagraph, the Commission shall publish notice of such action in the Federal Register.

**(3)** The Commission, in determining whether a company or other entity has a significant interest in communications, manufacturing, or sales activities which are subject to regulation by the Commission, shall consider (without excluding other relevant factors)--

**(A)** the revenues, investments, profits, and managerial efforts directed to the related communications, manufacturing, or sales activities of the company or other entity involved, as compared to the other aspects of the business of such company or other entity;

**(B)** the extent to which the Commission regulates and oversees the activities of such company or other entity;

**(C)** the degree to which the economic interests of such company or other entity may be affected by any action of the Commission; and

**(D)** the perceptions held by the public regarding the business activities of such company or other entity.

**(4)** Members of the Commission shall not engage in any other business, vocation, profession, or employment while serving as such members.

**(5)** The maximum number of commissioners who may be members of the same political party shall be a number equal to the least number of commissioners which constitutes a majority of the full membership of the Commission.

**(c) Terms of office; vacancies**

**(1)** A commissioner--

**(A)** shall be appointed for a term of 5 years;

**(B)** except as provided in subparagraph (C), may continue to serve after the expiration of the fixed term of office of the commissioner until a successor is appointed and has been confirmed and taken the oath of office; and

**(C)** may not continue to serve after the expiration of the session of Congress that begins after the expiration of the fixed term of office of the commissioner.

**(2)** Any person chosen to fill a vacancy in the Commission--

**(A)** shall be appointed for the unexpired term of the commissioner that the person succeeds;

**(B)** except as provided in subparagraph (C), may continue to serve after the expiration of the fixed term of office of the commissioner that the person succeeds until a successor is appointed and has been confirmed and taken the oath of office; and

**(C)** may not continue to serve after the expiration of the session of Congress that begins after the expiration of the fixed term of office of the commissioner that the person succeeds.

**(3)** No vacancy in the Commission shall impair the right of the remaining commissioners to exercise all the powers of the Commission.

**(d) Compensation of Commission members**

Each Commissioner shall receive an annual salary at the annual rate payable from time to time for level IV of the Executive Schedule, payable in monthly installments. The Chairman of the Commission, during the period of his service as Chairman, shall receive an annual salary at the annual rate payable from time to time for level III of the Executive Schedule.

**(e) Principal office; special sessions**

The principal office of the Commission shall be in the District of Columbia, where its general sessions shall be held; but whenever the convenience of the public or of the parties may be promoted or delay or expense prevented thereby, the Commission may hold special sessions in any part of the United States.

**(f) Employees and assistants; compensation of members of Field Engineering and Monitoring Bureau; use of amateur volunteers for certain purposes; commercial radio operator examinations**

**(1)** The Commission shall have authority, subject to the provisions of the civil-service laws and chapter 51 and subchapter III of chapter 53 of Title 5, to appoint such officers, engineers, accountants, attorneys, inspectors, examiners, and other employees as are necessary in the exercise of its functions.

**(2)** Without regard to the civil-service laws, but subject to chapter 51 and subchapter III of chapter 53 of Title 5, each commissioner may appoint three professional assistants and a secretary, each of whom shall perform such duties as such commissioner shall direct. In addition, the chairman of the Commission may appoint, without regard to the civil-service laws,

but subject to chapter 51 and subchapter III of chapter 53 of Title 5, an administrative assistant who shall perform such duties as the chairman shall direct.

**(3)** The Commission shall fix a reasonable rate of extra compensation for overtime services of engineers in charge and radio engineers of the Field Engineering and Monitoring Bureau of the Federal Communications Commission, who may be required to remain on duty between the hours of 5 o'clock postmeridian and 8 o'clock antemeridian or on Sundays or holidays to perform services in connection with the inspection of ship radio equipment and apparatus for the purposes of part II of subchapter III of this chapter or the Great Lakes Agreement, on the basis of one-half day's additional pay for each two hours or fraction thereof of at least one hour that the overtime extends beyond 5 o'clock postmeridian (but not to exceed two and one-half days' pay for the full period from 5 o'clock postmeridian to 8 o'clock antemeridian) and two additional days' pay for Sunday or holiday duty. The said extra compensation for overtime services shall be paid by the master, owner, or agent of such vessel to the local United States collector of customs or his representative, who shall deposit such collection into the Treasury of the United States to an appropriately designated receipt account: *Provided*, That the amounts of such collections received by the said collector of customs or his representatives shall be covered into the Treasury as miscellaneous receipts; and the payments of such extra compensation to the several employees entitled thereto shall be made from the annual appropriations for salaries and expenses of the Commission: *Provided further*, That to the extent that the annual appropriations which are authorized to be made from the general fund of the Treasury are insufficient, there are authorized to be appropriated from the general fund of the Treasury such additional amounts as may be necessary to the extent that the amounts of such receipts are in excess of the amounts appropriated: *Provided further*, That such extra compensation shall be paid if such field employees have been ordered to report for duty and have so reported whether the actual inspection of the radio equipment or apparatus takes place or not: *And provided further*, That in those ports where customary working hours are other than those hereinabove mentioned, the engineers in charge are vested with authority to regulate the hours of such employees so as to agree with prevailing working hours in said ports where inspections are to be made, but nothing contained in this proviso shall be construed in any manner to alter the length of a working day for the engineers in charge and radio engineers or the overtime pay herein fixed: and *Provided further*, That, in the alternative, an entity designated by the Commission may make the inspections referred to in this paragraph.

**(4)(A)** The Commission, for purposes of preparing or administering any examination for an amateur station operator license, may accept and employ the voluntary and uncompensated services of any individual who holds an amateur station operator license of a higher class than the class of license for which the examination is being prepared or administered. In the case of examinations for the highest class of amateur station operator license, the Commission may accept and employ such services of any individual who holds such class of license.

**(B)(i)** The Commission, for purposes of monitoring violations of any provision of this chapter (and of any regulation prescribed by the Commission under this chapter) relating to the amateur radio service, may--

   **(I)** recruit and train any individual licensed by the Commission to operate an amateur station; and

   **(II)** accept and employ the voluntary and uncompensated services of such individual.

**(ii)** The Commission, for purposes of recruiting and training individuals under clause (i) and for purposes of screening, annotating, and summarizing violation reports referred under clause (i), may accept and employ the voluntary and uncompensated services of any amateur station operator organization.

**(iii)** The functions of individuals recruited and trained under this subparagraph shall be limited to--

**(I)** the detection of improper amateur radio transmissions;

**(II)** the conveyance to Commission personnel of information which is essential to the enforcement of this chapter (or regulations prescribed by the Commission under this chapter) relating to the amateur radio service; and

**(III)** issuing advisory notices, under the general direction of the Commission, to persons who apparently have violated any provision of this chapter (or regulations prescribed by the Commission under this chapter) relating to the amateur radio service.

Nothing in this clause shall be construed to grant individuals recruited and trained under this subparagraph any authority to issue sanctions to violators or to take any enforcement action other than any action which the Commission may prescribe by rule.

**(C)(i)** The Commission, for purposes of monitoring violations of any provision of this chapter (and of any regulation prescribed by the Commission under this chapter) relating to the citizens band radio service, may--

**(I)** recruit and train any citizens band radio operator; and

**(II)** accept and employ the voluntary and uncompensated services of such operator.

**(ii)** The Commission, for purposes of recruiting and training individuals under clause (i) and for purposes of screening, annotating, and summarizing violation reports referred under clause (i), may accept and employ the voluntary and uncompensated services of any citizens band radio operator organization. The Commission, in accepting and employing services of individuals under this subparagraph, shall seek to achieve a broad representation of individuals and organizations interested in citizens band radio operation.

**(iii)** The functions of individuals recruited and trained under this subparagraph shall be limited to--

**(I)** the detection of improper citizens band radio transmissions;

**(II)** the conveyance to Commission personnel of information which is essential to the enforcement of this chapter (or regulations prescribed by the Commission under this chapter) relating to the citizens band radio service; and

**(III)** issuing advisory notices, under the general direction of the Commission, to persons who apparently have violated any provision of this chapter (or regulations prescribed by the Commission under this chapter) relating to the citizens band radio service.

Nothing in this clause shall be construed to grant individuals recruited and trained under this subparagraph any authority to issue sanctions to violators or to take any enforcement action other than any action which the Commission may prescribe by rule.

**(D)** The Commission shall have the authority to endorse certification of individuals to perform transmitter installation, operation, maintenance, and repair duties in the private land mobile services and fixed services (as defined by the Commission by rule) if such certification programs are conducted by organizations or committees which are representative of the users in those services and which consist of individuals who are not officers or employees of the Federal Government.

**(E)** The authority of the Commission established in this paragraph shall not be subject to or affected by the provisions of part III of Title 5 or section 1342 of Title 31.

**(F)** Any person who provides services under this paragraph shall not be considered, by reason of having provided such services, a Federal employee.

**(G)** The Commission, in accepting and employing services of individuals under subparagraphs (A) and (B), shall seek to achieve a broad representation of individuals and organizations interested in amateur station operation.

**(H)** The Commission may establish rules of conduct and other regulations governing the service of individuals under this paragraph.

**(I)** With respect to the acceptance of voluntary uncompensated services for the preparation, processing, or administration of examinations for amateur station operator licenses pursuant to subparagraph (A) of this paragraph, individuals, or organizations which provide or coordinate such authorized volunteer services may recover from examinees reimbursement for out-of-pocket costs.

**(5)(A)** The Commission, for purposes of preparing and administering any examination for a commercial radio operator license or endorsement, may accept and employ the services of persons that the Commission determines to be qualified. Any person so employed may not receive compensation for such services, but may recover from examinees such fees as the Commission permits, considering such factors as public service and cost estimates submitted by such person.

**(B)** The Commission may prescribe regulations to select, oversee, sanction, and dismiss any person authorized under this paragraph to be employed by the Commission.

**(C)** Any person who provides services under this paragraph or who provides goods in connection with such services shall not, by reason of having provided such service or goods, be considered a Federal or special government employee.

**(g) Expenditures**

**(1)** The Commission may make such expenditures (including expenditures for rent and personal services at the seat of government and elsewhere, for office supplies, law books, periodicals, and books of reference, for printing and binding, for land for use as sites for radio monitoring stations and related facilities, including living quarters where necessary in remote areas, for the construction of such stations and facilities, and for the improvement, furnishing, equipping, and repairing of such stations and facilities and of laboratories and other related facilities (including construction of minor subsidiary buildings and structures not exceeding $25,000 in any one instance) used in connection with technical research activities), as may be necessary for

the execution of the functions vested in the Commission and as may be appropriated for by the Congress in accordance with the authorizations of appropriations established in section 156 of this title. All expenditures of the Commission, including all necessary expenses for transportation incurred by the commissioners or by their employees, under their orders, in making any investigation or upon any official business in any other places than in the city of Washington, shall be allowed and paid on the presentation of itemized vouchers therefor approved by the chairman of the Commission or by such other member or officer thereof as may be designated by the Commission for that purpose.

**(2)** Repealed. Pub.L. 115-141, Div. P, Title IV, § 402(i)(1)(B), Mar. 23, 2018, 132 Stat. 1089

**(3)(A)** Notwithstanding any other provision of law, in furtherance of its functions the Commission is authorized to accept, hold, administer, and use unconditional gifts, donations, and bequests of real, personal, and other property (including voluntary and uncompensated services, as authorized by section 3109 of Title 5).

**(B)** The Commission, for purposes of providing radio club and military-recreational call signs, may utilize the voluntary, uncompensated, and unreimbursed services of amateur radio organizations authorized by the Commission that have tax-exempt status under section 501(c)(3) of Title 26.

**(C)** For the purpose of Federal law on income taxes, estate taxes, and gift taxes, property or services accepted under the authority of subparagraph (A) shall be deemed to be a gift, bequest, or devise to the United States.

**(D)** The Commission shall promulgate regulations to carry out the provisions of this paragraph. Such regulations shall include provisions to preclude the acceptance of any gift, bequest, or donation that would create a conflict of interest or the appearance of a conflict of interest.

**(h) Quorum; seal**

Three members of the Commission shall constitute a quorum thereof. The Commission shall have an official seal which shall be judicially noticed.

**(i) Duties and powers**

The Commission may perform any and all acts, make such rules and regulations, and issue such orders, not inconsistent with this chapter, as may be necessary in the execution of its functions.

**(j) Conduct of proceedings; hearings**

The Commission may conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice. No commissioner shall participate in any hearing or proceeding in which he has a pecuniary interest. Any party may appear before the Commission and be heard in person or by attorney. Every vote and official act of the Commission shall be entered of record, and its proceedings shall be public upon the request of any party interested. The Commission is authorized to withhold publication of records or proceedings containing secret information affecting the national defense.

**(k) Record of reports**

All reports of investigations made by the Commission shall be entered of record, and a copy thereof shall be furnished to the party who may have complained, and to any common carrier or licensee that may have been complained of.

**(l) Publication of reports; admissibility as evidence**

The Commission shall provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use, and such authorized publications shall be competent evidence of the reports and decisions of the Commission therein contained in all courts of the United States and of the several States without any further proof or authentication thereof.

**(m) Compensation of appointees**

Rates of compensation of persons appointed under this section shall be subject to the reduction applicable to officers and employees of the Federal Government generally.

**(n) Use of communications in safety of life and property**

For the purpose of obtaining maximum effectiveness from the use of radio and wire communications in connection with safety of life and property, the Commission shall investigate and study all phases of the problem and the best methods of obtaining the cooperation and coordination of these systems.

**CREDIT(S)**

(June 19, 1934, c. 652, Title I, § 4, 48 Stat. 1066; Jan. 22, 1936, c. 25, 49 Stat. 1098; May 20, 1937, c. 229, §§ 3, 4, 50 Stat. 190; Mar. 23, 1941, c. 24, 55 Stat. 46; July 16, 1952, c. 879, § 3, 66 Stat. 711; Aug. 13, 1954, c. 735, § 2, 68 Stat. 729; Pub.L. 86-533, § 1(24), June 29, 1960, 74 Stat. 249; Pub.L. 86-619, § 2, July 12, 1960, 74 Stat. 407; Pub.L. 86-752, § 2, Sept. 13, 1960, 74 Stat. 889; Pub.L. 97-35, Title XII, § 1251(b), Aug. 13, 1981, 95 Stat. 738; Pub.L. 97-253, Title V, § 501(b)(1) to (3), Sept. 8, 1982, 96 Stat. 805, 806; Pub.L. 97-259, Title I, §§ 102 to 104, Sept. 13, 1982, 96 Stat. 1087; Pub.L. 98-214, §§ 10, 11, Dec. 8, 1983, 97 Stat. 1471; Pub.L. 99-272, Title V, § 5002(b), Apr. 7, 1986, 100 Stat. 118; Pub.L. 99-334, § 1(a), June 6, 1986, 100 Stat. 513; Pub.L. 100-594, § 3, Nov. 3, 1988, 102 Stat. 3021; Pub.L. 101-396, §§ 3, 4, Sept. 28, 1990, 104 Stat. 848, 849; Pub.L. 102-538, Title II, §§ 201, 208, Oct. 27, 1992, 106 Stat. 3542, 3543; Pub.L. 103-414, Title III, § 303(a)(1), Oct. 25, 1994, 108 Stat. 4294; Pub.L. 104-66, Title II, § 2051(b), Dec. 21, 1995, 109 Stat. 729; Pub.L. 104-104, Title IV, § 403(a), (b), Feb. 8, 1996, 110 Stat. 130; Pub.L. 115-141, Div. P, Title IV, § 402(h)(1), (i)(1), Title V, § 509, Mar. 23, 2018, 132 Stat. 1089, 1096.)

**EXECUTIVE ORDERS**

**EXECUTIVE ORDER NO. 13913**

<April 4, 2020, 85 F.R. 19643>

**Establishing the Committee for the Assessment of Foreign
Participation in the United States Telecommunications Services Sector**

By the authority vested in me as President by the Constitution and the laws of the United States of America, including section 301 of title 3, United States Code, it is hereby ordered as follows:

**Section 1. Policy.** The security, integrity, and availability of United States telecommunications networks are vital to United States national security and law enforcement interests.

**Sec. 2. Definitions.** For purposes of this order:

**(a)** "License" means any license, certificate of public interest, or other authorization issued or granted by the Federal Communications Commission (FCC) after referral of an application by the FCC to the Committee established by subsection 3(a) of this order or, if referred before the date of this order, to the group of executive departments and agencies involved in the review process that was previously in place.

**(b)** "Application" means any application, petition, or other request for a license or authorization, or the transfer of a license or authorization, that is referred by the FCC to the Committee established in subsection 3(a) of this order or that was referred by the FCC before the date of this order to the group of executive departments and agencies involved in the review process that was previously in place.

**(c)** "Intelligence Community" shall have the meaning assigned to it in subsection 3.5(h) of Executive Order 12333 of December 4, 1981 (United States Intelligence Activities), as amended.

**(d)** "Mitigation measures" shall mean both standard and non-standard mitigation measures.

**(e)** "Standard mitigation measures" shall be those measures agreed upon by the Committee Members (as defined in subsection 3(b) of this order) and Committee Advisors (as defined in subsection 3(d) of this order).

**Sec. 3. Establishment. (a)** There is hereby established the Committee for the Assessment of Foreign Participation in the United States Telecommunications Services Sector (Committee), the primary objective of which shall be to assist the FCC in its public interest review of national security and law enforcement concerns that may be raised by foreign participation in the United States telecommunications services sector. The function of the Committee shall be:

**(i)** to review applications and licenses for risks to national security and law enforcement interests posed by such applications or licenses; and

**(ii)** to respond to any risks presented by applications or licenses by recommending to the FCC, as appropriate and consistent with the provisions of this order, that it dismiss an application, deny an application, condition the grant of an application upon compliance with mitigation measures, modify a license with a condition of compliance with mitigation measures, or revoke a license.

**(b)** The Committee shall be composed of the following members (Committee Members):

**(i)** the Secretary of Defense;

**(ii)** the Attorney General;

**(iii)** the Secretary of Homeland Security; and

**(iv)** the head of any other executive department or agency, or any Assistant to the President, as the President determines appropriate.

**(c)** The Attorney General shall serve as Chair of the Committee (Chair).

**(d)** The following officials shall be advisors to the Committee (Committee Advisors) with no role in the duties set forth in sections 4 through 11 of this order except as provided in subsections 6(c), 9(f), 9(g), 10(g), and 11(d) of this order:

**(i)** the Secretary of State;

**(ii)** the Secretary of the Treasury;

**(iii)** the Secretary of Commerce;

**(iv)** the Director of the Office of Management and Budget;

**(v)** the United States Trade Representative;

**(vi)** the Director of National Intelligence;

**(vii)** the Administrator of General Services;

**(viii)** the Assistant to the President for National Security Affairs;

**(ix)** the Assistant to the President for Economic Policy;

**(x)** the Director of the Office of Science and Technology Policy;

**(xi)** the Chair of the Council of Economic Advisers; and

**(xii)** any other Assistant to the President, as the President determines appropriate.

**(e)** The Committee Members and Committee Advisors may, subject to the limitations in this order, designate a senior executive from their entity to perform the functions described in this order on their behalf.

**Sec. 4. Duties of Committee Chair and Members. (a)** The Chair shall designate one or more Committee Members to serve as the lead for executing any function of the Committee (Lead Member). The Chair may assign to a Lead Member any or all of the following responsibilities as appropriate and consistent with their statutory authorities:

**(i)** submitting to applicants or licensees any questions or requests for information to establish facts about an application or license necessary to conduct the reviews and assessments described in sections 5 and 6 of this order;

**(ii)** identifying risks to national security or law enforcement interests of the United States raised by an application or license, in consultation, as appropriate, with other Committee Members;

**(iii)** coordinating with other Committee Members on the reviews and assessments described in sections 5 and 6 of this order;

**(iv)** proposing, in coordination with the Chair, any mitigation measures necessary to address any risk to national security or law enforcement interests of the United States identified through the risk-based analysis described in subsection 9(c) of this order;

**(v)** coordinating with other Committee Members and communicating with applicants or licensees regarding any mitigation measures necessary to address risks to national security and law enforcement interests of the United States;

**(vi)** monitoring compliance with, and coordinating with the Committee regarding, any mitigation measure the Committee recommends be imposed by the FCC as a condition on a license; or

**(vii)** any related responsibilities as specified by the Chair.

**(b)** Except as otherwise provided in this order, the Chair shall have the exclusive authority to act, or to authorize other Committee Members to act, on behalf of the Committee, including communicating with the FCC and with applicants or licensees on behalf of the Committee.

**(c)** In acting on behalf of the Committee, the Chair or a Lead Member, as applicable, shall keep the Committee fully informed of the Chair's or Lead Member's respective activities taken under this order and shall consult with the Committee before taking any material actions under this order.

**Sec. 5. Committee Application Review Process. (a)** The Committee shall review and assess applications to determine whether granting a license or the transfer of a license poses a risk to national security or law enforcement interests of the United States.

**(b)** Upon referral by the FCC of an application, the Committee shall conduct an initial review of the application to evaluate whether granting the requested license or transfer of license may pose a risk to national security or law enforcement interests of the United States.

**(i)** During the initial review, the Committee may determine:

**(A)** that granting an application for a license or the transfer of a license raises no current risk to national security or law enforcement interests;

**(B)** that any identified risk to national security or law enforcement interests raised by an application may be addressed through standard mitigation measures recommended by the Committee; or

**(C)** that a secondary assessment of an application is warranted because risk to national security or law enforcement interests cannot be mitigated by standard mitigation measures.

**(ii)** If the Committee determines that granting the application does not raise a current risk to national security or law enforcement interests or that standard mitigation measures would mitigate any risk to national security or law enforcement interests, such a determination and any recommendations shall be communicated to the FCC in a manner consistent with sections 9 and 10 of this order.

**(iii)** Except as provided in subsection 5(d) of this order, any initial review shall be completed before the end of the 120-day period beginning on the date the Chair determines that the applicant's responses to any questions and information requests from the Committee are complete.

**(c)** When the Committee has determined that a secondary assessment of an application is warranted, it shall conduct such an assessment to further evaluate the risk posed to national security and law enforcement interests of the United States and to determine whether to make any recommendations pursuant to section 9 of this order. Any secondary assessment of an application shall be completed no more than 90 days after the Committee's determination that a secondary assessment is warranted. The Chair shall notify the FCC of a determination that a secondary assessment is warranted.

**(d)** During an initial review under subsection 5(b) of this order or a secondary assessment under subsection 5(c) of this order, if an applicant fails to respond to any additional requests for information after the Chair determines the responses are complete, the Committee may either extend the initial review or secondary assessment period or make a recommendation to the FCC to

dismiss the application without prejudice. The Chair shall notify the FCC of a determination that the applicant's responses are complete, of any extensions of the initial review period, or when the Committee recommends dismissal under this subsection.

**Sec. 6. Committee License Review Process. (a)** The Committee may review existing licenses to identify any additional or new risks to national security or law enforcement interests of the United States.

**(b)** The Committee shall determine whether to review an existing license by majority vote of the Committee Members.

**(c)** If the Committee conducts such a review, it shall promptly notify the Committee Advisors.

**Sec. 7. Threat Analysis by the Director of National Intelligence. (a)** For each license or application reviewed by the Committee, the Director of National Intelligence shall produce a written assessment of any threat to national security interests of the United States posed by granting the application or maintaining the license. The Director of National Intelligence shall solicit and incorporate the views of the Intelligence Community, as appropriate.

**(b)** The analysis required under subsection (a) of this section shall be provided to the Committee within the earlier of 30 days from the date on which the Chair determines that an applicant's or licensee's responses to any questions and requests for information from the Committee are complete or 30 days from the date on which the Chair requests such an analysis. Such an analysis may be supplemented or amended as appropriate or upon a request for additional information by the Chair.

**(c)** The Director of National Intelligence shall ensure that the Intelligence Community continues to analyze and disseminate to the Committee any additional relevant information that may become available during the course of a review or assessment conducted with respect to an application or license.

**Sec. 8. Requests for Information.** In furtherance of its reviews and assessments of applications and licenses as described in this section, the Committee may seek information from applicants, licensees, and any other entity as needed. Information submitted to the Committee pursuant to this subsection and analysis concerning such information shall not be disclosed beyond Committee Member entities and Committee Advisor entities, except as appropriate and consistent with procedures governing the handling of classified or otherwise privileged or protected information, under the following circumstances:

**(a)** to the extent required by law or for any administrative or judicial action or proceeding, or for law enforcement purposes;

**(b)** to other governmental entities at the discretion of the Chair, provided that such entities make adequate assurances to the Chair that they will not further disclose the shared information, including to members of the public; or

**(c)** to the Committee on Foreign Investment in the United States with respect to transactions reviewed by that Committee pursuant to 50 U.S.C. 4565, in which case this information and analysis shall be treated consistent with the disclosure protections of 50 U.S.C. 4565(c).

**Sec. 9. Recommendations by the Committee Pursuant to the Committee Review Process. (a)** With respect to applications that are reviewed or assessed pursuant to section 5 of this order, the Committee shall:

**(i)** advise the FCC that the Committee has no recommendation for the FCC on the application and no objection to the FCC granting the license or transfer of the license;

**(ii)** recommend that the FCC deny the application due to the risk to the national security or law enforcement interests of the United States; or

**(iii)** recommend that the FCC only grant the license or transfer of the license contingent on the applicant's compliance with mitigation measures, consistent with section 10 of this order.

**(b)** With respect to a license reviewed pursuant to section 6 of this order, the Committee may, when appropriate:

**(i)** recommend that the FCC modify the license to include a condition of compliance with mitigation measures negotiated by the Committee;

**(ii)** recommend that the FCC revoke the license due to the risk to national security or law enforcement interests of the United States; or

**(iii)** take no action with respect to the license.

**(c)** Any recommendation made by the Committee pursuant to subsections (a) and (b) of this section shall be based on a written risk-based analysis, conducted by the Committee Member entity or entities proposing the denial, mitigation measures, modification, revocation, or no action.

**(d)** The Committee shall make the recommendations described in subsections (a)(ii), (a)(iii), (b)(i), and (b)(ii) of this section if it determines that there is credible evidence that the application or license poses a risk to the national security or law enforcement interests of the United States.

**(e)** The Committee shall attempt to reach consensus on any recommendation authorized by this order. If senior executive Committee officials designated pursuant to subsection 3(e) of this order cannot reach consensus on a recommendation, the Chair shall present the issue to the Committee Members, who shall determine the Committee recommendation by majority vote. If the vote results in a tie, the Chair shall determine the recommendation.

**(f)** If the Committee's determination is a recommendation to deny an application, to grant an application contingent on compliance with non-standard mitigation measures, to modify a license to condition it upon compliance with non-standard mitigation measures, or to revoke a license, the Chair shall notify the Committee Advisors and, to the extent consistent with applicable law, provide them all available assessments, evaluations, or other analyses regarding such determination. Within 21 days of the notification, the Committee Advisors shall advise the Chair whether they oppose the recommendation.

**(i)** If one or more of the Committee Advisors opposes the recommendation, the senior executives designated by the Committee Members and Committee Advisors shall promptly confer in an effort to reach consensus on a recommendation. If consensus is reached, the recommendation shall be provided to the FCC consistent with subsection 9(h) of this order.

**(ii)** If the senior executives designated by the Committee Members and Committee Advisors do not reach consensus, the Chair shall present the issue to the Committee Members and the Committee Advisors to seek to resolve any objections within 30 days of the notification by the Chair of a recommendation to deny or to grant an application contingent on compliance with non-standard mitigation, or within 60 days in the case of a recommendation to modify a license to condition it upon compliance with non-standard mitigation measures or to revoke a license. Committee Members and Committee Advisors may consider any submissions by the Committee Advisors (e.g., a countervailing risk assessment), as appropriate.

**(iii)** If the Committee Members and Committee Advisors are unable to reach consensus through the foregoing process, the Committee Members identified in subsection 3(b) of this order shall determine a recommendation by majority vote. If the vote results in a tie, the Chair shall determine the recommendation.

**(g)** The Chair shall notify the President of any intended recommendation, and any opposition thereto by a Committee Member or Committee Advisor, within 7 days of a majority or tie vote held under subsection 9(e) or 9(f)(iii) of this order if either the

recommendation or any opposition thereto by a Committee Member or Committee Advisor involves the denial of an application, granting an application contingent on non-standard mitigation measures, modifying a license to condition it upon compliance with non-standard mitigation measures, or revoking a license. The FCC will receive notice of the recommendation, consistent with subsection 9(h) of this order, not earlier than 15 days after the date on which the President is notified of the intended action.

**(h)** Except as provided in subsection (b)(iii) of this section, the Chair, on behalf of the Committee, shall notify the FCC through the Administrator of the National Telecommunications and Information Administration (NTIA) of a final recommendation made pursuant to this section. The Administrator of NTIA shall notify the FCC of the recommendation within 7 days of the notification from the Chair.

**(i)** As necessary and in accordance with applicable law and policy, including procedures governing the handling of classified or otherwise privileged or protected information, the Committee may consider classified information and otherwise privileged or protected information in determining what recommendation to make to the FCC through the Administrator of NTIA under this section, and may provide such information to the FCC as necessary on an ex parte basis.

**Sec. 10. Mitigation of Risk and Monitoring. (a)** The Committee may recommend to the FCC, consistent with section 9 of this order, that the FCC condition the granting of a license or transfer of a license on compliance with any mitigation measures in order to mitigate a risk to the national security or law enforcement interests of the United States arising from the application.

**(b)** The Committee may recommend to the FCC, consistent with section 9 of this order, that the FCC modify a license to condition it upon compliance with any mitigation measures in order to mitigate a risk to national security or law enforcement interests of the United States arising from the license.

**(c)** Consistent with subsection 4(a)(v) of this order, the Chair or assigned Lead Member shall communicate any mitigation measures proposed by the Committee to the applicant or licensee.

**(d)** Any mitigation measures negotiated pursuant to this section shall be based on a written risk-based analysis.

**(e)** The Committee shall monitor any mitigation measures imposed by the FCC as a condition on a license.

**(i)** Committee Member entities, as appropriate, shall report to the Committee regarding any material noncompliance with any mitigation measures imposed by the FCC as a condition on a license as a result of the Committee's recommendation under subsections (a) through (d) of this section.

**(ii)** The Committee, in consultation with the FCC, as appropriate, and in a manner that does not unduly constrain Committee resources, shall develop methods for monitoring compliance with any mitigation measures imposed by the FCC as a condition on a license as a result of the Committee's recommendation under subsections (a) through (d) of this section.

**(f)** If the Committee determines that a licensee has not complied with a mitigation measure and has not cured any such noncompliance in a satisfactory manner, the Committee may recommend actions consistent with subsection 9(b) of this order.

**(g)** When requested by the Chair, the Director of National Intelligence shall provide analyses assessing threats related to risk mitigation, compliance monitoring, and enforcement to Committee Member entities and Committee Advisor entities that are monitoring compliance with mitigation measures imposed by the FCC as conditions on licenses as a result of Committee recommendations under subsections (a) through (d) of this section.

**(h)** This order does not constrain the discretion of executive departments or agencies, pursuant to any relevant authority not described in this order, to:

**(i)** conduct inquiries with respect to an application or license;

**(ii)** communicate with any applicant, licensee, or other necessary party; or

**(iii)** negotiate, enter into, impose, or enforce contractual provisions with an applicant or licensee.

**Sec. 11. Implementation. (a)** Executive departments and agencies shall take all appropriate measures within their authority to implement the provisions of this order.

**(b)** The Department of Justice shall provide such funding and administrative support for the Committee as the Committee may require. The heads of executive departments and agencies shall provide, as appropriate and to the extent permitted by law, such resources, information, and assistance as required to implement this order within their respective agencies, including the assignment of staff to perform the duties described in this order. An Intelligence Community liaison designated by the Director of National Intelligence shall support the Committee, consistent with applicable law.

**(c)** Within 90 days from the date of this order, the Committee Members shall enter into a Memorandum of Understanding among themselves and with the Director of National Intelligence (or the Director's designee) describing their plan to implement and execute this order. The Memorandum of Understanding shall, among other things, delineate questions and requests for applicants and licensees that may be needed to acquire information necessary to conduct the reviews and assessments described in sections 5 and 6 of this order, define the standard mitigation measures developed in accordance with section 2(e) of this order, and outline the process for designating a Lead Member as described in section 4 of this order.

**(d)** The Chair, in coordination with the Committee Members and the Committee Advisors, shall review the implementation of this order and provide a report to the President on an annual basis that identifies recommendations for relevant policy, administrative, or legislative proposals.

**Sec. 12. General Provisions. (a)** Nothing in this order shall be construed to impair or otherwise affect:

**(i)** the authority granted by law to an executive department or agency, or the head thereof; or

**(ii)** the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals;

**(b)** This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

**(c)** This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

**(d)** If any provision of this order, or the application of any provision to any person or circumstances, is held to be invalid, the remainder of this order and the application of any of its other provisions to any other persons or circumstances shall not be affected thereby.

DONALD J. TRUMP

Notes of Decisions (45)

47 U.S.C.A. § 154, 47 USCA § 154

Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated
  Title 47. Telecommunications (Refs & Annos)
    Chapter 5. Wire or Radio Communication (Refs & Annos)
      Subchapter I. General Provisions (Refs & Annos)

47 U.S.C.A. § 155

§ 155. Commission

Effective: February 8, 1996
Currentness

**(a) Chairman; duties; vacancy**

The member of the Commission designated by the President as chairman shall be the chief executive officer of the Commission. It shall be his duty to preside at all meetings and sessions of the Commission, to represent the Commission in all matters relating to legislation and legislative reports, except that any commissioner may present his own or minority views or supplemental reports, to represent the Commission in all matters requiring conferences or communications with other governmental officers, departments or agencies, and generally to coordinate and organize the work of the Commission in such manner as to promote prompt and efficient disposition of all matters within the jurisdiction of the Commission. In the case of a vacancy in the office of the chairman of the Commission, or the absence or inability of the chairman to serve, the Commission may temporarily designate one of its members to act as chairman until the cause or circumstance requiring such designation shall have been eliminated or corrected.

**(b) Organization of staff**

From time to time as the Commission may find necessary, the Commission shall organize its staff into (1) integrated bureaus, to function on the basis of the Commission's principal workload operations, and (2) such other divisional organizations as the Commission may deem necessary. Each such integrated bureau shall include such legal, engineering, accounting, administrative, clerical, and other personnel as the Commission may determine to be necessary to perform its functions.

**(c) Delegation of functions; exceptions to initial orders; force, effect and enforcement of orders; administrative and judicial review; qualifications and compensation of delegates; assignment of cases; separation of review and investigative or prosecuting functions; secretary; seal**

**(1)** When necessary to the proper functioning of the Commission and the prompt and orderly conduct of its business, the Commission may, by published rule or by order, delegate any of its functions (except functions granted to the Commission by this paragraph and by paragraphs (4), (5), and (6) of this subsection and except any action referred to in sections 204(a)(2), 208(b), and 405(b) of this title) to a panel of commissioners, an individual commissioner, an employee board, or an individual employee, including functions with respect to hearing, determining, ordering, certifying, reporting, or otherwise acting as to any work, business, or matter; except that in delegating review functions to employees in cases of adjudication (as defined in section 551 of Title 5), the delegation in any such case may be made only to an employee board consisting of two or more

employees referred to in paragraph (8) of this subsection. Any such rule or order may be adopted, amended, or rescinded only by a vote of a majority of the members of the Commission then holding office. Except for cases involving the authorization of service in the instructional television fixed service, or as otherwise provided in this chapter, nothing in this paragraph shall authorize the Commission to provide for the conduct, by any person or persons other than persons referred to in paragraph (2) or (3) of section 556(b) of Title 5, of any hearing to which such section applies.

**(2)** As used in this subsection the term "order, decision, report, or action" does not include an initial, tentative, or recommended decision to which exceptions may be filed as provided in section 409(b) of this title.

**(3)** Any order, decision, report, or action made or taken pursuant to any such delegation, unless reviewed as provided in paragraph (4) of this subsection, shall have the same force and effect, and shall be made, evidenced, and enforced in the same manner, as orders, decisions, reports, or other actions of the Commission.

**(4)** Any person aggrieved by any such order, decision, report or action may file an application for review by the Commission within such time and in such manner as the Commission shall prescribe, and every such application shall be passed upon by the Commission. The Commission, on its own initiative, may review in whole or in part, at such time and in such manner as it shall determine, any order, decision, report, or action made or taken pursuant to any delegation under paragraph (1) of this subsection.

**(5)** In passing upon applications for review, the Commission may grant, in whole or in part, or deny such applications without specifying any reasons therefor. No such application for review shall rely on questions of fact or law upon which the panel of commissioners, individual commissioner, employee board, or individual employee has been afforded no opportunity to pass.

**(6)** If the Commission grants the application for review, it may affirm, modify, or set aside the order, decision, report, or action, or it may order a rehearing upon such order, decision, report, or action in accordance with section 405 of this title.

**(7)** The filing of an application for review under this subsection shall be a condition precedent to judicial review of any order, decision, report, or action made or taken pursuant to a delegation under paragraph (1) of this subsection. The time within which a petition for review must be filed in a proceeding to which section 402(a) of this title applies, or within which an appeal must be taken under section 402(b) of this title, shall be computed from the date upon which public notice is given of orders disposing of all applications for review filed in any case.

**(8)** The employees to whom the Commission may delegate review functions in any case of adjudication (as defined in section 551 of Title 5) shall be qualified, by reason of their training, experience, and competence, to perform such review functions, and shall perform no duties inconsistent with such review functions. Such employees shall be in a grade classification or salary level commensurate with their important duties, and in no event less than the grade classification or salary level of the employee or employees whose actions are to be reviewed. In the performance of such review functions such employees shall be assigned to cases in rotation so far as practicable and shall not be responsible to or subject to the supervision or direction of any officer, employee, or agent engaged in the performance of investigative or prosecuting functions for any agency.

**(9)** The secretary and seal of the Commission shall be the secretary and seal of each panel of the Commission, each individual commissioner, and each employee board or individual employee exercising functions delegated pursuant to paragraph (1) of this subsection.

**(d) Meetings**

Meetings of the Commission shall be held at regular intervals, not less frequently than once each calendar month, at which times the functioning of the Commission and the handling of its work load shall be reviewed and such orders shall be entered and other action taken as may be necessary or appropriate to expedite the prompt and orderly conduct of the business of the Commission with the objective of rendering a final decision (1) within three months from the date of filing in all original application, renewal, and transfer cases in which it will not be necessary to hold a hearing, and (2) within six months from the final date of the hearing in all hearing cases.

**(e) Managing Director; appointment, functions, pay**

The Commission shall have a Managing Director who shall be appointed by the Chairman subject to the approval of the Commission. The Managing Director, under the supervision and direction of the Chairman, shall perform such administrative and executive functions as the Chairman shall delegate. The Managing Director shall be paid at a rate equal to the rate then payable for level V of the Executive Schedule.

## CREDIT(S)

(June 19, 1934, c. 652, Title I, § 5, 48 Stat. 1068; July 16, 1952, c. 879, § 4, 66 Stat. 712; Pub.L. 87-192, §§ 1, 2, Aug. 31, 1961, 75 Stat. 420; Pub.L. 96-470, Title I, § 116, Oct. 19, 1980, 94 Stat. 2240; Pub.L. 97-35, Title XII, § 1252, Aug. 13, 1981, 95 Stat. 738; Pub.L. 97-259, Title I, § 105, Sept. 13, 1982, 96 Stat. 1091; Pub.L. 99-272, Title V, § 5002(c), Apr. 7, 1986, 100 Stat. 118; Pub.L. 100-594, §§ 4, 8(a), Nov. 3, 1988, 102 Stat. 3021, 3023; Pub.L. 103-414, Title III, § 303(a)(2), Oct. 25, 1994, 108 Stat. 4294; Pub.L. 104-104, Title IV, § 403(c), Feb. 8, 1996, 110 Stat. 130.)

Notes of Decisions (12)

47 U.S.C.A. § 155, 47 USCA § 155
Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Title 47. Telecommunications (Refs & Annos)
     Chapter 5. Wire or Radio Communication (Refs & Annos)
       Subchapter IV. Procedural and Administrative Provisions

47 U.S.C.A. § 405

§ 405. Petition for reconsideration; procedure; disposition; time of filing; additional evidence; time for disposition of petition for reconsideration of order concluding hearing or investigation; appeal of order

Currentness

**(a)** After an order, decision, report, or action has been made or taken in any proceeding by the Commission, or by any designated authority within the Commission pursuant to a delegation under section 155(c)(1) of this title, any party thereto, or any other person aggrieved or whose interests are adversely affected thereby, may petition for reconsideration only to the authority making or taking the order, decision, report, or action; and it shall be lawful for such authority, whether it be the Commission or other authority designated under section 155(c)(1) of this title, in its discretion, to grant such a reconsideration if sufficient reason therefor be made to appear. A petition for reconsideration must be filed within thirty days from the date upon which public notice is given of the order, decision, report, or action complained of. No such application shall excuse any person from complying with or obeying any order, decision, report, or action of the Commission, or operate in any manner to stay or postpone the enforcement thereof, without the special order of the Commission. The filing of a petition for reconsideration shall not be a condition precedent to judicial review of any such order, decision, report, or action, except where the party seeking such review (1) was not a party to the proceedings resulting in such order, decision, report, or action, or (2) relies on questions of fact or law upon which the Commission, or designated authority within the Commission, has been afforded no opportunity to pass. The Commission, or designated authority within the Commission, shall enter an order, with a concise statement of the reasons therefor, denying a petition for reconsideration or granting such petition, in whole or in part, and ordering such further proceedings as may be appropriate: *Provided,* That in any case where such petition relates to an instrument of authorization granted without a hearing, the Commission, or designated authority within the Commission, shall take such action within ninety days of the filing of such petition. Reconsiderations shall be governed by such general rules as the Commission may establish, except that no evidence other than newly discovered evidence, evidence which has become available only since the original taking of evidence, or evidence which the Commission or designated authority within the Commission believes should have been taken in the original proceeding shall be taken on any reconsideration. The time within which a petition for review must be filed in a proceeding to which section 402(a) of this title applies, or within which an appeal must be taken under section 402(b) of this title in any case, shall be computed from the date upon which the Commission gives public notice of the order, decision, report, or action complained of.

**(b)(1)** Within 90 days after receiving a petition for reconsideration of an order concluding a hearing under section 204(a) of this title or concluding an investigation under section 208(b) of this title, the Commission shall issue an order granting or denying such petition.

**(2)** Any order issued under paragraph (1) shall be a final order and may be appealed under section 402(a) of this title.

**CREDIT(S)**

(June 19, 1934, c. 652, Title IV, § 405, 48 Stat. 1095; July 16, 1952, c. 879, § 15, 66 Stat. 720; Pub.L. 86-752, § 4(c), Sept. 13, 1960, 74 Stat. 892; Pub.L. 87-192, § 3, Aug. 31, 1961, 75 Stat. 421; Pub.L. 97-259, Title I, §§ 122, 127(c), Sept. 13, 1982, 96 Stat. 1097, 1099; Pub.L. 100-594, § 8(d), Nov. 3, 1988, 102 Stat. 3023.)

Notes of Decisions (162)

47 U.S.C.A. § 405, 47 USCA § 405

Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

## SEC. 207. RESTRICTIONS ON OVER–THE–AIR RECEPTION DEVICES.

Within 180 days after the date of enactment of this Act, the Commission shall, pursuant to section 303 of the Communications Act of 1934, promulgate regulations to prohibit restrictions that impair a viewer's ability to receive video programming services through devices designed for over-the-air reception of television broadcast signals, multichannel multipoint distribution service, or direct broadcast satellite services.

Code of Federal Regulations
    Title 47. Telecommunication
        Chapter I. Federal Communications Commission (Refs & Annos)
            Subchapter A. General (Refs & Annos)
                Part 0. Commission Organization (Refs & Annos)
                    Subpart A. Organization (Refs & Annos)
                        Media Bureau (Refs & Annos)

47 C.F.R. § 0.61

§ 0.61 Functions of the Bureau.

Effective: March 15, 2019

Currentness

The Media Bureau develops, recommends and administers the policy and licensing programs for the regulation of media, including cable television, broadcast television and radio, and satellite services in the United States and its territories. The Bureau advises and recommends to the Commission, or acts for the Commission under delegated authority, in matters pertaining to multichannel video programming distribution, broadcast radio and television, direct broadcast satellite service policy, and associated matters. The Bureau will, among other things:

(a) Process applications for authorization, assignment, transfer and renewal of media services, including AM, FM, TV, the cable TV relay service, and related services.

(b) Conduct rulemaking proceedings concerning the legal, engineering, and economic aspects of media service.

(c) Conduct comprehensive studies and analyses concerning the legal, engineering, and economic aspects of electronic media services.

(d) [Reserved by 84 FR 9465]

(e) Administer and enforce rules and policies regarding political programming and related matters.

(f) Administer and enforce rules and policies regarding:

(1) Radio and television broadcast industry services;

(2) Cable television systems, operators, and services, including those relating to rates, technical standards, customer service, ownership, competition to cable systems, broadcast station signal retransmission and carriage, program access, wiring equipment, channel leasing, and federal-state/local regulatory relationships. This includes: acting, after Commission assumption of jurisdiction to regulate cable television rates for basic service and associated equipment, on cable operator

requests for approval of existing or increased rates; reviewing appeals of local franchising authorities' rate making decisions involving rates for the basic service tier and associated equipment, except when such appeals raise novel or unusual issues; evaluating basic rate regulation certification requests filed by cable system franchising authorities; periodically reviewing and, when appropriate, revising standard forms used in administering: the certification process for local franchising authorities wishing to regulate rates, and the substantive rate regulation standards prescribed by the Commission;

(3) Open video systems;

(4) Preemption of restrictions on devices designed for over-the-air reception of television broadcast signals, multichannel multipoint distribution service, and direct broadcast satellite services;

(5) The commercial availability of navigational devices;

(6) The accessibility of video programming to persons with disabilities;

(7) Program access and carriage;

(8) The Satellite Home Viewer Improvement Act; and

(9) Post-licensing for satellite consumer broadcast services (DBS, DTH and DARS).

Note to paragraph (f): The Media Bureau's enforcement authority does not include enforcement in those areas assigned to the Enforcement Bureau. See 47 CFR 0.111.

(g) Conduct rulemaking and policy proceedings regarding pole attachments.

(h) Process and act on all applications for authorization, petitions for special relief, petitions to deny, waiver requests, requests for certification, objections, complaints, and requests for declaratory rulings and stays regarding the areas listed.

(i) Assist the Consumer and Governmental Affairs Bureau on issues involving informal consumer complaints and other general inquiries by consumers.

(j) Exercise authority to issue non-hearing related subpoenas for the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, schedules of charges, contracts, agreements, and any other records deemed relevant to the investigation of matters within the jurisdiction of the Media Bureau. Before issuing a subpoena, the Media Bureau shall obtain the approval of the Office of General Counsel.

(k) Carry out the functions of the Commission under the Communications Act of 1934, as amended, except as reserved to the Commission under § 0.283.

(l) To coordinate with the Public Safety and Homeland Security Bureau on all matters affecting public safety, homeland security, national security, emergency management, disaster management, and related issues.

**Credits**

[47 FR 47829, Oct. 28, 1982; 49 FR 12271, March 29, 1984; 58 FR 29752, May 21, 1993; 58 FR 33560, June 18, 1993; 58 FR 41042, Aug. 2, 1993; 58 FR 43816, Aug. 18, 1993; 59 FR 32132, June 22, 1994; 59 FR 38374, July 28, 1994; 60 FR 5323, Jan. 27, 1995; 60 FR 35504, July 10, 1995; 62 FR 4170, Jan. 29, 1997; 62 FR 45172, Aug. 26, 1997; 64 FR 60716, Nov. 8, 1999; 67 FR 13217, March 21, 2002; 71 FR 69034, Nov. 29, 2006; 84 FR 9465, March 15, 2019]

SOURCE: 53 FR 29054, Aug. 2, 1988; 56 FR 36730, Aug. 1, 1991; 67 FR 13217, March 21, 2002; 83 FR 733, Jan. 8, 2018; 83 FR 2555, Jan. 18, 2018; 83 FR 48963, Sept. 28, 2018; 84 FR 54040, Oct. 9, 2019; 85 FR 63170, Oct. 6, 2020; 89 FR 4161, Jan. 22, 2024; 89 FR 45553, May 22, 2024; 89 FR 48514, June 7, 2024; 89 FR 61272, July 30, 2024, unless otherwise noted.

AUTHORITY: 47 U.S.C. 151, 154(i), 154(j), 155, 225, 409, and 1754, unless otherwise noted.; 47 U.S.C. 151, 154(i), 154(j), 155, 225, and 409, unless otherwise noted.

Current through November 4, 2024, 89 FR 87517. Some sections may be more current. See credits for details.

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
Title 47. Telecommunication
Chapter I. Federal Communications Commission (Refs & Annos)
Subchapter A. General (Refs & Annos)
Part 0. Commission Organization (Refs & Annos)
Subpart B. Delegations of Authority (Refs & Annos)
Chief, Media Bureau (Refs & Annos)

47 C.F.R. § 0.283

§ 0.283 Authority delegated.

Effective: April 5, 2021

Currentness

The Chief, Media Bureau, is delegated authority to perform all functions of the Bureau, described in § 0.61, provided that the following matters shall be referred to the Commission en banc for disposition:

(a) Notices of proposed rulemaking and of inquiry and final orders in such proceedings, with the exception of rulemaking proceedings involving the allotment of FM and television channels.

(b) Application for review of actions taken pursuant to delegated authority, except that the Chief of the Media Bureau may dismiss any such application that does not contain any statement required under § 1.115(a) or (b) of this chapter, or does not comply with the filing requirements of § 1.115(d) or (f) of this chapter.

(c) Matters that present novel questions of law, fact or policy that cannot be resolved under existing precedents and guidelines.

(d) The imposition, reduction or cancellation of forfeitures pursuant to section 503(b) of the Communications Act of 1934, as amended, in amounts of more than $20,000.

**Credits**

[47 FR 47829, Oct. 28, 1982, as amended at 47 FR 55929, Dec. 14, 1982; 47 FR 58269, Dec. 30, 1982; 48 FR 24386, June 1, 1983; 49 FR 33603, Aug. 23, 1984; 57 FR 18088, April 29, 1992; 61 FR 10689, March 15, 1996; 65 FR 7454, Feb. 15, 2000; 67 FR 13220, March 21, 2002; 86 FR 12547, March 4, 2021]

SOURCE: 28 FR 12402, Nov. 22, 1963; 53 FR 29054, Aug. 2, 1988; 56 FR 36730, Aug. 1, 1991; 67 FR 13220, March 21, 2002; 83 FR 733, Jan. 8, 2018; 83 FR 2555, Jan. 18, 2018; 83 FR 48963, Sept. 28, 2018; 84 FR 54040, Oct. 9, 2019; 85 FR 63170, Oct. 6, 2020; 85 FR 63171, Oct. 6, 2020; 89 FR 4161, Jan. 22, 2024; 89 FR 45553, May 22, 2024; 89 FR 48514, June 7, 2024; 89 FR 61272, July 30, 2024, unless otherwise noted.

AUTHORITY: 47 U.S.C. 151, 154(i), 154(j), 155, 225, 409, and 1754, unless otherwise noted.; 47 U.S.C. 151, 154(i), 154(j), 155, 225, and 409.

Current through November 4, 2024, 89 FR 87517. Some sections may be more current. See credits for details.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
   Title 47. Telecommunication
      Chapter I. Federal Communications Commission (Refs & Annos)
         Subchapter A. General (Refs & Annos)
            Part 1. Practice and Procedure (Refs & Annos)
               Subpart A. General Rules of Practice and Procedure (Refs & Annos)
                  Reconsideration and Review of Actions Taken by the Commission and Pursuant to Delegated Authority;
                  Effective Dates and Finality Dates of Actions

47 C.F.R. § 1.106

§ 1.106 Petitions for reconsideration in non-rulemaking proceedings.

Effective: June 29, 2021

Currentness

(a)(1) Except as provided in paragraphs (b)(3) and (p) of this section, petitions requesting reconsideration of a final Commission action in non-rulemaking proceedings will be acted on by the Commission. Petitions requesting reconsideration of other final actions taken pursuant to delegated authority will be acted on by the designated authority or referred by such authority to the Commission. A petition for reconsideration of an order designating a case for hearing will be entertained if, and insofar as, the petition relates to an adverse ruling with respect to petitioner's participation in the proceeding. Petitions for reconsideration of other interlocutory actions will not be entertained. (For provisions governing reconsideration of Commission action in notice and comment rulemaking proceedings, see § 1.429. This § 1.106 does not govern reconsideration of such actions.)

(2) Within the period allowed for filing a petition for reconsideration, any party to the proceeding may request the presiding officer to certify to the Commission the question as to whether, on policy in effect at the time of designation or adopted since designation, and undisputed facts, a hearing should be held. If the presiding officer finds that there is substantial doubt, on established policy and undisputed facts, that a hearing should be held, he will certify the policy question to the Commission with a statement to that effect. No appeal may be filed from an order denying such a request. See also, §§ 1.229 and 1.251.

(b)(1) Subject to the limitations set forth in paragraph (b)(2) of this section, any party to the proceeding, or any other person whose interests are adversely affected by any action taken by the Commission or by the designated authority, may file a petition requesting reconsideration of the action taken. If the petition is filed by a person who is not a party to the proceeding, it shall state with particularity the manner in which the person's interests are adversely affected by the action taken, and shall show good reason why it was not possible for him to participate in the earlier stages of the proceeding.

(2) Where the Commission has denied an application for review, a petition for reconsideration will be entertained only if one or more of the following circumstances are present:

(i) The petition relies on facts or arguments which relate to events which have occurred or circumstances which have changed since the last opportunity to present such matters to the Commission; or

(ii) The petition relies on facts or arguments unknown to petitioner until after his last opportunity to present them to the Commission, and he could not through the exercise of ordinary diligence have learned of the facts or arguments in question prior to such opportunity.

(3) A petition for reconsideration of an order denying an application for review which fails to rely on new facts or changed circumstances may be dismissed by the staff as repetitious.

(c) In the case of any order other than an order denying an application for review, a petition for reconsideration which relies on facts or arguments not previously presented to the Commission or to the designated authority may be granted only under the following circumstances:

(1) The facts or arguments fall within one or more of the categories set forth in § 1.106(b)(2); or

(2) The Commission or the designated authority determines that consideration of the facts or arguments relied on is required in the public interest.

(d)(1) A petition for reconsideration shall state with particularity the respects in which petitioner believes the action taken by the Commission or the designated authority should be changed. The petition shall state specifically the form of relief sought and, subject to this requirement, may contain alternative requests.

(2) A petition for reconsideration of a decision that sets forth formal findings of fact and conclusions of law shall also cite the findings and/or conclusions which petitioner believes to be erroneous, and shall state with particularity the respects in which he believes such findings and/or conclusions should be changed. The petition may request that additional findings of fact and/or conclusions of law be made.

(e) Where a petition for reconsideration is based upon a claim of electrical interference, under appropriate rules in this chapter, to an existing station or a station for which a construction permit is outstanding, such petition, in addition to meeting the other requirements of this section, must be accompanied by an affidavit of a qualified radio engineer. Such affidavit shall show, either by following the procedures set forth in this chapter for determining interference in the absence of measurements, or by actual measurements made in accordance with the methods prescribed in this chapter, that electrical interference will be caused to the station within its normally protected contour.

(f) The petition for reconsideration and any supplement thereto shall be filed within 30 days from the date of public notice of the final Commission action, as that date is defined in § 1.4(b) of these rules, and shall be served upon parties to the proceeding. The petition for reconsideration shall not exceed 25 double spaced typewritten pages. No supplement or addition to a petition for reconsideration which has not been acted upon by the Commission or by the designated authority, filed after expiration of the 30 day period, will be considered except upon leave granted upon a separate pleading for leave to file, which shall state the grounds therefor.

(g) Oppositions to a petition for reconsideration shall be filed within 10 days after the petition is filed, and shall be served upon petitioner and parties to the proceeding. Oppositions shall not exceed 25 double spaced typewritten pages.

(h) Petitioner may reply to oppositions within seven days after the last day for filing oppositions, and any such reply shall be served upon parties to the proceeding. Replies shall not exceed 10 double spaced typewritten pages, and shall be limited to matters raised in the opposition.

(i) Petitions for reconsideration, oppositions, and replies shall conform to the requirements of §§ 1.49, 1.51, and 1.52 and, except for those related to licensing matters in the Wireless Radio Service and addressed in paragraph (o) of this section, shall be submitted to the Secretary, Federal Communications Commission, Washington, DC 20554, by mail, by commercial courier, by hand, or by electronic submission through the Commission's Electronic Comment Filing System or other electronic filing system (such as ULS). Petitions submitted only by electronic mail and petitions submitted directly to staff without submission to the Secretary shall not be considered to have been properly filed. Parties filing in electronic form need only submit one copy.

(j) The Commission or designated authority may grant the petition for reconsideration in whole or in part or may deny or dismiss the petition. Its order will contain a concise statement of the reasons for the action taken. Where the petition for reconsideration relates to an instrument of authorization granted without hearing, the Commission or designated authority will take such action within 90 days after the petition is filed.

(k)(1) If the Commission or the designated authority grants the petition for reconsideration in whole or in part, it may, in its decision:

(i) Simultaneously reverse or modify the order from which reconsideration is sought;

(ii) Remand the matter to a bureau or other Commission personnel for such further proceedings, including rehearing, as may be appropriate; or

(iii) Order such other proceedings as may be necessary or appropriate.

(2) If the Commission or designated authority initiates further proceedings, a ruling on the merits of the matter will be deferred pending completion of such proceedings. Following completion of such further proceedings, the Commission or designated authority may affirm, reverse, or modify its original order, or it may set aside the order and remand the matter for such further proceedings, including rehearing, as may be appropriate.

(3) Any order disposing of a petition for reconsideration which reverses or modifies the original order is subject to the same provisions with respect to reconsideration as the original order. In no event, however, shall a ruling which denies a petition for reconsideration be considered a modification of the original order. A petition for reconsideration of an order which has been previously denied on reconsideration may be dismissed by the staff as repetitious.

Note: For purposes of this section, the word "order" refers to that portion of its action wherein the Commission announces its judgment. This should be distinguished from the "memorandum opinion" or other material which often accompany and explain the order.

(l) No evidence other than newly discovered evidence, evidence which has become available only since the original taking of evidence, or evidence which the Commission or the designated authority believes should have been taken in the original proceeding shall be taken on any rehearing ordered pursuant to the provisions of this section.

(m) The filing of a petition for reconsideration is not a condition precedent to judicial review of any action taken by the Commission or by the designated authority, except where the person seeking such review was not a party to the proceeding resulting in the action, or relies on questions of fact or law upon which the Commission or designated authority has been afforded no opportunity to pass. (See § 1.115(c).) Persons in those categories who meet the requirements of this section may qualify to seek judicial review by filing a petition for reconsideration.

(n) Without special order of the Commission, the filing of a petition for reconsideration shall not excuse any person from complying with or obeying any decision, order, or requirement of the Commission, or operate in any manner to stay or postpone the enforcement thereof. However, upon good cause shown, the Commission will stay the effectiveness of its order or requirement pending a decision on the petition for reconsideration. (This paragraph applies only to actions of the Commission en banc. For provisions applicable to actions under delegated authority, see § 1.102.)

(o) Petitions for reconsideration of licensing actions, as well as oppositions and replies thereto, that are filed with respect to the Wireless Radio Services, must be filed electronically via ULS.

(p) Petitions for reconsideration of a Commission action that plainly do not warrant consideration by the Commission may be dismissed or denied by the relevant bureau(s) or office(s). Examples include, but are not limited to, petitions that:

(1) Fail to identify any material error, omission, or reason warranting reconsideration;

(2) Rely on facts or arguments which have not previously been presented to the Commission and which do not meet the requirements of paragraphs (b)(2), (b)(3), or (c) of this section;

(3) Rely on arguments that have been fully considered and rejected by the Commission within the same proceeding;

(4) Fail to state with particularity the respects in which petitioner believes the action taken should be changed as required by paragraph (d) of this section;

(5) Relate to matters outside the scope of the order for which reconsideration is sought;

(6) Omit information required by these rules to be included with a petition for reconsideration, such as the affidavit required by paragraph (e) of this section (relating to electrical interference);

(7) Fail to comply with the procedural requirements set forth in paragraphs (f) and (i) of this section;

(8) relate to an order for which reconsideration has been previously denied on similar grounds, except for petitions which could be granted under paragraph (c) of this section; or

(9) Are untimely.

(Authority: Secs. 4, 303, 307, 405, 48 Stat., as amended, 1066, 1082, 1083, 1095; 47 U.S.C. 154, 303, 307, 405)

**Credits**

[28 FR 12415, Nov. 22, 1963, as amended at 37 FR 7507, April 15, 1972; 41 FR 1287, Jan. 7, 1976; 44 FR 60294, Oct. 19, 1979; 46 FR 18556, March 25, 1981; 62 FR 4170, Jan. 29, 1997; 63 FR 68920, Dec. 14, 1998; 76 FR 24391, May 2, 2011; 85 FR 85529, Dec. 29, 2020]

SOURCE: 28 FR 12415, Nov. 22, 1963; 56 FR 57598, Nov. 13, 1991; 57 FR 187, Jan. 3, 1992; 58 FR 27473, May 10, 1993; 59 FR 22985, May 4, 1994; 61 FR 45618, Aug. 29, 1996; 61 FR 46561, Sept. 4, 1996; 61 FR 52899, Oct. 9, 1996; 62 FR 37422, July 11, 1997; 63 FR 67429, Dec. 7, 1998; 63 FR 71036, Dec. 23, 1998; 64 FR 63251, Nov. 19, 1999; 65 FR 10720, Feb. 29, 2000; 65 FR 19684, April 12, 2000; 65 FR 31281, May 17, 2000; 69 FR 77938, Dec. 29, 2004; 71 FR 26251, May 4, 2006; 74 FR 39227, Aug. 6, 2009; 75 FR 9797, March 4, 2010; 76 FR 43203, July 20, 2011; 77 FR 71137, Nov. 29, 2012; 78 FR 10100, Feb. 13, 2013; 78 FR 15622, March 12, 2013; 78 FR 41321, July 10, 2013; 78 FR 50254, Aug. 16, 2013; 79 FR 48528, Aug. 15, 2014; 80 FR 1268, Jan. 8, 2015; 81 FR 40821, June 23, 2016; 81 FR 52362, Aug. 8, 2016; 81 FR 79930, Nov. 14, 2016; 81 FR 86601, Dec. 1, 2016; 82 FR 8171, Jan. 24, 2017; 82 FR 18581, April 20, 2017; 82 FR 20839, May 4, 2017; 82 FR 24561, May 30, 2017; 82 FR 41103, Aug. 29, 2017; 82 FR 41544, Sept. 1, 2017; 82 FR 55331, Nov. 21, 2017; 82 FR 58758, Dec. 14, 2017; 83 FR 2556, Jan. 18, 2018; 83 FR 4600, Feb. 1, 2018; 83 FR 7401, Feb. 21, 2018; 83 FR 46836, Sept. 14, 2018; 83 FR 47095, Sept. 18, 2018; 83 FR 48963, Sept. 28, 2018; 83 FR 61089, Nov. 27, 2018; 83 FR 63095, Dec. 7, 2018; 84 FR 8618, March 11, 2019; 84 FR 50999, Sept. 26, 2019; 84 FR 57363, Oct. 25, 2019; 86 FR 12547, March 4, 2021; 86 FR 15797, March 25, 2021; 88 FR 63744, Sept. 15, 2023; 89 FR 2149, Jan. 12, 2024; 89 FR 4161, Jan. 22, 2024; 89 FR 45553, May 22, 2024; 89 FR 48514, June 7, 2024; 89 FR 61272, July 30, 2024, unless otherwise noted.

AUTHORITY: 47 U.S.C. chs. 2, 5, 9, 13; 28 U.S.C. 2461 note; 47 U.S.C. 1754, unless otherwise noted.

Notes of Decisions (42)

Current through November 4, 2024, 89 FR 87517. Some sections may be more current. See credits for details.

Code of Federal Regulations
    Title 47. Telecommunication
        Chapter I. Federal Communications Commission (Refs & Annos)
            Subchapter A. General (Refs & Annos)
                Part 1. Practice and Procedure (Refs & Annos)
                    Subpart S. Preemption of Restrictions that "Impair" the Ability to Receive Television Broadcast Signals, Direct Broadcast Satellite Services, or Multichannel Multipoint Distribution Services or the Ability to Receive or Transmit Fixed Wireless Communications Signals (Refs & Annos)

47 C.F.R. § 1.4000

§ 1.4000 Restrictions impairing reception of television broadcast signals, direct broadcast satellite services or multichannel multipoint distribution services.

Effective: April 10, 2023

Currentness

(a)(1) Any restriction, including but not limited to any state or local law or regulation, including zoning, land-use, or building regulations, or any private covenant, contract provision, lease provision, homeowners' association rule or similar restriction, on property within the exclusive use or control of the antenna user where the user has a direct or indirect ownership or leasehold interest in the property that impairs the installation, maintenance, or use of:

(i) An antenna that is:

(A) Used to receive direct broadcast satellite service, including direct-to-home satellite service, or to receive or transmit fixed wireless signals via satellite, including a hub or relay antenna used to receive or transmit fixed wireless services that are not classified as telecommunications services, and

(B) One meter or less in diameter or is located in Alaska;

(ii) An antenna that is:

(A) Used to receive video programming services via multipoint distribution services, including multichannel multipoint distribution services, instructional television fixed services, and local multipoint distribution services, or to receive or transmit fixed wireless signals other than via satellite, including a hub or relay antenna used to receive or transmit fixed wireless services that are not classified as telecommunications services, and

(B) That is one meter or less in diameter or diagonal measurement;

(iii) An antenna that is used to receive television broadcast signals; or

(iv) A mast supporting an antenna described in paragraphs (a)(1)(i), (a)(1)(ii), or (a)(1)(iii) of this section; is prohibited to the extent it so impairs, subject to paragraph (b) of this section.

(2) For purposes of this section, "fixed wireless signals" means any commercial non-broadcast communications signals transmitted via wireless technology to and/or from a fixed customer location. Fixed wireless signals do not include, among other things, AM radio, FM radio, amateur ("HAM") radio, CB radio, and Digital Audio Radio Service (DARS) signals.

(3) For purposes of this section, a law, regulation, or restriction impairs installation, maintenance, or use of an antenna if it:

(i) Unreasonably delays or prevents installation, maintenance, or use;

(ii) Unreasonably increases the cost of installation, maintenance, or use; or

(iii) Precludes reception or transmission of an acceptable quality signal.

(4) Any fee or cost imposed on a user by a rule, law, regulation or restriction must be reasonable in light of the cost of the equipment or services and the rule, law, regulation or restriction's treatment of comparable devices. No civil, criminal, administrative, or other legal action of any kind shall be taken to enforce any restriction or regulation prohibited by this section except pursuant to paragraph (d) or (e) of this section. In addition, except with respect to restrictions pertaining to safety and historic preservation as described in paragraph (b) of this section, if a proceeding is initiated pursuant to paragraph (d) or (e) of this section, the entity seeking to enforce the antenna restrictions in question must suspend all enforcement efforts pending completion of review. No attorney's fees shall be collected or assessed and no fine or other penalties shall accrue against an antenna user while a proceeding is pending to determine the validity of any restriction. If a ruling is issued adverse to a user, the user shall be granted at least a 21–day grace period in which to comply with the adverse ruling; and neither a fine nor a penalty may be collected from the user if the user complies with the adverse ruling during this grace period, unless the proponent of the restriction demonstrates, in the same proceeding which resulted in the adverse ruling, that the user's claim in the proceeding was frivolous.

(5) For purposes of this section, "hub or relay antenna" means any antenna that is used to receive or transmit fixed wireless signals for the distribution of fixed wireless services to multiple customer locations as long as the antenna serves a customer on whose premises it is located, but excludes any hub or relay antenna that is used to provide any telecommunications services or services that are provided on a commingled basis with telecommunications services.

(b) Any restriction otherwise prohibited by paragraph (a) of this section is permitted if:

(1) It is necessary to accomplish a clearly defined, legitimate safety objective that is either stated in the text, preamble, or legislative history of the restriction or described as applying to that restriction in a document that is readily available to antenna users, and would be applied to the extent practicable in a non-discriminatory manner to other appurtenances, devices, or fixtures that are comparable in size and weight and pose a similar or greater safety risk as these antennas and to which local regulation would normally apply; or

(2) It is necessary to preserve a prehistoric or historic district, site, building, structure or object included in, or eligible for inclusion on, the National Register of Historic Places, as set forth in the National Historic Preservation Act of 1966, as amended, 16 U.S.C. 470, and imposes no greater restrictions on antennas covered by this rule than are imposed on the installation, maintenance, or use of other modern appurtenances, devices, or fixtures that are comparable in size, weight, and appearance to these antennas; and

(3) It is no more burdensome to affected antenna users than is necessary to achieve the objectives described in paragraphs (b)(1) or (b)(2) of this section.

(c) [Reserved by 85 FR 18146]

(d) Local governments or associations may apply to the Commission for a waiver of this section under § 1.3 of this chapter. Waiver requests must comply with the procedures in paragraphs (f) and (h) of this section and will be put on public notice. The Commission may grant a waiver upon a showing by the applicant of local concerns of a highly specialized or unusual nature. No petition for waiver shall be considered unless it specifies the restriction at issue. Waivers granted in accordance with this section shall not apply to restrictions amended or enacted after the waiver is granted. Any responsive pleadings must be served on all parties and filed within 30 days after release of a public notice that such petition has been filed. Any replies must be filed within 15 days thereafter.

(e) Parties may petition the Commission for a declaratory ruling under § 1.2 of this chapter, or a court of competent jurisdiction, to determine whether a particular restriction is permissible or prohibited under this section. Petitions to the Commission must comply with the procedures in paragraphs (f) and (h) of this section and will be put on public notice. Any responsive pleadings in a Commission proceeding must be served on all parties and filed within 30 days after release of a public notice that such petition has been filed. Any replies in a Commission proceeding must be served on all parties and filed within 15 days thereafter.

(f) Copies of petitions for declaratory rulings and waivers must be served on interested parties, including parties against whom the petitioner seeks to enforce the restriction or parties whose restrictions the petitioner seeks to prohibit. A certificate of service stating on whom the petition was served must be filed with the petition. In addition, in a Commission proceeding brought by an association or a local government, constructive notice of the proceeding must be given to members of the association or to the citizens under the local government's jurisdiction. In a court proceeding brought by an association, an association must give constructive notice of the proceeding to its members. Where constructive notice is required, the petitioner or plaintiff must file with the Commission or the court overseeing the proceeding a copy of the constructive notice with a statement explaining where the notice was placed and why such placement was reasonable.

(g) In any proceeding regarding the scope or interpretation of any provision of this section, the burden of demonstrating that a particular governmental or nongovernmental restriction complies with this section and does not impair the installation, maintenance, or use of devices used for over-the-air reception of video programming services or devices used to receive or transmit fixed wireless signals shall be on the party that seeks to impose or maintain the restriction.

(h) All allegations of fact contained in petitions and related pleadings before the Commission must be supported by affidavit of a person or persons with actual knowledge thereof. An original and two copies of all petitions and pleadings should be addressed to the Secretary at the FCC's main office, located at the address indicated in 47 CFR 0.401(a). Copies of the petitions and related pleadings will be available for public inspection through the Reference Information Center.

**Credits**

[66 FR 2333, Jan. 11, 2001; 66 FR 28841, May 25, 2001; 67 FR 13224, March 21, 2002; 82 FR 41103, Aug. 29, 2017; 85 FR 18146, April 1, 2020; 85 FR 64405, Oct. 13, 2020; 86 FR 11442, Feb. 25, 2021; 88 FR 21435, April 10, 2023]

SOURCE: 56 FR 57598, Nov. 13, 1991; 57 FR 187, Jan. 3, 1992; 58 FR 27473, May 10, 1993; 59 FR 22985, May 4, 1994; 61 FR 45618, Aug. 29, 1996; 61 FR 46561, Sept. 4, 1996; 61 FR 52899, Oct. 9, 1996; 62 FR 37422, July 11, 1997; 63 FR 67429, Dec. 7, 1998; 63 FR 71036, Dec. 23, 1998; 64 FR 63251, Nov. 19, 1999; 65 FR 10720, Feb. 29, 2000; 65 FR 19684, April 12, 2000; 65 FR 31281, May 17, 2000; 66 FR 2333, Jan. 11, 2001; 69 FR 77938, Dec. 29, 2004; 71 FR 26251, May 4, 2006; 74 FR 39227, Aug. 6, 2009; 75 FR 9797, March 4, 2010; 76 FR 43203, July 20, 2011; 77 FR 71137, Nov. 29, 2012; 78 FR 10100, Feb. 13, 2013; 78 FR 15622, March 12, 2013; 78 FR 41321, July 10, 2013; 78 FR 50254, Aug. 16, 2013; 79 FR 48528, Aug. 15, 2014; 80 FR 1268, Jan. 8, 2015; 81 FR 40821, June 23, 2016; 81 FR 52362, Aug. 8, 2016; 81 FR 79930, Nov. 14, 2016; 81 FR 86601, Dec. 1, 2016; 82 FR 8171, Jan. 24, 2017; 82 FR 18581, April 20, 2017; 82 FR 20839, May 4, 2017; 82 FR 24561, May 30, 2017; 82 FR 41103, Aug. 29, 2017; 82 FR 41544, Sept. 1, 2017; 82 FR 55331, Nov. 21, 2017; 82 FR 58758, Dec. 14, 2017; 83 FR 2556, Jan. 18, 2018; 83 FR 4600, Feb. 1, 2018; 83 FR 7401, Feb. 21, 2018; 83 FR 46836, Sept. 14, 2018; 83 FR 47095, Sept. 18, 2018; 83 FR 48963, Sept. 28, 2018; 83 FR 61089, Nov. 27, 2018; 83 FR 63095, Dec. 7, 2018; 84 FR 8618, March 11, 2019; 84 FR 50999, Sept. 26, 2019; 84 FR 57363, Oct. 25, 2019; 86 FR 12547, March 4, 2021; 86 FR 15797, March 25, 2021; 88 FR 63744, Sept. 15, 2023; 89 FR 2149, Jan. 12, 2024; 89 FR 4161, Jan. 22, 2024; 89 FR 45553, May 22, 2024; 89 FR 48514, June 7, 2024; 89 FR 61272, July 30, 2024, unless otherwise noted.

AUTHORITY: 47 U.S.C. chs. 2, 5, 9, 13; 28 U.S.C. 2461 note; 47 U.S.C. 1754, unless otherwise noted.

Notes of Decisions (32)

Current through November 4, 2024, 89 FR 87517. Some sections may be more current. See credits for details.

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.