ORAL ARGUMENT NOT YET SCHEDULED

**No. 24-1108**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

INDIAN PEAK PROPERTIES LLC,
*Petitioner*

v.

THE FEDERAL COMMUNICATIONS COMMISSION AND
THE UNITED STATES OF AMERICA,
*Respondents*

Petition for Review of an Order of the Federal Communications
Commission

**REPLY BRIEF OF PETITIONER**

Julian Gehman
GEHMAN LAW PLLC
1050 Connecticut Ave NW
Suite 500
Washington, DC 20036
(202) 341-0198
julian@gehmanlaw.com

*Counsel for Indian Peak
Properties LLC*

# TABLE OF CONTENTS

|  |  |  |  |
|---|---|---|---|
|  |  | **SUMMARY OF ARGUMENT** | 1 |
|  |  | **ARGUMENT** | 1 |
| 1 |  | The FCC Brief Misconstrues the Rule | 1 |
| 2 |  | Even if Reasonable, the FCC Failed to Provide Fair Notice | 4 |
|  | a. | FCC failed to give notice of its procedure | 5 |
|  | b. | FCC failed to give notice of its "human presence" rule | 5 |
|  | c. | FCC violated Indian's due process rights and reliance interests | 8 |
| 3 |  | The Bureaus Violated the Rule and Engaged in *Ultra Vires* Action | 10 |
|  | a. | FCC admits it violated the Rule | 10 |
|  | b. | The Bureaus lack lawmaking authority | 11 |
|  | c. | The Bureaus' processing of Indian's petitions constituted *ultra vires* action | 14 |
|  | d. | Indian's rule-violation claim is not moot | 15 |
| 4 |  | The *Order's* "Human Presence" Rule is Legislative, Requiring Notice-and-Comment Rulemaking | 18 |
|  | a. | Indian's notice-and-comment claim is properly before the Court | 18 |
|  | b. | Because the Bureaus acted outside delegated authority, the *Order* does not qualify as an adjudication | 21 |
|  | c. | Even if authorized, the *Order* announces a legislative, not an interpretive rule. | 22 |

# TABLE OF AUTHORITIES

**Federal cases**                                                        **Page**

| | |
|---|---|
| *FCC v. Schreiber,* 381 U.S. 279 (1965) | 13 |
| *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S 120 (2000) | 14 |
| *FEC v. Cruz*, 596 U.S. 289 (2022) | 14 |
| *Gates & Fox Co. v. OSHRC*, 790 F.2d 154 (D.C. Cir. 1986) | 9 |
| *General Elec. Co. v. U.S. EPA*, 53 F.3d 1324 (1985) | 4, 5 |
| *Kisor v. Wilkie,* 588 U.S. 558 (2019) | 3, 12 - 14 |
| *La. Pub. Svc. Comm'n v. FCC*, 476 U.S. 355 (1986) | 13, 23 |
| *Nader v. FCC,* 520 F.2d 182 (D.C. Cir. 1975) | 12 |
| *Neustar, Inc. v. FCC*, 857. F.3d 886 (D.C. Cir. 2017) | 22 |
| *NTCH, Inc. v. FCC*, 877 F.3d 408 (D.C. Cir. 2017) | 12 |
| *Radio Athens, Inc. v. FCC* , 401 F.2d 398 (D.C. Cir. 1968) | 9 |
| *Reuters Ltd. v. FCC*, 781 F.2d 946 (D.C. Cir. 1986) | 13 |
| *Satellite B'casting Co., Inc v. FCC*, 824 F.2d 1 (D.C. Cir. 1987) | 4, 5, 9 |
| *SEC v. Chenery*, 332 U.S. 194 (1947) | 22 |
| *U.S. v. Chrysler Corp.*, 158 F.3d 1350 (D.C. Cir. 1998) | 4, 5, 9 |
| *Washington Assoc. for Television and Children v. FCC*, 712 F.2d 677 (D.C. Cir. 1983) | 18, 21 |
| *Waterkeeper Alliance v. EPA*, 853 F.3d 527 (D.C. Cir. 2017) | 10, 11 |

## U.S. Constitution

| | |
|---|---|
| U.S. CONST. AMEND. V | 7, 8, 23 |

## Statutes

| | |
|---|---|
| 5 U.S.C. § 553 | 21 - 23 |
| 5 U.S.C. § 706 | 15, 16 |
| 28 U.S.C. § 1346 | 16 |
| 28 U.S.C. § 2671-80 | 16 |
| 47 U.S.C. § 154 | 12, 14 |
| 47 U.S.C. § 155 | 13 |
| 47 U.S.C. § 405 | 18 |
| Pub. L. No. 104-104, § 207, 110 Stat. 56, 114 (1996) | 14, 23 |

## Regulations

| | |
|---|---|
| 47 C.F.R. § 0.61 | 13 |
| 47 C.F.R. § 0.283 | 13 |
| 47 C.F.R. § 1.106 | 18 - 21 |
| 47 C.F.R. § 1.4000. (the "Rule") | 1-17, 23 |

## Agency Materials

| | |
|---|---|
| *Continental Airlines*, 21 FCC Rcd 13201 (2006) | 6 - 7, 19, 20 |
| *Pet'n for Decl. Ruling - Multifamily Broadband Council, Letter Order, 32 FCC Rcd 3794 (MB 2017)* | 13 |
| Question and Answer: Can I continue to use my antenna while the petition or waiver request is pending? https://www.fcc.gov/media/over-air-reception-devices-rule | 5 |

| | |
|---|---|
| Letter Order from Garnet Hanley and Maria Mullarky, FCC, to *Toneata Martocchio*, counsel to Indian Peak Properties LLC, unpublished (Jul 18, 2022). JA11 | 14, 16 |
| *Updating the Commission's Rule for Over-the-Air Reception Devices*, Report and Order, 36 FCC Rcd 537 (2021) (the "*Order*") | 4 - 8, 15, 19 - 23 |

# SUMMARY OF ARGUMENT

The FCC does not deny that it violated 47 C.F.R. § 1.4000 (the "Rule"). This was *ultra vires* because the agency acted contrary to the plain language of the Rule, and ancillary authority (47 U.S.C. § 154(j)) does not apply. There is no Congressional authorization for this action. The Commission misconstrues the Rule by claiming it applies only after adjudicating whether the antennas comply with Paragraph (a) of the Rule, 47 C.F.R. 1.4000(a). By its terms, however, the Rule applies when a petition is filed, irrespective of adjudication. The FCC failed to give fair notice of procedure used, which is contrary to the Rule, as well as the new "human presence" standard; and the Commission violated Indian's due process rights and reliance interest. The "human presence" rule requires notice-and-comment rulemaking.

# ARGUMENT

## 1. The FCC Brief Misconstrues the Rule.

The FCC Brief claims that "[f]or the Rule to apply, an antenna must "transmit or receive" certain video programming . . .." FCC Brief at 3 (citing 47 C.F.R. § 1.4000(a)(1)(I)(A)). This misconstrues the Rule.

1

The Rule *applies* even if an antenna does not comply with these requirements. A more accurate characterization is that for a restriction to be *preempted* under the Rule, an antenna must comply with the requirements of Paragraph (a) of the Rule. The Rule *applies* where a waiver request is submitted under Paragraph (d) of the Rule or a petition for declaratory ruling is submitted pursuant to Paragraph (e). 47 C.F.R. §§ 1.4000(d) and (e). The Rule imposes a uniform requirement: waiver requests and petitions for declaratory ruling "must comply with the procedures in paragraphs (f) and (h) of this section and *will be put on public notice.*" *Id* (emphasis added).

This public notice starts an adversarial process to determine whether the restriction is preempted under the Rule. A restriction is preempted where the petitioner's antennas, users and services comply with Paragraph (a) of the Rule, and the restriction improperly impairs the petitioner's legitimate use. These points are to be determined in the adversarial process, with the burden of proof placed on the party urging the restriction. 47 C.F.R. § 1.4000(g). The party urging the restriction could show that the petitioner's antennas, users or services do not

comply with Paragraph (a) of the Rule, that there are safety or historic preservation concerns, or that the restriction otherwise does not unreasonably impair the petitioner's use.

Paragraphs (f) and (h) require notice to adverse parties and affidavits to support facts presented in the pleadings. 47 C.F.R. §§ 1.4000(f) and (h). The Rule imposes no further requirement before a waiver request or petition goes on public notice. There is no express or implied authorization for FCC staff to engage in pre-public-notice "adjudication" to determine suitability under the Rule. To the contrary, "[i]n any proceeding regarding the scope or interpretation of [the Rule], the burden of demonstrating that a particular . . . restriction complies with [the Rule] . . . shall be on the party that seeks to impose or maintain the restriction." 47 C.F.R. § 1.4000(g). Nowhere does it say that only petitions compliant with Paragraph (a) will be placed on public notice. Because the Rule and accompanying FCC orders do not afford discretion on these points, the Court should enforce the plain language of the Rule. *Kisor v. Wilkie,* 588 U.S. 558, 574-575 (2019).

## 2.     Even if Reasonable, the FCC Failed to Provide Fair Notice

The FCC Brief, 30, claims that the Commission reasonably dismissed Indian's petitions without starting a proceeding.  As described above, the FCC violated the Rule by refusing to initiate a proceeding. However, even if the Commission's actions were reasonable as claimed by the FCC Brief, or somehow complied with the Rule, the agency's failure to give fair notice of its interpretation of the Rule prejudiced Indian and warrants reversal of the *Order*.

It is well established that an agency may not penalize a private party "for violating a rule without first providing adequate notice of the substance of the rule." *Satellite B'casting Co., Inc v. FCC*, 824 F.2d 1, 3 (D.C. Cir. 1987); *U.S. v. Chrysler Corp.*, 158 F.3d 1350 (D.C. Cir. 1998). This is so, even where the agency's interpretation of the rule is permissible. *General Elec. Co. v. U.S. EPA*, 53 F.3d 1324, 1325 (1985) "The dismissal of an application . . . is a sufficiently grave sanction to trigger this duty to provide clear notice." *Satellite B'casting*, 824 F.2d at 3 (citing cases).  Dismissal of Indian's petitions, like the dismissal of an application, triggered the notice requirement.

### a. FCC failed to give notice of its procedure

The FCC provided no public notice that it would conduct an adjudication placing the burden on the petitioner to demonstrate compliance with Paragraph (a) of the Rule. As noted above, there is no statement in the Rule or accompanying FCC orders that only petitions compliant with Paragraph (a) will be placed on public notice. Instead, the FCC invites these petitions, stating that where, as here, there is no safety or historic preservation consideration, "the restriction cannot be enforced while the petition is pending." https://www.fcc.gov/media/over-air-reception-devices-rule (viewed Jun 23, 2024). The Commission has given no notice whatsoever of the actual procedure that the Bureaus use to process these petitions. This lack of notice prejudiced Indian and warrants reversal of the *Order*. *See Satellite B'casting Co., supra; U.S. v. Chrysler Corp.*, *supra;* and *General Elec. Co., supra* (reversing agency orders).

### b. FCC failed to give notice of its "human presence" rule

The FCC Brief, 20-26, claims the Commission correctly construed the Rule to require a regular human presence at an antenna's location.

However, even if that were the correct construction of the Rule, the FCC is improperly penalizing Indian, having failed to give fair notice of the "human presence" requirement. This is a new requirement. The *Order* telegraphs that this is a new requirement by stating "[w]e do not address all possible uses or establish a bright-line standard for such use." *Order* ¶ 23. This is the language of an announcement of a new rule. Nevertheless, the *Order,* at ¶ 30, and the FCC Brief, at 25-26, try to shoehorn the "human presence" requirement into *Continental Airlines*, 21 FCC Rcd 13201 (2006) and other FCC precedents. In *Continental Airlines*, the airport argued that Continental's passengers using Wi-Fi in the President's Lounge were the cognizable "users" under 47 C.F.R. § 14000(a)(1). Because Continental and not the passengers had the leasehold interest in the President's Club premises, the airport claimed that the Rule did not apply. The FCC rejected this, stating that Continental itself was the cognizable user and the fact that passengers also used the Wi-Fi antenna "does not alter the analysis." *Continental Airlines*, 21 FCC Rcd 13201 at **5, ¶ 15. Curiously, the *Order* and the FCC Brief both avoid discussing the "does not alter the analysis" quote,

even after Indian highlighted this phrase as the key analytical step, *see* Indian Brief 36-40. The Commission's silence on this point indicates that it has no good answer.

Prior to the *Order*, a commercial Wi-Fi provider was the cognizable "user" or "customer" under 47 C.F.R. § 1.4000(a), and end-users of the system did not "alter the analysis." In other words, in an office building with Wi-Fi service, the building owner or commercial Wi-Fi provider was the "user" or "customer." The Wi-Fi system's end-users, who may come and go, or work from home, "[did] not alter the analysis." *Continental Airlines* at ¶ 15. Subsequent to the *Order*, however, there is an additional requirement that they *do* alter the analysis. If, in the Commission's view, there are not enough human end users, with sufficiently frequent use, then the Wi-Fi system loses the protection of the Rule. This interpretation is not apparent from an ordinary reading of *Continental Airlines* and other precedent. The FCC should have given fair notice of this new requirement before penalizing with denial of Indian's petitions.

### c. The FCC violated Indian's due process rights and reliance interests.

In arguing that the Commission did not violate Indian's due process rights or reliance interests, the FCC Brief, 33-38, makes a series of arguments that: (1) Indian forfeited its constitutional claim; (2) Indian and the City had actual notice of Indian's petitions and both participated in the FCC proceeding; (3) in order to implicate due process rights, there has to be an actual deprivation of property and not the mere expectation that an agency will follow procedure; (4) the Commission did not deprive Indian of property, rather, the City and the California courts did so; and (5) Indian did not have a reliance interest in the Bureaus initiating a proceeding because the Commission rightfully found that the Rule did not apply to Indian's petitions.

To respond to these, (1) to the extent that Indian's constitutional claim was not properly presented, the Commission exercised its discretion in the *Order* ¶¶ 33-36 and addressed the merits, as did the FCC Brief. Indian's constitutional and reliance claims are properly before this Court. (2) It is well established that "[t]he due process clause prevents . . . the application of a regulation that fails to give fair warning

of the conduct it prohibits or requires." *U.S. v. Chrysler Corp.*, 158 F.3d 1350, 1354 (D.C. Cir. 1998) (quoting *Gates & Fox Co. v. OSHRC*, 790 F.2d 154, 156 (D.C. Cir. 1986)); *Radio Athens, Inc. v. FCC*, 401 F.2d 398, 404 (D.C. Cir. 1968). As detailed above, the Commission failed to give fair notice of the procedure the Bureaus used in processing Indian's petitions and that a "human presence" would be required for the Rule to apply. The Commission's failure to give notice on these points violated Indian's due process rights. (3) There was an actual deprivation of Indian's property, as described in Indian Brief 44-45. Moreover, it is well established that FCC dismissal of an application (or in this case dismissal of Indian's petition) is sufficient loss to trigger due process requirements. *Radio Athens, Inc. v. FCC, supra; Satellite B'casting Co., Inc v. FCC*, 824 F.2d 1, 3 (D.C. Cir. 1987). (4) It is well established that a cognizable property loss occurs for due process considerations where an agency action causes a regulatee to lose money, even if the agency itself did not directly assess the penalty or fine. *U.S. v. Chrysler Corp.*, 158 F.3d 1350, 1354-55 (D.C. Cir. 1998) (NHTSA-ordered recall caused Chrysler to spend money). (5). As described in this Reply Brief *supra*

1-3, the Commission misconstrues the Rule as not applying until the FCC "adjudicates" that the petitioner complies with Paragraph (a) of the Rule, 47 C.F.R. § 1.4000(a). In fact, the Rule applies upon the submission of a petition for declaratory ruling that satisfies the procedural requirements of Paragraphs (f) and (h) of the Rule, 47 C.F.R. §§ 1.4000(f) and (h). The Indian Brief 23-31 details how Indian is entitled to the procedural protections of the Rule even where the FCC rules against Indian on the merits of the petition. Indian and all petitioners under the Rule have a reliance interest that the Commission will follow the procedure set out in the Rule.

**3.    The Bureaus Violated The Rule and Engaged in *Ultra Vires* Action**

The FCC Brief 31-33 implausibly argues that the Bureaus need not follow the Rule but instead may fashion their own procedure.

**a.    The FCC admits it violated the Rule**

The FCC's quotation that "[a]gencies are not . . . helpless slaves to literalism" essentially admits that the Bureaus did not follow the literal language of the Rule. *See* FCC Brief at 32, quoting *Waterkeeper Alliance v. EPA*, 853 F.3d 527, 535 (D.C. Cir. 2017). The FCC does not

deny Indian's repeated claim (Indian Brief 23-27) that FCC staff violated the Rule. The FCC Brief (29-38) claims Indian's rule-violation contentions are moot and the Bureaus acted reasonably. However, the FCC does not deny and therefore admits that it violated the Rule.

### b.   The Bureaus lack lawmaking authority.

The Commission's reliance on *Waterkeeper Alliance, supra,* is misplaced (FCC Brief 32). The *de minimus* exception referenced in *Waterkeeper Alliance* involves administrative agencies conducting notice-and-comment rulemakings in response to statutory mandates. In certain cases, the agency's lawmaking authority could authorize a *de minimus* exception to Congress' statutory mandate. That is inapposite to the present situation. Here, the Bureaus did an end-run around the Rule, which the Commission had promulgated through notice-and-comment rulemakings. Agencies have law making authority, Bureaus do not. A Bureau's job is to follow the law, including the legislative Rule. The Indian Brief 14-33 repeatedly pointed out that the Rule gives FCC staff members no discretion to disregard the procedure set out in the Rule. In response, the FCC Brief does not deny this and has pointed to no text of

the Rule or other FCC order giving staff discretion to disregard the Rule's procedure. In the admitted absence of grant of any such discretion, the Court should enforce the plain language of the Rule. *Kisor v. Wilkie,* 588 U.S. 558, 574-575 (2019).

Instead of referencing any discretionary language in the Rule, the FCC Brief 32 cites to Section 4(j) of the Communications Act. This argument suffers the same defect as the citation to *Waterkeeper Alliance.* Section 4(j) authorizes "[t]he *Commission*" to "conduct its proceedings in such manner as will best conduce the proper dispatch of business . . .." 47 U.S.C. § 154(j) (emphasis added). When Congress says "the Commission," it means the FCC, not its delegated subdivisions. *NTCH, Inc. v. FCC*, 877 F.3d 408, 413 (D.C. Cir. 2017); 47 U.S.C. § 154(a) (defining "the Commission" as "composed of five commissioners"). Court decisions discuss that Section 4(j) authorizes the Commission to order its docket or dispose of cases in the way that the agency deems best. *See e.g., Nader v. FCC,* 520 F.2d 182 (D.C. Cir. 1975). However, this discussion of Section 4(j) is in the context of action by the Commission, often after a notice-and-comment

rulemaking, and not *ad hoc* action by staff that is contrary to the FCC's established rule. For example, in the leading case of *FCC v. Schreiber*, which cites extensively to Section 4(j), the Commission "promulgated a rule" governing the disputed proceedings. *FCC v. Schreiber,* 381 U.S. 279, 291 (1965). We could find no case under Section 154(j) approving *ad hoc* Bureau action contrary to the agency's established rule. That the Bureau had done this once before does not manufacture the needed authority, as suggested by FCC Brief at 32 (citing *Pet'n for Decl. Ruling - Multifamily Broadband Council*, Letter Order, 32 FCC Rcd 3794 (MB 2017)). The Commission delegates authority to Bureaus. 47 U.S.C. § 155(c); s*ee, e.g.*, 47 C.F.R. §§ 0.61, 0.283 (Media Bureau). However, no delegation can authorize overriding the Rule, only another notice-and-comment rulemaking can do that.

The same standard applies to the full Commission or to Bureaus acting on delegated authority: "rules are rules, and fidelity to the rules which have been properly promulgated . . . is required." *Reuters Ltd. v. FCC*, 781 F.2d 946, 951 (D.C. Cir. 1986). "If uncertainty does not exist,

. . . [t]he regulation just means what it means - and the court must give it effect, as the court would any law." *Kisor,* 588 U.S. at 574-75.

### c. The Bureaus' processing of Indian's petitions constituted *ultra vires* agency action.

It is well established that "an agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Svc. Comm'n v. FCC*, 476 U.S. 355, 374 (1986); *FEC v. Cruz*, 596 U.S. 289, 301 (2022); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S 120, 161 (2000). Further, "an agency may not confer power upon itself." *La. Pub. Svc. Comm'n*, 476 U.S. at 374.

By what authority did Bureau staff conduct the proceeding that is now under review? Tracing potential authority for this action, Section 207 of the Telecommunications Act of 1996 instructed the FCC to "promulgate regulations" in this area, and the FCC did so via notice-and-comment rulemakings that are codified in the Rule. Indian Brief at 10-12 sets out this history. The Rule authorizes Bureau staff to act on Indian's petitions in the manner set out in the Rule.

Where they did not follow the Rule, Bureau staff lacked other, "ancillary" authority to process Indian's petitions in a manner not

authorized by the Rule. As discussed above, Section 4(j) of the Communications Act confers authority on the FCC acting as the Commission, not on Bureaus acting contrary to the Rule. 47 U.S.C. § 154(j). Certain leeway may be assumed in the administration of the Rule; a minor variation in procedure enforcing the Rule usually should not be fatal. However what the Bureaus did was extreme: the Bureaus willfully jettisoned the Rule's procedures, stating in a letter ruling that there was no proceeding. Indian Brief 7, JA11. The FCC essentially admits that the Bureaus did not follow the Rule. There is no authority for what the Bureaus did. This is *ultra vires* agency action and should be reversed as not in accordance with law. 5 U.S.C. 706(2)(A).

### d. Indian's rule-violation claim is not moot.

FCC Brief 30 claims Indian's showing that the Bureaus violated the Rule by not initiating a proceeding "is not properly before the Court" because the *Order* ruled it moot. Indian's rule-violation claim is not moot for at least three reasons.

First, the agency's extreme violation of the Rule's procedures makes the *Order* not in accordance with law, warranting reversal by this

Court. The legislative Rule is law; the FCC's treatment of Indian's petitions violated the Rule and therefore was not in accordance with law. *See* 5 U.S.C. 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action . . . not in accordance with law").

Second, the Court's ruling on whether FCC staff violated the Rule will impact Indian's ability to mount a tort claim against the Commission, which affects the parties' rights. Indian Brief at 46 noted that "Indian's claims are not moot. Indian will file claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80" for damages from FCC's refusal to follow the Rule. Indian seeks a ruling in this appeal on an element of the tort claim. The FCC Brief does not dispute that this eliminates mootness.

Third, Indian reserves the right to file another petition for declaratory ruling under the Rule and the precedent set here will affect the treatment of that petition.

FCC Brief at 31 also claims that because Indian "asked the Commission to grant its Application for Review without further proceeding, its argument that the Bureaus should have opened a

proceeding is not preserved." This is nonsensical. One purpose of initiating a proceeding is to stop enforcement proceedings and assessment of penalties, pending the Commission's adjudication of the petition. 47 C.F.R. 1.4000(a)(4). By the time of the Application for Review (January 12, 2023), the damage was done. On July 18, 2022, the Bureaus announced that there was no proceeding. JA11. Indian determined that, in view of the Bureau ruling, it lacked a good faith defense against the City's zoning laswsuits and capitulated in the litigation. Indian removed the antennas on July 27, 2022, and was immediately liable for the City's and its own attorneys fees. A further FCC proceeding after the Application for Review would not have remedied this damage. Moreover, the litigation with the City was completed by the time of the Application for Review, and an FCC proceeding at this point would not have prevented other possible damage. Indian did not waive its right to an earlier proceeding by subsequently asking for a grant without a proceeding.

**4.    The Order's "Human Presence" Rule is Legislative, Requiring Notice-and-Comment Rulemaking.**

**a.    Indian's Notice-and-Comment Claim is Properly Before This Court**

Citing 47 U.S.C. § 405(a), the FCC Brief, 38, contends that Indian's notice-and-comment argument was not preserved because it was not previously presented to the Commission.  It is well established that Section 405(a) is not an absolute bar to appellate court consideration but instead is enforced co-extensive with the traditional principle of exhaustion of administrative remedies "which permits courts some discretion to waive exhaustion."  *Washington Assoc. for Television and Children v. FCC*, 712 F.2d 677, 681 (D.C. Cir. 1983) (citing cases).  "It is not always necessary for a party to raise an issue so long as the Commission has in fact already considered the issue." *Id.* at 682. Futility is recognized as another exception to the exhaustion requirement.  *Id.* at 683.  Weighing on the futility factor is the Commission's rule that discourages petitions for reconsideration where,

as here, an Application for Review was denied.  47 C.F.R. §§ 1.106(b)(2) and (3).  The relevant portion of this rule is set out in the footnote.[1]

In arguing that a notice-and-comment proceeding was required, Indian makes two points: (1) the *Continental Airlines* ruling applies to the Property because both were commercial Wi-Fi providers (Indian Brief 36), and (2) the *Order* goes beyond *Continental Airlines* and sets a new rule (Indian Brief 37-38) which should have been put through a notice-and-comment rulemaking.  As noted above, prior to the *Order*, a Wi-Fi provider's end users did not affect the analysis, but now they do.  The FCC Brief 38 claims that this argument was not preserved since it

---

[1] (2) Where the Commission has denied an application for review, a petition for reconsideration will be entertained only if one or more of the following circumstances are present:

(i) The petition relies on facts or arguments which relate to events which have occurred or circumstances which have changed since the last opportunity to present such matters to the Commission; or

(ii) The petition relies on facts or arguments unknown to petitioner until after his last opportunity to present them to the Commission, and he could not through the exercise of ordinary diligence have learned of the facts or arguments in question prior to such opportunity.

(3) A petition for reconsideration of an order denying an application for review which fails to rely on new facts or changed circumstances may be dismissed by the staff as repetitious.

was not presented to the FCC.  However, the Commission has already considered and ruled on the issue.  The *Order* finds that *Continental Airlines* does not govern this situation (*Order*, para 30 "Indian Peak argues that this case is analogous to *Continental Airlines*.  We disagree.").  This contradicts Indian's first point that *Continental Airlines* applies to this case.  Then, the *Order* indicates that its "human presence" rule is consistent with *Continental Airlines* (*Id*.  In *Continental Airlines*, "[t]here was no question that there was a regular and continuous human presence and that a purpose of the service provided by the antennas was to serve those human users.")  This contradicts Indian's second contention that the *Order* goes beyond *Continental Airlines* and sets a new rule.  Thus, the *Order* has already considered Indian's points and ruled the opposite way on both.  Logically, once the FCC rejects the premise that *Continental Airlines* applies here, it doesn't matter what follow-on argument Indian makes about *Continental Airlines*; they all fail in the view of the FCC, because the premise failed.  This makes futile any argument based on *Continental Airlines*; the Commission has already considered the issue.

Were Indian to have sought reconsideration of the *Order*, as suggested by the FCC Brief, the FCC's rule would have mandated dismissal of that petition: there are no new facts or circumstances, and Indian would be making the same argument about *Continental Airlines*. 47 C.F.R. §§ 1.106(b)(2) and (3). This is the essence of futility, which is an exception to the requirement to exhaust administrative remedies. *Washington Assoc. for Television*, 712 F.2d at 683. The notice-and-comment claim is properly before this Court.

### b. Because the Bureaus acted outside delegated authority, the *Order* does not qualify as an adjudication.

The FCC Brief, 39-41, claims it was conducting an adjudication that need not undergo notice-and-comment rulemaking. However, because it was taken outside delegated authority, the FCC action does not qualify as an adjudication. The Administrative Procedure Act (APA) grants a narrow exclusion from the rulemaking requirement for interpretive rules 5 US.C. § 553(b)(4)(A). This exclusion carries an implicit requirement that the adjudication be lawfully conducted pursuant to cognizable agency authority. The APA does not sanction rogue agency action. The Commission cannot flout the APA when

processing Indian's petitions and then hide behind the APA when challenged. The *Order* does not qualify as an adjudication because the Bureau action it upholds was *ultra vires*.

### c. Even if authorized, the *Order* announces a legislative, not an interpretive rule.

The FCC Brief 39-41 suggests that any adjudication, *carte blanche*, is immune from the APA's rulemaking requirement. However, it's not that simple. By what authority did the FCC issue its "human presence" ruling? The Commission has a choice, at the outset, to interpret a statute through either adjudication or rulemaking. *SEC v. Chenery*, 332 U.S. 194, 202-03 (1947). Where interpreting a statute via adjudications, the FCC may announce new policy without undergoing a rulemaking. That is because, for statutes that the Commission is charged with administering, the statute itself constitutes Congressional authorization for the FCC to interpret the statute. The FCC Brief, 40, cites to *Neustar, Inc. v. FCC*, 857. F.3d 886, 894 (D.C. Cir. 2017) for the proposition that "statutory interpretation can be rendered in the form of adjudication, not only in rulemaking."

That citation is misplaced, as is the FCC's argument. We are not dealing with statutory interpretation here. Section 207 of the Telecommunications Act of 1996 instructed the Commission to "promulgate regulations," and the FCC has done so through a series of notice-and-comment rulemakings, *see* Indian Brief 10-12. Because there is no statute to interpret, no statute authorizes the FCC to act. In the absence of statutory authorization, the Commission's authority must spring from the APA, 5 U.S.C. § 553. That provision establishes a general or default requirement of notice-and-comment rulemaking, with a limited exception for interpretive rules. 5 US.C. § 553(b)(4). The question is whether the *Order* is interpretive. As discussed above and in Indian Brief 34-40, the "human presence" ruling is legislative, not interpretive, because it imposes a new requirement. Thus, a rulemaking was required. In the absence of such rulemaking, the *Order* represents the FCC "pulling itself up by its own bootstraps" to manufacture authority. This it may not do. *La. Pub. Svc. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("an agency may not confer power upon itself").

Respectfully submitted,

**/s/ Julian Gehman**

_____

Julian Gehman
Gehman Law PLLC
(202) 341-0198
julian@gehmanlaw.com
Mail to:    P.O. Box 13514,
          Arlington, VA 22219
Office:    1050 Connecticut Ave NW
          Suite 500
          Washington, DC 20036
Attorney for Indian Peak Properties
LLC

November 7, 2024

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and this Court's order because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Circuit Rule 32(e)(1), this document contains 4,496 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Apple Pages in 14-point or greater Times New Roman.

**/s/ Julian Gehman**

Julian Gehman

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing REPLY BRIEF OF INDIAN PEAK PROPERTIES LLC was electronically filed using this Court's CM/ECF system, which will send a notice of filing to all registered CM/ECF users.

**/s/ Julian Gehman**
Julian Gehman



## Constitution of the United States

# Fifth Amendment

Fifth Amendment Explained

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

⚑ KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part I. The Agencies Generally
      Chapter 5. Administrative Procedure (Refs & Annos)
        Subchapter II. Administrative Procedure (Refs & Annos)

5 U.S.C.A. § 553

§ 553. Rule making

Effective: July 25, 2023
Currentness

**(a)** This section applies, according to the provisions thereof, except to the extent that there is involved--

**(1)** a military or foreign affairs function of the United States; or

**(2)** a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts.

**(b)** General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include--

**(1)** a statement of the time, place, and nature of public rule making proceedings;

**(2)** reference to the legal authority under which the rule is proposed;

**(3)** either the terms or substance of the proposed rule or a description of the subjects and issues involved; and

**(4)** the Internet address of a summary of not more than 100 words in length of the proposed rule, in plain language, that shall be posted on the Internet website under section 206(d) of the E-Government Act of 2002 (44 U.S.C. 3501 note) (commonly known as regulations.gov).

Except when notice or hearing is required by statute, this subsection does not apply--

**(A)** to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

**(B)** when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

**(c)** After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

**(d)** The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except--

    **(1)** a substantive rule which grants or recognizes an exemption or relieves a restriction;

    **(2)** interpretative rules and statements of policy; or

    **(3)** as otherwise provided by the agency for good cause found and published with the rule.

**(e)** Each agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule.

### CREDIT(S)

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 383; Pub.L. 118-9, § 2, July 25, 2023, 137 Stat. 55.)

### EXECUTIVE ORDERS

### EXECUTIVE ORDER NO. 12044

Ex. Ord. No. 12044, Mar. 23, 1978, 43 F.R. 12661, as amended by Ex. Ord. No. 12221, June 27, 1980, 45 F.R. 44249, which related to the improvement of Federal regulations, was revoked by Ex. Ord. No. 12291, Feb. 17, 1981, 46 F.R. 13193, formerly set out as a note under section 601 of this title.

Notes of Decisions (1583)

5 U.S.C.A. § 553, 5 USCA § 553
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part I. The Agencies Generally
      Chapter 7. Judicial Review (Refs & Annos)

5 U.S.C.A. § 702

§ 702. Right of review

Currentness

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

## CREDIT(S)

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 392; Pub.L. 94-574, § 1, Oct. 21, 1976, 90 Stat. 2721.)

Notes of Decisions (1424)

5 U.S.C.A. § 702, 5 USCA § 702
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted  Limitation Recognized by  Krafsur v. Davenport,  6th Cir.(Tenn.),  Dec. 04, 2013

🚩 KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

> United States Code Annotated
>> Title 5. Government Organization and Employees (Refs & Annos)
>>> Part I. The Agencies Generally
>>>> Chapter 7. Judicial Review (Refs & Annos)

5 U.S.C.A. § 706

§ 706. Scope of review

Currentness

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--

**(1)** compel agency action unlawfully withheld or unreasonably delayed; and

**(2)** hold unlawful and set aside agency action, findings, and conclusions found to be--

**(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

**(B)** contrary to constitutional right, power, privilege, or immunity;

**(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

**(D)** without observance of procedure required by law;

**(E)** unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

**(F)** unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## CREDIT(S)

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 393.)

Notes of Decisions (5547)

5 U.S.C.A. § 706, 5 USCA § 706
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted  Limitation Recognized by   United States v. Jonas,   5th Cir.(Tex.),   Aug. 14, 2020

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part IV. Jurisdiction and Venue (Refs & Annos)
Chapter 85. District Courts; Jurisdiction (Refs & Annos)

28 U.S.C.A. § 1346

§ 1346. United States as defendant

Effective: March 7, 2013

Currentness

**(a)** The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:

**(1)** Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

**(2)** Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 7104(b)(1) and 7107(a)(1) of title 41. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

**(b)(1)** Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

**(2)** No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).

**(c)** The jurisdiction conferred by this section includes jurisdiction of any set-off, counterclaim, or other claim or demand whatever on the part of the United States against any plaintiff commencing an action under this section.

**(d)** The district courts shall not have jurisdiction under this section of any civil action or claim for a pension.

**(e)** The district courts shall have original jurisdiction of any civil action against the United States provided in section 6226, 6228(a), 7426, or 7428 (in the case of the United States district court for the District of Columbia) or section 7429 of the Internal Revenue Code of 1986.

**(f)** The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States.

**(g)** Subject to the provisions of chapter 179, the district courts of the United States shall have exclusive jurisdiction over any civil action commenced under section 453(2) of title 3, by a covered employee under chapter 5 of such title.

## CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 933; Apr. 25, 1949, c. 92, § 2(a), 63 Stat. 62; May 24, 1949, c. 139, § 80(a), (b), 63 Stat. 101; Oct. 31, 1951, c. 655, § 50(b), 65 Stat. 727; July 30, 1954, c. 648, § 1, 68 Stat. 589; Pub.L. 85-508, § 12(e), July 7, 1958, 72 Stat. 348; Pub.L. 88-519, Aug. 30, 1964, 78 Stat. 699; Pub.L. 89-719, Title II, § 202(a), Nov. 2, 1966, 80 Stat. 1148; Pub.L. 91-350, § 1(a), July 23, 1970, 84 Stat. 449; Pub.L. 92-562, § 1, Oct. 25, 1972, 86 Stat. 1176; Pub.L. 94-455, Title XII, § 1204(c)(1), Title XIII, § 1306(b)(7), Oct. 4, 1976, 90 Stat. 1697, 1719; Pub.L. 95-563, § 14(a), Nov. 1, 1978, 92 Stat. 2389; Pub.L. 97-164, Title I, § 129, Apr. 2, 1982, 96 Stat. 39; Pub.L. 97-248, Title IV, § 402(c)(17), Sept. 3, 1982, 96 Stat. 669; Pub.L. 99-514, § 2, Oct. 22, 1986, 100 Stat. 2095; Pub.L. 102-572, Title IX, § 902(b)(1), Oct. 29, 1992, 106 Stat. 4516; Pub.L. 104-134, Title I, § 101[(a)][Title VIII, § 806], Apr. 26, 1996, 110 Stat. 1321, 1321-75; renumbered Title I, Pub.L. 104-140, § 1(a), May 2, 1996, 110 Stat. 1327; amended Pub.L. 104-331, § 3(b)(1), Oct. 26, 1996, 110 Stat. 4069; Pub.L. 111-350, § 5(g)(6), Jan. 4, 2011, 124 Stat. 3848; Pub.L. 113-4, Title XI, § 1101(b), Mar. 7, 2013, 127 Stat. 134.)

Notes of Decisions (4220)

28 U.S.C.A. § 1346, 28 USCA § 1346
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated

  Title 28. Judiciary and Judicial Procedure (Refs & Annos)

    Part VI. Particular Proceedings

      Chapter 158. Orders of Federal Agencies; Review (Refs & Annos)

28 U.S.C.A. § 2342

§ 2342. Jurisdiction of court of appeals

Effective: October 6, 2006

Currentness

The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of--

**(1)** all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47;

**(2)** all final orders of the Secretary of Agriculture made under chapters 9 and 20A of title 7, except orders issued under sections 210(e), 217a, and 499g(a) of title 7;

**(3)** all rules, regulations, or final orders of--

  **(A)** the Secretary of Transportation issued pursuant to section 50501, 50502, 56101-56104, or 57109 of title 46 or pursuant to part B or C of subtitle IV, subchapter III of chapter 311, chapter 313, or chapter 315 of title 49; and

  **(B)** the Federal Maritime Commission issued pursuant to section 305, 41304, 41308, or 41309 or chapter 421 or 441 of title 46;

**(4)** all final orders of the Atomic Energy Commission made reviewable by section 2239 of title 42;

**(5)** all rules, regulations, or final orders of the Surface Transportation Board made reviewable by section 2321 of this title;

**(6)** all final orders under section 812 of the Fair Housing Act; and

**(7)** all final agency actions described in section 20114(c) of title 49.

Jurisdiction is invoked by filing a petition as provided by section 2344 of this title.

**CREDIT(S)**

(Added Pub.L. 89-554, § 4(e), Sept. 6, 1966, 80 Stat. 622; amended Pub.L. 93-584, § 4, Jan. 2, 1975, 88 Stat. 1917; Pub.L. 95-454, Title II, § 206, Oct. 13, 1978, 92 Stat. 1144; Pub.L. 96-454, § 8(b)(2), Oct. 15, 1980, 94 Stat. 2021; Pub.L. 97-164, Title I, § 137, Apr. 2, 1982, 96 Stat. 41; Pub.L. 98-554, Title II, § 227(a)(4), Oct. 30, 1984, 98 Stat. 2852; Pub.L. 99-336, § 5(a), June 19, 1986, 100 Stat. 638; Pub.L. 100-430, § 11(a), Sept. 13, 1988, 102 Stat. 1635; Pub.L. 102-365, § 5(c)(2), Sept. 3, 1992, 106 Stat. 975; Pub.L. 103-272, § 5(h), July 5, 1994, 108 Stat. 1375; Pub.L. 104-88, Title III, § 305(d)(5) to (8), Dec. 29, 1995, 109 Stat. 945; Pub.L. 104-287, § 6(f)(2), Oct. 11, 1996, 110 Stat. 3399; Pub.L. 109-59, Title IV, § 4125(a), Aug. 10, 2005, 119 Stat. 1738; Pub.L. 109-304, § 17(f)(3), Oct. 6, 2006, 120 Stat. 1708.)

Notes of Decisions (233)

28 U.S.C.A. § 2342, 28 USCA § 2342
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

United States Code Annotated

Title 28. Judiciary and Judicial Procedure (Refs & Annos)

Part VI. Particular Proceedings

Chapter 158. Orders of Federal Agencies; Review (Refs & Annos)

28 U.S.C.A. § 2343

§ 2343. Venue

Currentness

The venue of a proceeding under this chapter is in the judicial circuit in which the petitioner resides or has its principal office, or in the United States Court of Appeals for the District of Columbia Circuit.

**CREDIT(S)**

(Added Pub.L. 89-554, § 4(e), Sept. 6, 1966, 80 Stat. 622.)

Notes of Decisions (8)

28 U.S.C.A. § 2343, 28 USCA § 2343

Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
   Title 28. Judiciary and Judicial Procedure (Refs & Annos)
      Part VI. Particular Proceedings
         Chapter 158. Orders of Federal Agencies; Review (Refs & Annos)

28 U.S.C.A. § 2344

§ 2344. Review of orders; time; notice; contents of petition; service

Currentness

On the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules. Any party aggrieved by the final order may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies. The action shall be against the United States. The petition shall contain a concise statement of--

**(1)** the nature of the proceedings as to which review is sought;

**(2)** the facts on which venue is based;

**(3)** the grounds on which relief is sought; and

**(4)** the relief prayed.

The petitioner shall attach to the petition, as exhibits, copies of the order, report, or decision of the agency. The clerk shall serve a true copy of the petition on the agency and on the Attorney General by registered mail, with request for a return receipt.

**CREDIT(S)**

(Added Pub.L. 89-554, § 4(e), Sept. 6, 1966, 80 Stat. 622.)

Notes of Decisions (133)

28 U.S.C.A. § 2344, 28 USCA § 2344
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted Limitation Recognized by Daniel v. United States, 9th Cir.(Wash.), May 07, 2018

United States Code Annotated
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part VI. Particular Proceedings
Chapter 171. Tort Claims Procedure (Refs & Annos)

28 U.S.C.A. § 2674

§ 2674. Liability of United States

Currentness

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.

With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

With respect to any claim to which this section applies, the Tennessee Valley Authority shall be entitled to assert any defense which otherwise would have been available to the employee based upon judicial or legislative immunity, which otherwise would have been available to the employee of the Tennessee Valley Authority whose act or omission gave rise to the claim as well as any other defenses to which the Tennessee Valley Authority is entitled under this chapter.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 983; Pub.L. 100-694, §§ 4, 9(c), Nov. 18, 1988, 102 Stat. 4564, 4567.)

Notes of Decisions (567)

28 U.S.C.A. § 2674, 28 USCA § 2674
Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 47. Telecommunications (Refs & Annos)
    Chapter 5. Wire or Radio Communication (Refs & Annos)
      Subchapter IV. Procedural and Administrative Provisions

47 U.S.C.A. § 402

§ 402. Judicial review of Commission's orders and decisions

Effective: October 8, 2010

Currentness

**(a) Procedure**

Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28.

**(b) Right to appeal**

Appeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

**(1)** By any applicant for a construction permit or station license, whose application is denied by the Commission.

**(2)** By any applicant for the renewal or modification of any such instrument of authorization whose application is denied by the Commission.

**(3)** By any party to an application for authority to transfer, assign, or dispose of any such instrument of authorization, or any rights thereunder, whose application is denied by the Commission.

**(4)** By any applicant for the permit required by section 325 of this title whose application has been denied by the Commission, or by any permittee under said section whose permit has been revoked by the Commission.

**(5)** By the holder of any construction permit or station license which has been modified or revoked by the Commission.

**(6)** By any other person who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying any application described in paragraphs (1), (2), (3), (4), and (9) of this subsection.

**(7)** By any person upon whom an order to cease and desist has been served under section 312 of this title.

**(8)** By any radio operator whose license has been suspended by the Commission.

**(9)** By any applicant for authority to provide interLATA services under section 271 of this title whose application is denied by the Commission.

**(10)** By any person who is aggrieved or whose interests are adversely affected by a determination made by the Commission under section 618(a)(3) of this title.

**(c) Filing notice of appeal; contents; jurisdiction; temporary orders**

Such appeal shall be taken by filing a notice of appeal with the court within thirty days from the date upon which public notice is given of the decision or order complained of. Such notice of appeal shall contain a concise statement of the nature of the proceedings as to which the appeal is taken; a concise statement of the reasons on which the appellant intends to rely, separately stated and numbered; and proof of service of a true copy of said notice and statement upon the Commission. Upon filing of such notice, the court shall have jurisdiction of the proceedings and of the questions determined therein and shall have power, by order, directed to the Commission or any other party to the appeal, to grant such temporary relief as it may deem just and proper. Orders granting temporary relief may be either affirmative or negative in their scope and application so as to permit either the maintenance of the status quo in the matter in which the appeal is taken or the restoration of a position or status terminated or adversely affected by the order appealed from and shall, unless otherwise ordered by the court, be effective pending hearing and determination of said appeal and compliance by the Commission with the final judgment of the court rendered in said appeal.

**(d) Notice to interested parties; filing of record**

Upon the filing of any such notice of appeal the appellant shall, not later than five days after the filing of such notice, notify each person shown by the records of the Commission to be interested in said appeal of the filing and pendency of the same. The Commission shall file with the court the record upon which the order complained of was entered, as provided in section 2112 of Title 28.

**(e) Intervention**

Within thirty days after the filing of any such appeal any interested person may intervene and participate in the proceedings had upon said appeal by filing with the court a notice of intention to intervene and a verified statement showing the nature of the interest of such party, together with proof of service of true copies of said notice and statement, both upon appellant and upon the Commission. Any person who would be aggrieved or whose interest would be adversely affected by a reversal or modification of the order of the Commission complained of shall be considered an interested party.

**(f) Records and briefs**

The record and briefs upon which any such appeal shall be heard and determined by the court shall contain such information and material, and shall be prepared within such time and in such manner as the court may by rule prescribe.

**(g) Time of hearing; procedure**

The court shall hear and determine the appeal upon the record before it in the manner prescribed by section 706 of Title 5.

**(h) Remand**

In the event that the court shall render a decision and enter an order reversing the order of the Commission, it shall remand the case to the Commission to carry out the judgment of the court and it shall be the duty of the Commission, in the absence of the proceedings to review such judgment, to forthwith give effect thereto, and unless otherwise ordered by the court, to do so upon the basis of the proceedings already had and the record upon which said appeal was heard and determined.

**(i) Judgment for costs**

The court may, in its discretion, enter judgment for costs in favor of or against an appellant, or other interested parties intervening in said appeal, but not against the Commission, depending upon the nature of the issues involved upon said appeal and the outcome thereof.

**(j) Finality of decision; review by Supreme Court**

The court's judgment shall be final, subject, however, to review by the Supreme Court of the United States upon writ of certiorari on petition therefor under section 1254 of Title 28, by the appellant, by the Commission, or by any interested party intervening in the appeal, or by certification by the court pursuant to the provisions of that section.

**CREDIT(S)**

(June 19, 1934, c. 652, Title IV, § 402, 48 Stat. 1093; May 20, 1937, c. 229, §§ 11 to 13, 50 Stat. 197; May 24, 1949, c. 139, § 132, 63 Stat. 108; July 16, 1952, c. 879, § 14, 66 Stat. 718; Pub.L. 85-791, § 12, Aug. 28, 1958, 72 Stat. 945; Pub.L. 97-259, Title I, §§ 121, 127(b), Sept. 13, 1982, 96 Stat. 1097, 1099; Pub.L. 98-620, Title IV, § 402(50), Nov. 8, 1984, 98 Stat. 3361; Pub.L. 104-104, Title I, § 151(b), Feb. 8, 1996, 110 Stat. 107; Pub.L. 111-260, Title I, § 104(d), Oct. 8, 2010, 124 Stat. 2762.)

Notes of Decisions (203)

47 U.S.C.A. § 402, 47 USCA § 402

Current through P.L. 118-65. Some statute sections may be more current, see credits for details.

## SEC. 207. RESTRICTIONS ON OVER–THE–AIR RECEPTION DEVICES.

Within 180 days after the date of enactment of this Act, the Commission shall, pursuant to section 303 of the Communications Act of 1934, promulgate regulations to prohibit restrictions that impair a viewer's ability to receive video programming services through devices designed for over-the-air reception of television broadcast signals, multichannel multipoint distribution service, or direct broadcast satellite services.

Code of Federal Regulations
    Title 47. Telecommunication
        Chapter I. Federal Communications Commission (Refs & Annos)
            Subchapter A. General (Refs & Annos)
                Part 0. Commission Organization (Refs & Annos)
                    Subpart A. Organization (Refs & Annos)
                        Media Bureau (Refs & Annos)

47 C.F.R. § 0.61

§ 0.61 Functions of the Bureau.

Effective: March 15, 2019

Currentness

The Media Bureau develops, recommends and administers the policy and licensing programs for the regulation of media, including cable television, broadcast television and radio, and satellite services in the United States and its territories. The Bureau advises and recommends to the Commission, or acts for the Commission under delegated authority, in matters pertaining to multichannel video programming distribution, broadcast radio and television, direct broadcast satellite service policy, and associated matters. The Bureau will, among other things:

(a) Process applications for authorization, assignment, transfer and renewal of media services, including AM, FM, TV, the cable TV relay service, and related services.

(b) Conduct rulemaking proceedings concerning the legal, engineering, and economic aspects of media service.

(c) Conduct comprehensive studies and analyses concerning the legal, engineering, and economic aspects of electronic media services.

(d) [Reserved by 84 FR 9465]

(e) Administer and enforce rules and policies regarding political programming and related matters.

(f) Administer and enforce rules and policies regarding:

(1) Radio and television broadcast industry services;

(2) Cable television systems, operators, and services, including those relating to rates, technical standards, customer service, ownership, competition to cable systems, broadcast station signal retransmission and carriage, program access, wiring equipment, channel leasing, and federal-state/local regulatory relationships. This includes: acting, after Commission assumption of jurisdiction to regulate cable television rates for basic service and associated equipment, on cable operator

requests for approval of existing or increased rates; reviewing appeals of local franchising authorities' rate making decisions involving rates for the basic service tier and associated equipment, except when such appeals raise novel or unusual issues; evaluating basic rate regulation certification requests filed by cable system franchising authorities; periodically reviewing and, when appropriate, revising standard forms used in administering: the certification process for local franchising authorities wishing to regulate rates, and the substantive rate regulation standards prescribed by the Commission;

(3) Open video systems;

(4) Preemption of restrictions on devices designed for over-the-air reception of television broadcast signals, multichannel multipoint distribution service, and direct broadcast satellite services;

(5) The commercial availability of navigational devices;

(6) The accessibility of video programming to persons with disabilities;

(7) Program access and carriage;

(8) The Satellite Home Viewer Improvement Act; and

(9) Post-licensing for satellite consumer broadcast services (DBS, DTH and DARS).

Note to paragraph (f): The Media Bureau's enforcement authority does not include enforcement in those areas assigned to the Enforcement Bureau. See 47 CFR 0.111.

(g) Conduct rulemaking and policy proceedings regarding pole attachments.

(h) Process and act on all applications for authorization, petitions for special relief, petitions to deny, waiver requests, requests for certification, objections, complaints, and requests for declaratory rulings and stays regarding the areas listed.

(i) Assist the Consumer and Governmental Affairs Bureau on issues involving informal consumer complaints and other general inquiries by consumers.

(j) Exercise authority to issue non-hearing related subpoenas for the attendance and testimony of witnesses and the production of books, papers, correspondence, memoranda, schedules of charges, contracts, agreements, and any other records deemed relevant to the investigation of matters within the jurisdiction of the Media Bureau. Before issuing a subpoena, the Media Bureau shall obtain the approval of the Office of General Counsel.

(k) Carry out the functions of the Commission under the Communications Act of 1934, as amended, except as reserved to the Commission under § 0.283.

(l) To coordinate with the Public Safety and Homeland Security Bureau on all matters affecting public safety, homeland security, national security, emergency management, disaster management, and related issues.

**Credits**

[47 FR 47829, Oct. 28, 1982; 49 FR 12271, March 29, 1984; 58 FR 29752, May 21, 1993; 58 FR 33560, June 18, 1993; 58 FR 41042, Aug. 2, 1993; 58 FR 43816, Aug. 18, 1993; 59 FR 32132, June 22, 1994; 59 FR 38374, July 28, 1994; 60 FR 5323, Jan. 27, 1995; 60 FR 35504, July 10, 1995; 62 FR 4170, Jan. 29, 1997; 62 FR 45172, Aug. 26, 1997; 64 FR 60716, Nov. 8, 1999; 67 FR 13217, March 21, 2002; 71 FR 69034, Nov. 29, 2006; 84 FR 9465, March 15, 2019]

SOURCE: 53 FR 29054, Aug. 2, 1988; 56 FR 36730, Aug. 1, 1991; 67 FR 13217, March 21, 2002; 83 FR 733, Jan. 8, 2018; 83 FR 2555, Jan. 18, 2018; 83 FR 48963, Sept. 28, 2018; 84 FR 54040, Oct. 9, 2019; 85 FR 63170, Oct. 6, 2020; 89 FR 4161, Jan. 22, 2024; 89 FR 45553, May 22, 2024; 89 FR 48514, June 7, 2024; 89 FR 61272, July 30, 2024, unless otherwise noted.

AUTHORITY: 47 U.S.C. 151, 154(i), 154(j), 155, 225, 409, and 1754, unless otherwise noted.; 47 U.S.C. 151, 154(i), 154(j), 155, 225, and 409, unless otherwise noted.

Current through November 4, 2024, 89 FR 87517. Some sections may be more current. See credits for details.

---

**End of Document**　　　　© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
    Title 47. Telecommunication
        Chapter I. Federal Communications Commission (Refs & Annos)
            Subchapter A. General (Refs & Annos)
                Part 0. Commission Organization (Refs & Annos)
                    Subpart B. Delegations of Authority (Refs & Annos)
                        Chief, Media Bureau (Refs & Annos)

47 C.F.R. § 0.283

§ 0.283 Authority delegated.

Effective: April 5, 2021

Currentness

The Chief, Media Bureau, is delegated authority to perform all functions of the Bureau, described in § 0.61, provided that the following matters shall be referred to the Commission en banc for disposition:

(a) Notices of proposed rulemaking and of inquiry and final orders in such proceedings, with the exception of rulemaking proceedings involving the allotment of FM and television channels.

(b) Application for review of actions taken pursuant to delegated authority, except that the Chief of the Media Bureau may dismiss any such application that does not contain any statement required under § 1.115(a) or (b) of this chapter, or does not comply with the filing requirements of § 1.115(d) or (f) of this chapter.

(c) Matters that present novel questions of law, fact or policy that cannot be resolved under existing precedents and guidelines.

(d) The imposition, reduction or cancellation of forfeitures pursuant to section 503(b) of the Communications Act of 1934, as amended, in amounts of more than $20,000.

**Credits**

[47 FR 47829, Oct. 28, 1982, as amended at 47 FR 55929, Dec. 14, 1982; 47 FR 58269, Dec. 30, 1982; 48 FR 24386, June 1, 1983; 49 FR 33603, Aug. 23, 1984; 57 FR 18088, April 29, 1992; 61 FR 10689, March 15, 1996; 65 FR 7454, Feb. 15, 2000; 67 FR 13220, March 21, 2002; 86 FR 12547, March 4, 2021]

SOURCE: 28 FR 12402, Nov. 22, 1963; 53 FR 29054, Aug. 2, 1988; 56 FR 36730, Aug. 1, 1991; 67 FR 13220, March 21, 2002; 83 FR 733, Jan. 8, 2018; 83 FR 2555, Jan. 18, 2018; 83 FR 48963, Sept. 28, 2018; 84 FR 54040, Oct. 9, 2019; 85 FR 63170, Oct. 6, 2020; 85 FR 63171, Oct. 6, 2020; 89 FR 4161, Jan. 22, 2024; 89 FR 45553, May 22, 2024; 89 FR 48514, June 7, 2024; 89 FR 61272, July 30, 2024, unless otherwise noted.

AUTHORITY: 47 U.S.C. 151, 154(i), 154(j), 155, 225, 409, and 1754, unless otherwise noted.; 47 U.S.C. 151, 154(i), 154(j), 155, 225, and 409.

Current through November 4, 2024, 89 FR 87517. Some sections may be more current. See credits for details.

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
    Title 47. Telecommunication
        Chapter I. Federal Communications Commission (Refs & Annos)
            Subchapter A. General (Refs & Annos)
                Part 1. Practice and Procedure (Refs & Annos)
                    Subpart A. General Rules of Practice and Procedure (Refs & Annos)
                        Reconsideration and Review of Actions Taken by the Commission and Pursuant to Delegated Authority;
                        Effective Dates and Finality Dates of Actions

47 C.F.R. § 1.106

§ 1.106 Petitions for reconsideration in non-rulemaking proceedings.

Effective: June 29, 2021

Currentness

(a)(1) Except as provided in paragraphs (b)(3) and (p) of this section, petitions requesting reconsideration of a final Commission action in non-rulemaking proceedings will be acted on by the Commission. Petitions requesting reconsideration of other final actions taken pursuant to delegated authority will be acted on by the designated authority or referred by such authority to the Commission. A petition for reconsideration of an order designating a case for hearing will be entertained if, and insofar as, the petition relates to an adverse ruling with respect to petitioner's participation in the proceeding. Petitions for reconsideration of other interlocutory actions will not be entertained. (For provisions governing reconsideration of Commission action in notice and comment rulemaking proceedings, see § 1.429. This § 1.106 does not govern reconsideration of such actions.)

(2) Within the period allowed for filing a petition for reconsideration, any party to the proceeding may request the presiding officer to certify to the Commission the question as to whether, on policy in effect at the time of designation or adopted since designation, and undisputed facts, a hearing should be held. If the presiding officer finds that there is substantial doubt, on established policy and undisputed facts, that a hearing should be held, he will certify the policy question to the Commission with a statement to that effect. No appeal may be filed from an order denying such a request. See also, §§ 1.229 and 1.251.

(b)(1) Subject to the limitations set forth in paragraph (b)(2) of this section, any party to the proceeding, or any other person whose interests are adversely affected by any action taken by the Commission or by the designated authority, may file a petition requesting reconsideration of the action taken. If the petition is filed by a person who is not a party to the proceeding, it shall state with particularity the manner in which the person's interests are adversely affected by the action taken, and shall show good reason why it was not possible for him to participate in the earlier stages of the proceeding.

(2) Where the Commission has denied an application for review, a petition for reconsideration will be entertained only if one or more of the following circumstances are present:

(i) The petition relies on facts or arguments which relate to events which have occurred or circumstances which have changed since the last opportunity to present such matters to the Commission; or

(ii) The petition relies on facts or arguments unknown to petitioner until after his last opportunity to present them to the Commission, and he could not through the exercise of ordinary diligence have learned of the facts or arguments in question prior to such opportunity.

(3) A petition for reconsideration of an order denying an application for review which fails to rely on new facts or changed circumstances may be dismissed by the staff as repetitious.

(c) In the case of any order other than an order denying an application for review, a petition for reconsideration which relies on facts or arguments not previously presented to the Commission or to the designated authority may be granted only under the following circumstances:

(1) The facts or arguments fall within one or more of the categories set forth in § 1.106(b)(2); or

(2) The Commission or the designated authority determines that consideration of the facts or arguments relied on is required in the public interest.

(d)(1) A petition for reconsideration shall state with particularity the respects in which petitioner believes the action taken by the Commission or the designated authority should be changed. The petition shall state specifically the form of relief sought and, subject to this requirement, may contain alternative requests.

(2) A petition for reconsideration of a decision that sets forth formal findings of fact and conclusions of law shall also cite the findings and/or conclusions which petitioner believes to be erroneous, and shall state with particularity the respects in which he believes such findings and/or conclusions should be changed. The petition may request that additional findings of fact and/or conclusions of law be made.

(e) Where a petition for reconsideration is based upon a claim of electrical interference, under appropriate rules in this chapter, to an existing station or a station for which a construction permit is outstanding, such petition, in addition to meeting the other requirements of this section, must be accompanied by an affidavit of a qualified radio engineer. Such affidavit shall show, either by following the procedures set forth in this chapter for determining interference in the absence of measurements, or by actual measurements made in accordance with the methods prescribed in this chapter, that electrical interference will be caused to the station within its normally protected contour.

(f) The petition for reconsideration and any supplement thereto shall be filed within 30 days from the date of public notice of the final Commission action, as that date is defined in § 1.4(b) of these rules, and shall be served upon parties to the proceeding. The petition for reconsideration shall not exceed 25 double spaced typewritten pages. No supplement or addition to a petition for reconsideration which has not been acted upon by the Commission or by the designated authority, filed after expiration of the 30 day period, will be considered except upon leave granted upon a separate pleading for leave to file, which shall state the grounds therefor.

(g) Oppositions to a petition for reconsideration shall be filed within 10 days after the petition is filed, and shall be served upon petitioner and parties to the proceeding. Oppositions shall not exceed 25 double spaced typewritten pages.

(h) Petitioner may reply to oppositions within seven days after the last day for filing oppositions, and any such reply shall be served upon parties to the proceeding. Replies shall not exceed 10 double spaced typewritten pages, and shall be limited to matters raised in the opposition.

(i) Petitions for reconsideration, oppositions, and replies shall conform to the requirements of §§ 1.49, 1.51, and 1.52 and, except for those related to licensing matters in the Wireless Radio Service and addressed in paragraph (o) of this section, shall be submitted to the Secretary, Federal Communications Commission, Washington, DC 20554, by mail, by commercial courier, by hand, or by electronic submission through the Commission's Electronic Comment Filing System or other electronic filing system (such as ULS). Petitions submitted only by electronic mail and petitions submitted directly to staff without submission to the Secretary shall not be considered to have been properly filed. Parties filing in electronic form need only submit one copy.

(j) The Commission or designated authority may grant the petition for reconsideration in whole or in part or may deny or dismiss the petition. Its order will contain a concise statement of the reasons for the action taken. Where the petition for reconsideration relates to an instrument of authorization granted without hearing, the Commission or designated authority will take such action within 90 days after the petition is filed.

(k)(1) If the Commission or the designated authority grants the petition for reconsideration in whole or in part, it may, in its decision:

(i) Simultaneously reverse or modify the order from which reconsideration is sought;

(ii) Remand the matter to a bureau or other Commission personnel for such further proceedings, including rehearing, as may be appropriate; or

(iii) Order such other proceedings as may be necessary or appropriate.

(2) If the Commission or designated authority initiates further proceedings, a ruling on the merits of the matter will be deferred pending completion of such proceedings. Following completion of such further proceedings, the Commission or designated authority may affirm, reverse, or modify its original order, or it may set aside the order and remand the matter for such further proceedings, including rehearing, as may be appropriate.

(3) Any order disposing of a petition for reconsideration which reverses or modifies the original order is subject to the same provisions with respect to reconsideration as the original order. In no event, however, shall a ruling which denies a petition for reconsideration be considered a modification of the original order. A petition for reconsideration of an order which has been previously denied on reconsideration may be dismissed by the staff as repetitious.

Note: For purposes of this section, the word "order" refers to that portion of its action wherein the Commission announces its judgment. This should be distinguished from the "memorandum opinion" or other material which often accompany and explain the order.

(l) No evidence other than newly discovered evidence, evidence which has become available only since the original taking of evidence, or evidence which the Commission or the designated authority believes should have been taken in the original proceeding shall be taken on any rehearing ordered pursuant to the provisions of this section.

(m) The filing of a petition for reconsideration is not a condition precedent to judicial review of any action taken by the Commission or by the designated authority, except where the person seeking such review was not a party to the proceeding resulting in the action, or relies on questions of fact or law upon which the Commission or designated authority has been afforded no opportunity to pass. (See § 1.115(c).) Persons in those categories who meet the requirements of this section may qualify to seek judicial review by filing a petition for reconsideration.

(n) Without special order of the Commission, the filing of a petition for reconsideration shall not excuse any person from complying with or obeying any decision, order, or requirement of the Commission, or operate in any manner to stay or postpone the enforcement thereof. However, upon good cause shown, the Commission will stay the effectiveness of its order or requirement pending a decision on the petition for reconsideration. (This paragraph applies only to actions of the Commission en banc. For provisions applicable to actions under delegated authority, see § 1.102.)

(o) Petitions for reconsideration of licensing actions, as well as oppositions and replies thereto, that are filed with respect to the Wireless Radio Services, must be filed electronically via ULS.

(p) Petitions for reconsideration of a Commission action that plainly do not warrant consideration by the Commission may be dismissed or denied by the relevant bureau(s) or office(s). Examples include, but are not limited to, petitions that:

(1) Fail to identify any material error, omission, or reason warranting reconsideration;

(2) Rely on facts or arguments which have not previously been presented to the Commission and which do not meet the requirements of paragraphs (b)(2), (b)(3), or (c) of this section;

(3) Rely on arguments that have been fully considered and rejected by the Commission within the same proceeding;

(4) Fail to state with particularity the respects in which petitioner believes the action taken should be changed as required by paragraph (d) of this section;

(5) Relate to matters outside the scope of the order for which reconsideration is sought;

(6) Omit information required by these rules to be included with a petition for reconsideration, such as the affidavit required by paragraph (e) of this section (relating to electrical interference);

(7) Fail to comply with the procedural requirements set forth in paragraphs (f) and (i) of this section;

(8) relate to an order for which reconsideration has been previously denied on similar grounds, except for petitions which could be granted under paragraph (c) of this section; or

(9) Are untimely.

(Authority: Secs. 4, 303, 307, 405, 48 Stat., as amended, 1066, 1082, 1083, 1095; 47 U.S.C. 154, 303, 307, 405)

**Credits**

[28 FR 12415, Nov. 22, 1963, as amended at 37 FR 7507, April 15, 1972; 41 FR 1287, Jan. 7, 1976; 44 FR 60294, Oct. 19, 1979; 46 FR 18556, March 25, 1981; 62 FR 4170, Jan. 29, 1997; 63 FR 68920, Dec. 14, 1998; 76 FR 24391, May 2, 2011; 85 FR 85529, Dec. 29, 2020]

SOURCE: 28 FR 12415, Nov. 22, 1963; 56 FR 57598, Nov. 13, 1991; 57 FR 187, Jan. 3, 1992; 58 FR 27473, May 10, 1993; 59 FR 22985, May 4, 1994; 61 FR 45618, Aug. 29, 1996; 61 FR 46561, Sept. 4, 1996; 61 FR 52899, Oct. 9, 1996; 62 FR 37422, July 11, 1997; 63 FR 67429, Dec. 7, 1998; 63 FR 71036, Dec. 23, 1998; 64 FR 63251, Nov. 19, 1999; 65 FR 10720, Feb. 29, 2000; 65 FR 19684, April 12, 2000; 65 FR 31281, May 17, 2000; 69 FR 77938, Dec. 29, 2004; 71 FR 26251, May 4, 2006; 74 FR 39227, Aug. 6, 2009; 75 FR 9797, March 4, 2010; 76 FR 43203, July 20, 2011; 77 FR 71137, Nov. 29, 2012; 78 FR 10100, Feb. 13, 2013; 78 FR 15622, March 12, 2013; 78 FR 41321, July 10, 2013; 78 FR 50254, Aug. 16, 2013; 79 FR 48528, Aug. 15, 2014; 80 FR 1268, Jan. 8, 2015; 81 FR 40821, June 23, 2016; 81 FR 52362, Aug. 8, 2016; 81 FR 79930, Nov. 14, 2016; 81 FR 86601, Dec. 1, 2016; 82 FR 8171, Jan. 24, 2017; 82 FR 18581, April 20, 2017; 82 FR 20839, May 4, 2017; 82 FR 24561, May 30, 2017; 82 FR 41103, Aug. 29, 2017; 82 FR 41544, Sept. 1, 2017; 82 FR 55331, Nov. 21, 2017; 82 FR 58758, Dec. 14, 2017; 83 FR 2556, Jan. 18, 2018; 83 FR 4600, Feb. 1, 2018; 83 FR 7401, Feb. 21, 2018; 83 FR 46836, Sept. 14, 2018; 83 FR 47095, Sept. 18, 2018; 83 FR 48963, Sept. 28, 2018; 83 FR 61089, Nov. 27, 2018; 83 FR 63095, Dec. 7, 2018; 84 FR 8618, March 11, 2019; 84 FR 50999, Sept. 26, 2019; 84 FR 57363, Oct. 25, 2019; 86 FR 12547, March 4, 2021; 86 FR 15797, March 25, 2021; 88 FR 63744, Sept. 15, 2023; 89 FR 2149, Jan. 12, 2024; 89 FR 4161, Jan. 22, 2024; 89 FR 45553, May 22, 2024; 89 FR 48514, June 7, 2024; 89 FR 61272, July 30, 2024, unless otherwise noted.

AUTHORITY: 47 U.S.C. chs. 2, 5, 9, 13; 28 U.S.C. 2461 note; 47 U.S.C. 1754, unless otherwise noted.

Notes of Decisions (42)

Current through November 4, 2024, 89 FR 87517. Some sections may be more current. See credits for details.

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Code of Federal Regulations
    Title 47. Telecommunication
        Chapter I. Federal Communications Commission (Refs & Annos)
            Subchapter A. General (Refs & Annos)
                Part 1. Practice and Procedure (Refs & Annos)
                    Subpart S. Preemption of Restrictions that "Impair" the Ability to Receive Television Broadcast Signals, Direct Broadcast Satellite Services, or Multichannel Multipoint Distribution Services or the Ability to Receive or Transmit Fixed Wireless Communications Signals (Refs & Annos)

47 C.F.R. § 1.4000

§ 1.4000 Restrictions impairing reception of television broadcast signals, direct broadcast satellite services or multichannel multipoint distribution services.

Effective: April 10, 2023

Currentness

(a)(1) Any restriction, including but not limited to any state or local law or regulation, including zoning, land-use, or building regulations, or any private covenant, contract provision, lease provision, homeowners' association rule or similar restriction, on property within the exclusive use or control of the antenna user where the user has a direct or indirect ownership or leasehold interest in the property that impairs the installation, maintenance, or use of:

(i) An antenna that is:

(A) Used to receive direct broadcast satellite service, including direct-to-home satellite service, or to receive or transmit fixed wireless signals via satellite, including a hub or relay antenna used to receive or transmit fixed wireless services that are not classified as telecommunications services, and

(B) One meter or less in diameter or is located in Alaska;

(ii) An antenna that is:

(A) Used to receive video programming services via multipoint distribution services, including multichannel multipoint distribution services, instructional television fixed services, and local multipoint distribution services, or to receive or transmit fixed wireless signals other than via satellite, including a hub or relay antenna used to receive or transmit fixed wireless services that are not classified as telecommunications services, and

(B) That is one meter or less in diameter or diagonal measurement;

(iii) An antenna that is used to receive television broadcast signals; or

(iv) A mast supporting an antenna described in paragraphs (a)(1)(i), (a)(1)(ii), or (a)(1)(iii) of this section; is prohibited to the extent it so impairs, subject to paragraph (b) of this section.

(2) For purposes of this section, "fixed wireless signals" means any commercial non-broadcast communications signals transmitted via wireless technology to and/or from a fixed customer location. Fixed wireless signals do not include, among other things, AM radio, FM radio, amateur ("HAM") radio, CB radio, and Digital Audio Radio Service (DARS) signals.

(3) For purposes of this section, a law, regulation, or restriction impairs installation, maintenance, or use of an antenna if it:

(i) Unreasonably delays or prevents installation, maintenance, or use;

(ii) Unreasonably increases the cost of installation, maintenance, or use; or

(iii) Precludes reception or transmission of an acceptable quality signal.

(4) Any fee or cost imposed on a user by a rule, law, regulation or restriction must be reasonable in light of the cost of the equipment or services and the rule, law, regulation or restriction's treatment of comparable devices. No civil, criminal, administrative, or other legal action of any kind shall be taken to enforce any restriction or regulation prohibited by this section except pursuant to paragraph (d) or (e) of this section. In addition, except with respect to restrictions pertaining to safety and historic preservation as described in paragraph (b) of this section, if a proceeding is initiated pursuant to paragraph (d) or (e) of this section, the entity seeking to enforce the antenna restrictions in question must suspend all enforcement efforts pending completion of review. No attorney's fees shall be collected or assessed and no fine or other penalties shall accrue against an antenna user while a proceeding is pending to determine the validity of any restriction. If a ruling is issued adverse to a user, the user shall be granted at least a 21–day grace period in which to comply with the adverse ruling; and neither a fine nor a penalty may be collected from the user if the user complies with the adverse ruling during this grace period, unless the proponent of the restriction demonstrates, in the same proceeding which resulted in the adverse ruling, that the user's claim in the proceeding was frivolous.

(5) For purposes of this section, "hub or relay antenna" means any antenna that is used to receive or transmit fixed wireless signals for the distribution of fixed wireless services to multiple customer locations as long as the antenna serves a customer on whose premises it is located, but excludes any hub or relay antenna that is used to provide any telecommunications services or services that are provided on a commingled basis with telecommunications services.

(b) Any restriction otherwise prohibited by paragraph (a) of this section is permitted if:

(1) It is necessary to accomplish a clearly defined, legitimate safety objective that is either stated in the text, preamble, or legislative history of the restriction or described as applying to that restriction in a document that is readily available to antenna users, and would be applied to the extent practicable in a non-discriminatory manner to other appurtenances, devices, or fixtures that are comparable in size and weight and pose a similar or greater safety risk as these antennas and to which local regulation would normally apply; or

(2) It is necessary to preserve a prehistoric or historic district, site, building, structure or object included in, or eligible for inclusion on, the National Register of Historic Places, as set forth in the National Historic Preservation Act of 1966, as amended, 16 U.S.C. 470, and imposes no greater restrictions on antennas covered by this rule than are imposed on the installation, maintenance, or use of other modern appurtenances, devices, or fixtures that are comparable in size, weight, and appearance to these antennas; and

(3) It is no more burdensome to affected antenna users than is necessary to achieve the objectives described in paragraphs (b)(1) or (b)(2) of this section.

(c) [Reserved by 85 FR 18146]

(d) Local governments or associations may apply to the Commission for a waiver of this section under § 1.3 of this chapter. Waiver requests must comply with the procedures in paragraphs (f) and (h) of this section and will be put on public notice. The Commission may grant a waiver upon a showing by the applicant of local concerns of a highly specialized or unusual nature. No petition for waiver shall be considered unless it specifies the restriction at issue. Waivers granted in accordance with this section shall not apply to restrictions amended or enacted after the waiver is granted. Any responsive pleadings must be served on all parties and filed within 30 days after release of a public notice that such petition has been filed. Any replies must be filed within 15 days thereafter.

(e) Parties may petition the Commission for a declaratory ruling under § 1.2 of this chapter, or a court of competent jurisdiction, to determine whether a particular restriction is permissible or prohibited under this section. Petitions to the Commission must comply with the procedures in paragraphs (f) and (h) of this section and will be put on public notice. Any responsive pleadings in a Commission proceeding must be served on all parties and filed within 30 days after release of a public notice that such petition has been filed. Any replies in a Commission proceeding must be served on all parties and filed within 15 days thereafter.

(f) Copies of petitions for declaratory rulings and waivers must be served on interested parties, including parties against whom the petitioner seeks to enforce the restriction or parties whose restrictions the petitioner seeks to prohibit. A certificate of service stating on whom the petition was served must be filed with the petition. In addition, in a Commission proceeding brought by an association or a local government, constructive notice of the proceeding must be given to members of the association or to the citizens under the local government's jurisdiction. In a court proceeding brought by an association, an association must give constructive notice of the proceeding to its members. Where constructive notice is required, the petitioner or plaintiff must file with the Commission or the court overseeing the proceeding a copy of the constructive notice with a statement explaining where the notice was placed and why such placement was reasonable.

(g) In any proceeding regarding the scope or interpretation of any provision of this section, the burden of demonstrating that a particular governmental or nongovernmental restriction complies with this section and does not impair the installation, maintenance, or use of devices used for over-the-air reception of video programming services or devices used to receive or transmit fixed wireless signals shall be on the party that seeks to impose or maintain the restriction.

(h) All allegations of fact contained in petitions and related pleadings before the Commission must be supported by affidavit of a person or persons with actual knowledge thereof. An original and two copies of all petitions and pleadings should be addressed to the Secretary at the FCC's main office, located at the address indicated in 47 CFR 0.401(a). Copies of the petitions and related pleadings will be available for public inspection through the Reference Information Center.

**Credits**

[66 FR 2333, Jan. 11, 2001; 66 FR 28841, May 25, 2001; 67 FR 13224, March 21, 2002; 82 FR 41103, Aug. 29, 2017; 85 FR 18146, April 1, 2020; 85 FR 64405, Oct. 13, 2020; 86 FR 11442, Feb. 25, 2021; 88 FR 21435, April 10, 2023]

SOURCE: 56 FR 57598, Nov. 13, 1991; 57 FR 187, Jan. 3, 1992; 58 FR 27473, May 10, 1993; 59 FR 22985, May 4, 1994; 61 FR 45618, Aug. 29, 1996; 61 FR 46561, Sept. 4, 1996; 61 FR 52899, Oct. 9, 1996; 62 FR 37422, July 11, 1997; 63 FR 67429, Dec. 7, 1998; 63 FR 71036, Dec. 23, 1998; 64 FR 63251, Nov. 19, 1999; 65 FR 10720, Feb. 29, 2000; 65 FR 19684, April 12, 2000; 65 FR 31281, May 17, 2000; 66 FR 2333, Jan. 11, 2001; 69 FR 77938, Dec. 29, 2004; 71 FR 26251, May 4, 2006; 74 FR 39227, Aug. 6, 2009; 75 FR 9797, March 4, 2010; 76 FR 43203, July 20, 2011; 77 FR 71137, Nov. 29, 2012; 78 FR 10100, Feb. 13, 2013; 78 FR 15622, March 12, 2013; 78 FR 41321, July 10, 2013; 78 FR 50254, Aug. 16, 2013; 79 FR 48528, Aug. 15, 2014; 80 FR 1268, Jan. 8, 2015; 81 FR 40821, June 23, 2016; 81 FR 52362, Aug. 8, 2016; 81 FR 79930, Nov. 14, 2016; 81 FR 86601, Dec. 1, 2016; 82 FR 8171, Jan. 24, 2017; 82 FR 18581, April 20, 2017; 82 FR 20839, May 4, 2017; 82 FR 24561, May 30, 2017; 82 FR 41103, Aug. 29, 2017; 82 FR 41544, Sept. 1, 2017; 82 FR 55331, Nov. 21, 2017; 82 FR 58758, Dec. 14, 2017; 83 FR 2556, Jan. 18, 2018; 83 FR 4600, Feb. 1, 2018; 83 FR 7401, Feb. 21, 2018; 83 FR 46836, Sept. 14, 2018; 83 FR 47095, Sept. 18, 2018; 83 FR 48963, Sept. 28, 2018; 83 FR 61089, Nov. 27, 2018; 83 FR 63095, Dec. 7, 2018; 84 FR 8618, March 11, 2019; 84 FR 50999, Sept. 26, 2019; 84 FR 57363, Oct. 25, 2019; 86 FR 12547, March 4, 2021; 86 FR 15797, March 25, 2021; 88 FR 63744, Sept. 15, 2023; 89 FR 2149, Jan. 12, 2024; 89 FR 4161, Jan. 22, 2024; 89 FR 45553, May 22, 2024; 89 FR 48514, June 7, 2024; 89 FR 61272, July 30, 2024, unless otherwise noted.

AUTHORITY: 47 U.S.C. chs. 2, 5, 9, 13; 28 U.S.C. 2461 note; 47 U.S.C. 1754, unless otherwise noted.

Notes of Decisions (32)

Current through November 4, 2024, 89 FR 87517. Some sections may be more current. See credits for details.

---

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.